KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
LAWRENCE Y. ISER (SBN 094611)
liser@kwikalaw.com
KRISTEN L. SPANIER (SBN 181074)
kspanier@kwikalaw.com
GREGORY S. GABRIEL (SBN 239902)
ggabriel@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone:  (310) 566-9800
Facsimile:  (310) 566-9850

NORTON ROSE FULBRIGHT US LLP
JOHN M. SIMPSON (admitted *pro hac vice*)
john.simpson@nortonrosefulbright.com
MICHELLE C. PARDO (admitted *pro hac vice*)
michelle.pardo@nortonrosefulbright.com
799 9th Street NW
Suite 1000
Washington, DC  20001-4501
Telephone:     (202) 662-0200
Facsimile:     (202) 662-4643

Attorneys for Defendant SeaWorld Parks & Entertainment, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARC ANDERSON and ELLEXA CONWAY, on their own behalf and on behalf of a class of others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>SEAWORLD PARKS AND ENTERTAINMENT, INC.,<br><br>        Defendant. | Civil Action No.  3:15-cv-02172 SC<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[Fed. R. Civ. P. 9(b), 12(b)(1) and 12(b)(6)]**<br><br>**DATE: OCTOBER 30, 2015**<br>**TIME: 10:00 A.M.**<br>**ROOM: 1, 17TH Floor**<br>**JUDGE: Hon. Samuel Conti** |

DOCUMENT PREPARED
ON RECYCLED PAPER

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 30, 2015, at 10:00 a.m. or as soon thereafter as this matter may be heard before the Honorable Samuel Conti in Courtroom 1 of the United States District Court for the Northern District of California, located at 425 Golden Gate Avenue, San Francisco, CA, 942012, Defendant SeaWorld Parks and Entertainment, Inc. (SeaWorld) will and hereby does move the Court for an order dismissing Plaintiffs Marc Anderson and Ellexa Conway's (collectively Plaintiffs') First Amended Class Action Complaint (FAC), ECF 9-1.

The FAC alleges three causes of action against SeaWorld – (1) violation of California's False Advertising Law (FAL), Cal. Bus. & Prof. Code § 17500 et seq.; (2) violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 et seq.; and (3) violation of California's Consumers Legal Remedies Act (CLRA), Cal. Civ. Code § 1750 et seq. Plaintiffs fail to plead their claims with the required specificity, lack standing to seek injunctive relief, and fail to state a claim as a matter of law as to all three claims, as discussed below, and accordingly, the entirety of the FAC should be dismissed pursuant to Fed. R. Civ. P. 9(b), Fed. R. Civ. P. 12(b)(1), and Fed. R. Civ. P. 12(b)(6).

This motion will be based upon this Notice; the Memorandum of Points and Authorities attached hereto; the record in this case; any additional evidence or argument presented at or before the hearing on this matter; and all pleadings on file in this action.

Dated: September 18, 2015          **NORTON ROSE FULBRIGHT US LLP**

By: /s/ John M. Simpson
JOHN M. SIMPSON
Attorneys for Defendant

DOCUMENT PREPARED
ON RECYCLED PAPER

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................. 1

II.   THE FAC MUST BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO PLEAD WITH THE SPECIFICITY REQUIRED BY FEDERAL RULE OF CIVIL PROCEDURE 9(B) ....................................................................................................................................... 4

    A.    Federal Rule of Civil Procedure 9(b) Requires Plaintiffs to Allege Fraud-Based Claims With Specificity ................................................................................................ 4

    B.    Plaintiffs Fail to Satisfy the Applicable Heightened Pleading Requirements.......... 5

III.  PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF MUST BE DISMISSED FOR LACK OF ARTICLE III STANDING BECAUSE PLAINTIFFS CANNOT DEMONSTRATE A THREAT OF REPEATED INJURY ...................................................................................... 7

    A.    Legal Standard ......................................................................................................... 7

    B.    Plaintiffs Cannot Meet Their Burden of Demonstrating a Threat of Repeated Injury Because They Do Not Intend to Purchase Future SeaWorld Tickets ...................... 7

IV.   ALL OF PLAINTIFFS' CLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ........................................................................................................... 8

    A.    Legal Standard ......................................................................................................... 8

    B.    Plaintiffs Lack Statutory Standing Because They Do Not Have an Economic Injury or Actual Damages Caused by Any Alleged Misrepresentation About the Items Purchased ................................................................................................................. 9

        (1)    UCL and FAL ............................................................................................... 9

        (2)    CLRA ........................................................................................................... 13

    C.    Plaintiffs' Claims Are Also Barred by the First Amendment .............................. 14

        (1)    Legal Standard for Commercial Speech ..................................................... 15

        (2)    Plaintiffs' Claims Must be Dismissed Because they Target SeaWorld's Non-Commercial Speech ............................................................................ 15

    D.    The CLRA Claim Must be Dismissed with Prejudice Because (1) Plaintiffs Did Not Comply with the Affidavit and Pre-Suit Notice Requirements and (2) Tickets to SeaWorld are Neither "Goods" Nor "Services" ................................................ 18

        (1)    Plaintiffs Violated the CLRA's Affidavit and Notice Requirements......... 18

        (2)    SeaWorld Tickets are Outside the Scope of the CLRA ............................. 19

V.    CONCLUSION................................................................................................................... 21

3:15-cv-02172 SC

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

DOCUMENT PREPARED ON RECYCLED PAPER

# TABLE OF AUTHORITIES

**Cases**                                                                                                                       **Page(s)**

In re Actimmune Mktg. Litig., 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009)................................5

In re Actimmune Mktg. Litig., 2010 WL 3463491 (N.D. Cal. Sept. 1, 2010), aff'd,
    464 Fed. Appx. 651 (9th Cir. 2011).....................................................................12

Anderson v. The Hain Celestial Group, Inc., -- F. Supp. 3d --, 2015 WL 1744279
    (N.D. Cal. Apr. 8, 2015) ...............................................................................13

Animal Legal Defense Fund v. Mendes, 160 Cal. App. 4th 136 (2008) ................................11, 12

In re Apple & AT&T iPad Unlimited Data Plan Litig., 802 F. Supp. 2d 1070 (N.D.
    Cal. 2011)...............................................................................................19

Baba v. Hewlett-Packard Co., 2010 WL 2486353 (N.D. Cal. June 16, 2010) ............................14

Bates v. United Parcel Serv., 511 F.3d 974 (9th Cir. 2007) ..........................................7

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)....................................................6, 9

Bernardo v. Planned Parenthood Fed'n of Am., 115 Cal. App. 4th 322 (2004)................16, 17, 18

Berry v. Am. Express Publ'g, Inc., 147 Cal. App. 4th 224 (2007) ....................................20

Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60 (1983) ........................................15, 16, 17

Boling v. Trendwest Resorts, 2005 WL 1186519 (Cal. Ct. App. May 19, 2005).........................20

Boone v. S&F Mgmt. Co., 2009 WL 3049309 (Cal. Ct. App. Sept. 24, 2009) .............................13

Bower v. AT&T Mobility, LLC, 196 Cal. App. 4th 1545 (2011) .........................................13

Carrea v. Dreyer's Grand Ice Cream, Inc., 2011 WL 159380 (N.D. Cal. Jan. 10,
    2011), aff'd, 475 Fed. Appx. 113 (9th Cir. 2012)....................................................13

Charles v. City of Los Angeles, 697 F.3d 1146 (9th Cir. 2012) ......................................15

Cheng v. BMW of N. Am., LLC, 2013 WL 3940815 (C.D. Cal. July 26, 2013)..............................4

City of Los Angeles v. Lyons, 461 U.S. 95 (1983)....................................................7

