**United States District Court**
For the Northern District of California

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9    MARC ANDERSON and ELLEXA CONWAY, )   Case No. 15-cv-02172-SC
     on their own behalf and on       )
10   behalf of a class of others      )   ORDER DENYING REMAND
     similarly situated,              )
11                                    )
                                      )
12             Plaintiffs,            )
                                      )
13        v.                          )
                                      )
14   SEAWORLD PARKS AND               )
     ENTERTAINMENT, INC.,             )
15                                    )
               Defendant.             )
16   _____)

17

18   **I.    INTRODUCTION**

19        The Court turns now to a motion by Plaintiffs to remand this

20   case to State Court.  ECF No. 15 ("Mot.").  The motion challenges

21   the original notice of removal,[1] is fully briefed,[2] and is

22   appropriate for resolution without oral argument pursuant to Civil

23   Local Rule 7-1(b).  For the reasons set forth below, the motion is

24   DENIED.

25   ///

26   _____

27   [1] See ECF No. 1 ("Notice").
     [2] See ECF Nos. 23 ("Opp'n"), 29 ("Reply"); see also ECF No. 28 (re-
28   noticing the motion on the same grounds).

## II.  **FACTS**

This case includes both the facts alleged in the First Amended Complaint, ECF No. 9-1 ("FAC"), and an unusual procedural history that has followed.  As to the former, certain individuals claim to have been deceived by certain advertising statements made by Defendant SeaWorld Parks and Entertainment, Inc. ("SeaWorld" or "Defendant").  FAC ¶¶ 1-12.  SeaWorld is well known for and frequently advertises that it cares for sea creatures, including Orcas (otherwise known as "killer whales").  Id. at ¶¶ 4-5, 8-9, 55, 61, 73.  Plaintiffs allege these claims are false, and that in reliance thereon they financially supported SeaWorld through the purchase of tickets.  FAC ¶¶ 11-12, 19-20, 56-57, 65-66, 77-78. However, Plaintiffs here do not seek any monetary damages on behalf of the class.  Instead, they seek monetary damages only for themselves, while seeking injunctive relief for the entire class. Id. at ¶¶ 12, 58, 67, 79, 80.  The injunctive relief sought would include: (1) ordering SeaWorld to refrain from making statements Plaintiffs believe to be false or misleading regarding orca health; and (2) ordering Seaworld to inform the public on its website that: (a) captivity negatively impacts orca health, (b) orca lifespans are shorter in captivity than in the wild, (c) collapsed dorsal fins are common only in captive orcas, and (d) SeaWorld separates closely related and tightly-knit orca family members.  Id.

Procedurally, this case was originally filed in the Superior Court of the State of California for the City and County of San Francisco ("state court").  Notice ¶ 1.  Defendant successfully removed on the theory that the case involved at least $5 million, sat in diversity, and had a plaintiff class of at least 100 people,

giving federal courts jurisdiction under the Class Action Fairness Act ("CAFA").  <u>Id.</u> at ¶ 4-5; <u>see</u> 28 U.S.C. § 1332(d).  Plaintiffs argue that this calculation is improper, as Plaintiffs intentionally did not seek any class damages, thus falling well below the monetary threshold required.  Mot. at 1-6.  Accordingly, Plaintiffs now seek remand back to state court.

When the original motion for remand was filed, the Court quickly learned that Plaintiffs had filed other cases pending elsewhere in the country.  Notice ¶ 6(d)-(e); ECF Nos. 1-3 and 1-4 (jointly, "<u>Hall v. SeaWorld</u> Compl."), 6-1 ("<u>Gaab v. SeaWorld</u> Compl."); 24 Ex. A ("<u>Kuhl v. SeaWorld</u> Compl."); 24 at 69-74.[3] These other cases are highly similar in nature to this case, except that the other cases are in federal court, plead extra information about SeaWorld's alleged mistreatment of orcas, and affirmatively seek over $5 million in monetary damages.  The Defendant also asserts -- and submissions by Plaintiffs in no way dispute (they may generally support) -- that the class in the instant case would include the named plaintiffs in some or all of the above cited suits.  <u>See</u> Notice ¶ 6, ECF No. 24 at 69-74, Opp'n at 3 n.1, 4 n.3, 10, 10 n.6.

---

[3] A comparison of these other three cases showed that <u>Hall v. SeaWorld</u> and <u>Gaab v. SeaWorld</u> have overview and fact sections which are word-for-word identical except for: (1) definition of the named plaintiffs (<u>Gaab</u> has a second named Plaintiff, causing all its following paragraphs to be numbered one higher than in <u>Hall</u>); (2) a time-based reference in paragraphs 211 and 212, respectively ("Just last month" versus "Two months ago"); and (3) Subsection "K" which includes specific plaintiff allegations.  When compared to <u>Hall</u> or <u>Gaab</u>, <u>Kuhl v. Seaworld</u> is substantially similar, with almost all the same section headings and lots of identical language (sans the noted differences), though it occasionally skips a paragraph present in the former two complaints.  <u>Compare Kuhl v. SeaWorld</u> Compl. <u>with</u> <u>Hall v. SeaWorld</u> Compl. <u>and</u> <u>Gaab v. SeaWorld</u> Compl.

