UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC ANDERSON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SEAWORLD PARKS AND ENTERTAINMENT, INC., <br><br> Defendant. | Case No. 15-cv-02172-JSW <br><br> **ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION TO DISMISS, WITH LEAVE TO AMEND AND SETTING CASE MANAGEMENT CONFERENCE** <br><br> Re: Docket Nos. 43, 69 |

Now before the Court for consideration is the motion to dismiss Plaintiffs' first amended complaint, filed by SeaWorld Parks and Entertainment, Inc. ("SeaWorld"), and the motion for leave to file a second amended class action complaint, filed by Plaintiffs Marc Anderson ("Mr. Anderson") and Ellexa Conway ("Ms. Conway") ("Plaintiffs," unless otherwise noted). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it HEREBY GRANTS, IN PART, AND DENIES IN PART SeaWorld's motion to dismiss the first amended complaint, and it grants Plaintiffs leave to amend on the terms set forth in this Order.

**BACKGROUND**

**A.  Procedural History.**

This case is one of four putative class actions that were filed against SeaWorld regarding alleged misrepresentations about its treatment of orcas, *i.e.* killer whales, at its various theme parks.[1] Plaintiffs originally filed their complaint in the Superior Court of the State of California

---

[1] The other three cases were consolidated and were pending in the United States District Court for the Southern District of California as *Hall v. SeaWorld Entertainment, Inc.*, No. 3:15-CV-660-CAB-RBB (the "Hall litigation"). On December 23, 2015, the court in *Hall* granted a motion to dismiss the first amended complaint in that case. *Hall v. SeaWorld Entertainment, Inc.*, No. 3:15-CV-660-CAB-RBB, 2015 WL 9659911 (C.D. Cal. Dec. 23, 2015). On May 13, 2016, the court in *Hall* granted SeaWorld's motion to dismiss the second amended complaint and

1  for the City and County of San Francisco.  (Dkt. No. 1-1, Complaint; Dkt. No. 9-1; First Amended

2  Complaint ("FAC").)  SeaWorld then removed the action to this Court and asserted the Court had

3  jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. section 1332(d).  (Dkt. No.

4  1, Notice of Removal, ¶ 3.)

5         On September 18, 2015, SeaWorld filed its motion to dismiss the FAC.  (Dkt. No. 43.)

6         On September 24, 2015, Judge Conti denied Plaintiffs' motion to remand.  (Dkt. No. 45.)

7  Plaintiffs filed a motion for leave to appeal that Order to the United States Court of Appeals for

8  the Ninth Circuit ("Ninth Circuit").  (*See* Dkt. No. 51.)

9         On October 14, 2015, Judge Conti permitted Plaintiffs to file a motion for reconsideration

10 of his order denying remand.  (Docket No. 53)  On January 12, 2016, the undersigned granted, in

11 part, and denied, in part Plaintiffs' motion for reconsideration of the order denying remand and

12 deferred ruling on SeaWorld's motion to dismiss pending a ruling from the Ninth Circuit on

13 Plaintiffs' motion for leave to appeal.  (Dkt. No. 65.)[2]

14        On April 7, 2016, the Ninth Circuit denied Plaintiffs' petition for permission to appeal the

15 Order denying remand.  (Dkt. 71.)  Plaintiffs filed their motion for leave to file a second amended

16 complaint on that same date.  (Dkt. No. 69.)

17        Because SeaWorld's motion to dismiss was filed and ripe for decision before Plaintiffs

18 filed their motion for leave to amend, and because the first amended complaint is the operative

19 complaint, the Court shall consider that motion in the first instance.  The Court has considered the

20 allegations in Plaintiffs' proposed second amended complaint to determine whether it would be

21 futile to grant Plaintiffs leave to amend.  Accordingly, the Court DENIES, AS MOOT, the motion

22 for leave to amend.

23 **B.    Factual Background.**

24        Plaintiffs allege that "[a]s part of a marketing campaign to induce ticket purchases,

25 SeaWorld has made, continues to make, and profits off of false and misleading statements

---

27 dismissed the case with prejudice.  (*See* Dkt. No. 78, Defendant's Statement of Recent Decision.)

28 [2]    This case was reassigned to the undersigned judge on Judge Conti's retirement.  (Dkt. Nos. 55-56.)

concerning the welfare of [its] captive orcas." (FAC ¶ 1.) In their proposed Second Amended Complaint, Plaintiffs allege that SeaWorld also engaged in this marketing campaign to induce merchandise purchases. (Dkt. No. 77, Redline Proposed Second Amended Complaint ("Redline SAC"), ¶ 1.)

Plaintiffs allege that SeaWorld represents that: (1) orca's lifespans in captivity are equivalent to life spans in the wild; (2) collapsed dorsal fins are normal; (3) it does not separate orca calves from mothers; and (4) captivity does not harm orcas. (FAC ¶¶ 22-37; Redline SAC ¶¶ 22-37.) Plaintiffs allege that each of these statements are false or misleading and that they were "exposed" to these representations in a variety of ways. (FAC ¶¶ 19-20, 24, 26-28, 30-37; Redline SAC ¶¶ 17-20, 24, 26-28, 30-37.)

