United States District Court
Northern District of California

**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARC ANDERSON, et al.,

Plaintiffs,

v.

SEAWORLD PARKS AND
ENTERTAINMENT, INC.,

Defendant.

Case No.  15-cv-02172-JSW

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO
DISMISS AND SETTING CASE
MANAGEMENT CONFERENCE**

Re: Dkt. No. 82

Now before the Court for consideration is the motion to dismiss, filed by Defendant

SeaWorld Parks and Entertainment, Inc. ("SeaWorld").  The Court has considered the parties'

papers, relevant legal authority, and the record in this case, and the Court HEREBY GRANTS, IN

PART, AND DENIES, IN PART, Sea World's motion.

**BACKGROUND**

**A.      Procedural History.**

This is the fourth iteration of Plaintiffs' complaint.  On April 13, 2015, Marc Anderson

("Anderson") and Ellexa Conway ("Conway") filed their original complaint in the Superior Court

of the State of California for the City and County of San Francisco.  (Dkt. No. 1-1, Complaint.)

On May 11, 2015, Anderson and Conway filed a First Amended Complaint (the "FAC").  (Dkt.

No. 9-1, FAC.)  On May 14, 2015, SeaWorld removed to this Court.  (Dkt. No. 1, Notice of

Removal.)

On May 29, 2015, Anderson and Conway moved to remand, and on September 18, 2015,

SeaWorld moved to dismiss the FAC.  (Dkt. Nos. 15, 43.)  On September 24, 2015, the Court

1  denied the motion to remand, and it granted, in part, and denied, in part, their motion for

2  reconsideration on January 12, 2016.  (Dkt. Nos. 46, 65.)  On April 7, 2016, Anderson and

3  Conway sought leave to file a second amended complaint to add two new plaintiffs, Kelly Nelson

4  ("Nelson") and Juliette Morizur ("Morizur"), and to supplement the factual allegations in the

5  FAC.  (Dkt. No. 69.)

6       Because SeaWorld's motion to dismiss was ripe, the Court considered that motion in the

7  first instance, and it considered the proposed second amended complaint to determine whether

8  leave to amend would be futile.  On August 1, 2016, the Court granted, in part, and denied, in part,

9  SeaWorld's motion to dismiss and denied the motion for leave to amend as moot.  Although the

10  Court found that the proposed second amended complaint did not adequately plead certain claims,

11  it gave leave to include Morizur and Nelson as plaintiffs and gave Plaintiffs a further opportunity

12  to amend the claims.  *See Anderson v. SeaWorld Parks and Entertainment*, No. 15-cv-2172-JSW,

13  2016 WL 4076097, at *8-11 (N.D. Cal. Aug. 1, 2016).

14  **B.  Factual Background.**

15       Plaintiffs allege that "[a]s part of a marketing campaign to induce ticket and souvenir

16  purchases, SeaWorld has made, continues to make, and profits off of false and misleading

17  statements concerning the welfare of [its] captive orcas."  (Second Amended Complaint ("SAC")

18  ¶ 1.)  According to Plaintiffs, "SeaWorld has engaged in a pervasive, long-term advertising

19  campaign to mislead the public about its care for captive orcas and conceal the detrimental health

20  effects that captivity has on orcas."  (*Id.* ¶ 4.)

21       Plaintiffs allege that SeaWorld affirmatively misrepresents represents that: (1) orca

22  lifespans in captivity are equivalent to life spans in the wild; (2) collapsed dorsal fins are normal;

23  (3) it does not separate orca calves from mothers; and (4) captivity does not harm orcas.  (*Id.* ¶¶

24  25-39.)  In sum, Plaintiffs allege that

25  > SeaWorld's advertising misleadingly creates the perception that
26  > orcas as a species are generally benefited by SeaWorld's
   > rehabilitative programs, scientific studies, and educational activities,
27  > and that the individual orcas it holds in captivity are as healthy and
   > as stimulated as their wild counterparts. …

28  (*Id.* ¶ 7.)

Plaintiffs allege they were exposed to these representations in a variety of ways and allege they either relied on SeaWorld's advertising campaign or alleged they relied on four specific representations before they purchased admission to SeaWorld or before they purchased a plush toy orca (the "Shamu Plush"). (*Id.* ¶¶ 18-21.) Plaintiffs also allege that

> [a]lthough SeaWorld continues to make these representations, on or around March 17, 2016, SeaWorld announced that it will end all orca breeding programs, and that the orcas SeaWorld currently has in captivity will be the last generation of orcas in SeaWorld's care. SeaWorld also announced around the same time that it will phase out its theatrical orca whale shows across all of its parks. Plaintiffs' inability to rely on the accuracy of these statements presents a continuing injury to them.

(*Id.* ¶ 39.)

Based on these and other allegations, which the Court shall address as necessary, Plaintiffs assert claims for: (1) violations of California's false advertising law, Business and Professions Code sections 17500, *et seq.* (the "FAL claim"); (2) violations of California's unfair competition law, Business and Professions Code sections 17200, *et seq.* (the "UCL claim"); and (3) violation of California's Consumer Legal Remedies Act, California Civil Code section 1750, *et seq.* (the "CLRA claim").

## ANALYSIS

SeaWorld argues that: (1) Plaintiffs fail to allege facts to show they have standing to seek injunctive relief under Article III of the United States Constitution; (2) Plaintiffs fail to state claims based on the alleged long-term advertising campaign; (3) Plaintiffs fail to state a claim under the CLRA and failed to provide the required statutory notice for restitution claims; (4) Anderson lacks statutory standing to pursue the FAL and UCL claims to the extent those claims are premised on his purchase of tickets to SeaWorld; and (5) Morizur's claim under the FAL fail to the extent that claims rest on statements a SeaWorld trainer made to her, and it alleges her UCL claim fails for this reason as well.

