# EXHIBIT A

Christine Saunders Haskett (Bar No. 188053)
Tracy O. Zinsou (Bar No. 295458)
Udit Sood (Bar No. 308476)
Lindsey Barnhart (Bar No. 294995)
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, California 94111-5356
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: chaskett@cov.com; tzinsou@cov.com; usood@cov.com; lbarnhart@cov.com

*Attorneys for Plaintiffs*
*Marc Anderson, ~~Ellexa Conway,~~Kelly Nelson and Juliette Morizur*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| MARC ANDERSON, ~~ELLEXA CONWAY,~~ KELLY NELSON and JULIETTE MORIZUR on their own behalf and on behalf of a class of others similarly situated, | Civil Case No.: 4:15-cv-02172-JSW |
| Plaintiffs, | ~~SECOND~~THIRD **AMENDED CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| SEAWORLD PARKS AND ENTERTAINMENT, INC., | |
| Defendant. | |

Plaintiffs Marc Anderson, ~~Ellexa Conway,~~ Kelly Nelson and Juliette Morizur (collectively, "Plaintiffs"), by and through their attorneys, bring this class action on behalf of themselves and similarly situated others who, relying on certain false representations, purchased tickets or orca souvenirs from SeaWorld Parks & Entertainment, Inc. ("SeaWorld" or "Defendant"), which owns, operates and markets SeaWorld San Diego, a captive marine animal theme park, and state as follows:

---

~~SECOND AMENDED CLASS ACTION COMPLAINT~~THIRD AMENDED CLASS ACTION COMPLAINT

Civil Case No.: 4:15-cv-02172-JSW

## INTRODUCTION

1.      SeaWorld is an entertainment company that, among other things, owns and operates a number of marine animal theme parks, including SeaWorld San Diego.  SeaWorld is in the business of selling entertainment and educational services, including its orca exhibitions and shows, and selling souvenirs linked to those entertainment and educational services.  In order for consumers to avail themselves of SeaWorld's entertainment and educational services, they are required to purchase admission tickets.  As part of a marketing campaign to induce ticket and souvenir purchases, SeaWorld has made, continues to make, and profits off of false and misleading statements concerning the welfare of their captive orcas.

2.      Orcas are a core SeaWorld San Diego attraction.  SeaWorld's logo features two erect cetacean[1] dorsal fins, and "Shamu" is one of SeaWorld's most valuable and globally recognized brands.  Shamu was the name of an orca captured in October 1965 and sold to SeaWorld in December 1965.  Although Shamu died after only about six years in captivity, SeaWorld starting naming other orcas Shamu (and even named its souvenirs "Shamu Plush") in an endeavor to continue capitalizing on the goodwill associated with the deceased orca.

3.      Unlike many other theme park businesses, SeaWorld markets itself as a corporation with an environmental and animal welfare purpose.  It characterizes its entertainment as an "interactive and educational experience that blend[s] imagination with nature and enable[s] our customers to celebrate, connect with, and care for the natural world we share."[2]  SeaWorld claims to be "one of the world's foremost zoological organizations and a global leader in animal welfare, training, husbandry and veterinary care."[3]

4.      SeaWorld has engaged in a pervasive, long-term advertising campaign to mislead the public about its care for captive orcas and conceal the detrimental health effects that captivity has on orcas.

---

[1] The order Cetacea includes whales, dolphins, and porpoises. Orcas are a type of dolphin.
[2] *SeaWorld Entertainment, Inc. and Subsidiaries Annual Report on Form 10-K for the Year Ended December 31, 2013*, page 3.
[3] *Id.*

SECONDTHIRD AMENDED CLASS ACTION
COMPLAINT

Civil Case No.: 4:15-cv-02172-JSW

5.      SeaWorld's practices and countless studies demonstrate that SeaWorld's statements regarding the care and health of their captive orcas are false and misleading.  Orcas are large, highly intelligent, and extremely social predators.  Yet SeaWorld's orcas live significantly shorter lives than their wild counterparts; complete dorsal fin collapse is generally quite rare in the wild but extremely common, if not universal, among captive male orcas; and SeaWorld often separates tightly knit orca families, causing psychological harm and leading to maladaptive behaviors.  In sum, captivity at SeaWorld harms orcas.

6.      SeaWorld's advertising is dominated by images and quotes touting SeaWorld's animal-friendly mission.  The overwhelming perception is that far from harming captive orcas, SeaWorld's programs benefit all marine life.

7.      SeaWorld's advertising misleadingly creates the perception that orcas as a species are generally benefited by SeaWorld's rehabilitative programs, scientific studies, and educational activities, and that the individual orcas it holds in captivity are as healthy and stimulated as their wild counterparts.  For example, on its website, SeaWorld carefully deploys imagery of marine mammal rehabilitation juxtaposed with photos of supposedly playfully swimming and jumping orcas.

8.      SeaWorld also claims that scientific data are inconclusive or judiciously cites academic articles to show that captive orcas are as healthy as wild orcas.  For example, in response to the documentary film *Blackfish*, which was released in January 2013 and focused on the negative effects of the captivity of orcas, SeaWorld has posted an open letter, a series of video interviews with caretakers, and a scene-by-scene rebuttal that all generally argue the untruth that SeaWorld orcas are not hurt by captivity.

9.      Even SeaWorld's logo misrepresents the effects that captivity has on orcas and so misleads consumers. The logo is a stylized profile of two straight dorsal fins in an active and dynamic pose.  In reality, as noted above, virtually all of the male captive orcas at SeaWorld's parks suffer from dorsal fin collapse due to their listless existence.

10.      SeaWorld's marketing efforts conceal its mistreatment of orcas.  For example, SeaWorld San Diego's home page features a prominent photo and link titled "Our Care for Killer Whales."  The link takes visitors to an open letter which states that the lifespans of SeaWorld's orcas are "equivalent

3

with those in the wild" and that SeaWorld does not separate orca mothers from calves.  In another location, SeaWorld's website misleads consumers into believing that dorsal fin collapse is common among wild male orcas, citing a scholarly paper.  On a page titled "Truth about *Blackfish*," SeaWorld states that it is "wrong" that "life at SeaWorld is harmful for killer whales."

11.     These claims are misleading if not outright lies.  Conveyed to purchasers through the website, and disseminated to Plaintiffs and the public at large through promotional materials and emails, SeaWorld's false statements are misleading to reasonable consumers.

