UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC ANDERSON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SEAWORLD PARKS AND ENTERTAINMENT, INC.,<br><br>Defendant. | Case No. 15-cv-02172-JSW (JCS)<br><br>**ORDER REGARDING PURPORTEDLY PRIVILEGED PUBLIC RELATIONS DOCUMENTS SUBMITTED FOR IN CAMERA REVIEW**<br><br>Re: Dkt. No. 249 |

## I. INTRODUCTION

The parties dispute whether "certain documents in possession of [Defendant SeaWorld Parks and Entertainment, Inc.'s ('SeaWorld's')] advertising and public relations agencies" are protected by the attorney client privilege and/or the attorney work product doctrine. *See* dkt. 249 at 1. Following the 2013 premiere of the film *Blackfish*, which is critical of SeaWorld, SeaWorld retained counsel to consider legal responses to the film, including potential litigation. Iser Decl. (dkt. 249-1) ¶ 3. SeaWorld and its outside counsel then retained two "crisis" public relations firms "to work with counsel . . . in developing legal strategy including potential litigation," among other duties. *Id.* ¶¶ 5–6. The public relations firms have each produced more than 1,000 documents regarding their work with SeaWorld in response to subpoenas in this case, but SeaWorld has redacted 121 documents and withheld 46 based on attorney-client privilege and attorney work product. *Id.* ¶ 7. The Court previously ordered the parties to submit a subset of the documents at issue for in camera review (dkt. 261), and now addresses those documents.

## II. ATTORNEY-CLIENT PRIVILEGE

Under California law, the scope of attorney-client privilege must be construed narrowly. *Behunin v. Superior Court*, 9 Cal. App. 5th 833, 850 (2017) (citing, *e.g.*, *People v. Sinohui*, 28 Cal. 4th 205, 212 (2002)). Where communications between a client and attorney have been

disclosed to a third party, the burden is on the party asserting the privilege to show that it applies despite that disclosure. *Id.* at 844–45. Disclosure of privileged communications to a third party will not destroy the privilege where either: (1) "'the third party is an agent or assistant who will help to advance the litigant's interests'"; or (2) "'the third party is not in any sense an agent of the litigant or attorney but is a person with interests of his or her own to advance in the matter, interests that are in some way aligned with those of the litigant.'" *Id.* at 846 (quoting *Citizens for Ceres v. Superior Court*, 217 Cal. App. 4th 889 (2013)). SeaWorld and its counsel's communications with public relations firms are protected, if at all, under the former category. *See id.* at 854 (holding that "a paid consultant [having] wanted its public relations campaign to succeed . . . is not the kind of common interest contemplated").

In what appears to be the only California decision addressing this issue as applied to public relations firms, a California appellate court recognized that "[t]here may be situations in which an attorney's use of a public relations consultant to develop a litigation strategy or a plan for maneuvering a lawsuit into an optimal position for settlement would make communications between the attorney, the client, and the consultant reasonably necessary for the accomplishment of the purpose for which the attorney was consultant." *Id.* at 849–50; *see also id.* at 847 ("There are no [other] California cases analyzing whether a communication disclosed to a public relations consultant is a confidential communication between a client and a lawyer under [California Evidence Code] section 952 or whether such a disclosure waives the attorney-client privilege under section 912.").[1] As noted in this Court's previous order addressing this dispute, the mere fact that such communications relate to litigation is not sufficient—if the communications were intended to develop a public relations strategy in response to litigation, they are not privileged. *See Behunin*, 9 Cal. App. 5th at 850 (holding that communications were not privileged absent "some explanation of how the communications assisted the attorney in developing a plan for

---

[1] This order relies heavily on *Behunin* as the only California decision on point. Federal courts apply state law regarding evidentiary privilege in diversity jurisdiction cases, Fed. R. Evid. 501, and in the absence of a decision by the state's highest court or convincing reason to believe that the highest court would decide an issue differently, federal courts are bound by the decisions of state intermediate courts on issues of state law, *Owen ex rel. Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983).

resolving the litigation").