Consumer Sol. REO, LLC v. Hillery, 658 F. Supp. 2d 1002 (N.D. Cal. 2009)...........................21

Dex Media West, Inc. v. City of Seattle, 696 F.3d 952 (9th Cir. 2012) ...........................15, 17

Doe v. SuccessfulMatch.com, 70 F. Supp. 3d 1066 (N.D. Cal. 2014) ..................................14

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF

DOCUMENT PREPARED
ON RECYCLED PAPER

EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp., 711 F. Supp. 2d 1074 (C.D. Cal. 2010) .................................................................................................................5

Elias v. Hewlett-Packard Co., 903 F. Supp. 2d 843 (N.D. Cal. 2012) ................................................4

Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC, 753 F.3d 862 (9th Cir. 2014) ....................................................................................................................................7

Fairbanks v. Superior Court, 46 Cal. 4th 56 (2009) ...............................................................20, 21

I.B. ex rel. Fife v. Facebook, Inc., 905 F. Supp. 2d 989 (N.D. Cal. 2012) ..............................21

Figy v. Frito-Lay N. Am., Inc., 67 F. Supp. 3d 1075 (N.D. Cal. 2014) ..................................9

First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765 (1978) ...................................................18

Fitbug Ltd. v. Fitbit, Inc., 78 F. Supp. 3d 1180 (N.D. Cal. 2015) ..........................................10

In re Ford Tailgate Litig., 2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) ..............................19

Frenzel v. AliphCom, 76 F. Supp. 3d 999 (N.D. Cal. 2014) ...............................................6, 8

Garrison v. Louisiana, 379 U.S. 64 (1964) ...........................................................................18

Garrison v. Whole Foods Mkt. Grp., Inc., 2014 WL 2451290 (N.D. Cal. June 2, 2014) ....................................................................................................................................8

In re Gilead Sci's. Sec. Litig., 536 F.3d 1049 (9th Cir. 2008) ...............................................9

Gross v. Symantec Corp., 2012 WL 3116158 (N.D. Cal. July 31, 2012) ................................5

Guzman v. Bridgepoint Ed., Inc., 2011 WL 4964970 (S.D. Cal. Oct. 19, 2011) ..................14

Hodgers-Durgin v. De La Vina, 199 F.3d 1037 (9th Cir. 1999) .............................................7

Kearns v. Ford Motor Co., 567 F.3d 1120 (9th Cir. 2009) .................................................4, 5

Kwikset Corp. v. Superior Court, 51 Cal. 4th 310 (2011) ...........................................9, 10, 12

Lazebnik v. Apple, Inc., 2014 WL 4275008 (N.D. Cal. Aug. 29, 2014) ................................20

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ..............................................................7

Marolda v. Symantec Corp., 672 F. Supp. 2d 992 (N.D. Cal. 2009) ......................................4

Maya v. Centex Corp., 658 F.3d 1060 (9th Cir. 2011) ...........................................................7

Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097 (9th Cir. 2008) .............................8

Meyer v. Sprint Spectrum, L.P., 45 Cal. 4th 634 (2009) .......................................................13

35487140.1        - iii -        3:15-cv-02172 SC

DOCUMENT PREPARED
ON RECYCLED PAPER

Navarro v. Block, 250 F.3d 729 (9th Cir. 2001) ...............................................................8

Navistar Int'l Trans. Corp. v. State Bd. of Equalization, 8 Cal. 4th 868 (1994)............................20

New.Net, Inc. v. Lavasoft, 356 F. Supp. 2d 1090 (C.D. Cal. 2004) ....................................15

New York Times Co. v. Sullivan, 376 U.S. 254 (1964) ....................................................18

Noll v. eBay, Inc., 282 F.R.D. 462 (N.D. Cal. 2012) .........................................................5

O'Shea v. Littleton, 414 U.S. 488 (1974) ........................................................................7

Oxina v. Lands' End, Inc., 2015 WL 4272058 (S.D. Cal. June 19, 2015) ....................................19

Papasan v. Allain, 478 U.S. 265 (1986)...........................................................................9

Peviani v. Natural Balance, Inc., 774 F. Supp. 2d 1066 (S.D. Cal. 2011) .........................................4

Rahman v. Mott's LLP, 2014 WL 325241 (N.D. Cal. Jan. 29, 2014) ...................................8

Reddy v. Litton Indus., 912 F.2d 291 (9th Cir. 1990) .......................................................9

Reynoso v. Paul Fin., LLC, 2009 WL 3833298 (N.D. Cal. Nov. 16, 2009)................................21

Romero v. Flowers Bakeries, LLC, 2015 WL 2125004 (N.D. Cal. May 6, 2015).....................8, 19

Salazar v. Honest Tea, Inc., 74 F. Supp. 3d 1304 (E.D. Cal. 2014)................................13

Speyer v. Avis Rent a Car Sys., 415 F. Supp. 2d 1090 (S.D. Cal. 2005) .........................................4

Stutzman v. Armstrong, 2013 WL 4853333 (E.D. Cal. Sept. 10, 2013) .....................14, 15, 16, 17

In re Tobacco II Cases, 46 Cal. 4th 298 (2009) ............................................................10

Turkalj v. Entra Default Sol., LLC, 2015 WL 1535545 (N.D. Cal. Apr. 6, 2015)...........................5

Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097 (9th Cir. 2003) .......................................4

Wang v. OCZ Tech. Group, Inc., 276 F.R.D. 618 (N.D. Cal. 2011) ................................6

Won Kyung Hwang v. Ohso Clean, Inc., 2013 WL 1632697 (N.D. Cal. Apr. 16, 2013) ...........................................................................................................19

**Rules and Statutes**

Cal. Bus. & Prof. Code § 17204 ....................................................................................10

Cal. Bus. & Prof. Code § 17535 ....................................................................................10

Cal. Civ. Code § 1761....................................................................................................20

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

DOCUMENT PREPARED ON RECYCLED PAPER

Cal. Civ. Code § 1770 ................................................................................................................19

Cal. Civ. Code § 1780(a) ...........................................................................................................13

Cal. Civ. Code § 1780(d) ...........................................................................................................18

Cal. Civ. Code § 1782(a) ...........................................................................................................19

CLRA .......................................................................................................................... *passim*

FAL ............................................................................................................................. *passim*

Federal Rule of Civil Procedure 9(b) .........................................................2, 4, 6, 13, 14

Federal Rule of Civil Procedure 12(b)(1) .........................................................................7

Federal Rule of Civil Procedure 12(b)(6) .........................................................................8

UCL............................................................................................................................. *passim*

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

DOCUMENT PREPARED ON RECYCLED PAPER

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Despite purportedly being brought on behalf of California consumers under consumer protection statutes, this case has nothing to do with remedying consumer deception.  It is about Plaintiffs' desire to control the public debate about animals in captivity.  Plaintiffs (who do not purport to be scientists or killer whale experts) shout their anti-captivity views from the rooftops, but sue SeaWorld for statements that rest on actual scientific facts.  Plaintiffs have tried to wedge their philosophical disagreements with SeaWorld into the confines of the consumer protection statutes, but the pieces simply do not fit.  The consumer protection statutes were meant to protect consumers from false advertising of consumer goods and services, and not – as Plaintiffs seek – to silence those with whom a plaintiff disagrees.