*United States District Court*
For the Northern District of California

The Court also learned that the Judicial Panel for Multidistrict Litigation ("JPML") was going to consider whether consolidation in a multidistrict litigation case (an "MDL") was appropriate.  ECF No. 3.  The Court therefore denied attempts by parties to expedite ruling on this motion to allow the JPML a chance to consider consolidation.  ECF No. 27.  The JPML found that "[t]hese actions do share factual issues," that three actions subject to a pending motion to consolidate in the Southern District of California "essentially constitute but a single action," and that "litigation thus really involves just two actions pending in two California districts."  ECF No. 34 ("JPML Order").  The JPML ultimately encouraged coordination and cooperative efforts to minimize or eliminate duplicative efforts, but denied consolidation as an MDL in its Order dated August 5, 2015.  Id.

Thus, the Court now has before it, still pending, the instant motion to remand.  The motion does not call for the Court to decide whether class certification is or may be proper, only whether the Court should retain jurisdiction over this case at this juncture.

## III. LEGAL STANDARD

### A.   Remand

"A motion to remand is the proper procedure for challenging removal."  Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009).  Remand may be ordered either for lack of subject matter jurisdiction or for any defect in the removal procedure.  See 28 U.S.C. § 1447(c).  "[R]emoval statutes are strictly construed against removal."  Luther v. Countrywide Home Loans Servicing LP, 533 F.3d 1031, 1034 (9th Cir. 2008).  "The

**United States District Court**
For the Northern District of California

1    presumption against removal means that the defendant always has the

2    burden of establishing that removal is proper." <u>Moore-Thomas</u>, 553

3    F.3d at 1244.  As such, any doubts regarding the propriety of the

4    removal favor remanding the case.  <u>See</u> <u>Gaus v. Miles, Inc.</u>, 980

5    F.2d 564, 566 (9th Cir. 1992).

6         **B.    The Class Action Fairness Act**

7         CAFA provides that a district court has original jurisdiction

8    where there is diversity between any member of a plaintiff class

9    and any defendant and "in which the matter in controversy exceeds

10   the sum or value of $5,000,000, exclusive of interest and costs."

11   28 U.S.C. § 1332(d)(2).  There must be at least 100 members in the

12   plaintiff class.  <u>Id.</u> at § 1332(d)(5)(B).

13        **C.    Amount In Controversy**

14        When determining the amount in controversy, the Court first

15   considers whether it is "facially apparent" from the complaint that

16   the jurisdictional minimum has been satisfied.  <u>See</u> <u>Singer v. State</u>

17   <u>Farm Mut. Auto., Ins. Co.</u>, 116 F.3d 373, 377 (9th Cir. 1997);

18   <u>Alexander v. FedEx Ground Package Sys., Inc.</u>, No. C 05-0038 MHP,

19   2005 WL 701601, at *2 (N.D. Cal. Mar. 25, 2005).  This includes

20   considering claims for damages (general or special), attorneys'

21   fees, and punitive damages.  <u>See</u> <u>Conrad Assoc. v. Hartford Accident</u>

22   <u>& Indem. Co.</u>, 994 F.Supp. 1196, 1198 (N.D. Cal. 1998); <u>Alexander</u>,

23   2005 WL 701601, at *2.  Attorneys' fees in a class action "cannot

24   be allocated solely to those [named] plaintiffs for purposes of

25   amount in controversy."  <u>Alexander</u>, 2005 WL 701601, at *2 (quoting

26   <u>Conrad</u>, 994 F.Supp. at 942).

27        If damages are not specified by the complaint, the Court may

28   review facts submitted by parties and may require parties to submit

**United States District Court**
For the Northern District of California

"summary-judgment-type evidence" relevant to the amount in controversy.  <u>Allen v. R & H Oil & Gas Co.</u>, 63 F.3d 1326, 1336 (5th Cir. 1995); <u>Matheson v. Progressive Specialty Ins. Co.</u>, 319 F.3d 1089, 1090 (9th Cir. 2003); <u>Alexander</u>, 2005 WL 701601, at *2.  The party seeking removal "must prove with legal certainty that CAFA's jurisdictional amount is met."  <u>Vigil v. HMS Host USA, Inc.</u>, No. C 12-02982 SI, 2012 WL 3283400, at *5 (N.D. Cal. Aug. 10, 2012) (citing <u>Lowdermilk v. U.S. Bank Nat'l Ass'n</u>, 479 F.3d 994, 1000 (9th Cir. 2007)).

Where "a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."  <u>Dart Basin Operating Co. v. Owens</u>, --- U.S. ----, 135 S. Ct. 547, 554 (2014) (citing 28 U.S.C. § 1446(c)(2)(B)).  The Ninth Circuit has recently remanded where Courts fail to review adequate proof of the amount in controversy.  <u>Ibarra</u>, 775 F.3d at 1195 (9th Cir. Jan 8, 2015).

> [T]he Supreme Court has said that a defendant can establish the amount in controversy by an unchallenged, plausible assertion of the amount in controversy in its notice of removal.  <u>Dart</u>, 135 S. Ct. at 554–55.  Yet, when the defendant's assertion of the amount in controversy is challenged by plaintiffs in a motion to remand, the Supreme Court has said that both sides submit proof and the court then decides where the preponderance lies.  <u>Id.</u>  Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure.

<u>Ibarra</u>, 775 F.3d at 1197-98.