In sum, Plaintiffs allege that

> SeaWorld's advertising misleadingly creates the perception that orcas as a species are generally benefited by SeaWorld's rehabilitative programs, scientific studies, and educational activities, and that the individual orcas it holds in captivity are as healthy and as stimulated as their wild counterparts. …

(FAC ¶ 6; Redline SAC ¶ 6.)

According to Plaintiffs, and two proposed plaintiffs, Kelly Nelson ("Ms. Nelson") and Juliette Morizur ("Ms. Morizur"), they relied on these various representations and purchased tickets or merchandise, or both, from SeaWorld, which they would not have purchased had they known the truth. (FAC ¶¶ 19-20; Redline SAC ¶¶ 17-20.) In the proposed SAC, Plaintiffs also allege that

> [a]lthough SeaWorld continues to make these representations, on or around March 17, 2016, SeaWorld announced that it will end all orca breeding programs, and that the orcas SeaWorld currently has in captivity will be the last generation of orcas in SeaWorld's care. SeaWorld also announced around the same time that it will phase out its theatrical orca whale shows across all of its parks. Plaintiffs' inability to rely on the accuracy of these statements presents a continuing injury to them.

(Redline SAC ¶ 37.)

Based on these, and other allegations that Court shall address as necessary, Plaintiffs assert claims for: (1) violations of California's false advertising law, Business and Professions Code

3

1   sections 17500, *et seq.* (the "FAL claim"); (2) violations of California's unfair competition law,
2   Business and Professions Code sections 17200, *et seq.* (the "UCL claim"); and (3) violation of
3   California's Consumer Legal Remedies Act, California Civil Code section 1750, *et seq.* (the
4   "CLRA claim").

## ANALYSIS

SeaWorld argues the Court should dismiss the FAC, because: (1) Plaintiffs lack standing to seek injunctive relief under Article III of the United States Constitution; (2) Plaintiffs fail to comply with the requirements of Rule 9(b); (3) Plaintiffs fail to allege economic injury or reliance and, thus, fail to show they have statutory standing to seek relief; (4) tickets to SeaWorld are neither a good nor a service under the CLRA; and (5) Plaintiffs have not complied with the pre-suit notice requirements under the CLRA.[3]

**A.    Applicable Legal Standards.**

   **1.    Federal Rule of Civil Procedure 12(b)(1).**

SeaWorld moves to dismiss for lack of Article III standing, pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A motion to dismiss under Rule 12(b)(1) may be "facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where, as here, a defendant makes a facial attack on jurisdiction, a court takes the factual allegations of the complaint as true. *Federation of African Am. Contractors v. City of Oakland*, 96 F.3d 1204,

---

[3] In its opposition to Plaintiffs' motion for leave to file the second amended complaint, SeaWorld notes that the *Hall* court dismissed those plaintiffs' claims to the extent they were based on omissions, and it makes the conclusory argument that "the FAC here is based on similar alleged omissions without any allegations sufficient to impose a duty on SeaWorld to disclose such facts." (Dkt. No. 73, Opp. Br. at 4:11-12.) SeaWorld did not expand upon this argument in its analysis of why amendment would be futile, and it did not raise this as a basis to dismiss the FAC. Accordingly, the Court does not address it and expresses no opinion on the merits of the argument.

SeaWorld also moves to dismiss on the basis that Plaintiffs' claims are barred by the First Amendment. The Court cannot say, based on the face of the FAC or the proposed SAC, that the speech at issue would be protected. *See, e.g., Forsyth v. Eli Lilly & Co.*, 904 F. Supp. 1153, 1156 (D. Hawaii 1995) (motion to dismiss based on affirmative defense may be appropriate where affirmative defense apparent from face of complaint). Accordingly, the Court DENIES, IN PART, SeaWorld's motion on this basis. SeaWorld may renew this argument at a later date.

1207 (9th Cir. 1996); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion dismiss, [courts] presume that general allegations embrace those specific facts that are necessary to support the claim.") (internal citation and quotations omitted). The plaintiff is then entitled to have those facts construed in the light most favorable to him or her. *Federation of African Am. Contractors*, 96 F.3d at 1207.

**2.  Federal Rule of Civil Procedure 12(b)(6).**

SeaWorld also moves to dismiss for failure to state a claim and for lack of statutory standing. A "lack of statutory standing requires dismissal for failure to state a claim," and is evaluated under Rule 12(b)(6). *Maya*, 658 F.3d at 1067 (emphasis omitted). Under Rule 12(b)(6), the Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleadings standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a claim for relief will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff must not allege conduct that is conceivable but must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

**3.  Federal Rule of Civil Procedure Rule 9(b).**

Claims sounding in fraud or mistake are subject heightened pleading requirements, which require that a plaintiff claiming fraud "must state with particularity the circumstances regarding fraud or mistake." Fed. R. Civ. P. 9(b). In addition, a claim "grounded in fraud" may be subject to Rule 9(b)'s heightened pleading requirements. A claim is "grounded in fraud" if the plaintiff alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of his or her claim. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003).