**A.     Applicable Legal Standards.**

    **1.     Federal Rule of Civil Procedure 12(b)(1).**

SeaWorld moves to dismiss for lack of Article III standing, pursuant to Federal Rule of

United States District Court
Northern District of California

1  Civil Procedure 12(b)(1).  *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011); *White*

2  *v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  A motion to dismiss under Rule 12(b)(1) may be

3  "facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Where,

4  as here, a defendant makes a facial attack on jurisdiction, a court takes the factual allegations of

5  the complaint as true.  *Federation of African Am. Contractors v. City of Oakland*, 96 F.3d 1204,

6  1207 (9th Cir. 1996); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the

7  pleading stage, general factual allegations of injury resulting from the defendant's conduct may

8  suffice, for on a motion dismiss, [courts] presume that general allegations embrace those specific

9  facts that are necessary to support the claim.") (internal citation and quotations omitted).  The

10  plaintiff is then entitled to have those facts construed in the light most favorable to him or her.

11  *Federation of African Am. Contractors*, 96 F.3d at 1207.

### 2.      Federal Rule of Civil Procedure 12(b)(6).

13  SeaWorld also moves to dismiss for failure to state a claim and for lack of statutory

14  standing.  A "lack of statutory standing requires dismissal for failure to state a claim" and is

15  evaluated under Rule 12(b)(6).  *Maya*, 658 F.3d at 1067 (emphasis omitted).  Under Rule 12(b)(6),

16  the Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and

17  construed in the light most favorable to the plaintiff."  *Lazy Y Ranch LTD v. Behrens*, 546 F.3d

18  580, 588 (9th Cir. 2008).  Even under the liberal pleadings standard of Federal Rule of Civil

19  Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

20  requires more than labels and conclusions, and a formulaic recitation of the elements of a claim for

21  relief will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v.*

22  *Allain*, 478 U.S. 265, 286 (1986)).  Pursuant to *Twombly*, a plaintiff must not allege conduct that is

23  conceivable but must allege "enough facts to state a claim to relief that is plausible on its face."

24  *Id.* at 570.  "A claim has facial plausibility when the Plaintiff pleads factual content that allows the

25  court to draw the reasonable inference that the Defendant is liable for the misconduct alleged."

26  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### 3.      Federal Rule of Civil Procedure 9(b).

28  Claims sounding in fraud or mistake are subject heightened pleading requirements, which

United States District Court
Northern District of California

require that a plaintiff claiming fraud "must state with particularity the circumstances regarding fraud or mistake." Fed. R. Civ. P. 9(b). In addition, a claim "grounded in fraud" may be subject to Rule 9(b)'s heightened pleading requirements. A claim is "grounded in fraud" if the plaintiff alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of his or her claim. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003).

Rule 9(b)'s particularity requirements must be read in harmony with Federal Rule of Civil Procedure 8, which requires a "short and plain" statement of the claim. The particularity requirement is satisfied if the complaint "identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *see also Vess*, 317 F.3d at 1106. Accordingly, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1107 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

### 4.    Leave to Amend.

In general, if the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g. Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990). If a court has granted a plaintiff leave to amend, and if the plaintiff has failed to correct deficiencies identified by the court, the court has "particularly broad" discretion to deny leave to amend. *See, e.g., Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).

### B.    Plaintiffs Allege They Have Article III Standing to Seek Injunctive Relief.

SeaWorld renews its argument that Plaintiffs lack Article III standing to seek injunctive relief. "In a class action, standing is satisfied if at least one named plaintiff meets the requirements" for standing. *See Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007); *cf. Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) ("Where, as here, a plaintiff seeks relief on behalf of a class, "[u]nless the named plaintiffs themselves are entitled to seek injunctive relief, they may not represent a class seeking that relief."). "Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the

United States District Court
Northern District of California

plaintiff does not continue to suffer adverse effects." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010).  Therefore, in order to satisfy the pleading requirements for standing to seek prospective injunctive relief on behalf of class, at least one of the Plaintiffs must allege facts to show he or she faces a "'real or immediate threat … that [he or she] will again be harmed in a similar way.'"  *Id.* (quoting *City of Los Angeles v. Lyons*, 465 U.S. 95, 111 (1983) ("*Lyons*"); *see also Lyons*, 465 U.S. at 109 (plaintiff must show he or she is "realistically threatened by a repetition" of the violation to have standing to seek injunctive relief); *Bates*, 511 F.3d at 985.

The Court previously stated that the Ninth Circuit had not ruled on the issue of what is necessary to allege standing for prospective injunctive relief in a case involving misleading advertising.  *Anderson*, 2016 WL 4076097, at *6.  SeaWorld argues that the Ninth Circuit has definitively resolved the issue, citing *Luman v. Theisman*, 647 Fed. Appx. 804 (9th Cir. 2016).[1]  In *Luman*, the court stated that "[b]ecause [p]laintiffs do not allege that they intend to purchase" the defendant's product "in the future, they cannot demonstrate a likelihood of future injury."  *Id.* at 807.  It therefore affirmed the district court's finding that the plaintiffs lacked standing.  *Id.*  This Court likewise concluded that a plaintiff must allege facts showing an intent to purchase a product in the future, in order to show he or she has standing to seek injunctive relief.  That ruling is consistent with *Luman*.  *See Anderson*, 2016 WL 4076097, at *6.

SeaWorld argues that Plaintiffs' allegations that they "may consider" or "would consider" purchasing admission to SeaWorld or a Shamu Plush in the future are insufficient under *Luman*.  However, the *Luman* court did not specify the exact nature of the plaintiffs' allegations.  *Id.*  Thus, it is not clear that the court addressed the precise issue presented here, *i.e.* what factual allegations would be sufficient to allege the requisite intent.   For the reasons stated in its prior order, the Court concludes that Plaintiffs' allegations are sufficient to show an intent to purchase tickets or a product from SeaWorld in the future.  *See, e.g., Lilly v. Jamba Juice Company*, No. 13-cv-02998-JST, 2015 WL 1248027, at *3-*5 (N.D. Cal. Mar. 18, 2015).

---

[1]    The Ninth Circuit decided *Luman* before the Court ruled on SeaWorld's first motion to dismiss.  SeaWorld did not seek leave to bring the case to the Court's attention.  In addition, *Luman* is an unpublished opinion and, in the context of this case, is not precedential.  *See* Ninth Circuit Rule 36-3(a).