12.     Plaintiffs and members of the proposed class purchased from SeaWorld tickets to attend SeaWorld San Diego and/or orca souvenirs while at SeaWorld San Diego, in reliance on SeaWorld's false and misleading representations.  SeaWorld has directed its false and misleading representations about the health and happiness of its captive orcas in print advertising, television commercials, the Internet, and other media outlets to Plaintiffs and members of the proposed class.  Absent SeaWorld's misrepresentations about captive orca care and health, Plaintiffs and members of the proposed class would not have purchased the tickets or souvenirs from SeaWorld (or would have paid far less for the same).

13.     Plaintiffs bring this action on behalf of themselves and all other similarly situated consumers to halt SeaWorld's dissemination of false and misleading statements and correct the false and misleading perception created by SeaWorld on its website.  Plaintiffs seek injunctive relief for all consumers who purchased SeaWorld tickets and/or orca souvenirs in reliance on SeaWorld's representations concerning orca welfare.  Plaintiffs further seek monetary relief in their individual capacities based on their purchase of tickets to SeaWorld San Diego and/or orca souvenirs at SeaWorld San Diego in reliance on SeaWorld's representations concerning orca welfare.

## JURISDICTION AND VENUE

14.     Plaintiffs dispute the Court's subject matter jurisdiction.  Plaintiffs originally brought suit in April 2015, in the Superior Court of the State of California for the City and County of San Francisco.  On May 14, 2015, SeaWorld removed the suit to the Northern District of California under the Class Action Fairness Act.  Plaintiffs filed a motion to remand on May 29, 2015, which was denied on September 24, 2015.  On October 5, 2015, Plaintiffs filed a motion seeking leave to file a motion for

4

reconsideration of the order denying remand. The Court granted Plaintiffs leave on October 14, 2015, and Plaintiffs filed a motion for reconsideration on October 29, 2015. On January 12, 2016, the Court granted, in part, and denied, in part, Plaintiffs' motion for reconsideration of the order denying remand. To the extent the Court denied reconsideration, Plaintiffs filed a Petition for Permission to Appeal before the Ninth Circuit on January 22, 2016. On April 7, 2016, the Ninth Circuit denied Plaintiffs' Petition.

15.    The total amount of injunctive relief and attorneys' fees for Plaintiffs and all class members as a whole does not exceed the $5,000,000 jurisdictional requirement for the original filing of this action in the United States District Court pursuant to 28 U.S.C. § 1332(d)(2) or the removal of this action to the United States District Court pursuant to 28 U.S.C. § 1441.

16.    Further, the amount of individual restitution, injunctive relief, and attorneys' fees awardable to Plaintiffs pursuant to this action is below the $ 75,000 jurisdictional requirement for the original filing of this action in the United States District Court pursuant to 28 U.S.C. § 1332(a) or the removal of this action to the United States District Court pursuant to 28 U.S.C. § 1441.

17.    Venue is proper. Liability in this case arose in the Northern District of California because SeaWorld conducts business there, SeaWorld's false representations were made to Plaintiffs there, and Plaintiff Anderson purchased tickets to SeaWorld San Diego there. A substantial or significant portion of the wrongful conduct complained of has occurred and continues to occur within this District. *See* Ex. A.

## PARTIES

18.    Plaintiff Marc Anderson resides in San Francisco County. Mr. Anderson has a reasonable but firm commitment to animal welfare, and does not purchase tickets to zoos, amusement parks, aquariums, circuses, or other organizations that do not have the facilities to properly care for their animals or that display animals that cannot safely and healthfully be kept in captivity. Since he was a teenager, Mr. Anderson has been exposed to SeaWorld's deceptive long-term advertising campaign regarding the health and happiness of its captive orcas in television commercials depicting happy and healthy orcas, in print advertisements, and/or on the Internet. In reliance on the representations made by SeaWorld as part of its deceptive long-term advertising campaign, Mr. Anderson purchased two tickets

5

to SeaWorld San Diego from SeaWorld's website in March or April 2014, using his computer in San Francisco.  Additionally, after purchasing the tickets to SeaWorld San Diego but prior to visiting the park, Mr. Anderson read on SeaWorld's website that orca lifespans in captivity are comparable to orca lifespans in the wild and that SeaWorld does not separate calves from mother orcas.  SeaWorld's representations assured him that SeaWorld takes good care of its orcas.  Mr. Anderson visited the park on or around June 11, 2014, and in reliance on both SeaWorld's deceptive long-term advertising campaign and the specific representations SeaWorld made on its website, Mr. Anderson paid SeaWorld San Diego's Shamu Store approximately $25 to purchase a "Shamu Plush" (a stuffed orca souvenir).  Mr. Anderson only found out subsequently, when he saw the *Blackfish* documentary in or around March of 2015, that SeaWorld's advertising and representations were false.  Had Mr. Anderson been aware that SeaWorld's advertisements were a misrepresentation of the truth—and had he known that SeaWorld does not take good care of its orcas, that it separates calves from mother orcas, and that its orcas did not have lifespans comparable to orcas in the wild—he would not have purchased tickets to SeaWorld San Diego to avail himself of SeaWorld's entertainment and educational services nor the Shamu Plush (or would have paid far less for them).  Mr. Anderson suffered an injury in fact by losing the money associated with his purchases and by supporting what, absent SeaWorld's misrepresentations, Mr. Anderson would have correctly understood to be the inhumane treatment of a highly intelligent and social animal.  Moreover, Mr. Anderson continues to suffer injury as he cannot be sure about the veracity of SeaWorld's claims.  Mr. Anderson may consider purchasing tickets to SeaWorld and merchandise like the Shamu Plush again in the future if SeaWorld's practices were to evolve to better reflect their stated purposes of conservation and education, and to be honest about the health and status of the orcas.