In *Behunin*, the California Court of Appeal cited with approval a decision based on New York law, which it described as "similar to California law on this issue," holding that such communications must be "'more than just useful and convenient, but rather . . . the involvement of the third party [must] be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications.'" *Id.* at 849 (quoting *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 431 (S.D.N.Y. 2013)). There, "the 'mere fact that [the public relations consultant] was inserted into the legal decisionmaking process [did] nothing to explain why [the consultant's] involvement was necessary to [the plaintiff's] obtaining legal advice from his actual attorneys.'" *Id.* at 848–49 (quoting *Egiazaryan*, 290 F.R.D. at 431) (all but second alteration in original). The plaintiff made the following showing in an effort to establish that the documents at issue were privileged:

> The plaintiff submitted declarations and documents showing the public relations consultants "'[d]evelop[ed] a set of key messages and compelling narrative in support of the legal cases,'" "'participated in the development of legal strategy,'" "'contribut[ed] legal recommendations, provid[ed] next step action plans,'" "'weigh[ed] strategic considerations in order to promote [the plaintiff's] overall legal goals,'" "discussed 'legal options' with [the plaintiff's] attorneys," "gave 'advice in determining the benefits of taking legal action,'" and "'advised counsel for [the plaintiff] as to what might be effectively done on the public relations front . . . so [the attorneys] could properly advise their client as to the appropriate course of action in light of his wider litigation interests.'" ([*Egiazaryan*, 290 F.R.D. at] 421, 426, 430–431.) The plaintiff also submitted a privilege log, and the court reviewed in camera the documents the plaintiff withheld from production. (*Id.* at p. 426.)

*Id.* at 848 (alterations in original except alteration of internal citation). Nevertheless, because the plaintiff did not show that the consultants' "involvement was necessary to facilitate communications *between himself and his counsel*, as in the case of a translator or an accountant clarifying communications between an attorney and client," the court held that communications were not privileged under New York law. *Egiazaryan*, 290 F.R.D. at 431.

In *Behunin* itself, the connection between the public relations consultant and litigation strategy was even more attenuated. After Nicholas Behunin filed an action against Charles R. Schwab and his son Michael Schwab, potential investors in a business venture, Behunin's counsel engaged a public relations firm to induce the Schwabs to settle the case, and purportedly "to

3

develop and deploy strategy and tactics of Mr. Behumin's legal complaint." *Behunin*, 9 Cal. App. 5th at 837–38. The public relations firm created a website, www.chuck-you.com, which became the subject of defamation claims by the Schwabs. *Id.* at 838–39. Behunin stated in a declaration that his law firm played no role in creating the website except to enter a contract on his behalf with the public relations firm and that the website was Behunin's sole property, but that he, his law firm, and his public relations firm intended that all communications among them would be privileged and protected as work product. *Id.* at 838. The court held that Behunin failed to explain "how or why communications among [the public relations firm, the attorney,] and himself were reasonably necessary to assist [the attorney] in his ability to advise Behunin or litigate his case," or in other words, "why [the attorney] needed [the public relations firm's] assistance to accomplish the purpose for which Behunin retained him." *Id.* at 849. The court noted that Behunin failed to submit evidence of the public relations firm's involvement "in developing, discussing, or assisting in executing a legal strategy," but also noted that even in *Egiazaryan* where such evidence was submitted, it was insufficient. *Id.* at 849.

The *Behunin* court distinguished a line of federal cases that relied on federal common law privilege doctrines where federal law governed the underlying claims, holding that federal law "is broader than New York law and California law and does not require a finding the communication was reasonably necessary for the attorney to provide legal advice." *Id.* at 851 (distinguishing, *e.g.*, *In re Grand Jury Subpoenas*, 265 F. Supp. 2d 321 (S.D.N.Y. 2003)).