Plaintiffs allege that SeaWorld made statements about the well-being of its killer whales, that Plaintiffs relied upon those statements in purchasing tickets to SeaWorld San Diego, and that Plaintiffs now believe those statements were false or misleading in violation of California's False Advertising Law (FAL), Unfair Competition Law (UCL), and Consumers Legal Remedies Act (CLRA).  Plaintiffs purport to represent a class of "[a]ll consumers within California who, within the past four years, purchased tickets to SeaWorld San Diego."   First Amended Class Action Complaint (FAC), ECF 9-1, ¶ 38.  As remedies, Plaintiffs seek:  (1) certification of an injunctive relief class; (2) an order prohibiting SeaWorld from making what Plaintiffs claim are "false or misleading statements regarding captive orca health"; (3) an order requiring SeaWorld to parrot Plaintiffs' anti-captivity agenda on SeaWorld's own website – to say that "captivity in general negatively impacts orca health, that orca lifespans are shorter in captivity than in the wild, that collapsed dorsal fins are common only in captive orcas, and that SeaWorld separates closely related and tightly-knit orca family members"; (4) restitution of ticket prices for the named Plaintiffs only; and (5) attorneys' fees.  Id., ¶¶ 58, 67, 79, 80.

The real facts will show that SeaWorld made no false statements about its killer whales. But even assuming the truth of every alleged "fact" in the FAC, as the Court must under Rule 12, the FAC still must be dismissed in its entirety, for multiple reasons. First, Plaintiffs are unable to

- 1 -                                              3:15-cv-02172 SC

DOCUMENT PREPARED ON RECYCLED PAPER

allege with any specificity what statements they relied upon when purchasing their SeaWorld tickets, or when or how they purportedly learned that those statements were false in the few short months between purchasing tickets and filing the complaint (for Conway, less than five months). Having chosen to pursue a fraud theory, Plaintiffs have the burden of pleading their claims with the specificity required by Federal Rule of Civil Procedure 9(b).  Not only are Plaintiffs' allegations not specific, they are highly implausible.  Plaintiffs would like the Court to believe that despite having a "firm commitment to animal welfare" and refusing to "purchase tickets to … organizations … that display animals that cannot safely and healthfully be kept in captivity," FAC ¶¶ 19, 20, they were completely unaware of the contentious, ongoing public debate regarding SeaWorld's killer whales for more than a year in the post-*Blackfish* environment, bought tickets to SeaWorld, and then suddenly, right after purchasing those tickets, magically became aware of what they consider to be "the truth" and filed a lawsuit.[1]  Id., ¶ 7 (*Blackfish* released in January of 2013); ¶ 19 (Anderson bought tickets in March or April of 2014), ¶ 20 (Conway bought tickets in November of 2014).  The more plausible scenario is that Plaintiffs purchased their tickets firmly believing the opinions expressed in *Blackfish* to be "the truth," but intending to manufacture standing to bring this lawsuit.  The Rules do not allow this.

Second, and another indicator that this case is about seeking to control SeaWorld's speech and not about seeking justice for unwitting consumers, Plaintiffs do not demand that SeaWorld return the money the putative class members spent on their SeaWorld tickets, but rather seek (1) an order forbidding SeaWorld from presenting its side of the debate and (2) an order requiring SeaWorld to become a megaphone for the beliefs of Plaintiffs (who are not veterinarians or killer whale experts) about killer whale longevity, physiology, and psychology.  But these requests for injunctive relief must be dismissed because Plaintiffs do not (and cannot) demonstrate a threat of repeated injury.  Plaintiffs allege that their "injury" is the money they spent on their SeaWorld tickets, but they affirmatively plead that they would not have bought the tickets had they known

---

[1] According to Plaintiffs, the film *Blackfish* (which is critical of SeaWorld) "sparked a media flurry."  FAC ¶ 22.  Plaintiffs contend that, in response to the film, "SeaWorld issued public statements, an open letter, and posted interviews and testimonials on its website attempting to rebut one of the central themes of *Blackfish* – that captivity is harmful to orcas."  Id.

35487140.1                                     - 2 -                                3:15-cv-02172 SC

DOCUMENT PREPARED
ON RECYCLED PAPER

what they now believe to be the truth – that captivity is detrimental to killer whale health. Now knowing their "truth," Plaintiffs will not purchase future SeaWorld tickets. As such, they have pled themselves out of court – they cannot establish the threat of repeated injury required for Article III standing to seek injunctive relief.

Third, Plaintiffs are not injured. The FAL, UCL and CLRA require some injury or damages to be caused by a misrepresentation about the item purchased that the consumer relied upon. This makes sense in the context of a typical consumer protection claim – (e.g., the product was labeled "organic" but was not, or was advertised as "all natural" but contained artificial ingredients). Here, Plaintiffs make no such claim. The items Plaintiffs purchased were SeaWorld tickets, yet Plaintiffs do not and cannot plead any misrepresentation made about the tickets (let alone that they relied on any such statements to their detriment). Plaintiffs try to use these statutes as a sword to attack a company to which they have an ideological objection, but the statutes do not allow this. To have statutory standing for an FAL, UCL, or CLRA claim, Plaintiffs must have an injury that arose from a misrepresentation about the item they purchased; here, there is none.

Fourth, the First Amendment bars all of Plaintiffs' claims. The FAL, UCL, and CLRA only apply to regulate commercial speech. Yet the statements about which Plaintiffs seek to impose FAL, UCL, and CLRA liability (to the extent this is decipherable) are all noncommercial. They are not advertisements. They do not purport to sell any product. They are educational statements setting forth SeaWorld's side of the debate about killer whale captivity. Plaintiffs wish to freely disseminate their views about the well-being of SeaWorld's whales, but sue SeaWorld for expressing its view. The First Amendment bars this.

Finally, the CLRA claim should be dismissed for the additional reasons that (1) Plaintiffs have not complied with the CLRA's affidavit and pre-suit notice requirements and (2) the statute only applies to transactions involving "goods" or "services," and SeaWorld tickets are neither.

DOCUMENT PREPARED
ON RECYCLED PAPER

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## II. THE FAC MUST BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO PLEAD WITH THE SPECIFICITY REQUIRED BY FEDERAL RULE OF CIVIL PROCEDURE 9(B)

Although Plaintiffs assert the FAC claims on behalf of themselves *and* the unnamed class members, in ruling on this motion to dismiss, the Court should only consider the claims of Plaintiffs. Speyer v. Avis Rent a Car Sys., 415 F. Supp. 2d 1090, 1094 (S.D. Cal. 2005) (when considering a motion to dismiss, the court only considers the claims of the named plaintiffs); Cheng v. BMW of N. Am., LLC, 2013 WL 3940815, at *4 (C.D. Cal. July 26, 2013) (same).

### A. Federal Rule of Civil Procedure 9(b) Requires Plaintiffs to Allege Fraud-Based Claims With Specificity

Each of Plaintiffs' claims sounds in fraud, and is thus subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) (Rule 9(b)). Marolda v. Symantec Corp., 672 F. Supp. 2d 992, 1004 (N.D. Cal. 2009) (holding that claims under UCL, CLRA, and FAL are subject to Rule 9(b) requirements); Elias v. Hewlett-Packard Co., 903 F. Supp. 2d 843, 853 (N.D. Cal. 2012) (same). Rule 9(b) provides that: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[I]f the claim is said to be grounded in fraud … the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." Kearns v. Ford Motor Co., 567 F.3d 1120, 1127 (9th Cir. 2009). "When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003).

"Under Rule 9(b) averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged. A plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." Peviani v. Natural Balance, Inc., 774 F. Supp. 2d 1066, 1071 (S.D. Cal. 2011) (internal citations omitted) (emphasis added). "To satisfy Rule 9(b), Plaintiff must [also] state the time, place, and specific content of the false representations as well

35487140.1                               - 4 -                          3:15-cv-02172 SC

DOCUMENT PREPARED ON RECYCLED PAPER

as the identities of the parties to the misrepresentation." EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp., 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010) (emphasis added).