Requirements to certify a suit for injunctive or declaratory relief brought under Fed. R. Civ. P. 23(b)(2) are "unquestionably satisfied when members of a putative class seek uniform injunctive

or declaratory relief from policies or practices that are generally applicable to the class as a whole." Parsons v. Ryan, 754 F.3d 657, 687-88 (9th Cir. 2014) (citing Rodriguez v. Hayes, 591 F.3d 1105, 1125 (9th Cir. 2010)).  Such suits have far fewer procedural protections than suits for damages under Fed. R. Civ. P. 23(b)(3), as the inquiry under Fed. R. Civ. P. 23(b)(2) "does not require an examination of the viability or bases of the class members' claims for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members of the class have suffered identical injuries." Id. at 688.  The only inquiry the rule makes is whether "the party opposing the class has acted or refused to act on grounds that apply generally to the class." Fed R. Civ. P. 23(b)(2); see also Parsons, 754 F.3d at 688.

The amount in controversy in class actions requesting an injunction may be determined by the cost of compliance by Defendant.  See Int'l Padi, Inc. v. Diverlink, No. 03-56478, 2005 WL 1635347, at *1 (9th Cir. July 13, 2005) ("in determining the amount in controversy, we may also include the value of the requested injunctive relief to either party." (citing Cohn v. Petsmart, Inc., 281 F.3d 837, 840 (9th Cir. 2002); Ridder Bros., Inc. v. Blethen, 142 F.2d 395, 399 (9th Cir. 1944)); but see In re Ford Motor Co./Citibank, N.A., 264 F.3d 952, 961 (9th Cir. 2001) (if "administrative costs of complying with an injunction were permitted to count as the amount in controversy, then every case, however trivial, against a large company would cross the

///

///

**United States District Court**
For the Northern District of California

1   threshold." (citation omitted))[4]; Ecker v. Ford Motor Co., No.

2   CV0206833SVWTJLX, 2002 WL 31654558, at *2-3 (C.D. Cal. Nov. 12,

3   2002) (determining amount in controversy by value of the injunction

4   to the Plaintiffs);[5] see generally § 3703 Viewpoint From Which

5   Amount in Controversy Is Measured, 14AA Fed. Prac. & Proc. Juris. §

6   3703 (4th ed.).

7       On a motion for remand, a Court "may require payment of just

8   costs and any actual expenses, including attorney fees, incurred as

9   a result of the removal."  28 U.S.C. § 1447(c) (emphasis added).

10  The Court may award fees "when a defendant's removal, while 'fairly

11  supportable,' was wrong as a matter of law."  Balcorta v. Twentieth

12  Century-Fox Film Corp., 208 F.3d 1102, 1106 (9th Cir. 2000).

13  ///

14  ///

15

16  [4] Ford Motor Co. at times seems to rebuff the Ritter panel's
    decision, on which Int'l Padi relies.  But Ford Motor Co. states,
17  in relevant portion, that "[t]he question then becomes whether each
    plaintiff is asserting an individual right or, rather, together the
18  plaintiffs 'unite to enforce a single title or right in which they
    have a common and undivided interest.'" Ford Motor Co., 264 F.3d at
19  959 (citation omitted).  If the former, the test is the cost to the
    defendants of an injunction running in favor of one plaintiff,
20  whereas "[i]f it is the latter, we may then look to the 'either
    viewpoint' rule to determine jurisdiction."  Id. (citing Snyder v.
21  Harris, 394 U.S. 332, 335 (1969)).  Here, Plaintiffs must have a
    "common and undivided interest" or their class claims for
22  injunction necessarily fail.  See Parsons, 754 F.3d at 687-88.
    Therefore, the "either viewpoint" rule applies.
23  [5] There is some confusion within the courts on this area of law.
    For example, Simmons v. PCR Tech., 209 F. Supp. 2d 1029, 1034 (N.D.
24  Cal. 2002), states that "[t]he amount in controversy may include
    the cost of complying with such an injunction."  In so doing, it
25  cites Schwarzer, Tashima & Wagstaffe, Cal. Practice Guide: Fed.
    Civ. Pro. Before Trial ¶ 2:483 (The Rutter Group 2001) and Ford
26  Motor Co., 264 F.3d at 958.  However, Ford Motor Co. at that page
    cites the proposition as an argument by parties, not the panel's
27  ruling.  See Ford Motor Co., 264 F.3d at 960-61.  Moreover, these
    cases address jurisdiction by diversity and minimal value due to a
28  single named Plaintiff rather than pursuant to 28 U.S.C. § 1332(d).

1  **IV.   DISCUSSION**

2      This case may be resolved on two grounds.  The first ground is

3  that the value of the injunction-only case may be measured by the

4  value of the injunction to the Defendant.  Such valuation exceeds

5  $5 million, and therefore creates jurisdiction under CAFA.  The

6  Court relies primarily on this ground in making its ruling.

7      The second ground relates to the interplay between preclusion

8  and CAFA.  The briefs filed by parties focused far more on this

9  second ground, related specifically to issue preclusion.  Claim

10  preclusion (res judicata) would bar a claim from being pursued in

11  its entirety (_e.g._, future claims by absent litigants), whereas

12  issue preclusion (collateral estoppel) would prevent a party (_e.g._,

13  absent class members or SeaWorld) from re-litigating a specific

14  issue within a case without actually preventing those future claims

15  from being filed -- even though the results may be foregone

16  conclusions.  While issue preclusion on its own would not normally

17  form a sufficient basis to deny remand, on these unusual facts it

18  exposes a backdoor that if permitted would frustrate the intent of

19  Congress in CAFA.

20      The Court addresses first the damages ground, then the

21  concerns raised by parties about preclusion, and then its concern

22  about the intent of Congress via CAFA.  Finally, the Court

23  considers attorney's fees.