5

1  Rule 9(b)'s particularity requirements must be read in harmony with Federal Rule of Civil
2  Procedure 8, which requires a "short and plain" statement of the claim.  The particularity
3  requirement is satisfied if the complaint "identifies the circumstances constituting fraud so that a
4  defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Exp.,*
5  *Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *see also Vess*, 317 F.3d at 1106.  Accordingly,
6  "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the
7  misconduct charged."  *Vess*, 317 F.3d at 1107 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th
8  Cir. 1997)).

### 4. Amendment of Claims.

If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile.  *See, e.g. Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

### B. The Court Dismisses The CLRA Claim, with Leave to Amend.

SeaWorld raises two procedural arguments in support of its motion to dismiss the CLRA claim that the Court finds are well taken.  First, the CLRA provides that "[i]n any action subject to this section, concurrently with the filing of the complaint, the plaintiff shall file an affidavit stating facts showing that the action has been commenced in a county described in this section as a proper place for the trial of the action.  If a plaintiff fails to file the affidavit required by this section, the court shall, upon its own motion or upon motion of any party, dismiss the action without prejudice."  Cal. Civ. Code § 1780(d).  Plaintiffs do not dispute that they failed to file this affidavit.  Because this defect applies to the FAC and to the proposed SAC, and because this defect could be cured by amendment, the Court GRANTS, IN PART, SeaWorld's motion to dismiss, with leave to amend.  Plaintiffs must comply with this requirement if, and when, they file the amended complaint permitted by this Order.

Second, the CLRA requires that "[t]hirty days or more prior to the commencement of an action for *damages*," a consumer shall notify the defendant of the particular violations of Section 1770 and demand that the defendant "correct, repair, replace, or otherwise rectify the goods or

services alleged to be in violation of Section 1770." Cal. Civ. Code § 1782(a)(1)-(2) (emphasis added). Plaintiffs contend they were not required to comply with this requirement, because they seek restitution not damages. Courts within the Ninth Circuit are split on this issue. *Compare Reed v. Dynamic Pet Prod.*, No. 15-cv-0987-WQH-DHB, 2015 WL 4742202, at *7 (S.D. Cal. July 30, 2015) (concluding notice requirement applies to restitution claims), and *In re Ford Tailgate Litig.*, No. 11-cv-02953-RS, 2014 WL 1007066, at *9 (N.D. Cal. Mar. 12, 2014) (same) *with Utility Consumers' Action Network v. Sprint Solutions, Inc.*, No. 07-cv-2231-W (RJB), 2008 WL 1946859, at *7 (S.D. Cal. Apr. 25, 2008). The Court finds the analysis in *Reed* and *In re Ford* persuasive, and, for the reasons set forth in *In re Ford*, the Court concludes that Plaintiffs must comply with the notice requirement set forth in Section 1782(a). The Court GRANTS, IN PART, SeaWorld's motion to dismiss on this basis, with leave to amend.[4]

The Court notes it has some concerns about the viability of Plaintiffs' CLRA claim, in light of their theory of liability. Specifically, the California Supreme Court has stated that the CLRA "is not an otherwise applicable general law…. Rather than applying to all businesses, or to business transactions in general, the [CLRA] applies only to transactions for the sale or lease of consumer 'goods' or 'services' as those terms are defined in the act." *Fairbanks v. Superior Court*, 46 Cal. 4th 56, 65 (2009).

Here, Plaintiffs allege that SeaWorld violated the CLRA by: (1) "[r]epresenting that *goods or services* have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have;" (2) "[r]epresenting that *goods or services* are of a particular standard, quality, or grade, or that *goods* are of a particular style or model, if they are of another; and (3) "[a]dvertising *goods or services* with intent not to sell them as advertised." Cal. Civ. Code §§ 1770(a)(5), 1770(a)(7), and 1770(a)(9) (emphasis added). (*See* FAC ¶ 74; Redline SAC ¶ 76.) Plaintiffs allege that the "goods" or "services" at issue are the tickets to SeaWorld.

---

[4] The Court has previously found otherwise. *See, e.g., Janda v. T-Mobile U.S.A., Inc.*, No. 05-cv-3729-JSW, 2009 WL 667206, at *5 (N.D. Cal. Mar. 13, 2009). The Court declines to follow its prior analysis to the extent it conflicts with the above analysis.

7

1    (FAC ¶ 78.) The allegations in the proposed SAC also allege that the goods and or services on

2    which Plaintiffs premise the CLRA claim are the tickets and the plush toys. (Redline SAC ¶ 80.)

3    However, as SeaWorld notes in its motion, Plaintiffs do not allege that any of the alleged

4    misrepresentations relate to the tickets or the plush toys. Rather, the representations relate to the

5    manner in which SeaWorld treats its orcas.

6        Although the Court may be concerned about the ultimate viability of this claim, it cannot

7    say, on this record, that amendment, would be futile. If Plaintiffs amend the CLRA claim,

8    SeaWorld may renew each of its alternative arguments on a subsequent motion to dismiss.

9    Further, if Plaintiffs do choose to amend this claim, they must be prepared to clearly articulate the

10   exact goods and services that are at issue.