United States District Court
Northern District of California

In addition, when it determined that Conway, Morizur, and Nelson had included sufficient facts in the proposed SAC to allege standing, the Court took into account the allegations that SeaWorld had announced certain changes in its practices on orca breeding and the orca shows to be significant.  The Court reasoned that those allegations demonstrated that the product or service at issue might be changing to a product or service the Plaintiffs would want if they could rely on SeaWorld's advertising.  On that basis, the Court distinguished the facts in this case from the facts in *Duran v. Hampton Creek*, No. 15-cv-05497-LB, 2016 WL 1191685, at *6-*7 (N.D. Cal. Mar. 28, 2016).  In *Luman*, unlike here, there was no suggestion that the product at issue would be changed.  For these reasons, the Court concludes that the Ninth Circuit's opinion in *Luman* does not require it to revisit its finding that Conway, Nelson, and Morizur have sufficiently alleged facts to show standing to seek injunctive relief.

SeaWorld also asks the Court to reconsider its ruling about the plausibility of Plaintiffs' allegations.  Specifically, SeaWorld argues that Plaintiffs have alleged that they believe captivity is necessarily harmful to orcas and do not seek relief that would require SeaWorld to alter its practices.  As noted, SeaWorld's practices may be evolving.  "At the pleadings phase, the Court is unwilling to make" the conclusion that a plaintiff could not plausibly allege that he or she would consider purchasing a product if the plaintiff previously alleged the product was not wanted."  *Anderson*, 2016 WL 4076097, at *7.  The Court still is "unwilling to hold, as a matter of law, that a plaintiff could never pursue a claim for prospective injunctive relief merely because the plaintiff now knows the truth about the alleged misrepresentation.  As the *Duran* court noted, it may be difficult for a plaintiff to plausibly allege facts to show he or she would be deceived in the future, but at the pleadings phase, the Court cannot say it would be impossible."  *Id.*

Accordingly, for these reasons, the Court denies, in part, SeaWorld's motion to dismiss.

**C.    The Court Dismisses the Claims Based on SeaWorld's Alleged Advertising Campaign.**

Anderson, Conway, and Nelson allege they relied on SeaWorld's representations that captivity does not harm orcas, before they purchased admission to SeaWorld.  According to Plaintiffs, those statements were made as part of a "long-term" advertising campaign.  (SAC ¶¶

United States District Court
Northern District of California

18-20, 32.)  Morizur also suggests that she relied on statements made during that campaign before she purchased a Shamu Plush.  (*Id.* ¶ 21.)  SeaWorld renews its motion to dismiss the claims based on these representations.

In order to show they have statutory standing to pursue their claims, Plaintiffs must allege facts to show they relied on the alleged misrepresentations.  *In re Tobacco II Cases*, 46 Cal. 4th 289, 326 (2009) ("*Tobacco II*").  However, in *Tobacco II*, the court also held that a plaintiff "is not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements where … those misrepresentations and false statements were part of an extensive and long-term advertising campaign."  *Id.*, 46 Cal. 4th at 328.

The Court granted SeaWorld's first motion to dismiss to the extent Plaintiffs' claims were based on the alleged advertising campaign, because the allegations did not satisfy Rule 9(b).  *Anderson*, 2016 WL 4076097, at *9.  The Court also found that Plaintiffs failed to adequately allege reliance, because they had "not adequately alleged sufficient facts to show that SeaWorld's advertising and public relations campaign was sufficiently similar to the campaign at issue in" *Tobacco II*.  *Anderson*, 2016 WL 4076097, at *10-11.

SeaWorld argues that Plaintiffs allegations still are insufficient and argues that *Tobacco II* cannot supplant Rule 9(b)'s pleading requirements.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  In *Kearns*, the court rejected the plaintiff's argument that Rule 9(b) did not apply to California's consumer protection statutes.  567 F.3d at 1125.  Plaintiffs do not dispute that proposition of law.  The *Kearns* court also concluded that the plaintiff had failed to plead his fraud-based claims with particularity, because "he did not specify what the television advertisements or other sales material specifically stated.  Nor did Kearns specify when he was exposed to them or which ones he found material.  Kearns also failed to specify which sales material he relied upon in making his decision to buy a CPO vehicle."  *Id.* at 1126.  SeaWorld argues that the Court must follow *Kearns* and conclude that Plaintiffs' allegations are deficient.

The Court concludes that *Tobacco II* can be reconciled with *Kearns*, if a plaintiff's allegations about an alleged "long-term advertising campaign" are sufficiently particular.  In addition, a plaintiff must allege facts about the campaign to show, in terms of "breadth and

United States District Court
Northern District of California

content," it would be not be "unreasonable to presume that all [putative] class members were exposed to" to the allegedly misleading representations and to show that it would be unrealistic for a plaintiff to prove reliance on a particular advertisement. *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (addressing *Tobacco II* in context of motion for class certification); *cf. Yastrab v. Apple, Inc.*, 173 F. Supp. 3d 972, 980 (N.D. Cal. 2016) (accepting that "under appropriate factual circumstances, … a representative consumer plaintiff may not be able to pinpoint the exact portion of a long-standing, widespread advertising campaign he or she relied on when purchasing a product," but finding that *Tobacco II* "does not, and indeed could not, supplant a federal plaintiff's obligation to describe that campaign with the particularity prescribed by Rule 9(b)").