19.     Plaintiff Ellexa Conway resides in San Francisco County.  Ms. Conway has a reasonable but firm commitment to animal welfare, and does not purchase tickets to zoos, amusement parks, aquariums, circuses, or other organizations that do not have the facilities to properly care for their animals or that display animals that cannot safely and healthfully be kept in captivity.  Ms. Conway has been exposed to SeaWorld's deceptive long-term advertising campaign regarding the health and happiness of its captive orcas in print advertising, television

6

SECONDTHIRD AMENDED CLASS ACTION COMPLAINT                    Civil Case No.: 4:15-cv-02172-JSW

commercials, and/or on the Internet, and during a previous visit to SeaWorld in 2012.  In November 2014, in reliance on the representations made by SeaWorld as part of its deceptive long-term advertising campaign, Ms. Conway purchased two tickets to SeaWorld San Diego from a ticket machine at the park.  SeaWorld's marketing campaign assured her that SeaWorld takes good care of its orcas.  She visited the park around November 2014, and only found out subsequently in December 2014 that SeaWorld's representations were false when she watched the *Blackfish* documentary.  Had Ms. Conway been aware that SeaWorld's advertisements were a misrepresentation of the truth regarding captive orca health, she would not have purchased tickets to SeaWorld San Diego to avail herself of SeaWorld's entertainment and educational services (or would have paid far less for them).  Ms. Conway suffered an injury in fact by losing the money associated with her purchase and by supporting what, absent SeaWorld's misrepresentations, Ms. Conway would have correctly understood to be the inhumane treatment of a highly intelligent and social animal.  Additionally, Ms. Conway continues to suffer injury: she values the opportunity to enjoy the kind of animal entertainment and education SeaWorld provides, but given SeaWorld's past practices of deceit, Ms. Conway cannot be sure about the veracity of SeaWorld's claims.  Ms. Conway may consider purchasing tickets to SeaWorld San Diego again in the future if SeaWorld's practices were to evolve to improve the level of animal care, and to be honest about the health and status of the orcas.

**19.**   20. Plaintiff Kelly Nelson resides in San Clemente, California.  Since at least the early 1990s, Ms. Nelson has been familiar with SeaWorld, and for decades has been exposed to SeaWorld's deceptive long-term advertising campaign regarding the health and happiness of its captive orcas in television commercials, print advertisements, billboards, radio, the Internet, and/or other media outlets.  After moving to San Clemente, California in 2008, Ms. Nelson's exposure to SeaWorld's deceptive advertising campaign, particularly in print media, billboards, and/or the radio, became more frequent.  In August 2015, Ms. Nelson purchased a ticket to SeaWorld San Diego from the ticket counter at the park's entrance.  Prior to purchasing her ticket, Ms. Nelson had watched *Blackfish* and was aware of the controversy surrounding SeaWorld's captive orcas.  However, Ms. Nelson had seen SeaWorld's statements, on its website as well as on television, disputing the allegations of mistreatment of the orcas

SECOND**THIRD** AMENDED CLASS ACTION
COMPLAINT                                                                    Civil Case No.: 4:15-cv-02172-JSW

raised in *Blackfish*. In particular, Ms. Nelson had seen SeaWorld's claims that it did not separate calves and mothers, and that its captive orcas had similar lifespans to orcas in the wild. Relying in good faith on SeaWorld's claims countering *Blackfish*, and on SeaWorld's long-standing advertising campaign regarding the health and happiness of its captive orcas, Ms. Nelson decided to purchase a ticket and visit the park. However, after witnessing the animals perform for the audiences (including the orca show) and doing additional research online following her visit, Ms. Nelson became convinced that SeaWorld was solely a profit-motivated entertainment corporation and not one dedicated, contrary to its claims, to the conservation of animals. Ms. Nelson was also convinced that SeaWorld did in fact separate orca calves and mothers and SeaWorld's orcas do not live as long as those in the wild. Ms. Nelson discovered the falsity of SeaWorld's claims only after spending money to purchase her ticket. Had Ms. Nelson been aware that SeaWorld's advertisements were a misrepresentation of the truth regarding captive orca health, she would not have purchased tickets to SeaWorld San Diego to avail herself of SeaWorld's entertainment and educational services (or would have paid far less for the same). Ms. Nelson suffered an injury in fact by losing the money associated with her purchase and by supporting what, absent SeaWorld's misrepresentations, Ms. Nelson would have correctly understood to be the inhumane treatment of a highly intelligent and social animal. Additionally, Ms. Nelson continues to suffer injury as she cannot be sure about the veracity of SeaWorld's claims. Ms. Nelson may consider purchasing tickets to SeaWorld San Diego again in the future if SeaWorld's practices were to evolve to better reflect their stated purposes of conservation and education, and to be honest about the health and status of the orcas.

**20.** ~~21.~~ Plaintiff Juliette Morizur resides in Mountain View, California. On April 11, 2012, Ms. Morizur visited SeaWorld San Diego. While at the park, Ms. Morizur visited the orca show and specifically asked SeaWorld's trainers questions about their captive orca's collapsed dorsal fins. SeaWorld employees told Ms. Morizur that that was normal, and also equally common in the wild. They also told Ms. Morizur that captivity in general does not harm orcas. Additionally, Ms. Morizur had previously been exposed to SeaWorld's deceptive long-term advertising campaign regarding the health and happiness of its captive orcas in television commercials, print advertisements, the Internet, and/or other media outlets. While still at the park, and relying on these representations, Ms. Morizur

8

paid SeaWorld San Diego's Shamu Store approximately $25 to purchase the Shamu Plush as a souvenir. Ms. Morizur subsequently learned that SeaWorld's representations about its orcas were false when she saw the *Blackfish* documentary shortly after it was released in 2013.  Had Ms. Morizur been aware that SeaWorld's statements were a misrepresentation of the truth, she would not have purchased the Shamu Plush (or would have paid far less for it).  Ms. Morizur suffered an injury in fact by losing the money associated with her purchase and by supporting what, absent SeaWorld's misrepresentations, Ms. Morizur would have correctly understood to be the inhumane treatment of a highly intelligent and social animal.  Additionally, Ms. Morizur continues to suffer injury as she cannot be sure about the veracity of SeaWorld's claims.  Ms. Morizur may consider purchasing SeaWorld's merchandise like the Shamu Plush again in the future if SeaWorld's practices were to evolve to better reflect their stated purposes of conservation and education, and to be honest about the health and status of the orcas.

**21.**     ~~22.~~ Defendant SeaWorld is a Delaware corporation with principal executive offices in Orlando, Florida.  SeaWorld owns and operates a captive marine animal themed amusement park in California, called SeaWorld San Diego. At all relevant times, SeaWorld has marketed its brand and amusement parks to individuals throughout the world, and specifically in California.  SeaWorld broadly sells tickets online, and specifically has sold tickets to individuals in San Francisco County, including to Plaintiffs.