In sum, based on the analysis of *Behunin* and its favorable treatment of *Egiazaryan* and similar cases applying New York law, in order for disclosure to a third party to be "reasonably necessary" for an attorney' purpose, and thus not to effect a waiver of privilege, it is not enough that the third party weighs in on legal strategy. Instead, the third party must facilitate communication between the attorney and client. *See id.* at 848 (discussing *Egiazaryan*, 290 F.R.D. at 431). Here, the evidence submitted and documents lodged for in camera review show at most that SeaWorld and its counsel sought advice from public relations firms to better predict the public reaction to legal activities and other efforts it considered in response to *Blackfish*, and to determine how best to present such activities to the public and other entities. The facts here are

4

materially indistinguishable from *Egiazaryan*, where public relations consultants participated in legal strategy. SeaWorld has not demonstrated that communications involving its public relations consultants remain within the scope of attorney-client privilege based on the agency exception to waiver through disclosure under California law.[2]

The *Behunin* court also declined to treat the public relations consultants at issue as "the functional equivalent of an employee of the client," holding that federal cases extending the scope of privilege to such functional equivalents "require a detailed factual showing that the consultant was responsible for a key corporate job, had a close working relationship with the company's principals on matters critical to the company's position in litigation, and possessed information possessed by no one else at the company." *Id.* at 852–53. SeaWorld briefly argues that its public relations consultants were functionally equivalent to employees, *see* dkt. 249 at 5, but even assuming for the sake of argument that the remaining elements of the test were satisfied, there is no evidence that any such consultant "possessed information possessed by no one else at the company." *Cf. id.* Accordingly, applying California law as stated in *Behunin*, that rule does not apply here.

### III. WORK PRODUCT DOCTRINE

"Unlike the attorney-client privilege, the application of the work product doctrine in diversity of citizenship cases is determined under federal law." *Kandel v. Brother Int'l Corp.*, 683 F. Supp. 2d 1076, 1083 (C.D. Cal. 2010) (citing Tenth Circuit and Third Circuit authority).[3] The

---

[2] It is unclear whether California law recognizes the doctrine of subject matter waiver. *See Garcia v. Progressive Choice Ins. Co.*, No. 11-CV-466-BEN (NLS), 2012 WL 3113172 (S.D. Cal. July 30, 2012) (considering this issue). Even if some form of that doctrine is viable, the Court does not find that SeaWorld has waived privilege regarding other communications pertaining to the same subject matter as communications disclosed to public relations consultants that might have been privileged absent such disclosure. SeaWorld appears to have included consultants in its communications with attorneys based on a good faith misunderstanding of the scope of attorney-client privilege. Such limited disclosures do not implicate the strategic "sword and shield" concerns underlying subject matter waiver. *See, e.g.*, *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992).

[3] The Court is aware of no California decision that would alter work product analysis if California law applied. The California appellate court's decision in *Behunin* did not address the work product doctrine because Behunin only raised the issue of work product protection in his reply brief and "provide[d] no legal argument or authorities to support the application of that doctrine." 9 Cal. App. 5th at 855 n.11.

5

work product doctrine, codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." *See In re Grand Jury Subpoena*, 357 F.3d 900, 906 (9th Cir. 2004). "Proper preparation of a client's case demands that [an attorney] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). This doctrine is distinct from the attorney-client privilege, and is in fact "not a privilege but a qualified immunity protecting [certain material] from discovery." *See Admiral Ins. Co. v. U.S. Dist. Court*, 881 F.2d 1486, 1494 (9th Cir. 1989).

"Public relations work is generally treated as business strategy, rather than a legal one, and is not protected as work product." *Lights Out Holdings, LLC v. Nike, Inc.*, No. 14-CV-872 JAH (NLS), 2015 WL 11254687, at *4 (S.D. Cal. May 28, 2015). "Because the protection arises only for materials prepared in anticipation of litigation, it is not enough to show merely that the material was prepared at the behest of a lawyer or was provided to a lawyer," and "the work product doctrine does not extend to public relations activities even if they bear on the litigation strategy because the purpose of the rule is to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or on the public generally." *Egiazaryan*, 290 F.R.D. at 435. Nor is an attorney's own work subject to protection if the work is intended for public relations or other business purposes rather than litigation; "delegating business functions to counsel to oversee does not provide work-product protection to the materials created for those business functions." *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 296 F. Supp. 3d 1230, 1244 (D. Or. 2017); *see also SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 515 (D. Conn. 1976) ("Legal departments are not citadels in which public, business or technical information may be placed to defeat discovery and thereby ensure confidentiality.").