This heightened pleading standard also applies to allegations of reliance. Noll v. eBay, Inc., 282 F.R.D. 462, 468 (N.D. Cal. 2012) ("A plaintiff must plead reliance on alleged misstatements with particularity by alleging facts 'of sufficient specificity,' allowing a court to infer that 'misrepresentations caused injury to plaintiffs by inducing them to pay' for products or services.") (quoting In re Actimmune Mktg. Litig., 2009 WL 3740648, at *11 (N.D. Cal. Nov. 6, 2009)); see also Kearns, 567 F.3d at 1125-26 (specificity requirement applies to allegations of reliance); Turkalj v. Entra Default Sol., LLC, 2015 WL 1535545, at *5 (N.D. Cal. Apr. 6, 2015) ("[G]eneralized and conclusory allegation[s] of reliance [are] insufficient to sustain [a] fraud claim.").

**B.      Plaintiffs Fail to Satisfy the Applicable Heightened Pleading Requirements**

Plaintiffs' FAC sets forth several allegedly false statements made by SeaWorld, but noticeably absent are the specific allegations regarding the who, what, when, where and how of the misconduct charged by Plaintiffs.  Conway merely alleges that she was vaguely "exposed to SeaWorld's false and misleading representations about its care for orcas … ."  FAC ¶ 20.  She fails to plead what facts SeaWorld allegedly misrepresented to her about its "care for orcas," when she saw them, where she saw them, or why the statements she was exposed to are false.  Anderson makes the identical vague allegation, but further contends that he read on SeaWorld's website that killer whale lifespans in captivity are comparable to those in the wild and that SeaWorld does not separate calves and mothers.  Id., ¶ 19.  Critically absent from Anderson's allegations are when he saw these allegedly false statements or whether he found them to be material.  These vague allegations cannot survive a motion to dismiss.  Kearns, 567 F.3d at 1126 (affirming dismissal of CLRA and UCL claims because plaintiffs failed to "specify what the television advertisements or other sales material specifically stated.  Nor did [plaintiff] specify when he was exposed to them or which ones he found material."); Gross v. Symantec Corp., 2012 WL 3116158, at *3 (N.D. Cal. July 31, 2012) (dismissing UCL claim because plaintiff did not provide "direct quotations" or other "allegations indicating what [the defendant] actually said.").

35487140.1                                          - 5 -                                          3:15-cv-02172 SC

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Also fatal to their claims, Plaintiffs fail to plead that they actually relied to their detriment on any specific misrepresentations. Indeed, Plaintiffs do not even allege that they were exposed to any alleged misrepresentations before purchasing their tickets. Obviously if Plaintiffs had not seen any alleged misrepresentations before purchasing their tickets, they could not have relied on such misrepresentations in making those purchases. The sum total of Plaintiffs' allegations regarding reliance are the conclusions that they "relied upon SeaWorld's representations regarding captive orca welfare[,]" and that they "reasonably relied on SeaWorld's misrepresentations and omissions," without identification of the specific representations on which they allegedly relied in purchasing their tickets. FAC ¶¶ 56, 57, 65, 77. This is precisely the type of "formulaic recitation of the elements of a cause of action" prohibited by the Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). These allegations could not survive a motion to dismiss under Rule 8, let alone the heightened 9(b) standard applicable here. Courts repeatedly have dismissed fraud-based consumer protection claims where, as here, plaintiffs broadly pled reliance without providing specifics. E.g., Frenzel v. AliphCom, 76 F. Supp. 3d 999, 1014 (N.D. Cal. 2014) (dismissing UCL, CLRA, and FAL claims for lack of specificity in pleading reliance; complaint that "broadly alleges that [plaintiff] 'reviewed [defendant's] marketing materials and representations,' and that he purchased [the product] 'based on those representations'" was insufficient because it "fail[ed] to specify which, if any, of these statements Frenzel personally reviewed and relied on."); Wang v. OCZ Tech. Group, Inc., 276 F.R.D. 618, 627 (N.D. Cal. 2011) (dismissing UCL, CLRA, and FAL claims where plaintiff failed to allege when "he viewed, read, or otherwise came to rely upon" the representations, and "d[id] not specify the material that caused him to rely on [defendant]'s representations.").

Plaintiffs' vague and conclusory allegations in support of their fraud-based claims are manifestly insufficient under the heightened pleading requirements of Rule 9(b), and as such the entirety of the FAC must be dismissed.

DOCUMENT PREPARED
ON RECYCLED PAPER

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## III.  PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF MUST BE DISMISSED FOR LACK OF ARTICLE III STANDING BECAUSE PLAINTIFFS CANNOT DEMONSTRATE A THREAT OF REPEATED INJURY

### A.  Legal Standard

"[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011).  Article III standing has a three-element "irreducible constitutional minimum": (1) injury in fact; (2) causation; and (3) redressability. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

"Standing must be shown with respect to each form of relief sought, whether it be injunctive relief, damages or civil penalties." Bates v. United Parcel Serv., 511 F.3d 974, 985 (9th Cir. 2007).  To have constitutional standing for injunctive relief, Plaintiffs must demonstrate not only that they have "suffered or [are] threatened with a concrete and particularized legal harm," but also that there is "'**a sufficient likelihood that [they] will again be wronged in a similar way**.'" Id. (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983)) (emphasis added).  In other words, to seek injunctive relief, a plaintiff "must establish a '**real and immediate threat of repeated injury**.'" Id. (quoting O'Shea v. Littleton, 414 U.S. 488, 496 (1974)) (emphasis added); Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC, 753 F.3d 862, 868 (9th Cir. 2014) ("[I]t is not the presence or absence of a past injury that determines Article III standing to seek injunctive relief; it is the imminent prospect of future injury.").

In a class action, "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." Hodgers-Durgin v. De La Vina, 199 F.3d 1037, 1045 (9th Cir. 1999).

### B.  Plaintiffs Cannot Meet Their Burden of Demonstrating a Threat of Repeated Injury Because They Do Not Intend to Purchase Future SeaWorld Tickets

The primary remedy Plaintiffs seek is injunctive – they only seek to certify an injunctive relief class, and for each of their three causes of action, they seek injunctions to control SeaWorld's speech. FAC ¶ 80(a), ¶ 58 (Count I), ¶ 67 (Count II), ¶ 79 (Count III).

35487140.1                                    - 7 -                          3:15-cv-02172 SC

DOCUMENT PREPARED
ON RECYCLED PAPER

"[T]o demonstrate standing in a consumer protection class action such as this one, **the named plaintiff 'must allege that he intends to purchase the produc[t] at issue in the future**.'" Frenzel, 76 F. Supp. 3d at 1015 (emphasis added) (quoting Rahman v. Mott's LLP, 2014 WL 325241, at *10 (N.D. Cal. Jan. 29, 2014)). Plaintiffs have not alleged that they intend to purchase SeaWorld tickets in the future. To the contrary, they **specifically allege** that had they "been aware that SeaWorld's advertisements were a misrepresentation of the truth regarding captive orca health, [they] would not have purchased tickets to SeaWorld San Diego." FAC ¶ 19 (Anderson), ¶ 20 (Conway). Now they are "aware." Based on their own pleading, then, they will never again purchase a ticket. Not only is there no "real and immediate threat" of repeated injury; such injury is impossible, and their requests for injunctive relief must be dismissed. See, e.g., Garrison v. Whole Foods Mkt. Grp., Inc., 2014 WL 2451290, at *5 (N.D. Cal. June 2, 2014) (dismissing with prejudice putative injunctive class action claims for deceptive advertising of foods as "All Natural" because the named plaintiffs alleged that had they known the food products contained an artificial ingredient they would not have purchased them. "Now they know. There is therefore no danger that they will be misled in the future.").[2]

## IV.   ALL OF PLAINTIFFS' CLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A.   Legal Standard

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). A complaint should be dismissed where it "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d

---

[2] See also Romero v. Flowers Bakeries, LLC, 2015 WL 2125004, at *7 (N.D. Cal. May 6, 2015) (putative class claims for injunctive relief for deceptive advertising of bread products dismissed: plaintiff "has not, nor can she, establish a 'real and immediate threat of repeated injury'" where plaintiff pled that had she known the "breads she purchased were 'not whole wheat breads,' she 'would never have bought them[.]'"); Frenzel, 76 F. Supp. 3d at 1015 (dismissing with prejudice putative injunctive class action for deceptive advertising of Jawbone fitness tracker because plaintiff did not allege that he was likely to purchase another Jawbone, and even if he did, he could not "plausibly allege that he is likely to be fraudulently induced by the same representations he now claims he knows are false.").