24      **A.   Damages Pleaded**

25      Even were the Court to make all reasonable factual assumptions

26  in favor of Plaintiffs, Plaintiffs' motion fails because the value

27  of this case exceeds the $5 million CAFA threshold.

28  ///

**United States District Court**
For the Northern District of California

No party challenges that there is diversity or that the class would be fewer than 100 people. Notice ¶ 6. The argument between parties revolves around whether Plaintiffs have pleaded an amount in controversy less than $5 million. Plaintiffs assert they have. Mot. at 3-7. If true, the Defendant, as the party seeking removal, "must prove with legal certainty that CAFA's jurisdictional amount is met." Vigil, 2012 WL 3283400, at *5 (citing Lowdermilk, 479 F.3d at 1000). Defendant has submitted a notice and evidence that it has met the jurisdictional amount. See generally Notice. Plaintiffs, in their motion to remand, challenge the relevance and legal sufficiency of that evidence, though do not appear to challenge any fact related to volume or value of ticket sales.

Here, it seems that "[SeaWorld's] assertion of the amount in controversy is challenged by plaintiffs in a motion to remand." See Ibarra, 775 F.3d at 1197-98. If so, this means that "both sides [must] submit proof and the [C]ourt decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Dart, 135 S. Ct. 547, 554. An argument could be made that evidence is not required here where the validity -- vice relevance and sufficiency -- of Defendant's evidence is unchallenged. But the Court need not make any such distinction, because even if Dart and Ibarra require factual evidence, the Court finds that here it has received adequate evidence from both sides to resolve the instant motion.

Plaintiffs make legal arguments pointing out why the text of their complaint does not implicate or otherwise request monetary damages for Plaintiffs. As the Court "may also include the value of the requested injunctive relief to either party[,]" Int'l Padi,

**United States District Court**
For the Northern District of California

1    2005 WL 1635347, at *1, the Court reasonably infers -- and pleaded

2    facts suggest -- that Plaintiffs accrue no cognizable monetary

3    benefit from this injunction.  If the Court were to provide an

4    opportunity to Plaintiffs to submit evidence, the Court is

5    confident Plaintiffs would claim the injunction has a low monetary

6    value (at this stage in litigation) to ensure their claims fall

7    below CAFA's threshold.  Moreover, Plaintiffs cite Dart and Ibarra,

8    Reply at 4, thereby assuring the Court that Plaintiffs knew they

9    could submit evidence should they have desired.  Thus the Court is

10    satisfied Plaintiffs have had an opportunity to present evidence.

11      Defendant SeaWorld has submitted evidence with its notice of

12    removal, and later supplemented that evidence to include an

13    erroneously missing exhibit, the First Amended Complaint to this

14    action, and attachments to their opposition motion.  See ECF Nos.

15    1, 6, 9, 24.  SeaWorld's evidence includes three of the complaints

16    in other pending actions.  Hall v. SeaWorld Compl.; Gaab v.

17    SeaWorld Compl.; Kuhl v. SeaWorld Compl.  It also includes an

18    affidavit by William Powers, Seaworld's Corporate Director of

19    Budgeting and Forecasting.  ECF No. 1 at 9 (Powers Decl.)  Mr.

20    Powers provides uncontroverted evidence that "in each of the past

21    four years, SeaWorld sold in excess of 500,000 tickets" on-site,

22    just at the San Diego park, at an average cost of at least $50.

23    Id.  SeaWorld sold an additional 500,000 per year in each of the

24    last four years online to California customers (determined by zip

25    code) for the San Diego park, at an average cost of at least $30.

26    Id.  The Court is thus satisfied it has what limited evidence it

27    needs from both parties, especially in this case where the dispute

28    is primarily legal rather than factual.

**United States District Court**
For the Northern District of California

Even absent any showing of monetary value of an injunction to the Plaintiffs, the facts readily suggest by a preponderance of the evidence that Defendant would place an enormous (negative) value on the injunctive relief if awarded.  See <u>Int'l Padi</u>, 2005 WL 1635347, at *1.  Plaintiffs' implied argument is that the Court should not consider the value of allegedly improper ticket sales already sold within the class period.  The Court does not reach this argument, but assuming <u>arguendo</u> that Plaintiffs are correct, the Court is still permitted to make "reasonable assumptions" as to SeaWorld's theory of damage exposure.  <u>Ibarra</u>, 775 F.3d at 1198.  A reasonable assumption here includes that past performance (per the figures below) is indicative (albeit not determinative) of SeaWorld's expected future ticket sales -- and so can be used to calculate future losses.  SeaWorld makes uncontroverted claims that the value of past ticket sales is "in excess of $160 million" based on sales of at least 4 million tickets during the class period.  Opp'n at 4; Mot. at 1, 4; Powers Decl.  Using simple math, to arrive at a loss of $5 million in future ticket sales, using the lower rate of $30 per ticket, only 166,667 fewer tickets need be sold.  See Powers Decl.  This comprises at most a loss of 16.7% of ticket sales.[6]

---

[6] The 16.7% rough figure assumes future sales will match past sales but-for an injunction, that all losses will be realized in a single year, and that all such losses will be suffered from online revenue rather than on-site sales revenue (each of which yield at least 500,000 ticket sales, adding up to a least 1,000,000 tickets per year).  Expanding the period or allowing for the loss of on-site sales (where tickets cost more) would decrease the percentage of future ticket sales reduction that would be required for Defendant to meet the jurisdictional threshold.  For example, ticket sales over two years only require an 8.35% overall reduction in (online) future sales.  Assumptions in reaching this 16.7% figure therefore favor Plaintiffs in every way possible, which is proper where the Defendant has the burden of proof and where doubts regarding the propriety of the removal favor remand.  See <u>Gaus</u>, 980 F.2d at 566.