**C.   The Court Grants the Motion to Dismiss the UCL and FAL Claims for Lack Article III Standing to Seek Injunctive Relief, with Leave to Amend.**

13       Plaintiffs seek two forms of relief. They seek restitution on behalf of themselves, and they

14   seek prospective injunctive relief on behalf of themselves and for putative class members. (FAC

15   ¶¶ 80.b, 80.c; Redline SAC ¶¶ 83.b, 83.c.)[5] SeaWorld argues that Plaintiffs lack Article III

16   standing to seek injunctive relief, because Plaintiffs now know the "truth" of the alleged

17   misrepresentations and cannot plausibly allege facts that would support standing to seek injunctive

18   relief.

19       In order to establish Article III standing, Plaintiffs must allege that: (1) they suffered an

20   "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural

21   or hypothetical; (2) that the injury is fairly traceable to SeaWorld's conduct; and (3) that it is

22   likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

23   *Lujan*, 504 U.S. at 560-61. "In a class action, standing is satisfied if at least one named plaintiff

24   meets the requirements" for standing. *See Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985

25   (9th Cir. 2007); *cf. Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) ("Where,

---

[5] SeaWorld does not dispute that Plaintiffs have Article III standing to seek restitution. The Court addresses SeaWorld's arguments regarding statutory standing to seek restitution in Section E, *infra*.

8

1 as here, a plaintiff seeks relief on behalf of a class, "[u]nless the named plaintiffs themselves are
2 entitled to seek injunctive relief, they may not represent a class seeking that relief."). Plaintiffs
3 also "must demonstrate standing separately for each form of relief sought." *Friends of the Earth,*
4 *Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185 (2000) (citing *City of Los*
5 *Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (notwithstanding the fact that plaintiff had standing to
6 pursue damages, he lacked standing to pursue injunctive relief)).

7 "Past exposure to harmful or illegal conduct does not necessarily confer standing to seek
8 injunctive relief if the plaintiff does not continue to suffer adverse effects." *Mayfield v. United*
9 *States*, 599 F.3d 964, 970 (9th Cir. 2010). Therefore, in order to satisfy the pleading requirements
10 for standing to seek prospective injunctive relief, at least one of the Plaintiffs must allege facts to
11 show they face a "'real or immediate threat … that [they] will again be harmed in a similar way.'"
12 *Id.* (quoting *City of Los Angeles v. Lyons*, 465 U.S. 95, 111 (1983) ("*Lyons*"); *see also Lyons*, 465
13 U.S. at 109 (plaintiff must show he or she is "realistically threatened by a repetition" of the
14 violation to have standing to seek injunctive relief); *Bates*, 511 F.3d at 985.

15 The Ninth Circuit has not ruled on the issue of what is necessary to allege standing for
16 prospective injunctive relief in a case involving misleading advertising. There is a split of
17 authority among the district courts, which centers on two issues. *See, e.g., Duran v. Hampton*
18 *Creek*, No. 15-cv-05497-LB, 2016 WL 1191685, at *6-*7 (N.D. Cal. Mar. 28, 2016) (discussing
19 "divergent approaches" taken by district courts). The first issue is whether a plaintiff needs to
20 allege an intent to purchase the product or service in the future. *See, e.g., Larsen v. Trader Joes,*
21 *Co.*, No. 11-cv-05188-SI, 2012 WL 5458396, at *3-*4 (N.D. Cal. June 14, 2012) (plaintiff need
22 not allege intent to purchase product again); *Henderson v. Gruma Corp.*, Case No. 10-cv-04173-
23 AHM, 2011 WL 1362188, at *8 (C.D. Cal. Apr. 11, 2011) (same). However, the majority view is
24 that a plaintiff must allege the intent to purchase a product in the future in order to have standing
25 to seek prospective injunctive relief. *See, e.g., Duran*, 2016 WL 1191685; *Lilly v. Jamba Juice*
26 *Company*, No. 13-cv-02998-JST, 2015 WL 1248027, at *3-*5 (N.D. Cal. Mar. 18, 2015); *Rahman*
27 *v. Motts, LLP*, No. 13-cv-3482-SI, 2014 WL 325241, at *10 (N.D. Cal. Jan. 29, 2014) ("*Rahman*
28 *I*").

9

In light of Article III's requirement that a plaintiff show a realistic threat of future injury, the Court finds the latter line of cases, which represent the majority view, more persuasive and shall follow them. In the FAC, Plaintiffs do not allege that they would consider purchasing tickets to a SeaWorld park in the future, and the Court concludes that they have not alleged facts that would give them standing to pursue injunctive relief on behalf of the class. (FAC ¶¶ 19-20.) Accordingly, the Court GRANTS, IN PART, SeaWorld's motion to dismiss on that basis. The Court turns to the proposed SAC to determine whether Plaintiffs' allegations there are sufficient and, if not, whether further amendment would be futile.