Plaintiffs argue that they have cured the deficiencies identified in the Court's prior order and rely on *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962 (N.D. Cal. 2015). In *Opperman*, the court found that the plaintiffs had sufficiently alleged claims under the FAL, CAL and the CLRA based on a *Tobacco II* theory of reliance. *Id.* at 978-83. In reaching this conclusion, the court set forth "six factors … that bear on whether a plaintiff has pleaded an advertising campaign in accordance with" *Tobacco II*. *Id.* at 976.[2]

> First, a plaintiff must allege that she actually saw or heard the defendant's advertising campaign. Second the advertising campaign must be sufficiently lengthy in duration, and widespread in dissemination, that it would be unrealistic to require the plaintiff to plead each misrepresentation she saw and relied upon. Third, the plaintiff must describe in the complaint, and preferably attach to it, a representative sample of the advertisements at issue so as to adequately notify the defendant of the precise nature of the misrepresentation claim – what, in particular, the defendant is alleged to have said and how it is misleading. Fourth, the plaintiff must allege, and the court must evaluate, the degree to which the alleged misrepresentations contained within the advertising campaign are similar to each other. Fifth, each plaintiff must plead with particularity, and separately, when and how they were exposed to the advertising campaign, so as to ensure the advertisements were representations consumers were likely to have viewed, rather than representations that were isolated or more narrowly disseminated. And, finally, sixth, the court must be able to determine when a

---

[2]     The case law from which the *Opperman* court derived these factors is set forth in detail in the court's order granting an earlier motion to dismiss. *See Opperman v. Path, Inc.*, No. 14-cv-353-JST, Dkt. No. 471 at ECF pages 28-35.

plaintiff made his or her purchase or otherwise relied on a
defendant's advertising campaign, so as to determine which portion
of that campaign is relevant.

84 F. Supp. 3d at 976-77.

The *Opperman* court concluded that the plaintiffs' allegations were sufficient to rely on a *Tobacco II* theory.  In that case, the plaintiffs alleged that the campaign lasted for over five years, alleged they "viewed, heard, or read" the advertisements or statements at issue and provided examples of the advertising campaign that spanned "eighteen pages of" the complaint.  The court also found it significant that the allegations showed that the advertising campaign presented a "unified and consistent message."  *Id.* at 978-80.

In contrast, in *Haskins v. Symantec Corp.*, the court found the plaintiff's allegations were not sufficient to proceed on a *Tobacco II* theory.  No. 13-cv-01834-JST, 2014 WL 2450996, at *2 (N.D. Cal. June 2, 2014) ("*Haskins II*"), *aff'd*, -- Fed. Appx. --, 2016 WL 3391237 (9th Cir. June 20, 2016).  In that case, the plaintiff purchased antivirus software from the defendant, and she alleged that before she purchased the product, defendant's source code had been stolen. According to the plaintiff, the defendant failed to disclose that fact.  *See, e.g., Haskins v. Symantec Corp.*, No. 13-CV-01834-JST, 2013 WL 6234610, at *1 (N.D. Cal. Dec. 2, 2013) ("*Haskins I*"); *Haskins II*, 2014 WL 2450996, at *1.  The court found that the first and third *Opperman* factors weighed in plaintiff's favor, but it concluded that the remaining factors weighed against her.  For example, the plaintiff alleged the defendant's advertising became misleading shortly after the theft of the source code and about a year before she purchased the product at issue.  The court stated that the time period at issue fell "well short of the 'decades-long' campaign in *Tobacco II*." *Haskins II*, 2014 WL 2450996, at *2.

It also found that many of the alleged misrepresentations were contained "in press releases or industry documents that an average consumer would be unlikely to read."  *Id.* at *2.  The plaintiff did allege the defendant made representations in magazines and on websites.  However, the court distinguished *Tobacco II* on the basis that, in that case, the plaintiffs alleged that the defendants "made demonstrably false statements about the health and safety of cigarettes in their

United States District Court
Northern District of California

United States District Court
Northern District of California

1   advertising." *Id.*  In contrast, the plaintiff in *Haskins II* failed to identify how the alleged

2   representations were "rendered misleading by the source code theft." *Id.*  The court therefore

3   dismissed her claims under the UCL and the CLRA.

4          The plaintiffs in the *Hall* case also attempted to plead their claims based on a *Tobacco II*

5   theory.  The *Hall* court rejected those claims, because the plaintiffs did not allege "any advertising

6   or other statements by SeaWorld from before 2013." *Hall*, 2015 WL 9659911, at *4.  The court

7   also found that the statements at issue "were not even made in advertisements, let alone as part of

8   a pervasive advertising campaign of the sort at issue in *Tobacco II*." *Id.*; *see also id.* at *4 n.5

9   (stating that court need not fully resolve tension between *Kearns* and *Tobacco II*, "because the

10   FAC fails to adequately allege an advertising campaign that would implicate any lessened

11   pleading requirements").

12          Although *Opperman* is not binding, the Court finds the case provides a useful and reasoned

13   framework to determine whether a plaintiff's allegations are sufficient to proceed on a *Tobacco II*

14   theory.  Here, each Plaintiff alleges that he or she was "exposed" to the advertising campaign

15   regarding the "health and happiness of [SeaWorld's] captive orcas," in television commercials,

16   print advertisements, the Internet and/or other media outlets.  (SAC ¶¶ 18-21.)  These allegations

17   are similar to the allegations in *Opperman* that the plaintiffs "viewed, heard, or read [defendant]s

18   advertisements, or statements, in news reports, articles, blogs, … and/or received emails or other

19   communications" from the defendant.  These allegations are sufficient to satisfy the first

20   *Opperman* factor.  84 F. Supp. 3d at 978.

21          However, only Anderson and Nelson include allegations about when they were exposed to

22   the campaign.  For example, Anderson alleges that he has been exposed to the campaign, "since he

23   was a teenager," but there are no facts in the SAC regarding his current age and he does not

24   provide details of the year he was exposed to the campaign.  (SAC ¶ 18.)  Nelson alleges that she

25   has been "familiar" with SeaWorld from the early 1990's and has been exposed to the alleged

26   advertising campaign "for decades."  She also alleges her exposure "became more frequent," when

27   she moved to San Clemente, California in 2008.  (SAC ¶ 20.)  In the *Opperman* case, the court

28   found that the failure to "allege specific dates, or even timeframes, during which [the plaintiffs]

1   were exposed to the campaign," weighed against a finding that the allegations satisfied *Tobacco II*.

2   84 F. Supp. 3d at 982.  The Court finds the allegations are too vague to satisfy this *Opperman*

3   factor.