<b>FACTUAL BACKGROUND</b>

**22.**     ~~23.~~ In January of 2013, the documentary film *Blackfish* premiered at the Sundance Film Festival in Park City, Utah.  It focused on the story of one of SeaWorld's orcas, Tilikum, and the controversy surrounding the captivity of orcas and Tilikum's lethal attack against a SeaWorld trainer. Critical of SeaWorld, the film sparked a media flurry.  In response to the film, SeaWorld issued public statements, an open letter, and posted interviews and testimonials on its website attempting to rebut one of the central claims of *Blackfish* — that captivity is harmful to orcas.

**23.**     ~~24.~~ Many of SeaWorld's statements concerning orcas are false and misleading to reasonable consumers.  In particular, SeaWorld repeatedly makes four false and misleading claims designed to protect its brand and persuade consumers to buy tickets to SeaWorld's parks as well as SeaWorld's merchandise.

9

**A.    SeaWorld Claims Orca Lifespans in Captivity are Equivalent to Life Spans in Wild.**

24.    25. An open letter[4] on SeaWorld's website states that "SeaWorld's killer whales' life spans are equivalent with those in the wild.  While studies continue to define the average life span of killer whales in the wild, the most recent science suggests that our killer whales' life spans are comparable — indeed, five of our animals are older than 30, and one of our whales is close to 50."  This statement is measurably false and misleads reasonable consumers into believing that SeaWorld's captive orcas have the same chance of survival and longevity as wild orcas.  To the contrary, captivity at SeaWorld greatly reduces the average life expectancy of an orca because of the stresses and diseases associated with confinement.[5]  Indeed, mortality rates of captive orcas are more than twice as high as those of wild orcas.[6]

**B.    SeaWorld Claims Collapsed Dorsal Fins are Normal.**

25.    26. Like lifespan, dorsal fins indicate the health of male orcas. The exact mechanism is unknown, but virtually all male orcas in captivity suffer from dorsal fin collapse which increases with time spent in captivity.  In an effort to portray collapsed dorsal fins as normal and not a result of captivity, SeaWorld claims on its website that "there is scientific evidence that nearly one-quarter of adult male southern resident killer whales in the wild have collapsing, collapsed or bent dorsal fins." In support, SeaWorld cites Ingrid N. Vissar, *Prolific Body Scars and Collapsing Dorsal Fins on Killer Whales (Orcinas Orca) in New Zealand Waters,* Aquatic Mammals 1998, 24.2, 71-81.

26.    27. This statement and citation of an academic study is highly misleading.  It leads reasonable consumers to believe that the dorsal fin collapse experienced by SeaWorld orcas happens commonly in the wild and is not abnormal.  This is not true.  Dr. Vissar herself wrote to SeaWorld regarding their select and misleading use of her research: "I hope, that as a scientist yourself and as the Director of Research at SeaWorld . . . you can see how wrong this misrepresentation is – not only to

---

[4] http://seaworld.com/en/truth/killer-whales/letter/ (last accessed April 4, 2015).

[5] *See generally* John Jett & Jeffrey Ventre, *Keto and Tilikum Express the Stress of Orca Captivity*, Manuscript submitted to The Orca Project, 2011 (determining the mean duration of captivity for orcas to be at most 8.9 years), available at http://www.freemorgan.org/wp-content/uploads/2012/10/jett__ventre_2011_keto__tilikum_stress.pdf.

[6] Robert J. Small & Douglas P. DeMaster, *Survival of Five Species of Captive Marine Mammals*, MARINE MAMMAL SCIENCE 209 (April 1995) (finding a survival rate of 0.938 for captive orcas compared to a survival rate of 0.976 for wild orcas).

SECONDTHIRD AMENDED CLASS ACTION COMPLAINT                    Civil Case No.: 4:15-cv-02172-JSW

inform the public by distorting the facts but also misrepresenting the data by not presenting it in context."[7]

**27.** ~~28.~~ Far from demonstrating that SeaWorld-style dorsal fin collapse is normal, Dr. Vissar's study actually shows the opposite. In the population of orcas studied by Dr. Vissar, only one adult male orca out of thirty had a completely collapsed dorsal fin. The other adult males studied by Dr. Vissar with fin abnormalities had partially collapsed, bent, notched, or twisted fins. These other types of fin abnormalities are not analogous to the completely collapsed dorsal fin syndrome experienced by all of SeaWorld's adult male orcas.

**28.** ~~29.~~ SeaWorld's statement is measurably false and misleads reasonable consumers into believing that a telltale and graphic indicator of the negative effects of captivity on orcas is normal and not worrisome, while in fact the opposite is true.

**C.      SeaWorld Claims it Does Not Separate Calves and Mothers.**

**29.** ~~30.~~ SeaWorld denies separating mothers and calves: "We do not separate killer whale moms and calves. SeaWorld recognizes the important bond between mother and calf. On the rare occasion that a mother killer whale cannot care for the calf herself, we have successfully hand raised and reintroduced the calf. Whales are only moved to maintain a healthy social structure."

**30.** ~~31.~~ This statement misleadingly sidesteps important issues in two ways. First, SeaWorld mother orcas are much less likely to be able to care for their offspring due to SeaWorld's husbandry techniques. SeaWorld artificially inseminates orcas more frequently and at an earlier age than orcas become pregnant in the wild. Unlike in the wild, captive orcas do not benefit from large pod social groups and stable matrilineal family lines which provide significant calf-rearing assistance. Second, SeaWorld frequently separates orcas from their mothers after weaning but before maturity according to a study by the Orca Network. Captive born orcas Ikaika, Kayla, Keet, Trua, Tuar, Kalina, and many others were separated from their mothers before the age of five.[8] Orcas live in highly social and tight-knit matrilineal pod groups in the wild. The separation of closely related orcas continues to be

---

[7] http://www.globalanimal.org/2014/05/28/seaworlds-lies-sink-to-new-low/ (last accessed April 4, 2015).

[8] *See generally* https://www.thedodo.com/orcas-separated-at-birth-a-fac-399545539.html#orcas-separated-at-birth-a-fac-399545539.html.

traumatizing even later in life.[9]  SeaWorld's statement that it "do[es] not separate killer whale moms and calves" is measurably false and misleads reasonable consumers into believing that SeaWorld does not harm orcas through forced separation while in fact the opposite is true.