To the extent that the documents at issue contain protected work product, "disclosure of a document to a third person does not waive work-product immunity, unless it has substantially increased the opportunity for the adverse party to obtain the information," because the purpose of

6

the work product doctrine is to shield litigation strategy from disclosure to a litigation adversary. *Skynet Elec. Co., Ltd v. Flextronics Int'l, Ltd.*, No. C 12-06317 WHA, 2013 WL 6623874, at *3 (N.D. Cal. Dec. 16, 2013); *see also Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 580 (N.D. Cal. 2007) ("The work product [doctrine] provides protection against adversaries and is not as easily waived as the attorney-client privilege."). A federal district court in New York has held that, even though public relations advice does not fall within attorney-client privilege, "an otherwise valid assertion of work-product protection is [not] waived with respect to an attorney's own work-product simply because the attorney provides the work-product to a public relations consultant whom he has hired and who maintains the attorney's work-product in confidence," particularly where "the public relations firm needs to know the attorney's strategy in order to advise as to public relations, and the public relations impact bears, in turn, on the attorney's own strategizing as to whether or not to take a contemplated step in the litigation itself and, if so, in what form." *Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000). Protection also attaches where documents prepared by a public relations consultant "implicitly reflect [an attorney's] work-product." *Id.* Because many of the documents at issue here implicitly incorporate small amounts of work product in discussions that otherwise would not warrant protection, the Court concludes that narrowly tailored redactions are appropriate to protect work product while allowing Plaintiffs to discover potentially relevant documents regarding SeaWorld's public relations strategy.

## IV. APPLICATION TO DOCUMENTS LODGED FOR REVIEW

As discussed above, SeaWorld's disclosure of the documents at issue to its public relations consultants waives any claim of attorney-client privilege as to those documents. Because such disclosure generally does not waive work product protection, the Court reviews in turn each of the documents lodged for in camera review to determine whether work product protection applies, in the order that the documents have been lodged by SeaWorld.

**Tab 1 (42WEST_0001097–98)**: In an email dated December 20, 2013, a public relations consultant comments on "Jill [a SeaWorld public relations executive] and the lawyers" editing an infographic to remove matters covered by another publicly released document and add content on

7

other topics.  Nothing in the document or SeaWorld's arguments indicates whether the changes were suggested by attorneys rather than the non-attorney executive, or that anyone involved in the decision was motivated by litigation strategy rather than mere public relations concerns.  The fact that the deletions appears to have been motivated by desire to avoid redundancy, rather than litigation risk, weighs against protection.  This redaction is not supported, and the document must be produced in its entirety.

**Tab 2 (42WEST_0001383–84):**  In an email dated August 20, 2013, a public relations consultant discusses plans to reach out to two third parties, one of whom was the subject of potential legal action by SeaWorld.  The fact that SeaWorld considered legal action against a particular entity reflects its attorneys' legal opinions and strategy, and falls within work product protection.  Disclosure of such plans to the consultant did not waive the protection because there is no dispute that the consultants were bound to maintain such information in confidence.  Comments regarding that entity are therefore properly redacted.  The first paragraph of the email, however, also includes comments regarding the other entity, and no basis for protection of those comments is apparent.  SeaWorld's redactions to the first paragraph must be more narrowly tailored, and shall be limited to: (1) the phrase between the words "to [entity]" and "in the case of [entity]"; and (2) the clause following the semicolon.  SeaWorld's redactions to the subject line and the final paragraph are appropriate.

**Tab 3 (42WEST_0001415):**  This July 2, 2013 email from a public relations consultant reflects issues identified by SeaWorld's counsel regarding potential legal action.  Work product protection has not been waived and the document is properly redacted.