35487140.1

DOCUMENT PREPARED
ON RECYCLED PAPER

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1097, 1104 (9th Cir. 2008).  To survive a motion to dismiss, Plaintiffs' complaint must set forth the grounds of their entitlement to relief, which requires more than a "formulaic recitation of the elements of a cause of action[.]"  Twombly, 550 U.S. at 555.

In ruling on a motion to dismiss, while a court "must take all the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986); In re Gilead Sci's. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (The court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").  If the remaining, well-pleaded factual allegations "could not raise a claim of entitlement to relief, this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court."  Twombly, 550 U.S. at 558 (internal quotation omitted).

When granting a motion to dismiss, the court need not grant leave to amend if amendment would be futile.  Reddy v. Litton Indus., 912 F.2d 291, 296 (9th Cir. 1990); Figy v. Frito-Lay N. Am., Inc., 67 F. Supp. 3d 1075, 1081 (N.D. Cal. 2014) (Conti, J.) ("[A] court does not need to grant leave to amend in cases where the court determines that permitting a plaintiff to amend would be an exercise in futility.").  In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint."  Reddy, 912 F.2d at 296.

B. **Plaintiffs Lack Statutory Standing Because They Do Not Have an Economic Injury or Actual Damages Caused by Any Alleged Misrepresentation About the Items Purchased**

Plaintiffs' claims fail for the simple reason that the alleged misrepresentations of which they complain were not about the items they actually purchased.

(1) UCL and FAL

For Plaintiffs to have standing under the UCL or FAL, they must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e. *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim."  Kwikset Corp. v. Superior Court, 51 Cal.

35487140.1                                           - 9 -                                    3:15-cv-02172 SC

DOCUMENT PREPARED ON RECYCLED PAPER

4th 310, 322 (2011) (original emphasis); Cal. Bus. & Prof. Code §§ 17204 (UCL); 17535 (FAL). To meet the causation requirement, Plaintiffs "must demonstrate <u>actual reliance on the allegedly deceptive or misleading statements</u>[.]" <u>Kwikset</u>, 51 Cal. 4th at 326 (emphasis added). "Because a UCL or FAL plaintiff must demonstrate an economic injury and demonstrate that 'the misrepresentation was an immediate cause' of the injury suffered, standing under the UCL and FAL is 'substantially narrower than federal standing under [A]rticle III." <u>Fitbug Ltd. v. Fitbit, Inc.</u>, 78 F. Supp. 3d 1180, 1196 (N.D. Cal. 2015) (Conti, J.) (quoting <u>In re Tobacco II Cases</u>, 46 Cal. 4th 298, 326 (2009)).

Plaintiffs cannot meet either prong.  They have not alleged any misrepresentation about the items they actually purchased – SeaWorld tickets.  Because of this, it is also impossible for them to meet the second prong – actual reliance on any deceptive statement about the tickets.

a.    <em>No Economic Injury</em>

Plaintiffs' alleged "economic injury" is the price of their tickets.  FAC ¶ 57 (FAL), ¶ 66 (UCL).  But Plaintiffs fail to allege any misrepresentation SeaWorld made about those tickets. Plaintiffs have not alleged, for example, that the tickets were advertised as two-day passes but only allowed entry for one day, or that the tickets advertised walruses but walruses were not exhibited.  Plaintiffs have not alleged that the tickets were advertised as allowing entry to a show and that they were denied admittance.  Nor do Plaintiffs allege that they were denied entry to the park, that the facilities were under construction, or that the Shamu Show did not go on as planned. Indeed, **Plaintiffs do not even allege that they redeemed their tickets and went to the park**.

It may be true that in traditional product mislabeling cases a "consumer who **relies on a product label** and challenges a **misrepresentation contained therein** can satisfy the standing requirement of [the UCL/FAL] by alleging … that he or she would not have bought the product but for the misrepresentation," <u>Kwikset</u>, 51 Cal. 4th at 330 (emphasis added), but there must have been a misrepresentation **about the product itself**.  Here, Plaintiffs purchased tickets, but they do not allege that SeaWorld made any misrepresentations about the tickets.

Where, as here, the alleged misrepresentation was not about the item actually purchased, but about something related to the stream of commerce of the item, statutory standing fails.  In an

DOCUMENT PREPARED
ON RECYCLED PAPER

analogous case, Animal Legal Defense Fund v. Mendes, 160 Cal. App. 4th 136 (2008), consumers of milk sued calf ranchers under the UCL, alleging that the ranchers violated a California Penal Code provision regarding animal treatment, and had the consumers known of the alleged violation, they would not have purchased the milk.[3]  The plaintiffs alleged they "suffered harm and lost money as a result of purchasing dairy products that were unlawfully, unfairly and illegally produced."  Id. at 146.

As in this case, the plaintiffs in Mendes made no complaints about the item they actually purchased (in that case, milk):

> "They do not allege that the milk sold to them … was physically inferior to other milk.  They do not allege that respondents' treatment of the young calves has any negative effect on the milk produced by these calves months and years later, when they are in the dairy herd.  And they do not allege that anyone made express representations about the milk, similar to express claims that dairy products are organic, produced by non-hormonally enhanced cows, or produced by grass-grazed cows. … Instead, the consumers' alleged injury is that they bought milk they otherwise would not have bought if they had thought some of the producing herd may have been raised by respondents in cruel conditions."

Id. at 145-46 (internal citations omitted).  The plaintiffs argued that they suffered an economic injury "even though the milk itself was not of inferior physical quality, [because] the violation of anticruelty laws in raising the calves 'tainted the dairy products sent into the stream of commerce.'"  Id. at 147.

The California Court of Appeals rejected the plaintiffs' argument, and affirmed dismissal for lack of economic injury.  It held that because the consumers had received the benefit of the bargain for what they actually purchased – the milk – any injury they suffered by virtue of the violation of anticruelty laws "tainting" the milk was a "moral injury," not an economic one.  Id.

---

[3] The provision prohibits confining an animal without an "adequate exercise area," and plaintiffs alleged that the ranchers kept the calves, for up to 60 days at a time, in small crates that were not large enough to permit the calves to turn around or lie in a natural position.  Id. at 140.