**United States District Court**
For the Northern District of California

The Court also considers the damage done by the accusations currently being lobbied against SeaWorld.  SeaWorld's reputation, its ability to secure third-party vendors to market ticket sales, and its ability to retain sponsors have all been hit.  See, e.g., Gaab v. SeaWorld Compl. ¶¶ 176-202.  This is in spite of continued efforts by SeaWorld to issue positive press.  Id. at ¶¶ 203-220. If the Court were to issue the injunction Plaintiffs request, forcing SeaWorld to stop positive advertising and affirmatively admit prior wrongdoing, the Court is persuaded that the cost would be far greater than the simple cost of changing words on a webpage. SeaWorld's reputation would be further soiled, it would be still harder to secure third-party vendors for ticket sales, and at least two sponsors (namely American Express and British Airways, id. at ¶ 201, as cited in comparable cases) would be even more pressured to cut ties with SeaWorld.  All these factors impact ticket sales.

The Court thus arrives at a reasonable conclusion that the value of compliance to SeaWorld would more likely than not reduce future sales by at least 16.7% in a single year or else result in at least 166,667 future fewer tickets sold over a reasonable period of time.  This calculation does not include the value of developing a new, viable marketing campaign or correcting allegedly harmful practices toward certain animals, which could be costly and may be necessitated by the injunction.[7]

---

[7] The Court is unable to consider such matters without evidence. The Court also notes Plaintiffs cite Porfiria Yocupicio v. Pae Group, LLC et al., No. 15-55878 (9th Cir. July 30, 2015), ECF No. 35-1 at 11.  Per Porfiria, the Court cannot aggregate individual and class claims together to reach the minimal amount in controversy required.  See id.  Here, the Court does not need (or seek) to do so, and using such an approach (which is not permitted) would still not yield damages in excess of $5 million.

United States District Court
For the Northern District of California

1    Therefore, on the facts as pleaded, the Court finds that the

2    amount in controversy is sufficiently high based on the value of

3    the injunction to SeaWorld to merit federal jurisdiction.

4    Accordingly, Plaintiffs do allege a case worth at least $5 million,

5    giving the Court original jurisdiction under CAFA.   Therefore,

6    Plaintiffs' motion to remand is DENIED.

7         **B.   <u>Preclusion Law</u>**

8         Parties argue at length whether preclusion would apply to

9    prevent the filing of individual damages claims were this

10   injunctive-only suit permitted to continue in state court.   <u>See</u>

11   Mot. at 7, Opp'n at 8-10, Reply at 3-10.   Defendant's concern

12   includes that this injunctive-only case will claim-preclude future

13   individuals who are part of the class and seek damages.   This

14   concern would normally be misplaced, as the law in the Ninth

15   Circuit is generally contrary.   Moreover, this motion concerns

16   jurisdiction, not class certification.   The Court nonetheless fully

17   explains its rationale as necessary background to understand the

18   Court's analysis in the section to follow this one.

19        In the Ninth Circuit, "the general rule is that a class action

20   suit [brought under Fed R. Civ. P. 23(b)(2)] seeking only

21   declaratory and injunctive relief does not bar subsequent

22   individual damages claims by class members, even if based on the

23   same events."   <u>In re Yahoo Mail Litig.</u>, No. 13-CV-04980-LHK, 2015

24   WL 3523908, at *15 (N.D. Cal. May 26, 2015) (quoting <u>Hiser v.</u>

25   <u>Franklin</u>, 94 F.3d 1287, 1291 (9th Cir. 1996); <u>see also</u> <u>In re</u>

26   <u>Jackson Lockdown/MCO Cases</u>, 568 F.Supp. 869, 892 (E.D. Mich. 1983)

27   ("every federal court of appeals that has considered the question

28   has held that a class action seeking only declaratory or injunctive

**United States District Court**
For the Northern District of California

relief does not bar subsequent individual suits for damages."). Plaintiffs cite an MDL where defendants allegedly price-fixed costs of flat-screen components, and two states challenged certification of injunction-only classes. In re TFT-LCD (Flat Panel) Antitrust Litig., No. 7-1827 SI, 2012 WL 273883, at *1-2 (N.D. Cal. Jan. 30, 2012). There, Judge Illston reasoned (and found on the facts of that case) that claims for monetary damages typically relied on different facts than claims for injunctive relief. Id. (citing Cooper v. Fed. Reserve Bank, 467 U.S. 867, 876 (1984)). Judge Illston therefore read the Supreme Court in Wal-Mart Stores, Inc. v. Dukes, ---U.S. ----, 131 S. Ct. 2541 (2011) to suggest only that "a Rule 23(b)(2) judgment, with its one-size-fits-all approach and its limited procedural protections, will not preclude later claims for individualized relief." LCD, 2012 WL 273883, at *3; see also In re Yahoo Mail, 2015 WL 3523908, at *15 (quoting LCD).