The other issue on which courts have split is whether a plaintiff has standing to seek injunctive relief when that plaintiff alleges knowledge of the alleged misrepresentation. Some courts have concluded that a plaintiff's knowledge of an alleged misrepresentation would not, on its own, prevent them from establishing Article III standing to seek prospective injunctive relief. *See, e.g., Duran,* 2016 WL 1191685, at *7; *Lilly*, 2015 WL 1248027, at *3-*5; *Rahman I*, 2014 WL 325241, at *10; *cf. Ries v. Arizona Beverages USA, LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) (finding argument best addressed "as an argument directed to redressibility").[6] Other courts have reached the opposite conclusion. *See, e.g., Nguyen v. Medora Holdings, LLC*, No. 14-cv-00618-PSG, 2015 WL 4932836, at *7 (N.D. Cal. Aug. 18, 2015); *Garrison v. Whole Foods Market Group., Inc.*, No. 13-cv-5222-VC, 2014 WL 2451290, at *5 (N.D. Cal. June 2, 2014).

The *Henderson* case falls within the former line of cases. In that case, the court reasoned that if it were to construe Article III standing requirements narrowly, "federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ('once bitten, twice shy') and would never have Article III standing," which would "thwart the objective of California's consumer protection laws." *Henderson*, 2011 WL 1362188, at *7-8;

---

[6] Although the court in *Rahman I* still adheres to the view that a plaintiff may have standing to seek injunctive relief even though he or she is aware of the alleged misrepresentation, that court has concluded that a plaintiff must at least allege an intent to purchase the product in the future. *Rahman I,* 2014 WL 325241, at *10 n.9.

10

1    *accord Lilly*, 2015 WL 1248027, at *3; *Rahman*, 2014 WL 325241, at *10.  Other courts have

2    rejected that line of reasoning on the basis "state policy objectives cannot trump the requirements

3    of Article III."  *Racies v. Quincy Bioscience, LLC*, No. 15-cv-00292-HSG, 2015 WL 2398268, at

4    *6 (N.D. Cal. May 19, 2015); *accord, Nguyen*, 2015 WL 4932836, at *7; *Garrison*, 2014 WL

5    2451290, at *5.[7]

6          In *Lilly*, the court framed the "nature of the injury suffered by the consumer" as the

7    inability to rely on representations about a product or service.  2015 WL 1248027, at *3.  The

8    court concluded that a plaintiff would have standing to seek injunctive relief against false labeling,

9    even where that plaintiff becomes aware of the alleged misrepresentation, because:

> the manufacturer may change or reconstitute its product in the future
> to conform to the representations on the label. … In that event, the
> product would actually become the product the consumer values
> most highly and it would be labeled as such.  But unless the
> manufacturer has been enjoined from making the same
> misrepresentation, our hypothetical consumer won't know whether
> the label is accurate.  And she won't know whether it makes sense to
> spend her money on the product, since she will suspect a continuing
> misrepresentation.  In fact, knowing about the previous
> misrepresentation, she probably won't buy it – even though it is now
> precisely the product she wants above all others.

16   *Id.*, 2015 WL 1248027, at *4-5 (emphasis omitted).

17         In *Duran*, the court concluded that it could "discern the plausibility of repeated harm to a

18   consumer who relies on labels to make choices and who might buy a product if it conformed to the

19   representations on the label. … Without injunctive relief, that consumer is harmed, probably

20   because she won't buy it because she will suspect a continuing misrepresentation (even if the

21   manufacturer conforms the product to the label). … Thus, with an 'all natural' claim (like that in

22   *Lilly*) or something similar (such as an 'organic' claim), a plaintiff plausibly is injured in the future

23   and has standing to seek relief in the form of a label change."  *Duran*, 2016 WL 1191685, at *7.

---

[7] *See also In re Fluidmaster, Inc. Water Connector Components Prods. Liab. Litig.*, MDL No. 2575, 2016 WL 406327, at *13 (N.D. Ill. Feb. 3, 2016) (a "finding that plaintiffs who will never purchase the product in the future do not have standing to obtain injunctive relief does not thwart consumer fraud statutes because plaintiffs may be able to bring such claims in state court") (internal quotations, brackets and citations omitted); *accord Anderson v. The Hain Celestial Group*, 87 F. Supp. 3d 1226, 1235 (N.D. Cal. 2015).

11

The court concluded, however, that "this possibility does not exist here. The claim is 'mayonnaise,' and the product is a vegan substitute. There is no possibility of confusion to [plaintiff] as a consumer. He knows what the product is and will remain: a vegan spread. He disavowed any interest in purchasing a product that is not mayonnaise...." *Id.* Thus, "[t]he scenario of a customer who might buy a product that is labelled 'all natural' or 'organic' does not exist here," and it found the plaintiff did not have standing to seek injunctive relief in the form of a label change. *Id.*[8]

The courts that have reached the contrary conclusion conclude a plaintiff could not plausibly allege he or she would be deceived by the offending advertisement in the face of allegations that she would not have purchased the product if he or she had known the truth. Similarly, the courts have found that a plaintiff could not plausibly allege that he or she would consider purchasing a product that the plaintiff previously alleged the product was not wanted. *See, e.g., Romero v. Flowers Bakeries, LLC*, No. 14-cv-05189-BLF, 2015 WL 2125004, at *7 (N.D. Cal. May 6, 2015); *Anderson*, 87 F. Supp. 2d at 1234.