4          Plaintiffs do allege that the alleged campaign started in 1965 and lasted "[o]ver at least the

5   last four decades."  (SAC ¶ 32.)  Plaintiffs therefore allege facts that show the duration of the

6   campaign was akin to the duration of the campaign at issue in *Tobacco II*.  In comparison, other

7   courts have found campaigns that lasted over a period of months or which began shortly before a

8   plaintiff purchased a product are insufficient in duration to give rise to a *Tobacco II* type of

9   campaign.  *See, e.g, Haskins II*, 2014 WL 2450996, at *2; *Bronson v. Johnson & Johnson, Inc.*,

10  No. 12-cv-04184-CRB, 2013 WL 1629191, at *3 (N.D. Cal. Apr. 16, 2013) (granting motion to

11  dismiss for lack of standing and rejecting plaintiffs' reliance on *Tobacco II*, on the basis that "[a]t

12  best, Defendants' marketing campaign began in 2012, which is substantially less than the 'long-

13  term' campaign at issue in *Tobacco II* that lasted at least seven years").  As to the duration of the

14  campaign, the facts alleged would satisfy the second *Opperman* factor.

15         Plaintiffs also that SeaWorld "disseminated this public relations and marketing campaign

16  via public statements by employees, television shows, television commercials, a telephone

17  information line, print brochures, books, statements made to visitors at SeaWorld's parks, and the

18  Internet."  (Id. ¶ 32.)  However, Plaintiffs do not provide more specific detail about the frequency

19  with which the alleged representations were made, *i.e.*, the SAC does not include particular details

20  about the extent and pervasiveness of the advertising campaign.  *Cf. Committee on Children's*

21  *Television v. General Foods Corp.*, 35 Cal. 3d 197, 205-07 (1983), *superseded by statute on other*

22  *grounds* (describing an advertising campaign that was televised daily).

23         The third and fourth *Opperman* factors relate to the content of the advertising at issue,

24  which permits a court to evaluate the similarity of the alleged misrepresentations.  84 F. Supp. 3d

25  at 976.  Here, in contrast to the *Opperman* case, in which the alleged examples spanned eighteen

26  pages of the complaint, Plaintiffs, in one paragraph, provide six examples of the "types of

27  statements made by SeaWorld over the course of this decades-long campaign…."  (SAC ¶ 32.)

28  The examples provided in paragraph 32 are consistent with Plaintiffs' contention that SeaWorld

United States District Court
Northern District of California

12

has misrepresented that captivity is not harmful to orcas.  Yet, only one of Plaintiffs' examples is taken from a print advertisement and that example states only that it was for an exhibit called "Shamu's Happy Harbor."  None of the other examples are from a billboard, a television commercial, a radio commercial, or other print advertisements, which are the types of media upon which Plaintiffs allege they relied.  (*Compare* SAC ¶¶ 18-21 *with* SAC ¶ 32.)  *Cf. Hall*, 2015 WL 9659911, at *4 (concluding that plaintiffs had failed to allege facts show to reliance, and noting that many of the statements "were not even made in advertisements, let alone as part of a pervasive advertising campaign of the sort at issue in" *Tobacco II*).  This lack of detail prevents the Court from evaluating whether "the advertisements were representations consumers were likely to have viewed, rather than representations that were isolated or more narrowly disseminated." *Opperman*, 84 Fed. Supp. 3d at 976-77.

The Court has considered the *Opperman* factors, and it finds the allegations in this case are closer to the allegations in *Haskins* than to the allegations in *Opperman*.  The Court concludes that Plaintiffs have not alleged facts about SeaWorld's advertising campaign to show that in terms of breadth, content, and pervasiveness it would be appropriate to apply *Tobacco II* in this case.

Accordingly, the Court grants, in part, SeaWorld's motion to dismiss each of Plaintiffs' claims to the extent they are premised on the general representation that captivity is not harmful to orcas.  For the reasons set forth below in Section G, the Court dismisses, with prejudice, this aspect of the UCL, FAL, and CLRA claims.

**D.   The Court Dismisses, in Part, the CLRA Claim.**

**1.   Failure to State a Claim.**

SeaWorld argues that Plaintiffs fail to state a claim under the CLRA.  The CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *Id.* § 1760.  However, it "is not an otherwise applicable general law…. Rather than applying to all businesses, or to business transactions in general, the [CLRA] applies only to transactions for the sale or lease of consumer 'goods' or 'services' as those terms are defined in the act." *Fairbanks v. Superior Court*, 46 Cal. 4th 56, 65 (2009).

United States District Court
Northern District of California

The CLRA provides, in pertinent part, that:

> [t]he following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:
>
> (5) [r]epresenting that goods or services have … characteristics … uses, [or] benefits, … which they do not have…;
>
> (7) [r]epresenting that good or services are of a particular … quality … if they are of another; and
>
> (9) [a]dvertising goods or services with intent not to sell them as advertised[.]

Cal. Civ. Code §§ 1770(a)(5), (7), (9).

The term "goods" means "tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a party of real property, whether or not severable from the real property." Cal. Civ. Code § 1761(a).  The term "services" means "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." Cal. Civ. Code § 1761(b).

### a.     Claims Based on the Purchase of a Shamu Plush.

Anderson and Morizur base their CLRA claim, in part, on purchases of the Shamu Plush. (SAC ¶¶ 18, 21.) SeaWorld does not dispute that the Shamu Plush is a good.  It argues that Plaintiffs fail to state a claim under the CLRA, because they do not allege any misrepresentations that relate to the uses, benefits, nature, or qualities of the Shamu Plush.  The Court agrees.

Anderson and Morizur allege the Shamu Plush has "little utility other than serving as memorabilia of SeaWorld's entertainment and educational services. … By deceiving its customers as to the health and happiness of its captive orcas, SeaWorld is able to unfairly extract a higher price for the Shamu Plush and/or sell a greater number of these goods.  SeaWorld's misrepresentations, therefore, constitute a misrepresentation of the characteristics, uses, benefits and qualities of the Shamu Plush." (SAC ¶¶ 78, 80.)  In their opposition, Plaintiffs also focus on SeaWorld's alleged promotion of the Shamu Plush as a "symbol of the precious memories created

14

1   at SeaWorld."  (Opp. Br. at 9:17-19, citing SAC ¶ 78.)