**D.    SeaWorld Claims Captivity in General Does Not Harm Orcas.**

31.    ~~32.~~ The above mentioned false and misleading statements work in conjunction with a longstanding and wide-reaching public relations and marketing campaign on the part of SeaWorld to assure the public that it is "wrong [] that life at SeaWorld is harmful for killer whales."[10]  Since it purchased Shamu, its first captive orca, in 1965, SeaWorld has misled the public about its care for captive orcas and concealed the detrimental health effects that captivity has on orcas.  Over at least the last four decades, SeaWorld has disseminated this public relations and marketing campaign via public statements by employees, television shows, television commercials, a telephone information line, print brochures, books, statements made to visitors at SeaWorld's parks, and the Internet.  A few examples of the types of statements made by SeaWorld over the course of this decades-long campaign include:

- In a 1976 newspaper article, a SeaWorld spokesperson defended SeaWorld's capture of wild orcas by arguing that orcas thrive in captivity and that captive orcas have lower mortality rates than orcas in the wild.

- In the early 1990s, activists' calls for the release of Corky, a captive orca, embroiled SeaWorld in a public debate.  In public statements conveyed through various media outlets, SeaWorld represented that Corky was healthier and happier in captivity than she would be if she were released back into the wild.

- In a 1995 print advertising newspaper insert, SeaWorld advertised a new exhibit called "Shamu's Happy Harbor."

- In a children's book titled *Getting to Know the Whales*, published in 1995, a SeaWorld research biologist wrote that orcas in captivity live just as long as orcas in the wild.

- In 1997, the Public Broadcasting Service released the Frontline documentary *Whale of a Business*, in which senior SeaWorld employees stated that orcas in captivity are healthy and would suffer detrimental effects if they were released back into the wild.

---

[9] *See* Jay Sweeney, *Marine mammal behavioural diagnostics*, CRC Handbook of Marine Mammal Medicine. (1990) (L.A. Dierauf, ed.) ("Attempts at removing a juvenile cetacean under 2 years of age from its mother frequently results in significant stress to the juvenile. . . . The stressed individual frequently exhibits stereotypic swimming patterns, consumes food irregularly, and regresses behaviourally in attempting to form infantile bonding with unrelated adults in the new environment.").

[10] http://seaworld.com/en/truth/truth-about-blackfish/ (last accessed April 4, 2015).

~~SECOND~~**THIRD** AMENDED CLASS ACTION
COMPLAINT                                                    Civil Case No.: 4:15-cv-02172-JSW

- Most recently, in response to the 2013 film Blackfish, SeaWorld wrote an open letter to the public and posted a series of written and video rebuttals to the film on its website arguing that SeaWorld orcas are not harmed by captivity.

To this day, SeaWorld continues to perpetuate this public disinformation strategy regarding the general health and happiness of its captive orcas.

32. 33. The representations made as part of SeaWorld's long-term marketing and public relations campaign are simply not true. Orcas are large, highly intelligent, and extremely social predators. Captivity in a small pool necessarily harms orcas both physically and psychologically.

33. 34. SeaWorld orcas suffer from a variety of captivity-induced stresses and health problems. Beyond life expectancy and dorsal fin collapse, a host of other indicators demonstrate the unhealthy existence of captive orcas.

34. 35. One example of the negative health effects of captivity is that bored Orcas routinely chew on the metal bars separating their pools and often orcas "jaw-pop" through gates in displays of aggression against one another. This can cause teeth to break, leaving the pulp of the tooth exposed which eventually leads to cavities and infection. The broken teeth are then drilled out, leading to a life-long risk of infection and necessitating daily "flushing" of the resulting holes.[11]

35. 36. A second example of the negative health effects of captivity is that orcas from different pods and social groups are frequently placed together, leading to aggression and bullying. The mixing of orcas from different family groups causes increased stresses and acts of aggression. Additionally, the relatively small size of holding pools makes it extremely difficult, if not impossible, for bullied orcas to escape from aggressors. Aggressive orcas "rake" and ram other orcas with their teeth and bodies. In one case, an orca bled to death from a self-inflicted wound incurred during an act of aggression when an artery was severed in her upper jaw.[12] These forms of aggression do not occur in the wild to the same degree of severity. SeaWorld's captivity practices lead to increased risk of orcas hurting themselves and one another.

36. 37. Third, the negative effects of inactivity due to captivity lead to a host of long-term health problems. SeaWorld orcas are routinely placed on antibiotic and antifungal medications because

---

[11] John Jett & Jeffrey Ventre, *Keto and Tilikum Express the Stress of Orca Captivity*, Manuscript submitted to The Orca Project, 2011.

[12] *Id.*

13

of inflammations and infections.  Long-term antibiotic use itself carries negative health consequences, such as susceptibility to yeast infections.  In addition to antibiotics, SeaWorld often administers benzodiazepines — psychoactive behavior-modifying drugs — to control orcas that display troubling or maladaptive behaviors induced by captivity.  SeaWorld has even given psychoactive drugs to nursing mother orcas against widely accepted veterinary guidelines.[13]

**37.** ~~38.~~ Fourth, SeaWorld's captive breeding program suffers from lack of genetic diversity, leading to damaging health problems.  Though SeaWorld claims that "our marine animal populations are characterized by their substantial genetic diversity,"[14] its orcas are in fact highly inbred.  Through artificial insemination, SeaWorld has bred siblings, parents, and offspring together to continue producing orcas for entertainment purposes now that it has ceased to capture orcas from the wild.

**38.** ~~39.~~ SeaWorld's longstanding and expansive marketing campaign, including its routine dissemination of the above statements, misleads reasonable consumers into believing that orcas are not negatively affected by captivity when in fact the opposite is true.  Although SeaWorld continues to make these representations, on or around March 17, 2016, SeaWorld announced that it will end all orca breeding programs, and that the orcas SeaWorld currently has in captivity will be the last generation of orcas in SeaWorld's care.  SeaWorld also announced around the same time that it will phase out its theatrical orca whale shows across all of its parks.  Plaintiffs' inability to rely on the accuracy of these statements presents a continuing injury to them.

### CLASS ALLEGATIONS

**39.** ~~40.~~ Pursuant to California Code of Civil Procedure § 382, California Civil Code § 1781, and Federal Rule of Civil Procedure 23(b)(2), Plaintiffs bring this action for injunctive relief on behalf of themselves and the following class of individuals:

> All consumers within California who, within the past four years, purchased tickets to attend SeaWorld San Diego and/or orca souvenirs at SeaWorld San Diego.