**Tab 4 (42WEST_0001607–09):**  This document consists of a July 2013 email chain between public relations consultants discussing outreach to a journalist, specifically SeaWorld's response to certain purported inaccuracies in *Blackfish*.  Although the consultants discuss a list of corrections prepared by SeaWorld's attorney Larry Iser, it is clear from the discussion that Iser prepared the list, or at least authorized its use, for the purpose of outreach to the journalist, not for the purpose of litigation.  Work product protection does not attach to an attorney's work directing a public relations campaign, nor is there any expectation of confidentiality where Iser directed the

8

consultants to share the list with a journalist. *See* 42WEST_0001609 ("In effect, [Iser] is suggesting we be very clear with [the journalist] that these facts are what's important . . . ."). This document must be produced unredacted.

**Tab 5 (42WEST_0002238–39):** This document is an email exchange between SeaWorld's in-house counsel and a public relations consultant regarding the best time for SeaWorld to file a complaint with an administrative agency to obtain optimal press coverage. SeaWorld's brief asserts without evidence that the complaint related to "a separate matter," and that the reason SeaWorld sought press coverage was to "put pressure on [the agency] in its handling of the complaint." Nothing on the face of the exchange either reveals legal strategy or impressions—to the contrary, not even the subject matter of the administrative action is clear from this document—or supports SeaWorld's assertion that the press coverage was intended to pressure the agency. On its face, the exchange suggests that SeaWorld sought to burnish its image with the public, and the consideration of timing thus related primarily to public relations strategy, not litigation strategy. *See* 42WEST_0002238 ("To maximize our chances of getting the biggest and best [newspaper] story possible . . . ."). Nor is SeaWorld's mere intent to file the administrative complaint subject to protection: the exchange indicates that SeaWorld's consultant either already had or soon would share that information with a journalist under embargo, with the intent that the journalist would publish a story about the complaint, and thus reflects no expectation of confidentiality as to the mere fact of the complaint. This document must be produced unredacted.

**Tab 6 (42WEST_000331):** This document concerns the same subject matter as Tab 4 (42WEST_0001607–09) and must be produced unredacted for the same reasons.

**Tab 7 (Eml-001864):** This document consists of a draft strategy presentation, most of which has been produced. The only redaction relates to the same contemplated legal action as addressed in the context of Tab 2 (42WEST_0001383–84) and is properly withheld for the same reasons as the redacted portion of that document.

**Tab 8 (Eml-002117–33):** This is a strategy memorandum prepared by SeaWorld's public relations consultants, most of which has been produced. Most of SeaWorld's redactions relate to the same subject matter as Tab 2 (42WEST_0001383–84) and at least partially fall within work

9

product protection for the same reason. The redaction on page 1 is largely appropriate but should begin after the currently redacted phrase "than they were for." The redaction on page 2 should begin after "the risks associated with." The first redaction on page 4 concerns an attorney's personal relationship with a journalist, does not reflect work product, and should be unredacted.[4] The redaction spanning pages 4 and 5 should be limited to the phrase falling between "and others" and "the Academy's voters"; the remainder relates purely to public relations and should not be redacted. The next redaction on page 5 in inappropriate for the same reasons as the material addressed for Tab 4 (42WEST_0001607–09).

**Tab 9 (Eml-002765–69):** The first redacted bullet point in this memorandum incorporates protected work product and is properly redacted for the same reason as Tab 2 (42WEST_0001383–84). No sufficient reason for redaction is apparent for the second redacted bullet point, however, and the document must be produced with that bullet point unredacted.

**Tab 10 (Eml-002862–65):** This is an email exchange among SeaWorld in-house counsel, outside counsel, and public relations consultants regarding a public petition asking SeaWorld not to sue a production company over *Blackfish*. The discussion primarily relates to public relations and, for the most part, does not address actual or contemplated litigation. The third sentence and final sentence of assistant general counsel Laurie Beecher's email relate to potential litigation strategy and are properly redacted. The remainder of this document must be produced.