35487140.1                                    - 11 -                              3:15-cv-02172 SC

Plaintiffs' gambit here is even weaker.  They allege that when they purchased their SeaWorld tickets, they assumed that SeaWorld's killer whales were happy and healthy, and that they lost money because had they known what they now consider to be "the truth" about the whales' treatment (which, unlike in Mendes, they do not even allege violates any anticruelty or animal welfare laws), they would not have bought the tickets.  FAC ¶¶ 57, 66.  But they do not allege that there was anything inferior about what they purchased – the tickets for admission to the park.  Notably, they do not allege that SeaWorld's treatment of the whales had any effect on the Shamu show.  Indeed, **they do not allege that they even saw a killer whale or that they even attended SeaWorld**.  They paid for SeaWorld tickets and received SeaWorld tickets.[4]  As Mendes demonstrates, when the consumers' complaint is not about the item they actually purchased, but instead about something in the stream of commerce that allegedly "tainted" the experience, allegations that the plaintiffs would not have purchased the ultimate product had they known the truth are insufficient.  This is, at best, a "moral injury," not an economic one, and therefore the claim is fatally flawed from the outset.

b.      *No Reliance on Misleading Statement*

Because Plaintiffs have not alleged any misleading statements about their tickets, they do not (and cannot) allege that they relied upon any statements about those tickets, and thus fail to establish the second requirement for statutory standing.  Kwikset, 51 Cal. 4th at 326 (Plaintiffs "must demonstrate actual reliance on the allegedly deceptive or misleading statements[.]") (emphasis added).  Alleging unlawfulness alone, without reliance, "only accomplishes half of a plaintiff's burden" since the phrase "as a result of" in the statutory language "places the burden on plaintiffs to establish that they actually relied upon" defendants' misrepresentations.  In re Actimmune Mktg. Litig., 2010 WL 3463491, at *7 (N.D. Cal. Sept. 1, 2010), aff'd, 464 Fed. Appx. 651 (9th Cir. 2011).

---

[4] Plaintiffs may argue that, unlike the defendant in Mendes, SeaWorld made representations about the care of its whales.  But, as discussed above, Plaintiffs do not allege reliance on any particular factual statement similar to the examples in Mendes (that the milk was organic, or produced by grass-fed cows, for example).  See, e.g., FAC ¶ 20 ("SeaWorld's marketing campaign assured [Conway] that SeaWorld's orcas were well taken care of.").  No factual statements are identified.

35487140.1                                          - 12 -                                    3:15-cv-02172 SC

DOCUMENT PREPARED ON RECYCLED PAPER

Even if the allegedly deceptive statements did not have to be about the items purchased – the tickets – as set forth above, Plaintiffs still completely fail to allege reliance on any statements made by SeaWorld with the specificity required by Rule 9(b).  Supra, pp. 5-6 and cases cited therein.

(2)    CLRA

The CLRA states that "[a]ny consumer **who suffers any damage as a result of** the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person[.]"  Cal. Civ. Code § 1780(a) (emphasis added).  Some courts have interpreted the CLRA to require the same economic injury as the UCL and FAL.  See, e.g., Anderson v. The Hain Celestial Group, Inc., -- F. Supp. 3d --, 2015 WL 1744279, at *4 (N.D. Cal. Apr. 8, 2015) ("'To establish standing under the UCL, FAL, and CLRA a person must have 'suffered an injury in fact and ha[ve] lost money or property as a result.'") (quoting Salazar v. Honest Tea, Inc., 74 F. Supp. 3d 1304, 1315 (E.D. Cal. 2014)).[5]

Regardless of whether Plaintiffs' CLRA claim is analyzed with the UCL and FAL claims or separately, it fails because Plaintiffs have not suffered any damage as a result of the alleged CLRA violation.  Courts have made clear that being exposed to an unlawful practice is insufficient to establish standing.  "[T]he statute provides that in order to bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but some kind of damage must result."  Meyer v. Sprint Spectrum, L.P., 45 Cal. 4th 634, 641 (2009); Bower v. AT&T Mobility, LLC, 196 Cal. App. 4th 1545, 1556 (2011) ("A plaintiff bringing a CLRA cause of action must not only be exposed to an unlawful practice but also have suffered some kind of damage.").

Plaintiffs may argue that the "damage" they suffered was the cost of their tickets.  As with their UCL and FAL claims, however, Plaintiffs fail to allege that (1) there was anything wrong with the tickets they received, or (2) that they relied upon any misrepresentation about the tickets, both of which are fatal to their CLRA claim.  For example, in Boone v. S&F Mgmt. Co., 2009

_____

[5] Salazar, in turn, cites Carrea v. Dreyer's Grand Ice Cream, Inc., 2011 WL 159380, at *2 (N.D. Cal. Jan. 10, 2011) (jointly analyzing standing under UCL, FAL, and CLRA), aff'd, 475 Fed. Appx. 113 (9th Cir. 2012).  Salazar, 74 F. Supp. 3d at 1315.

DOCUMENT PREPARED
ON RECYCLED PAPER

WL 3049309 (Cal. Ct. App. Sept. 24, 2009), the California Court of Appeals affirmed dismissal of a CLRA claim for lack of statutory standing where the plaintiff-patient sued the defendant-nursing facility, alleging that the facility falsely advertised that it provided "skilled nursing care which will meet the needs of prospective and current residents." Id. at *1.  Plaintiff-patient alleged that he "relied on these promises and representations when he signed the admissions agreement, and he lost money when he did not receive the quality of care for which he had paid." Id.  The court held that the plaintiff lacked standing because there was "no allegation of what was deficient in the services provided to [plaintiff], nor what harm he suffered for want of services[.]" Id. at *3.  Similarly here, Plaintiffs have not alleged what was deficient about the tickets they purchased.

Plaintiffs CLRA claim also must be dismissed for failure to plead reliance for the same reasons as their FAL and UCL claims.  Plaintiffs recite the same formulaic reliance refrain, FAC ¶ 77 (Plaintiffs "reasonably relied on SeaWorld's misrepresentations and omissions"), which fails to meet Twombly's pleading standards, let alone those of Rule 9(b).  See Guzman v. Bridgepoint Ed., Inc., 2011 WL 4964970, at *5 (S.D. Cal. Oct. 19, 2011) (dismissing CLRA claim; general allegations that plaintiff relied upon general misrepresentations were insufficient where plaintiff "failed to allege sufficient facts to show that she relied on any misrepresentations by Defendants[.]"); Baba v. Hewlett-Packard Co., 2010 WL 2486353, at *5 (N.D. Cal. June 16, 2010) (dismissing CLRA claim because plaintiffs failed "to allege with any particularity how [they] relied upon any specific misleading statements at the time of the transactions.").  See also pp. 5-6, supra, and cases cited therein.

"[T]o adequately plead a CLRA claim, a plaintiff must allege that she relied on the defendant's alleged misrepresentation and that she suffered economic injury as a result."  Doe v. SuccessfulMatch.com, 70 F. Supp. 3d 1066, 1075 (N.D. Cal. 2014).  Plaintiffs can do neither, and their CLRA claim must be dismissed.

### C.    Plaintiffs' Claims Are Also Barred by the First Amendment

The FAL, UCL, and CLRA "govern only commercial speech."  Stutzman v. Armstrong, 2013 WL 4853333, at *14 (E.D. Cal. Sept. 10, 2013).  "Noncommercial speech is beyond their

DOCUMENT PREPARED
ON RECYCLED PAPER

reach." Id. Accordingly, where, as here, plaintiffs' claims arise out of a defendant's noncommercial speech, the First Amendment bars those claims as a matter of law. New.Net, Inc. v. Lavasoft, 356 F. Supp. 2d 1090, 1110 (C.D. Cal. 2004) ("Lawsuits premised on [the UCL and related statutes] are subject to being stricken because they are barred by the First Amendment where the speech complained of is not commercial speech."); Stutzman, 2013 WL 4853333, at *19 ("UCL, FAL, and CLRA claims targeting noncommercial speech fail as a matter of law.").