This general rule has some limited exceptions, but they are often seen when considering a motion for class certification. In Cholakyan (cited by Plaintiffs), plaintiffs alleged violations of consumer protection statutes due to purchases of defendant's vehicles, and consequently sought to certify a class under Rule 23(b)(2). See Cholakyan v. Mercedes-Benz, USA, LLC, 281 F.R.D. 534, 558-60 (C.D. Cal. 2012). But when the court there realized the proposed class included former owners and lessees of vehicles who could not benefit from the injunctive relief sought, the court denied certification. Id. at 559 ("Rule 23(b)(2) demands that plaintiff seek an indivisible injunction benefiting all its members at once."). Cholakyan read Dukes as unsettled law where a request for injunctive relief "placed class members' ability to pursue

United States District Court
For the Northern District of California

1  individualized claims for monetary relief in question." Id. at

2  565.[8]  That court therefore felt obligated to raise its concern in

3  its order, though stopped short of finding that the named plaintiff

4  (and retained counsel) were inadequate as other grounds existed to

5  support denial of class certification -- not denial of remand. Id.

6      In another case relied upon by Cholakyan, Ms. Fosmire (the

7  lead plaintiff) sought damages on one ground but not also on a

8  second, available ground. Fosmire v. Progressive Max Ins. Co., 277

9  F.R.D. 625, 634 (W.D. Wash. 2011). The court found that claims

10 splitting by Ms. Fosmire, excluding a certain type of damages

11 (stigma damages), "create[d] a conflict between her interests and

12 the interests of the putative class, rendering her an inadequate

13 class representative." Id.  Therefore, class certification was

14 denied. Id. at 635.  Again, this was not denial of remand.

15     Here, Plaintiff concedes that "[t]o the extent the present

16 case raises issues of fact or law that also are raised by future

17 suits for damages, collateral estoppel may apply to those specific

18 issues." Reply at 8 n.3 (citing Cholakyan, 281 F.R.D. at 565).

19 The Court goes further -- here, collateral estoppel will almost

20 certainly apply to those issues, barring the issue from being

21 re-litigated.[9]  Moreover, as explained by the Ninth Circuit, "[i]t

22 [8] Despite this language, Yahoo Mail asserted that Cholakyan
23 "concluded that none of the remedies proposed by the plaintiff
   would result in classwide relief . . . [but] did not discuss
   whether certification of an injunctive relief class would preclude
24 individual damages claims." Yahoo Mail, 2015 WL 3523908, at *15
   n.7.  The Court decides this motion without resolving said tension.
25 [9] Both parties cite Frank v. United Airlines, Inc., 216 F.3d 845,
   853 (9th Cir. 2000).  See Mot. at n.2, Opp'n at 9-10.  Upon review,
26 Frank instructs in line with the Court's findings, to include that
   there are additional procedural requirements for Fed. R. Civ. P.
27 23(b)(3) not applicable to Rule 23(b)(2).  Frank, 216 F.3d at 851.
   It does not, however, ultimately answer the immediate concern here
28

**United States District Court**
For the Northern District of California

1  is now settled that a federal court must give to a state-court

2  judgment the same preclusive effect as would be given that judgment

3  under the law of the state in which the judgment was rendered."

4  Ross v. Alaska, 189 F.3d 1107, 1110-11 (9th Cir. 1999).  Therefore,

5  issue preclusion will ensue from this case whether heard in federal

6  or state court should certain substantive portions be decided prior

7  to any pending case(s) that include damages.

8      Normally, the Court's conclusion that there would almost

9  certainly be issue preclusion would not necessitate claim

10 preclusion, as was the concern in Cholakyan.  The Court agrees that

11 Plaintiffs are normally permitted to seek a solely injunctive

12 class.  Mot. at 7-8.  And as Plaintiffs point out, the law

13 generally supports the ability of absent class members to still

14 seek to bring damages.  Reply at 7-9.  But the key difference here

15 -- and where Plaintiffs' argument fails -- is that the claims for

16 monetary damages which typically rely on different facts than

17 claims for injunctive relief here rely on almost exactly the same

18 facts.  Thus the edict of Cooper as reflected in LCD are, in this

19 specific case, inapposite.  See Cooper, 467 U.S. at 876; LCD, 2012

20 WL 273883, at *2 (citing Cooper).  Plaintiffs pleaded a summary of

21 all or almost all the same facts as their cases for damages (except

22 because preclusion did not apply on the facts of that case.  Id. at

23 853.  Even so, Frank makes clear that "once an issue is actually
   and necessarily determined by a court of competent jurisdiction,

24 that determination is conclusive in subsequent suits based on a
   different cause of action involving a party to the prior

25 litigation."  Id. (citing Montana v. United States, 440 U.S. 147,
   153 (1979).  Whether preclusion ultimately will apply here or in

26 any case depends on "the requirements of identity of parties,
   identity of the factual claim or issue, adequate notice, and

27 adequate representation[,] [which] apply to both claim and issue
   preclusion."  Id. (citing Richards v. Jefferson County, Ala., 517

28 U.S. 793, 800-01 (1996)).

**United States District Court**
For the Northern District of California

1  details related to the specific named plaintiffs in this suit.  <u>See</u>

2  FAC ¶¶ 19-20).  Insofar as facts from former suits are missing, the

3  Court can reasonably infer or else learn those facts through review

4  of the former complaints.[10]  Plaintiffs included such facts because

5  they sought damages for the named plaintiffs in their individual

6  capacities and because all four suits aim at injunctive relief.