At the pleadings phase, the Court is unwilling to make a similar conclusion. The Court concurs that state policy objectives cannot trump Article III's requirements. However, like the *Lilly* and *Duran* courts, it is unwilling to hold, as a matter of law, that a plaintiff could never pursue a claim for prospective injunctive relief under the UCL or the FAL merely because the plaintiff now knows the truth about the alleged misrepresentation.[9] As the *Duran* court noted, it may be difficult for a plaintiff to plausibly allege facts to show he or she would be deceived in the future, but at the pleadings phase, the Court cannot say it would be impossible. *Cf. Rahman v. Motts, L.P.,* No. 13-cv-03482-SI, 2014 WL 5282106, at *6 & n.4 (N.D. Cal. Oct. 15, 2014) (resolving issue on motion for summary judgment).

---

[8] Although the *Duran* court was skeptical that plaintiff could allege facts to show standing to seek injunctive relief, it granted him leave to amend. *Id.*

[9] The Court has previously found otherwise. *See, e.g., Castagnola v. Hewlett-Packard Co.*, No. 11-cv-5772-JSW, 2012 WL 2159385, at *5 (N.D. Cal. June 13, 2012). The Court declines to follow its prior analysis to the extent it conflicts with the above analysis.

12

In the proposed SAC, Mr. Anderson does not specifically allege that he would consider purchasing tickets to or merchandise from SeaWorld in the future. Therefore, the Court concludes he still fails to allege facts sufficient to show he has standing to seek injunctive relief. If, he can, in good faith allege that he would consider purchasing tickets to SeaWorld in the future, the Court will grant him one final opportunity to do so and to correct the other deficiencies identified in this Order.

Ms. Conway alleges that she "has a reasonable but firm commitment to animal welfare, and does not purchase tickets to zoos, amusement parks, aquariums, circuses, or other organizations that do not have the facilities to properly care for their animals or that display animals that cannot safely and healthily be kept in captivity." (Redline SAC ¶ 18.) Ms. Conway also alleges that had she "been aware that SeaWorld's advertisements were a misrepresentation of the truth regarding captive orca health, she would not have purchased tickets to SeaWorld San Diego (or would have paid far less for them). Finally, Ms. Conway alleges that "she values the opportunity to enjoy the kind of animal entertainment SeaWorld provides, but given SeaWorld's past practices of deceit, Ms. Conway cannot be sure about the veracity of SeaWorld's claims. Ms. Conway may consider purchasing tickets to SeaWorld San Diego again in the future if SeaWorld's practices were to evolve to improve the level of animal care, and to be honest about the health and status of the orcas." (*Id.*) Ms. Morizur and Ms. Nelson, in turn, each allege that had they known the truth about SeaWorld's representations, they would not have purchased tickets or a plush toy, or would have paid less for those items. They also claim that the cannot be sure about the veracity of SeaWorld's claims, but would consider purchasing tickets or merchandise in the future. (*Id.* ¶¶ 19-20.)

Plaintiffs have alleged that SeaWorld has announced certain changes in its practices on orca breeding and the orca shows. Therefore, the Court finds the facts here are distinguishable from the facts in *Duran*, in that the product or service at issue may be changing to a product or service the Plaintiffs would want if they could rely on SeaWorld's advertising. Accordingly, in light of the Plaintiffs' allegations that they would have paid less for tickets to SeaWorld if they had known the truth, and taking into consideration the allegations that SeaWorld is phasing out its

13

1 orca breeding program, the Court concludes these three Plaintiffs have sufficiently alleged facts in

2 the proposed SAC to show they have standing to seek injunctive relief on behalf of the class.

3 SeaWorld is free to test these allegations by way of discovery and to renew its argument that

4 Plaintiffs' lack Article III standing to seek injunctive relief on a motion for summary judgment or

5 in opposition to a motion for class certification.

**D. The Court Grants, in Part, Sea World's Motion to Dismiss for Failure to Comply with Rule 9(b), with Leave to Amend.**

SeaWorld argues that Plaintiffs fail to satisfy the requirements of Rule 9(b), and it argues they have failed to plead with particularity the statements on which they relied. Under Rule 9(b), Plaintiffs must allege "'the who, what, when, where, and how' of the misconduct charged."[10] *Vess*, 317 F.3d at 1107 (quoting *Cooper*, 137 F.3d at 627); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009) (dismissing UCL claims for failure to comply with Rule 9(b) where plaintiff failed to allege on which materials he relied).

In both the FAC and in the proposed SAC, Plaintiffs set forth three specific claims they contend are false: orca lifespans in captivity are the same as they are in the wild; collapsed dorsal fins are normal; and SeaWorld does not separate calves from their mothers. Plaintiffs also include allegations to explain why they contend those statements are false. (FAC ¶¶ 24-30; Redline SAC ¶¶ 24-30.) As to these three statements, the Court concludes Plaintiffs have adequately alleged what is false and how it is false.

Plaintiffs also allege that SeaWorld made the first two statements on its website. (FAC ¶¶ 24-25; Redline SAC ¶¶ 24-25.) Plaintiffs did not identify where SeaWorld allegedly made the third statement, but Mr. Anderson alleges that he read it on SeaWorld's website. (FAC ¶¶ 19, 29-30; Redline SAC ¶¶ 17, 29-20.) The Court concludes Plaintiffs have adequately alleged where the statements were made. Finally, according to Plaintiffs, they seek to represent "[a]ll consumers who, within the past four years, purchased tickets to attend SeaWorld San Diego," or who "purchased orca souvenirs at SeaWorld San Diego." (FAC ¶ 38; Redline SAC ¶ 38.) Although

---

[10] SeaWorld does not argue that Plaintiffs do not adequately identify who made the statements at issue.