2        Anderson and Morizur do not, however, allege they relied on the promotion of the Shamu

3   Plush as a symbol when they made their purchases.  Anderson alleges that he purchased the

4   Shamu Plush based on the representation that orca lifespans in captivity are equivalent to lifespans

5   in the wild and on the representation that SeaWorld does not separate orca calves from their

6   mothers.  (SAC ¶ 18.)  Morizur alleges that she purchased a Shamu Plush based on the

7   representations that collapsed dorsal fins are normal.  (SAC ¶ 21.)  These alleged

8   misrepresentations do not relate to "the characteristics, uses, benefits" or the qualities of the

9   Shamu Plush.

10        Accordingly, the Court grants, in part, SeaWorld's motion to dismiss the CLRA claim.

11   For the reasons set forth below in Section G, the Court dismisses, with prejudice, claims under the

12   CLRA based on the purchase of a Shamu Plush.

13         **b.**      **Claims Based on Admission to SeaWorld.**

14        Plaintiffs allege SeaWorld provides "educational and entertainment services," and they

15   allege "[i]n order for consumers to avail themselves of" those services, "they are required to

16   purchase admission tickets."  (SAC ¶ 1.)  The parties dispute whether the alleged "entertainment

17   and educational services" fall within the CLRA's definition of the term "services."[3]

18        The parties in the *Hall* case addressed the issue of whether the plaintiffs stated a CLRA

19   claim based on ticket purchases.  There, the plaintiffs argued, as Plaintiffs do here, that

20

21       [3]     Plaintiffs argue that "courts have recognized that CLRA claims may be brought for

22   entertainment services."  (Opp. Br. at 8:12-13.)  To support this argument, they on *Princess Cruise Lines, Ltd. v. Superior Court*, 179 Cal. App. 4th 36 (2009) and *Harris v. Las Vegas Sands, LLC*,

23   No. 12-cv-10858-DMG, 2013 WL 5291142 (C.D. Cal. Aug. 16, 2013).  In *Princess Cruise Lines*, the plaintiffs sued about representations made regarding charges added to the price of shore

24   excursions during a cruise.  179 Cal. App. 4th at 38-39.  The issues in that case related to whether the plaintiffs were required to and had demonstrated reliance.  *Id.* at 42-46.  In *Harris*, the plaintiff

25   alleged the defendant failed to disclose that additional fees charged for hotel rooms.  2013 WL 5291142, at * 2-3.  The court dismissed the CLRA claim, because it found the alleged

26   misrepresentation was not misleading.  The courts in those cases were not called upon to address the issue here, whether the plaintiffs alleged that they purchased "goods" or "services," as the

27   terms are defined in the CLRA.  "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not be to be considered as having been so decided as to

28   constitute precedents."  *Webster v. Fall*, 266 U.S. 507, 511 (1925).

United States District Court
Northern District of California

1    "SeaWorld's amusement park products are plainly entertainment services." *Hall,* 2015 WL

2    9659911, at *14 (internal quotations and citations omitted).  The *Hall* court rejected that argument,

3    noted the lack of authority on this issue, and relied on two cases that addressed whether timeshare

4    points qualified as services under the CLRA.  *Id.*, 2015 WL 9659911, at *15 (citing *Kissling v.*

5    *Wyndham Vacation Resorts, Inc.*, No. 15-cv-04004-EMC, 2015 WL 7283038, at *5 (N.D. Cal.

6    Nov. 18, 2015) and *Wixon v. Wyndham Resort Dev. Corp.*, NO. 07-cv-02361, 2008 WL 1777590,

7    at *4 (N.D. Cal. Apr. 18, 2008)).  The court reasoned that "to hold that the tickets, or more

8    specifically the admission to the parks that the tickets provide, constitute a service requires a

9    strained and unnatural construction of the term," and it dismissed the CLRA claim with prejudice.

10   *Id.*  Although SeaWorld urges the Court to follow *Hall*, the Court disagrees, respectfully with its

11   reasoning and conclusion.

12          The California Supreme Court has not addressed whether admission to a theme park like

13   SeaWorld is a "service."  This Court must apply "California law as [it believes] the California

14   Supreme Court would apply it."  *In re KF Dairies, Inc. & Affiliates*, 224 F.3d 922, 924 (9th Cir.

15   2000).  Because this dispute involves the proper interpretation of a statute, the Court begins, as it

16   must, "with the language of the statute itself."  *United States v. Ron Pair Enterprises, Inc.*, 489

17   U.S. 235, 241 (1989).  The term "services" means "work, labor, and services for other than a

18   commercial or business use, in connection with the sale or repair of goods."  The dispute centers

19   on whether the alleged "entertainment and education services" fall within the scope of the phrase

20   "services for other than a commercial or business use."[4]  Based on the plain language of the

21   statute, the Court finds that phrase is broad enough to encompass "educational and entertainment"

22   services.

23

24   _____

     [4]      Plaintiffs do not argue that SeaWorld sold them services "in connection with the sale or
25   repair of goods."  They do argue that by providing "educational and entertainment services,"
     SeaWorld sells "work" and "labor" to consumers.  (Opp. Br. at 7:16-17.)  The *Fairbanks* court
26   rejected a similar argument and found that the "work or labor of insurance agents and other
     insurance companies in helping consumers select policies and meet their needs" were not services
27   that were "sufficient to bring life insurance within the reach" of the CLRA.  46 Cal. 4th at 65.  The
     Court similarly concludes that any "work" or "labor" at issue would be ancillary to the core
28   services at issue, which are SeaWorld's "entertainment and educational services."