---

[13] https://www.thedodo.com/seaworld-gave-nursing-orca-val-493887337.html#seaworld-gave-nursing-orca-val-493887337.html (last accessed April 4, 2015).

[14] *SeaWorld Entertainment, Inc. and Subsidiaries Annual Report on Form 10-K for the Year Ended December 31, 2013*, page 4.

14

**40.** ~~41.~~ Excluded from the class are Defendant, any parent, subsidiary or affiliate of Defendant, and their officers, directors and employees who are or have been employed by Defendant within the past four years, and any judicial officer who may preside over this cause of action. Said definitions of the class may be further defined or amended by additional pleadings, evidentiary hearings, class certification hearing, and/or orders of this Court.

**41.** ~~42.~~ The requirements for maintaining this action as a class action are satisfied.

**42.** ~~43.~~ **Numerosity and Ascertainability:** The members of the class are so numerous that joinder of their individual claims is impracticable. Plaintiffs are informed and believe, and on that basis allege, that there are thousands of members of the proposed class. The precise number of class members and their addresses are presently unknown to Plaintiffs, but can be readily ascertained from Defendant's files and records. Defendant's files and records will make members of the class clearly identifiable and can reasonably control the size of the class. Further, class members can be notified of the pendency of this action by published and/or mailed notice.

**43.** ~~44.~~ **Commonality:** This action involves common questions of law and fact, which predominate over any questions affecting individual class members. These common legal and factual questions include, but are not limited to, the following:

**44.** ~~45.~~ Whether the statements discussed above are true, or misleading, or objectively reasonably likely to deceive.

**45.** ~~46.~~ Whether SeaWorld's alleged conduct violates public policy.

**46.** ~~47.~~ Whether the alleged conduct constitutes violations of the laws asserted.

**47.** ~~48.~~ Whether SeaWorld engaged in false or misleading advertising.

**48.** ~~49.~~ Whether Plaintiffs and class members have sustained monetary loss.

**49.** ~~50.~~ Whether Plaintiffs and class members are entitled to corrective advertising on SeaWorld's website and injunctive relief.

**50.** ~~51.~~ **Typicality:** Plaintiffs' claims are typical of the claims of the members of the proposed class. All class members were injured by purchasing tickets to attend SeaWorld San Diego and/or by purchasing orca souvenirs at SeaWorld San Diego, in reliance on SeaWorld's false and misleading representations concerning captive orca health and welfare. The factual and legal bases of

15

Defendant's liability to Plaintiffs and other members of the class are the same and resulted in injury to Plaintiffs and all other members of the class. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the class.

51. 52. **Adequacy:** Plaintiffs will represent and protect the interests of the proposed class both fairly and adequately. Plaintiffs have no interests that are antagonistic to those of the proposed class, and their interests do not conflict with the interests of the proposed class members they seek to represent.

52. 53. **Superiority:** This proposed class action is appropriate for certification. Class proceedings on these facts and this law are superior to all other available methods for the fair and efficient adjudication of this controversy, given that joinder of all members is impracticable. Even if members of the proposed class could sustain individual litigation, that course would not be preferable to a  class action because individual litigation would increase the delay and expense to all parties due to the complex factual and legal issues present in this controversy. Here, the class action device will present far fewer management difficulties, and it will provide the benefit of a single adjudication, economies of scale, and comprehensive supervision by this Court. Further, uniformity of decisions will be assured.

53. 54. Unless an injunction is issued, SeaWorld will continue to commit the violations alleged, and the members of the class and the general public will continue to be irreparably harmed by SeaWorld's deceptive advertising.

**FIRST CAUSE OF ACTION**

**(Violation of California False Advertising Law — Cal. Bus. & Prof. Code §17500, et seq.)**

54. 55. Plaintiffs incorporate by reference and reassert all previous paragraphs.

55. 56. SeaWorld engages in unlawful conduct under California Business & Professions Code §17500, *et seq.*, by advertising in a way that misleads reasonable consumers to believe that captive orcas are not negatively affected by their captivity when, in fact, scientific evidence demonstrates the contrary.  In addition to the contention that orca health is generally not negatively affected by captivity, SeaWorld made and continues to make numerous discrete and demonstrably false or misleading statements, including that orca lifespans in captivity are equivalent to wild orca lifespans; that collapsed dorsal fins are common in wild orcas; and that SeaWorld does not separate mothers and calves.

16

**56.** ~~57.~~ SeaWorld's long-term marketing campaign has conveyed a general impression to the public, including Plaintiffs, that orcas are properly treated in, and not negatively affected by, captivity at SeaWorld. SeaWorld's depiction of happy, healthy orcas at SeaWorld San Diego has saturated the public consciousness in California.

**57.** ~~58.~~ Plaintiffs and class members reasonably relied upon SeaWorld's representations and/or omissions made in violation of California Business & Professions Code § 17500, *et seq*.

**58.** ~~59.~~ Plaintiffs and class members relied upon SeaWorld's representations regarding captive orca welfare and as a direct and proximate result purchased tickets to SeaWorld San Diego and/or orca souvenirs at SeaWorld San Diego. Plaintiffs and class members would not have purchased the tickets or souvenirs from SeaWorld (or would have paid less for them) had they known that captivity was extremely detrimental to orca health. They therefore suffered an injury in fact and lost money.

**59.** ~~60.~~ Plaintiffs and class members continue to suffer injury owing to uncertainty about whether they can rely upon SeaWorld's statements. As their past decision to purchase SeaWorld tickets and/or merchandise demonstrates, Plaintiffs enjoy wildlife and the kind of animal entertainment and education SeaWorld provides. Their willingness to purchase SeaWorld tickets or merchandise again, however, is contingent upon an accurate portrayal of the health and welfare of the animals at the park. Assuming SeaWorld's practices were to evolve to improve the level of animal care, and to be honest about the health and status of the orcas, Plaintiffs may be inclined to purchase SeaWorld tickets or merchandise in the future. Yet they cannot do so because, given SeaWorld's history of making false and misleading statements about the health and welfare of orcas, they cannot be sure about the veracity of SeaWorld's claims. This is exacerbated by SeaWorld's recent announcements that it will end its theatrical orca shows as well as all orca breeding programs, and that the orcas SeaWorld currently has will be SeaWorld's last generation of captive orcas. Plaintiffs' inability to rely on the accuracy of these statements by SeaWorld presents a continuing injury to them.