**Tab 11 (42WEST_00197–98):** This document was selected for review by both parties and is addressed above as Tab 1.

**Tab 12 (42WEST_0001328–30):** A portion of the redaction in this email from a public relations consultant appears to reflect an attorney's legal conclusion regarding strategy for legal action that could lead to litigation, and is therefore protected work product. Only the portion between the phrases "None of us wants" and "to mean that" may be redacted.

**Tab 13 (42WEST_0001515–18):** This is an email exchange between public relations consultants. Very little on the face of the redaction on the first page, which primarily discusses

---

[4] Moreover, this phrase was not redacted from a separate copy of the same document, Bates numbered 42WEST_0002817 and lodged as Tab 15.

pure public relations strategy, appears to fall within privilege or work product protection. That redaction must be limited to the phrase between "to use" and "as a guidepost," which may be withheld for the reasons discussed with respect to Tab 2. The first redaction on the second page reflects legal strategy and falls within work product protection, except that the words "the larger" at the end of the redaction should not be redacted. The beginning of the redaction spanning from the second page to the third page is appropriate as reflecting protected work product, but the portion starting with "I haven't seen" through the end of that redaction is a public relations opinion regarding a publicly filed appellate brief and must be disclosed. The final redaction does not disclose work product and is therefore improper. The document must be produced with redactions limited accordingly.

**Tab 14 (42WEST_0001565–66):** The redaction in an email from SeaWorld's in-house attorney Becca Bides reflects legal strategy and is protected as work product. This redaction is appropriate.

**Tab 15 (42WEST_0002814):** This document was selected for review by both parties and is addressed above as Tab 8 (Eml-002117–33).

**Tab 16 (42W_000556[5]):** This document is an email chain that begins with an inquiry from a journalist, which a SeaWorld public relations employee forwarded to a SeaWorld in-house attorney for thoughts on the public relations employee's draft answers to the journalist's questions. The attorney responded, and the employee forwarded the attorney's response to external public relations consultants. Privilege is waived by that disclosure, and only a small portion of the attorney's response relates to contemplated litigation such that work product protection applies. SeaWorld may redact only the sentence following "First answer re: desense" and must produce the remainder of this document.

**Tab 17 (42WEST_0003520–22):** This document is an email exchange among a SeaWorld public relations employee, a SeaWorld in-house attorney, and an external public relations consultant. The exchange does not include substantive legal comments by the attorney,

---

[5] This document was selected by Plaintiffs as 42WEST_0003119, which refers to a redacted version of the same document.

11

and there is no indication that any content relates to contemplated litigation. This document must be produced unredacted.

**Tab 18 (42WEST_0001703–06):** This document is an email exchange including SeaWorld employees, outside counsel, and public relations consultants, and originates with an email, which SeaWorld has redacted, from outside counsel Iser summarizing his meeting with a film director and screening of *Blackfish*. Nearly all of Iser's email discusses public relations concerns and strategy with no apparent relation to legal action. The short phrase in paragraph 4 of Iser's email between the words "directly attacking the film" and "and other efforts" may be redacted as work product. The remainder of this document must be produced.

**Tab 19 (Eml-003967–73):** This is a draft script for focus group discussions prepared by a public relations consultant. SeaWorld has redacted a comment by the consultant indicating that legal input might be appropriate on one issue. That comment does not itself reflect protected work product. The document must be produced unredacted.

**Tab 20 (001529):** This document is a list of "website content considerations." SeaWorld has redacted portions of the list indicating that an attorney was preparing a list of issues that would, in some form, be included on the website. These redactions are unsupported for the reasons stated with respect to Tab 4 (42WEST_0001607–09), and the document must be produced unredacted.

## V. CONCLUSION

SeaWorld is ORDERED to produce documents as directed above, as well as any other public relations documents that SeaWorld improperly redacted or withheld based on the reasoning of this order, no later than January 22, 2019.

**IT IS SO ORDERED.**

Dated: January 8, 2019

JOSEPH C. SPERO
Chief Magistrate Judge