### (1) Legal Standard for Commercial Speech

"The Ninth Circuit has adopted a three-pronged analysis based on Supreme Court precedent to determine whether speech is commercial." Id. at *15. "First, the court considers whether the publication fits within the 'core notion of commercial speech.' 'Core' commercial speech is 'speech that does no more than propose a commercial transaction.'" Id. (quoting Dex Media West, Inc. v. City of Seattle, 696 F.3d 952, 957 (9th Cir. 2012)). Second, if the speech "does more than propose a commercial transaction, but contains 'mixed content' – that is, both commercial and non-commercial elements" – the Ninth Circuit applies the test from Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60 (1983), to determine if the speech should be considered commercial. Id. Under Bolger, there is "strong support" for a conclusion that speech is commercial when: (1) it is conceded to be an advertisement; (2) it refers to a specific product; and (3) the speaker has an economic motive for engaging in the speech. Bolger, 463 U.S. at 66-67; Charles v. City of Los Angeles, 697 F.3d 1146, 1151 (9th Cir. 2012) ("where the speech is an advertisement, the speech refers to a particular product, and the speaker has an economic motivation," it is commercial). Third, even if the speech would be considered commercial under Bolger, it can "still receive[s] full First Amendment protection" if "the commercial aspect of the speech is 'inextricably intertwined' with otherwise fully protected speech[.]" Stutzman, 2013 WL 4853333 at *15.

### (2) Plaintiffs' Claims Must be Dismissed Because they Target SeaWorld's Non-Commercial Speech

As noted above, because Plaintiffs do not identify what SeaWorld statements they actually relied upon, it is difficult to decipher what exactly Plaintiffs are suing over. However, the

DOCUMENT PREPARED ON RECYCLED PAPER

statements Plaintiffs include in the FAC (regardless of whether they relied on them or even were exposed to them), are all non-commercial and thus not subject to the FAL, UCL, or CLRA:

- SeaWorld's website statement that SeaWorld's killer whales have lifespans "equivalent with those in the wild." FAC ¶¶ 9, 24.
- SeaWorld's website statement that it is "wrong" that "life at SeaWorld is harmful for killer whales." Id., ¶¶ 9, 31.
- SeaWorld's website statement that "We do not separate killer whale moms and calves. SeaWorld recognizes the important bond between mother and calf. On the rare occasion that a mother killer whale cannot care for the calf herself, we have successfully hand raised and reintroduced the calf. Whales are only moved to maintain a healthy social structure." Id. ¶ 29.
- SeaWorld's website statement that "there is scientific evidence that nearly one-quarter of adult male southern resident killer whales in the wild have collapsing, collapsed or bent dorsal fins." Id. ¶ 25.

None of these statements is "core" commercial speech, because they all do more than "propose a commercial transaction." Bolger, 463 U.S. at 67. In fact, none of them proposes a commercial transaction at all. Bernardo v. Planned Parenthood Fed'n of Am., 115 Cal. App. 4th 322, 344 (2004) (website statements that abortions were as safe as childbirth did not propose a commercial transaction but rather were "educational in nature and asserted [defendant's] positions on disputed scientific and medical issues of public interest with which [plaintiff] strenuously disagreed."). Like the speech in Bernardo, SeaWorld's statements about killer whale lifespans, dorsal fins, and rearing practices are educational and set forth SeaWorld's position on the currently debated scientific issue of killer whales in captivity. Because the statements do not propose commercial transactions at all, "under the Ninth Circuit's analysis, the inquiry should end here." Stutzman, 2013 WL 4853333, at *17.

However, even if the statements were "mixed content" – both commercial and non-commercial – such that the Bolger factors applied, the statements are not "commercial" under Bolger either. First, the statements are not advertisements; they are participation in a scientific

DOCUMENT PREPARED ON RECYCLED PAPER

debate.  Bernardo, 115 Cal. App. 4th at 345 (finding that the challenged statements on Planned Parenthood's website were "educational, not commercial, in nature.").  Second, they do not refer to any "product."  None of the statements makes reference to SeaWorld tickets, or merchandise sold at the park, etc.  The first two Bolger factors thus weigh against a finding that the statements are commercial.  Finally, even if SeaWorld had an economic motive in making the statements, the Supreme Court, Ninth Circuit, and other courts repeatedly have held that this does not make statements "commercial" speech.  Bolger, 463 U.S. at 67 (economic motivation of the speaker in isolation is "clearly insufficient" to make statement commercial speech); Dex Media, 696 F.3d at 960 ("under *Bolger* and other Supreme Court precedent, economic motive in itself is insufficient to characterize a publication as commercial[.]"); Stutzman, 2013 WL 4853333 at *17 (statements were not commercial even though it was "quite likely" that defendants "had underlying economic motives" when making them, because other two Bolger factors were not met); Bernardo, 115 Cal. App. 4th at 345-46 ("any 'economic motivation' Planned Parenthood may have had in publishing the Web site speech that [plaintiff] challenges … would be insufficient by itself to turn the statements into commercial speech actionable under the UCL and FAL.").[6]

As illustrated by the strikingly similar Bernardo case, the First Amendment bars Plaintiffs' claims.  There, the plaintiffs alleged that Planned Parenthood and its affiliated health center violated the UCL and FAL because their websites contained misleading statements about the safety of abortions, including the potential link between abortion and breast cancer.  Id. at 327-28.  Like Plaintiffs here, plaintiffs in Bernardo sought two injunctions, one prohibiting Planned Parenthood from publishing its side of the debate, and another forcing Planned Parenthood to provide its patients information supporting the plaintiffs' position regarding the link between

---

[6] Because the statements at issue are not "commercial" under Bolger, there is no need to examine whether they are "inextricably intertwined" with noncommercial speech.  However, the Bernardo court found that even if other portions of Planned Parenthood's website, such as provision of a toll-free number and hyperlinks to information about specific clinics and services constituted commercial speech, "the noncommercial speech published in the various Web pages would still receive full First Amendment protection."  Bernardo, 115 Cal. App. 4th at 346.  Accordingly, even if SeaWorld's website contains commercial elements, such as links to purchase tickets, this does not convert the noncommercial speech over which Plaintiffs sue into commercial speech.

35487140.1                                    - 17 -                          3:15-cv-02172 SC

DOCUMENT PREPARED ON RECYCLED PAPER

abortion and breast cancer. Compare id. at 328 with FAC ¶¶ 58, 67, 79, 80(b). Planned Parenthood moved to strike the complaint, arguing that the lawsuit was an attempt "to use California consumer protection statutes to thwart Planned Parenthood from exercising its constitutional right to speak about abortion … [and] force it to adopt Bernardo's view of medicine on Planned Parenthood's own Web sites … based on 'very questionable science' and Bernardo's 'anti-abortion agenda.'" Id. at 336. Similarly here, Plaintiffs seek to use the same statutes to thwart SeaWorld from exercising its First Amendment right to speak about the effects of captivity on killer whales and force SeaWorld to adopt Plaintiffs' anti-captivity view on SeaWorld's own website based on dubious science and their own agenda. The California Court of Appeals agreed with Planned Parenthood, holding that the statements on Planned Parenthood's websites were noncommercial speech and thus fully protected by the First Amendment from UCL and FAL claims. Id. at 351. It held that plaintiffs' lawsuit was an improper attempt to stifle Planned Parenthood's First Amendment rights, and affirmed dismissal of plaintiffs' UCL and FAL claims.

The same result should follow here. Plaintiffs have a First Amendment right to express their views about killer whales. SeaWorld has the same right. "The First and Fourteenth Amendments embody our 'profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open[.]" Garrison v. Louisiana, 379 U.S. 64, 75 (1964) (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964)). Where "suppression of speech suggests an attempt to give one side of a debatable public question an advantage in expressing its views to the people, the First Amendment is plainly offended." First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 785-86 (1978).