7       The Court need not detail whether such pleadings are adequate

8  for a class under Fed. R. Civ. P. 23(b)(2) or (b)(3).  However,

9  where a case requesting only injunctive relief relies on the same

10  facts as another, already-pending case that requests damages, and

11  the injunctive case is comprised of a subset of members who are

12  party to the earlier damages case(s), a court's concern may be

13  reasonably heightened that the effects of issue preclusion from

14  hearing the injunctive case first may effectuate claim preclusion.

15  The Court is therefore concerned that, in the unusual procedural

16  posture of this case and on these specific facts, named Plaintiffs

17  (and their counsel) may not be adequate representatives.

18       That said, Plaintiffs are correct that this is a motion about

19  jurisdiction, not class certification.  Reply at 2.  Cases cited

20  that allow for exceptions to the general rule rely on analysis of

---

22  [10] The Court has no trouble spotting that, while shorter, the FAC
23  in the instant case is a summary of the same factual allegations
   presented in <u>Hall</u>, <u>Gaab</u>, and <u>Kuhl</u>.  <u>Compare</u> FAC ¶¶ 1-12, 24-37 <u>with</u>
24  <u>Hall v. SeaWorld</u> Compl. <u>and</u> <u>Gaab v. SeaWorld</u> Compl. <u>and</u> <u>Kuhl v.</u>
   <u>SeaWorld</u> Compl.  The arguments in the FAC here (in summary form) or
25  in the other three case complaints (in full form) tend to prove
   SeaWorld's allegedly deceptive practices or its harm of orcas.  The
26  facts provide no greater basis for monetary damages vice just
   injunctive relief, except as applied to ticket sales (which in the
   instant case is limited to named plaintiffs rather than the class).
27  Thus the Court concludes that the facts of the other complaints are
   presently part of this injunction-only case or will necessarily be
28  offered as evidence in this case.

**United States District Court**
For the Northern District of California

1  class certification factors, which is a subsequent determination

2  separate and apart from a court's jurisdiction.  <u>See</u> <u>United Steel</u>

3  <u>v. Shell Oil Co.</u>, 602 F.3d 1087, 1089 (9th Cir. 2010).  Therefore,

4  the Court cannot deny remand solely on grounds of preclusion.

5      **C.**  **<u>Congressional Intent</u>**

6      The Court does, however, find that the above analysis yields a

7  conflict with CAFA's intent, making remand improper.  "Canons of

8  statutory construction dictate that if the language of a statute is

9  clear, we look no further than that language in determining the

10  statute's meaning. . . . A court looks to legislative history only

11  if the statute is unclear."  <u>Lenz v. Universal Music Corp.</u>, No. 13-

12  16106, 2015 WL 5315388, at *4 (9th Cir. Sept. 14, 2015) (omission

13  in original)(citation omitted)).  In addition, "[w]here Congress

14  has made its intent clear, we must give effect to that intent."

15  <u>Miller v. French</u>, 530 U.S. 327, 336 (2000) (citation omitted).

16      Here, the Court's first ground (that based on value of the

17  injunction to the Defendant the amount in controversy exceeds $5

18  million) would obviate any need to consider intent.  However, if

19  the Court did not rely on that ground, the Court would still be

20  faced with Plaintiffs' failure to meaningfully address the impact

21  of issue preclusion (vice claim preclusion) on the sister suits

22  that <u>Plaintiffs</u> have brought.  <u>See</u> Reply at 7-10; <u>but c.f.</u> Notice ¶

23  6(d)-(e); <u>Hall v. SeaWorld</u> Compl.; <u>Gaab v. SeaWorld</u> Compl.; <u>Kuhl v.</u>

24  <u>SeaWorld</u> Compl.; 24 at 69-74.  When considering the other pending

25  cases,[11] granting remand here effectively strips the federal

---

26  [11] "For jurisdictional purposes, [the Court's] inquiry is limited

27  to examining the case as of the time it was filed in state court."
   <u>Standard Fire Ins. Co. v. Knowles</u>, 133 S. Ct. 1345, 1349 (2013).

28  However, when this case was filed, two other damages cases were

United States District Court
For the Northern District of California

jurisdiction required in already pending cases due to the likely preclusive impact of this injunction-only case (if decided first). Thus, on these unusual, specific facts, granting remand in line with the statutory text meaningfully prevents litigation of the other cases in federal court -- cases where the same statutory text provides original jurisdiction to federal courts.[12]   Therefore, it is appropriate here for the Court to consider Congress's intent.

The intent of Congress in CAFA provides adequate grounds to deny remand.   The relevant text of CAFA reads:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which--
>
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant[.]

28 U.S.C. § 1332(d)(2).   On its face, this statutory text evidences Congress's intent to offer a federal forum to class actions between parties siting in diversity where the value in question is above a certain threshold.   Moreover, "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court.   28 U.S.C. § 1332(d)." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1197 (9th Cir. Jan 8, 2015).   And lest that be unclear, the Ninth Circuit in the very next breath stated that "Congress intended CAFA to be interpreted expansively.   S.Rep. No. 109-14, at 42 (Feb. 28, 2005)." Ibarra,

///

---

already pending, and there is now a third.   See Hall v. SeaWorld Compl.; Gaab v. SeaWorld Compl.; Kuhl v. SeaWorld Compl.; ECF No. 24 at 69-74.