14

Plaintiffs do not clearly allege when SeaWorld made these statements, they have placed SeaWorld on notice of the time period at issue.[11] Plaintiffs' allegations regarding dorsal fins, orca lifespans in captivity, and the separation of calves from mothers satisfy the requirements of Rule 9(b).

Accordingly, the Court DENIES, IN PART, SeaWorld's motion to dismiss the FAC on that basis.[12]

Plaintiffs also allege that "SeaWorld claims captivity in general does not harm orcas." (FAC ¶¶ 31-37; Redline SAC ¶¶ 31-37.) According to Plaintiffs this allegation is based on a "longstanding," "wide-reaching," and "expansive" public relations and marketing campaign that was designed to "mislead[] reasonable consumers into believing that orcas are not negatively affected by captivity when in fact the opposite is true." (FAC ¶¶ 31, 37.) Plaintiffs have not included any facts about how long SeaWorld engaged in this marketing and public relations campaign, the types of statements that were made during the campaign, or where such statements appeared. The Court concludes that Plaintiffs' FAC and proposed SAC fail to satisfy the requirements of Rule 9(b) as to this aspect of their claims. *Cf. Hall v. SeaWorld Entertainment*, No. 15-cv-660-CAB-RBB, 2015 WL 9659911, at *6 (S.D. Cal. Dec. 23, 2015).

Accordingly, the Court GRANTS, IN PART, SeaWorld's motion to dismiss on this basis. However, the Court concludes it would not be futile to grant Plaintiffs leave to amend to include additional allegations regarding the alleged marketing campaign.

**E.     The Court Grants, in Part, SeaWorld's Motion to Dismiss for Lack of Statutory Standing.**

SeaWorld also moves to dismiss the FAC on the basis that Mr. Anderson and Ms. Conway lack statutory standing under the UCL and the FAL. In order to have standing under the UCL and the FAL, a plaintiff must show that he or she has lost money or property as a result of the defendant's alleged conduct. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 321 (2011). "The

---

[11]   As discussed in the following section, the Court also concludes that most of the Plaintiffs have adequately alleged that they saw an alleged misstatement before purchasing SeaWorld tickets or a plush toy.

[12]   Because the Court is granting Plaintiffs leave to amend, they may amend to include the additional allegations set forth in paragraphs 24-30 of the proposed SAC.

15

plain import of this is that a plaintiff now must demonstrate some form of economic injury." *Id.* at 323. There are many ways a plaintiff may establish economic injury to show standing under the UCL and the FAL, including "surrender[ing] in a transaction more, or acquir[ing] in a transaction less, than he or she otherwise would have." *Id.* at 323, 325 (allegations of "personal, individualized loss of money or property in any nontrivial amount" is sufficient to allege injury in fact). In addition, under the UCL and the FAL a plaintiff must allege he or she actually relied on the alleged misrepresentations. *Id.* at 326.

SeaWorld argues that Plaintiffs did not allege facts to show statutory standing, because the alleged misrepresentations did not relate to the price or quality of the tickets they purchased. SeaWorld cites no authority to support this proposition, and the Court is not persuaded that *Kwikset* and its progeny should be read so narrowly in the context of the UCL and the FAL claims. SeaWorld also argues that Plaintiffs' allegations demonstrate a "moral" injury, rather than the economic injury required under the UCL and the FAL. In support of this argument, SeaWorld relies on *Animal Legal Defense Fund v. Mendes,* 160 Cal. App. 4th 136 (2008) ("*ALDF*").

In the *ALDF* case, the court dismissed a UCL claim where the plaintiffs alleged that defendants allegedly violated certain animal cruelty laws. According to the plaintiffs, they "lost money as a result of purchasing dairy products that were unlawfully, unfairly, and illegally produced." *Id.* at 141. The court rejected plaintiffs' claim, reasoning that they had not alleged that the defendants sold them the milk, that the milk was inferior to other milk, or that "anyone made any express representations about the milk, similar to express claims that dairy products are organic, produced by non-hormonally enhanced cows, or produced by grass-grazed cows." *Id.* at 145-46. In contrast, Plaintiffs have alleged that SeaWorld made express representations and that they purchased tickets based on those alleged misrepresentations. The Court finds *ALDF* distinguishable on its facts.

Mr. Anderson alleges that he purchased tickets from SeaWorld's website in March or April 2014. He also alleges that read the statements about orca life spans and calf separation on SeaWorld's website. (FAC ¶ 19.) Finally, he alleges that had he "been aware that SeaWorld's advertisements were a misrepresentation of the truth regarding captive orca health, he would not

16

have purchased tickets to SeaWorld San Diego." (*Id.*) The Court finds that these facts would be sufficient to show economic injury based on the alleged statements regarding life spans and calf separation. However, Mr. Anderson has not clearly alleged that he saw SeaWorld's advertisements *before* he purchased his tickets. Therefore, the Court concludes he has does not allege sufficient facts to show he relied on those advertisements when he purchased his tickets. *Cf. Hall*, 2015 WL 9659911, at *5.