United States District Court
Northern District of California

United States District Court
Northern District of California

1          SeaWorld argues, however, that the legislative history shows that the legislature did not

2   intend to include "education" or "entertainment" as services covered by the CLRA, and it relies on

3   *Fairbanks* to support this argument.  In *Fairbanks*, the California Supreme Court held life

4   insurance was not a "service," because an "insurer's contractual obligation to pay money under a

5   life insurance policy is not work or labor, nor is it related to the sale or repair of any tangible

6   chattel."  46 Cal. 4th at 61.  As is evident, the *Fairbanks* court neither expressly addressed nor

7   analyzed the phrase "services for other than a commercial or business use."  The Court "must

8   interpret statutes as a whole, giving effect to each word and making every effort not to interpret a

9   provision in a manner that renders other provisions of the same statute inconsistent, meaningless

10  or superfluous."  *Boise Cascade Corp. v. U.S. EPA*, 942 F.2d 1427, 1432 (9th Cir. 1991); *see also*

11  *California Ass'n of Psychology Providers v. Rank*, 51 Cal. 3d 1, 11 (1991) ("*Rank*").  Because the

12  *Fairbanks* court did not clearly interpret this phrase, out of an "abundance of caution" the Court

13  will examine the legislative history of the CLRA.  *See id.* at 61.

14         The legislative history demonstrates that the CLRA was intended to affect "only those

15  transactions between sellers and consumers of goods or services.  It is not intended to affect

16  transactions between businessmen."  (Dkt. No. 87-1, Declaration of Lindsey Barnhart, Ex. F,

17  Legislative History of CLRA, Governor's Chaptered Bill File at p. 9 (ECF p. 69)).  This statement

18  gives meaning to the phrase "services for other than a commercial or business use," in that it

19  explains the term "services" was not intended to cover transactions between businessmen.

20         In support of its construction of the term "services," SeaWorld also relies on the fact that

21  the CLRA was "adapted" from a model National Consumer Act.  *See Fairbanks*, 46 Cal. 4th at 61.

22  The model act defined "services" as "(a) work, labor, and other personal services, (b) privileges

23  with respect to transportation, hotel and restaurant accommodations, education, entertainment,

24  recreation, physical culture, hospital accommodations, funerals, cemetery, accommodations, and

25  the like and (c) insurance."  *Id.* (quoting National Consumer Act (Nat. Consumer L. Center 1970)

26  § 1.301, subd. (37), pp. 23-24, emphasis in *Fairbanks* omitted).  In *Fairbanks*, the court noted that

27  the legislature excluded the term "insurance" from the definition of services, which demonstrated

28  an "intent *not* to treat all insurance as a service under" the CLRA.  *Id.* (emphasis in original).

United States District Court
Northern District of California

1    In reaching this conclusion, the *Fairbanks* relied on the principle that "[t]he rejection by

2    the Legislature of a specific provision contained in an act as originally introduced is most

3    persuasive to the conclusion that the act should not be construed to include the omitted provision."

4    *Berry v. American Express Publishing, Inc.*, 147 Cal. App. 4th 224, 230 (2007); *see also Hughes*

5    *Electronics Corp. v. Citibank Delaware*, 120 Cal. App. 4th 251, 268 (2004) ("Typically, when a

6    Legislature models a statute after a uniform act, but does not adopt the particular language of that

7    act, courts conclude the deviation was deliberate and that the policy of the uniform act was

8    rejected.").

9    SeaWorld argues that that a similar result should follow here.  Because the legislature

10   excluded subsection (b) of the model act from the CLRA, it did not intend for "privileges with

11   respect to transportation, hotel and restaurant accommodations, education, entertainment,

12   recreation, physical culture, hospital accommodations, funerals, cemetery, accommodations, and

13   the like," to fall within the CLRA's definition of "services."  The Court is not persuaded.  The

14   principle on which SeaWorld relies will not apply if, for example, "the specific language is

15   replaced by general language that includes the specific instance."  *Rank*, 51 Cal. 3d at 17-18.  The

16   Legislature not only omitted subsection (b) of the model act, it also omitted the term "personal

17   services," and substituted the phrase "services for other than a commercial or business use,

18   including services furnished in connection with the sale or repair of goods."  The latter phrase

19   comprises general language that could encompass the specific instances described in subsection

20   (b) of the model act.  *Cf. Walsh v. Kindred Healthcare*, 798 F. Supp. 2d 1073, 1089 (N.D. Cal.

21   2011) (health services provided by skilled nursing facilities fall within CLRA's definition of

22   "services").

23   The *Fairbanks* court also did not rely solely on this principle of statutory construction to

24   reach its conclusion that insurance is not a "service" under the CLRA.  It found the legislative

25   intent to exclude insurance from the CLRA's coverage was "further confirmed by comparing the

26   [CLRA's] definition of 'services' with the definition of the same word in the Unruh Act (Civ.

27   Code § 1801 et seq.)."  46 Cal. 4th at 62.  The Unruh Act defined services as "work, labor and

28   services, for other than a commercial or business use, including services furnished in connection

with the sale or repair of goods as defined in Section 1802.1 … *or the providing of insurance.*"  *Id.* (citing Cal. Civ. Code § 1802.2) (emphasis added).  The *Fairbanks* court relied on the principle of statutory construction that "[t]he use of differing language in otherwise parallel provisions supports an inference that a difference in meaning was intended."  *Id..*  Here, there is no language in the pertinent portions of the CLRA and the Unruh Act that might lead to a conclusion that the legislature did not intend the CLRA to cover "entertainment" or "education" as "services."

Accordingly, the Court concludes that the term "services" encompasses the "educational and entertainment services" Nelson alleges she purchased from SeaWorld.[5]  Nelson alleges that, before she purchased admission to SeaWorld, she saw and relied on the representations that SeaWorld did not separate calves from their mothers and that captive orcas had similar lifespans to orcas in the wild."  (*Id.* ¶ 20.)  Nelson alleges these representations are false, because captive orcas have higher mortality rates and because SeaWorld does separate calves from mothers.  (*Id.* ¶¶ 25, 30-31.)  Nelson alleges these statements mislead "reasonable consumers to believe that" SeaWorld's education and entertainment services, "including the orca exhibitions and shows, feature happy, healthy orcas," and, as a result, "deceive consumers regarding the true nature of the entertainment and educational services SeaWorld sells."  (*Id.* ¶ 77.)  The Court concludes that these allegations are sufficient to allege that SeaWorld represented that its entertainment services had characteristics that it did not have.  *See* Cal. Civ. Code § 1770(a)(5).

Accordingly, the Court denies, in part, SeaWorld's motion to dismiss Nelson's CLRA claim.