**60.** ~~61.~~ Accordingly, Plaintiffs, on behalf of themselves and all others similarly situated, seek equitable relief in the form of an order requiring SeaWorld to refrain from making false or misleading statements regarding captive orca health. Additionally, Plaintiffs seek an order requiring SeaWorld to inform the purchasing public on its website that captivity in general negatively impacts orca health, that

17

orca lifespans are shorter in captivity than in the wild, that collapsed dorsal fins are common only in captive orcas, and that SeaWorld separates closely related and tightly-knit orca family members. Finally, Plaintiffs seek an order requiring SeaWorld to refund to Plaintiffs, in their individual capacities, all monies they paid for purchasing goods and services in reliance on SeaWorld's misrepresentations.

**SECOND CAUSE OF ACTION**

**(Violation of California Unfair Competition Law — Cal. Bus. & Prof. Code §17200, et seq.)**

61. 62. Plaintiffs incorporate by reference and reassert all previous paragraphs.

62. 63. SeaWorld engages in unlawful, unfair, and fraudulent conduct under California Business & Professions Code § 17200, *et seq.*, by advertising in a way that misleads reasonable consumers to believe that captive orcas are not negatively affected by their captivity when, in fact, scientific evidence demonstrates the contrary. In addition to the contention that orca health is generally not negatively affected by captivity, SeaWorld made and continues to make numerous discrete and demonstrably false or misleading statements, including that orca lifespans in captivity are equivalent to wild orca lifespans; that collapsed dorsal fins are common in wild orcas; and that SeaWorld does not separate mothers and calves.

63. 64. SeaWorld's long-term marketing campaign has conveyed a general impression to the public, including Plaintiffs, that orcas are properly treated in, and not negatively affected by, captivity at SeaWorld. SeaWorld's depiction of happy, healthy orcas at SeaWorld San Diego has saturated the public consciousness in California.

64. 65. SeaWorld's conduct is unlawful in that it violates the False Advertising Law, California Business & Professions Code § 17500, *et seq.*

65. 66. SeaWorld's conduct is unfair in that it offends established public policy or is immoral, unethical, oppressive, unscrupulous, unconscionable, or substantially injurious to Plaintiffs and the class members. The harm to Plaintiffs and class members arising from SeaWorld's conduct outweighs any legitimate benefit SeaWorld has derived from the conduct.

66. 67. SeaWorld's misrepresentations and omissions are likely to mislead a reasonable consumer and are therefore fraudulent within the meaning of the UCL.

18

SECONDTHIRD AMENDED CLASS ACTION
COMPLAINT

Civil Case No.: 4:15-cv-02172-JSW

**67.** ~~68.~~ Plaintiffs and class members reasonably relied on SeaWorld's misrepresentations and omissions.

**68.** ~~69.~~ As a direct and proximate result of SeaWorld's false statements, misrepresentations, and omissions, Plaintiffs and class members purchased tickets to SeaWorld San Diego and/or orca souvenirs at SeaWorld San Diego.  Plaintiffs and class members would not have purchased the tickets or souvenirs (or would have paid less for them) had they known that captivity was extremely detrimental to orca health.  They therefore suffered an injury in fact and lost money.

**69.** ~~70.~~ Plaintiffs and class members continue to suffer injury owing to uncertainty about whether they can rely upon SeaWorld's statements.  As their past decision to purchase SeaWorld tickets and/or merchandise demonstrates, Plaintiffs enjoy wildlife and the kind of animal entertainment and education SeaWorld provides.  Their willingness to purchase SeaWorld tickets or merchandise again, however, is contingent upon an accurate portrayal of the health and welfare of the animals at the park.  Assuming SeaWorld's practices were to evolve to improve the level of animal care, and to be honest about the health and status of the orcas, Plaintiffs may be inclined to purchase SeaWorld tickets or merchandise in the future.  Yet they cannot do so because, given SeaWorld's history of making false and misleading statements about the health and welfare of orcas, they cannot be sure about the veracity of SeaWorld's claims.  This is exacerbated by SeaWorld's recent announcements that it will end its theatrical orca shows as well as all orca breeding programs, and that the orcas SeaWorld currently has will be SeaWorld's last generation of captive orcas.  Plaintiffs' inability to rely on the accuracy of these statements by SeaWorld presents a continuing injury to them.

**70.** ~~71.~~ Accordingly, Plaintiffs, on behalf of themselves and all others similarly situated, seek equitable relief in the form of an order requiring SeaWorld to refrain from making false or misleading statements regarding captive orca health.  Additionally, Plaintiffs seek an order requiring SeaWorld to inform the purchasing public on its website that captivity in general negatively impacts orca health, that orca lifespans are shorter in captivity than in the wild, that collapsed dorsal fins are common only in captive orcas, and that SeaWorld separates closely related and tightly-knit orca family members.  Finally, Plaintiffs seek an order requiring SeaWorld to refund to Plaintiffs, in their individual capacities, all monies they paid for purchasing goods and services in reliance on SeaWorld's misrepresentations.

19

**THIRD CAUSE OF ACTION**

**(Violation of California Consumer Legal Remedies Act — Cal. Civ. Code §1750, et seq.)**

**71.** ~~72.~~ Plaintiffs incorporate by reference and reassert all previous paragraphs.

**72.** ~~73.~~ Notice in accordance with California Civil Code § 1782 ~~has been~~**was** sent by certified mail ~~to the~~**, return receipt requested, to SeaWorld's** principal place of business ~~for~~**in California.  On October 21, 2016,** SeaWorld~~.  Additionally,~~ **acknowledged its receipt of** the notice ~~was delivered via electronic mail to SeaWorld's counsel of record~~**via return receipt**.  Thirty days ~~after service of that notice, Plaintiffs will amend this complaint to state a claim for restitution if~~**have expired since SeaWorld acknowledged its receipt of the notice, and** SeaWorld has not ~~complied with the demands included~~**taken the corrective actions demanded** in the notice ~~letter, as provided by California Civil Code § 1782(c)~~.

**73.** ~~74. Plaintiffs~~**Plaintiff Kelly Nelson** bring this cause of action on behalf of ~~themselves~~**herself** and on behalf of all members of the class.

**74.** ~~75.~~ SeaWorld is a "person" as defined by California Civil Code § 1761(c).

**75.** ~~76. Plaintiffs~~**Ms. Nelson** and members of the class are "consumers" within the meaning of California Civil Code § 1761(d).