**D. The CLRA Claim Must be Dismissed with Prejudice Because (1) Plaintiffs Did Not Comply with the Affidavit and Pre-Suit Notice Requirements and (2) Tickets to SeaWorld are Neither "Goods" Nor "Services"**

(1) Plaintiffs Violated the CLRA's Affidavit and Notice Requirements

The CLRA requires that, "concurrently with the filing of the complaint, the plaintiff shall file an affidavit stating facts showing that the action has been commenced" in a proper jurisdiction. Cal. Civ. Code § 1780(d). "**If a plaintiff fails to file the affidavit required by this**

DOCUMENT PREPARED ON RECYCLED PAPER

**section, the court shall**, upon its own motion or upon motion of any party, **dismiss any such action** without prejudice." Id. (emphasis added).

The CLRA also requires that, thirty days or more "prior to the commencement of an action for damages," the consumer shall notify the defendant of the particular alleged violations of Section 1770, and demand that the defendant "correct, repair, replace, or otherwise rectify" those alleged violations. Cal. Civ. Code § 1782(a). The notice must be in writing and must be sent by certified or registered mail, return receipt requested to the place where the transaction occurred or to the person's principal place of business within California. Id. "Federal courts have required [s]trict adherence to the statute's notice provision … to accomplish the [CLRA's] goals of expeditious remediation before litigation." In re Apple & AT&T iPad Unlimited Data Plan Litig., 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) (internal quotation omitted). Compliance with this requirement is necessary to state a claim. Won Kyung Hwang v. Ohso Clean, Inc., 2013 WL 1632697, at *24 (N.D. Cal. Apr. 16, 2013). For purposes of the CLRA notice requirement, a "claim for the equitable relief of disgorgement or restitution [is] still a claim for damages." Oxina v. Lands' End, Inc., 2015 WL 4272058, at *2 (S.D. Cal. June 19, 2015) (internal quotation omitted)); In re Ford Tailgate Litig., 2014 WL 1007066, at *9 (N.D. Cal. Mar. 12, 2014) (deciding that notice requirement applies to requests for restitution).

Plaintiffs' FAC does not include the statutorily-required affidavit. Nor does it contain any allegation of compliance with the notice requirement, despite seeking restitution of Plaintiffs' ticket prices as a remedy for their CLRA claim. See generally FAC. Because Plaintiffs have failed to satisfy both requirements, their CLRA claim must be dismissed. Romero, 2015 WL 2125004, at *8 (dismissing CLRA claim for noncompliance with affidavit and notice requirements); In re Apple & AT&T iPad Unlimited Data Plan Litig., 802 F. Supp. 2d at 1077 (same). While these deficiencies alone do not necessitate that the dismissal be with prejudice, as discussed below, Plaintiffs' CLRA claim also suffers from an additional fatal and incurable flaw.

        (2)     SeaWorld Tickets are Outside the Scope of the CLRA

The CLRA prohibits various practices in "transaction[s] intended to result or which result[] in the sale or lease of **goods or services** to any consumer." Cal. Civ. Code § 1770

DOCUMENT PREPARED
ON RECYCLED PAPER

(emphasis added).  The statute defines "goods" as "**tangible chattels** bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods[.]"  Cal. Civ. Code § 1761(a) (emphasis added).[7]  The statutory definition of "services" is "**work, labor, and services** for other than a commercial or business use, including services furnished in connection with the sale or repair of goods."  Cal. Civ. Code § 1761(b) (emphasis added).

The California Supreme Court has made clear that if the case does not involve a "good" or "service" within the plain language of the statute, the CLRA claim must be dismissed.  Fairbanks v. Superior Court, 46 Cal. 4th 56, 61 (2009) (affirming judgment on the pleadings for defendant on CLRA claim based on defendant's life insurance practices; CLRA did not apply because life insurance is neither a "good" nor a "service" as defined by the statute).

Here, Plaintiffs purchased SeaWorld tickets.  The tickets were temporary licenses, allowing them to enter the park, visit exhibits, and attend shows.  The tickets themselves have no value, but rather exist as indicia of the privilege of entertainment extended to the ticket holder.  A SeaWorld ticket thus is not a tangible chattel, so it is not a CLRA "good."  See Berry v. Am. Express Publ'g, Inc., 147 Cal. App. 4th 224, 229 (2007) (holding that a credit card is not a "good" because "the card has no intrinsic value and exists only as indicia of the credit extended to the cardholder."); Lazebnik v. Apple, Inc., 2014 WL 4275008, at *5 (N.D. Cal. Aug. 29, 2014) (holding that "the Season Pass is not a 'good' within the meaning of the CLRA" because it is "not a tangible chattel.'").

Nor is a SeaWorld ticket work or labor, so it is also not a CLRA "service."  Fairbanks, 46 Cal. 4th at 61 (holding that life insurance is not a "service" under the act because it is "not work or labor, nor is it related to the sale or repair of any tangible chattel.").  "Because the statutory language is unambiguous, there is no need to consider legislative history."  Id.  However, the CLRA's legislative history underscores the point.  As the California Supreme Court stated in

---

[7] "'Tangible property is that which is visible and corporeal, having substance[.]'"  Boling v. Trendwest Resorts, 2005 WL 1186519, at *4 (Cal. Ct. App. May 19, 2005) (affirming dismissal of CLRA claim; vacation club memberships are not "tangible chattels" and thus not "goods") (quoting Navistar Int'l Trans. Corp. v. State Bd. of Equalization, 8 Cal. 4th 868, 875 (1994)).

DOCUMENT PREPARED ON RECYCLED PAPER

Fairbanks, "[t]he California Legislature adopted [the CLRA] largely from a model law, the National Consumer Act," which defined "services" as including "(a) work, labor, and other personal services, (b) **privileges with respect to** transportation, hotel and restaurant accommodations, education, **entertainment**, recreation, physical culture, hospital accommodations, funerals, cemetery accommodations, and the like, and (c) insurance." Id. (emphasis added). The California Legislature **did not include privileges with respect to entertainment** in the CLRA's definition of "services," thereby indicating its intent not to treat entertainment as a service under that statute. See id. (when a statute is modeled on a uniform act, deviation from the uniform act's language is presumed to be deliberate and to reflect a different intent.). Had the California Legislature intended the CLRA to cover privileges with respect to entertainment, it would have adopted that language from the uniform act. It did not.

Because SeaWorld tickets are neither "goods" nor "services" under the CLRA, and amendment of the pleadings would not cure this defect, the CLRA claim should be dismissed with prejudice. I.B. ex rel. Fife v. Facebook, Inc., 905 F. Supp. 2d 989, 1008 (N.D. Cal. 2012) (dismissing CLRA claim with prejudice because "Facebook Credits" are not goods or services covered by the statute, and amendment would not cure that defect); Consumer Sol. REO, LLC v. Hillery, 658 F. Supp. 2d 1002, 1015-16 (N.D. Cal. 2009) (dismissing CLRA claim with prejudice because mortgages were not goods or services and thus not covered by the CLRA); Reynoso v. Paul Fin., LLC, 2009 WL 3833298, at *9 (N.D. Cal. Nov. 16, 2009) (Conti, J.) (dismissing CLRA claim with prejudice because mortgage loans are neither goods nor services).

## V.    CONCLUSION

For the reasons stated herein, Plaintiffs' First Amended Complaint should be dismissed in its entirety.

Dated: September 18, 2015          **NORTON ROSE FULBRIGHT US LLP**


By: /s/ John M. Simpson
JOHN M. SIMPSON
Attorneys for Defendant

35487140.1                              - 21 -                         3:15-cv-02172 SC

DOCUMENT PREPARED ON RECYCLED PAPER