[12]   The Court is cognizant that issue preclusion does not normally remove jurisdiction to hear a case.   Here, however, the preclusive effects are so pervasive that they are likely to do so de facto.

775 F.3d at 1197.  There can thus be no question that Congress intends for high-value class suits to be heard in federal court.

Here, Defendants have sought a federal forum four times -- thrice in the Southern District of California, and once here. Should the case here be returned to state court and the state court case hears this case first, all four presently-pending cases would (or at least could) effectively be decided by the state court instead of the federal court, per the Court's earlier analysis of the almost-certainty of preclusive effects.  Ross, 189 F.3d at 1110-11; see also Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984).  This would essentially deprive Defendants of a federal forum, which thereby runs contrary to Congress's intent.

As courts have made clear (again, per the discussion above), there is no problem with pursuing injunctive relief rather than damages in a class action.  But deprivation of a federal forum in violation of Congress's intent in CAFA was not the issue faced by the cases upon which parties relied.[13]  Nothing suggests those same courts would permit break-away, injunctive-only cases where such cases are filed primarily as a tactic to litigate already-pending federal court cases in a state court -- not where Congress intended such cases be litigated in federal court.  If this strategy were

---

[13] Plaintiffs, for example, rely on LCD.  Reply at 8-9.  Whereas Judge Illson worried that granting credence to arguments of preclusion of future claims would "eviscerate the (b)(2) class, preventing its use whenever there was a chance that unknown class members might have damages claims", LCD, 2012 WL 273883, at *3, here there are known class members who affirmatively have damages claims that will almost certainly be precluded.  Moreover, there cases were within the control of an MDL and Judge Illston had no apparent concern that a state court might make a decision that would preclude the master case over which she presided, let alone prematurely turn control of the MDL over to a state court.

United States District Court
For the Northern District of California

1  allowed, parties could easily circumvent CAFA by simultaneously

2  filing a damages case and a separate injunctive-only case in

3  different federal districts, one in a local federal court and one

4  in a local state court.  Such a strategy would allow both cases to

5  be effectively litigated in the first instance in a state court.

6  In turn, a federal court would be forced to accept the findings

7  from a  state court, Ross, 189 F.3d at 1110-11; Migra, 465 U.S. at

8  81, leaving the federal court to focus only on such matters as

9  relate entirely to predominance and damages -- matters that would

10  almost certainly settle in light of the heightened impact of issue

11  preclusion.[14]  Moreover, this strategy would lead to present class

12  members who are actively choosing (or will soon choose) whether to

13  opt-out being precluded by a case they are not present to litigate

14  but which may have already been decided.[15]  These absurd results

15  from federal courts abdicating their role in class actions are

16  contrary to the intent of Congress per CAFA, and illustrate why, on

17  the unusual facts of this case, remand is hereby DENIED.

18       This analysis is not to be read as a general prohibition on

19  injunctive-only cases, on damages cases, or even seeking both forms

20  of relief in a single case.  Nor is it meant to forbid break-away

21  cases seeking injunctive-only relief within the same federal forum.

22  Rather, it is a cautionary message -- based on the specific factual

23  [14] The Court's concern here may be consistent with the loss of
24  federal forum being cognizable as harm in other areas of law.  See,
    e.g., Westlands Water Dist. v. United States, 100 F.3d 94, 97-98
25  (9th Cir. 1996) (loss of a federal forum may constitute prejudice
    when dismissing a case pursuant to Fed. R. Civ. P. 41).
26  [15] Taking this reductio argument a step still further, preclusion
    here could also render notice and opportunity to opt-out in pending
27  cases meaningless; class members would uniformly act based on the
    earlier, preclusive case or else later argue notice was inadequate
28  for failure to advise members of the then-pending, preclusive case.

circumstances of this case -- that when presently <u>already</u> seeking

damages in one or more pending class suits in federal court, one

cannot use a technically separate yet substantially similar, break-

away, injunctive-only case as a backdoor to avoid the federal

forum.  Doing so violates the intent of Congress in CAFA, and so

here merits (and provides a secondary ground for) denial of remand.

### D.   **Attorneys' Fees**

The Court finds that SeaWorld's removal was proper and that

Plaintiffs' motion for remand was "fairly supportable" but wrong as

a matter of law.  <u>See</u> <u>Balcorta</u>, 208 F.3d at 1106.  Even so, the

Court declines to award fees.  <u>See</u> 28 U.S.C. § 1447(c) (allowing

courts discretion).  The Court recognizes that Plaintiffs clearly

sought to plead in a way they thought would ensure their case would

continue in state court and did not expressly allege $5 million in

damages.  While their strategy here fails for the two grounds

provided above, the Court finds that the remand motion itself was

nonetheless filed in a good faith belief remand would be granted.

Accordingly, each side will bear its own fees on this motion.

### V.   **CONCLUSION**

For the reasons set forth above, Plaintiffs' motion to remand

is DENIED in its entirety.


IT IS SO ORDERED.


Dated: September 22, 2015              _____

                                       UNITED STATES DISTRICT JUDGE