Ms. Conway, in contrast, does not allege that she relied on one of the specific misrepresentations alleged in the FAC. Rather, she alleges that she "has been exposed to SeaWorld's false and misleading representations about its care for orcas in print, television commercials and/or on the Internet, and during a previous visit to SeaWorld." (FAC ¶ 20.) Ms. Conway then alleges that SeaWorld's "marketing campaign assured her that SeaWorld's orcas were well taken care of," and she would not have purchased her tickets had she known the "advertisements were a misrepresentation of the truth." (*Id.*)

The California Supreme Court has held that a plaintiff "is not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements where … those misrepresentations and false statements were part of an extensive and long-term advertising campaign." *In re Tobacco II*, 46 Cal. 4th at 328. To the extent Plaintiffs rely on this theory, the Court concludes that they have not adequately alleged sufficient facts to show that SeaWorld's advertising and public relations campaign was sufficiently similar to the campaign at issue in *In re Tobacco II*. *Cf. Hall*, 2015 WL 9659911, at *4 (concluding that plaintiffs had failed to allege facts show to reliance, and noting that many of the statements "were not even made in advertisements, let alone as part of a pervasive advertising campaign of the sort at issue in" *In re Tobacco II*); *Bronson v. Johnson & Johnson, Inc.*, No. 12-cv-04184-CRB, 2013 WL 1629191, at *3 (N.D. Cal. Apr. 16, 2013) (granting motion to dismiss for lack of standing where plaintiffs failed to allege reliance on particular web or print advertising and rejecting plaintiffs' reliance on *In re Tobacco II*, on the basis that "[a]t best, Defendants' marketing campaign began in 2012, which is substantially less than the 'long-term' campaign at issue in *Tobacco II* that lasted at least seven years"). Therefore, the Court concludes that Ms. Conway is not excused from alleging the specific

17

1   representations on which she relied.  Because she has not done so, the Court GRANTS, IN PART,
2   SeaWorld's motion to dismiss the FAC on this basis.
3        The Court turns to whether Plaintiffs have cured that deficiency in the proposed SAC.  Mr.
4   Anderson now alleges that he saw the statements regarding orca life spans and calf separation on
5   SeaWorld's website before he visited the park in June 2014.  Although Mr. Anderson has not
6   clearly alleged that he viewed these statements before he purchased his tickets, he does allege that
7   he viewed them before he purchased a plush orca toy and that he relied on the same
8   representations in deciding to purchase this toy.  (Redline SAC ¶ 17.)  The Court concludes that
9   Mr. Anderson has alleged facts to show he has statutory standing to pursue the UCL and FAL
10  claims based on those representations.  If Mr. Anderson can, in good faith, also allege that he saw
11  these representations before purchasing his tickets to SeaWorld, he may do so.
12       Ms. Nelson alleges that she saw SeaWorld's representations regarding orca lifespans and
13  calf separation before she purchased her tickets.  (*Id.* ¶ 19.)  The Court concludes that Ms. Nelson
14  has sufficiently alleged that she has statutory standing to pursue the UCL and FAL claims based
15  on those representations.
16       Ms. Morizur alleges that she asked a SeaWorld trainer about collapsed dorsal fins during a
17  visit to SeaWorld and was told that it was normal and common in the wild.  She also alleges that
18  while she was still at the park, she purchased a plush toy in reliance on those representations.  (*Id.*
19  ¶ 20.)  The Court concludes that Ms. Morizur has sufficiently alleged that she has standing to
20  pursue the UCL and FAL claims based on that representation.
21       Ms. Conway now alleges that she was exposed to at least some of the representations
22  during a prior visit to SeaWorld in 2012, and that she purchased tickets again in 2014 based on
23  those representations.  (Redline SAC ¶ 18.)  However, Ms. Conway still fails to allege the
24  particular statements on which she relied, and, for the reasons set forth above, her general
25  allegations regarding reliance on the marketing campaign are not sufficient.  The Court concludes
26  Ms. Conway fails to allege that she has statutory standing to pursue the UCL and FAL claims.
27  Because the Court cannot say it would be futile, it shall grant her one final opportunity to amend.
28       The Court also concludes that to the extent each of the Plaintiffs premise their claims on

18

alleged reliance on the marketing and public relations campaign, their allegations of reliance also are deficient. The Court shall give the Plaintiffs one final opportunity to amend that aspect of their claims, if they choose to do so.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, SeaWorld's motion to dismiss the First Amended Complaint. The Court GRANTS Plaintiffs leave to amend on the terms set forth in this Order. Plaintiffs shall file an amended complaint, if they so choose, by no later than August 22, 2016. SeaWorld shall answer or otherwise respond within the time required by the Federal Rules of Civil Procedure. In addition, the parties shall appear for an initial case management conference on October 7, 2016. The parties shall file a joint case management conference statement on September 30, 2016.

**IT IS SO ORDERED.**

Dated: August 1, 2016

_____
JEFFREY S. WHITE
United States District Judge