**2.      Pre-Suit Notice.**

Sea World also argues that the Court must dismiss Nelson's claims for restitution under the CLRA, because she failed to comply with the pre-suit notice requirements of California Civil Code sections 1782(a)(1) and 1782(a)(2).  (*See* Declaration of Lawrence Y. Iser, ¶¶ 2-3, Exs. A-B (letters referencing Anderson and Conway only).)  Nelson responds that this argument is

---

[5]      Because the Court has disposed of the CLRA claim to the extent it is based on the alleged advertising campaign, Nelson is the only Plaintiff left with a CLRA claim based admission to SeaWorld.

1    premature, because she has not included any claims for restitution under the CLRA in the SAC.

2    Nelson asserts she will file a third amended complaint, once the thirty-day notice period has run.

3    As of the date of this Order, the thirty-day notice period has elapsed, and Nelson has not filed a

4    third-amended complaint.  Because none of the Plaintiffs have asserted a request for restitution

5    under the CLRA, the Court denies, without prejudice, SeaWorld's motion to dismiss Nelson's

6    CLRA claim on this basis.  (*See* SAC ¶ I.)  If Nelson asserts a claim for restitution in a third

7    amended complaint, SeaWorld may argue the sufficiency of the notice in a subsequent motion to

8    dismiss.

9    **E.    The Court Dismisses, in Part, Anderson's UCL and FAL Claims.**

10         SeaWorld also argues that Anderson does not have standing to pursue a UCL or an FAL

11   claim based on allegations that he purchased his tickets in reliance on the statements that orca

12   lifespans in captivity are equivalent to life spans in the wild and that SeaWorld does not separate

13   calves from its mothers.  Anderson does not dispute that he did not purchase his tickets in reliance

14   on those statements.  (*See* SAC ¶ 18; Dkt. No. 87, Opp. Br. at 14 n.9.)  Therefore, he lacks

15   statutory standing to pursue these claims.

16         Accordingly, the Court GRANTS, IN PART, SeaWorld's motion to dismiss on that limited

17   basis.  However, Anderson's UCL and FAL claims may proceed to the extent they are based on

18   his purchase of a Shamu Plush.

19   **F.    The Court Dismisses, in Part, Morizur's FAL and UCL Claims.**

20         SeaWorld moves to dismiss Ms. Morizur's FAL and UCL claims to the extent they are

21   based on her allegation that she asked "SeaWorld's trainers questions about their captive orca's

22   collapsed dorsal fins."  (SAC ¶ 21.)  Ms. Morizur alleges that the trainers told her that the

23   collapsed dorsal fins were "normal, and also equally common in the wild.  They also told Ms.

24   Morizur that captivity in general does not harm orcas."  (*Id.*)  SeaWorld argues that these

25   statements do not qualify as advertisements and, thus, cannot support a claim under the FAL.

26   SeaWorld also argues that to the extent Ms. Morizur's UCL claim is premised on this alleged

27   violation of the FAL, the claim cannot succeed.  In its prior order, the Court found Ms. Morizur

28   had sufficiently alleged standing to pursue these claims based on her reliance on those statements.

United States District Court
Northern District of California

1    However, SeaWorld did not raise the issue presented here, namely whether these allegations

2    would be sufficient to state a claim under the FAL.

3         "An actionable statement under FAL requires that a statement must be (1) widely

4    disseminated to the public and (2) for the purpose of influencing consumers to purchases goods or

5    services." *See, e.g., In re Jamster Mktg. Litig.*, No. 05-cv-0819JM (CAB), 2009 WL 1456632, at

6    *9 (S.D. Cal. May 22, 2009); Cal. Bus. & Prof. Code § 17500 ("It is unlawful for any …

7    corporation…, or any employee thereof with intent directly or indirectly to dispose of real or

8    personal property or to perform services, professional or otherwise, … to make or disseminate or

9    cause to be made or disseminated before the public in this state, …, in any newspaper or other

10   publication, or any advertising device, or by public outcry or proclamation, or in any other manner

11   or means whatever, …any statement, concerning that real or personal property or those services,

12   professional or otherwise… which is untrue or misleading, and which is known, or which by the

13   exercise of reasonable care should be known, to be untrue or misleading."). The Court concludes

14   that Ms. Morizur has not alleged sufficient facts to show that the statements at issue were "widely

15   disseminated to the public."

16        Accordingly, the Court grants, in part, SeaWorld's motion to dismiss on this basis. For the

17   reasons set forth in Section G, the Court denies Ms. Morizur a further opportunity to amend these

18   claims.

19   **G.    The Court Denies Plaintiffs Leave to File a Third Amended Complaint.**

20        As stated at the outset of this Order, the SAC is the fourth iteration of Plaintiffs' complaint.

21   In general the Court should grant leave to amend liberally. However, Plaintiffs amended their

22   claims once as a matter of right. Plaintiffs submitted a proposed second amended complaint,

23   which the Court considered in connection with SeaWorld's first motion to dismiss. The Court

24   found the proposed SAC did not cure many of the deficiencies identified by SeaWorld in its

25   motion, including the allegations regarding reliance SeaWorld's advertising campaign. The Court

26   has found that Plaintiffs have not cured those deficiencies. The Court also stated that it had

27   serious concerns about the viability of Plaintiffs' claims under the CLRA, and it has now

28   dismissed a large portion of that claim. For these reasons, except as otherwise noted with regard

21

Ms. Nelson's potential claim for restitution under the CLRA, the Court denies Plaintiffs a further opportunity to amend.

## CONCLUSION

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, SeaWorld's motion to dismiss.  Mr. Anderson and Ms. Nelson may pursue the claims under the FAL and the UCL.  Ms. Morizur may pursue the UCL claim to the extent it is premised on the "unfair" prong of that statute.  Finally, Ms. Nelson may pursue the claim under the CLRA.  The parties shall appear for an initial case management conference on December 9, 2016 at 11:00 a.m., and they shall file a joint case management statement on December 2, 2016.

**IT IS SO ORDERED.**

Dated: November 7, 2016

_____

JEFFREY S. WHITE
United States District Judge