**76.** ~~77.~~ SeaWorld's advertising of its entertainment and educational services misleads reasonable consumers to believe that those services, including the orca exhibitions and shows, feature happy, healthy orcas.  SeaWorld's advertising deceives consumers into believing that captive orcas are not negatively affected by their captivity when, in fact, scientific evidence demonstrates the contrary.  In addition to the contention that orca health is generally not negatively affected by captivity, SeaWorld made and continues to make numerous discrete and demonstrably false or misleading statements, including that orca lifespans in captivity are equivalent to wild orca lifespans; that collapsed dorsal fins are common in wild orcas; and that SeaWorld does not separate mothers and calves.  These misrepresentations deceive consumers regarding the true nature of the entertainment and educational services SeaWorld sells.

~~78.    SeaWorld's misrepresentations regarding the treatment and condition of its captive orcas at SeaWorld San Diego also deceives customers into purchasing souvenirs, such as the~~

20

Shamu Plush.  These goods sold at SeaWorld San Diego have little utility other than serving as memorabilia of SeaWorld's entertainment and educational services.  Indeed, for decades, SeaWorld has advertised the Shamu Plush as a symbol of the "precious memories" created at SeaWorld.  By deceiving its customers as to the health and happiness of its captive orcas, SeaWorld is able to unfairly extract a higher price for the Shamu Plush and/or sell a greater number of these goods.  SeaWorld's misrepresentations, therefore, constitute a misrepresentation of the characteristics, uses, benefits and qualities of the Shamu Plush.

77.   79. Further, SeaWorld's long-term marketing campaign has conveyed a general impression to the public, including Plaintiffs, that orcas are properly treated in, and not negatively affected by, captivity at SeaWorld.  SeaWorld's false depiction of happy, healthy orcas at SeaWorld San Diego has saturated the public consciousness in California.

78.   80. As a result, SeaWorld's representations and omissions are false, misleading, and reasonably likely to deceive the public in violation of California Civil Code §§ 1770(a)(5), 1770(a)(7) and 1770(a)(9).

79.   81. SeaWorld's unfair and deceptive acts occurred repeatedly and were capable of deceiving a substantial portion of the purchasing public.

80.   82. SeaWorld's misrepresentations and omissions are material and likely to mislead a reasonable consumer.

81.   83. PlaintiffsMs. Nelson and members of the class reasonably relied on SeaWorld's misrepresentations and omissions.

82.   84. As a direct and proximate result of SeaWorld's unfair or deceptive acts or practices, PlaintiffsMs. Nelson and members of the class purchased tickets to SeaWorld San Diego and/or orca souvenirs at SeaWorld San Diego.  Plaintiffs.  Ms. Nelson and class members would not have purchased these goods or services from SeaWorld (or would have paid less for them) had they known that captivity was extremely detrimental to orca health.  They therefore suffered an injury in fact and lost money.

83.   85. PlaintiffsMs. Nelson and class members continue to suffer injury owing to uncertainty about whether they can rely upon SeaWorld's statements.  As theirher past decision to

21

purchase SeaWorld tickets and/or merchandise demonstrates, ~~Plaintiffs enjoy~~**Ms. Nelson enjoys** wildlife and the kind of animal entertainment and education SeaWorld provides. ~~Their~~**Her** willingness to purchase SeaWorld tickets or merchandise again, however, is contingent upon an accurate portrayal of the health and welfare of the animals at the park. Assuming SeaWorld's practices were to evolve to improve the level of animal care, and to be honest about the health and status of the orcas, ~~Plaintiffs~~**Ms. Nelson** may be inclined to purchase SeaWorld tickets or merchandise in the future. Yet ~~they~~**she** cannot do so because, given SeaWorld's history of making false and misleading statements about the health and welfare of orcas, ~~they~~**she** cannot be sure about the veracity of SeaWorld's claims. This is exacerbated by SeaWorld's recent announcements that it will end its theatrical orca shows as well as all orca breeding programs, and that the orcas SeaWorld currently has will be SeaWorld's last generation of captive orcas. ~~Plaintiffs'~~**Ms. Nelson's** inability to rely on the accuracy of these statements by SeaWorld presents a continuing injury to ~~them~~**her**.

**84.** ~~86.~~ Accordingly, ~~Plaintiffs~~**Ms. Nelson**, on behalf of ~~themselves~~**herself** and all others similarly situated, ~~seek~~**seeks** equitable relief in the form of an order requiring SeaWorld to refrain from making false or misleading statements regarding captive orca health. Additionally, ~~Plaintiffs seek~~**Ms. Nelson seeks** an order requiring SeaWorld to inform the purchasing public on its website that captivity in general negatively impacts orca health, that orca lifespans are shorter in captivity than in the wild, that collapsed dorsal fins are common only in captive orcas, and that SeaWorld separates closely related and tightly-knit orca family members. **Finally, Ms. Nelson seeks an order requiring SeaWorld to refund to her, in her individual capacity, all monies she paid for purchasing services in reliance on SeaWorld's misrepresentations.**

**PRAYER FOR RELIEF**

**85.** ~~87.~~ Wherefore, Plaintiffs pray for a judgment:

    a) Certifying the class for injunctive relief as requested herein;

    b) Awarding injunctive relief as permitted by law or equity, including enjoining SeaWorld from continuing the unlawful practices and requiring SeaWorld to issue

22

corrective statements on its website as set forth herein, and appointing a receiver to supervise SeaWorld's statements to the public for such time as is necessary to ensure SeaWorld's continued compliance with said injunction;

    c)  Awarding restitution to Plaintiffs in their individual capacities;

    d)  Awarding attorneys' fees and costs;

    e)  Providing such further relief as may be just and proper.


Dated: November 22, 2016           By: */s/ ~~Christine Saunders Haskett~~Lindsey Barnhart*


                           Christine Saunders Haskett
                           Tracy O. Zinsou
                           Udit Sood
                           Lindsey Barnhart
                           COVINGTON & BURLING LLP
                           One Front Street, 35th Floor
                           San Francisco, California 94111-5356
                           chaskett@cov.com
                           tzinsou@cov.com
                           usood@cov.com
                           lbarnhart@cov.com

                           *Attorney for Plaintiffs*
                           *Marc Anderson, ~~Ellexa Conway,~~ Kelly Nelson, and Juliette Morizur*

~~SECOND~~THIRD AMENDED CLASS ACTION COMPLAINT          Civil Case No.: 4:15-cv-02172-JSW