UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC ANDERSON, et al., <br><br>Plaintiffs, <br><br>v. <br><br>SEAWORLD PARKS AND ENTERTAINMENT, INC., <br><br>Defendant. | Case No. 15-cv-02172-JSW   (JCS) <br><br>**ORDER REGARDING DISCOVERY LETTER BRIEF ADDRESSING PLAINTIFFS' ASSERTIONS OF PRIVILEGE** <br><br>*PROVISIONALLY UNDER SEAL* <br><br>Re: Dkt. No. 274 |

The parties have filed a joint discovery letter brief ("Discovery Letter," dkt. 274) in which Defendant SeaWorld Parks and Entertainment, Inc. ("SeaWorld") seeks production of documents based on purported waivers of privilege by Plaintiffs and interested non-party Earth Island Institute ("EII"). For the reasons stated below, the Court declines to order production of any of the documents at issue.

This order is provisionally filed under seal. Any party that believes compelling reasons justify maintaining limited portions of the order under seal may file proposed redactions and a declaration in support of sealing no later than May 23, 2019.

## I.   DISCLOSURES TO EARTH ISLAND INSTITUTE

The parties dispute whether or to what extent privilege attaches to communications by Plaintiffs' counsel at Covington & Burling LLP ("Covington") with EII, which is also a client of Covington.

Under California law, the scope of attorney-client privilege must be construed narrowly. *Behunin v. Superior Court*, 9 Cal. App. 5th 833, 850 (2017) (citing, *e.g.*, *People v. Sinohui*, 28 Cal. 4th 205, 212 (2002)). Where communications between a client and attorney have been disclosed to a third party, the burden is on the party asserting the privilege to show that it applies

despite that disclosure. *Id.* at 844–45. Disclosure of privileged communications to a third party will not destroy the privilege where either: (1) "'the third party is an agent or assistant who will help to advance the litigant's interests'"; or (2) "'the third party is not in any sense an agent of the litigant or attorney but is a person with interests of his or her own to advance in the matter, interests that are in some way aligned with those of the litigant.'" *Id.* at 846 (quoting *Citizens for Ceres v. Superior Court*, 217 Cal. App. 4th 889 (2013)).[1]

Both of those doctrines are at issue here, as EII argues both that it served as an advisor and consulting expert and that it shares an interest with Plaintiffs in compelling SeaWorld to change its practices. Discovery Letter at 3–4. The doctrines overlap to some extent, and the Court's analysis focuses on the common interest theory.

> The common interest doctrine is properly characterized under California law "as a nonwaiver doctrine, analyzed under standard waiver principles applicable to the attorney-client privilege and the work product doctrine." (*OXY Resources* [*Cal. LLC v. Superior Court*], 115 Cal.App.4th [874, 889 (2004)] fn. omitted.) " '[F]or the common interest doctrine to attach, most courts seem to insist that the two parties have in common an interest in securing legal advice related to the same matter—and that the communications be made to advance their shared interest in securing legal advice on that common matter.' [Citations.]" (*Id.* at p. 891, 9 Cal.Rptr.3d 621.)

*Seahaus La Jolla Owners Ass'n v. Superior Court*, 224 Cal. App. 4th 754, 774 (2014) (third and fourth alterations in original). The first question in an assertion of nonwaiver based on common interest is whether any privilege applies in the first place. *OXY Res.*, 115 Cal. App. 4th at 890. Here, however, SeaWorld's arguments are solely directed to the effect of sharing information between Plaintiffs and EII, with no contention that the material at issue would not be privileged but for such disclosure. *See* Discovery Letter at 1–2. The question at issue is whether "confidentiality was . . . broken by disclosure to a third party." *Id.* at 2 (citation and internal quotation marks omitted).

In *Citizens for Ceres v. Superior Court*, a California appellate court noted that the

---

[1] Federal courts apply state law regarding evidentiary privilege in diversity jurisdiction cases, Fed. R. Evid. 501, and in the absence of a decision by the state's highest court or convincing reason to believe that the highest court would decide an issue differently, federal courts are bound by the decisions of state intermediate courts on issues of state law, *Owen ex rel. Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983).

1  California Evidence Code does not specifically provide for a common interest doctrine and
2  recognized that California courts do not have authority to craft privilege doctrines beyond the
3  scope of the Evidence Code. 217 Cal. App. 4th 889, 916–17 (2013). That court held that a
4  limited nonwaiver doctrine nevertheless arises from Evidence Code section 912 and 952, both of
5  which recognize that waiver does not result from disclosures to third parties where the disclosure
6  is "reasonably necessary" to the lawyer's engagement. *See id.* at 914. "The privilege survives
7  disclosure to a party with a common interest only if it is necessary to accomplish the privilege
8  holder's purpose in seeking legal advice." *Id.* at 916.

9  Although SeaWorld's arguments focus on whether disclosures to EII were reasonably
10 necessary to further counsel's representation of Plaintiffs, contending that "it was not 'reasonably
11 necessary' to disclose [all manner of litigation strategy] to animal rights activists" (i.e., EII), *see*
12 Discovery Letter at 2, the Court need not decide that issue. EII is itself a client of Covington,
13 which EII hired to evaluate and potentially bring a lawsuit against SeaWorld on behalf of
14 customers who purchased tickets to SeaWorld in reliance on SeaWorld's marketing. *Id.* Ex. 9.
15 The engagement letter provides that EII would be consulted with respect to litigation strategy. *Id.*
16 SeaWorld has not disputed the validity of this engagement and presents no argument why the
17 engagement would not entitle EII to its own claim of privilege for communications with
18 Covington relating to the lawsuit. To the extent such communications reflected information also
19 discussed with Plaintiffs, the nonwaiver doctrine for common interest communications
20 "reasonably necessary" to Covington's engagement with EII applies, because having been hired
21 by EII to bring an action on behalf of ticketholder Plaintiffs, Covington would of course need to
22 communicate about the action with the Plaintiffs in whose name the action is prosecuted.
23 Accordingly, regardless of whether such communications are also protected by a privilege held by
24 Plaintiffs, they are protected by EII's privilege, and SeaWorld is not entitled to their production.

25 **II.    DISCLOSURES TO LISA BLANCK**
26 SeaWorld seeks production of a number of emails that included Lisa Blanck, a journalist,
27 as a recipient on otherwise privileged communications sent by EII officer Mark Palmer. EII
28 contends that no waiver occurred because the disclosure was inadvertent, citing *McDermott Will &*

3

*Emery LLP v. Superior Court*, 10 Cal. App. 5th 1083 (2017), which states that "waiver requires an intention to voluntarily waive a known right" and the "privilege holder's characterization of his or her intent in disclosing a privileged communication is an important consideration in determining whether the holder waived the privilege," even if "not necessarily dispositive." *See McDermott*, 10 Cal. App. 5th at 1101, 1104; Discovery Letter at 5. At his deposition, Palmer explained those emails as follows:

> Q. . . . Who is Lisa Blanck?
>
> A. Lisa Blanck was my error and, again, my wonky e-mail program. I have a function where I can put a large number of people into a group and send to that group just with one name, just (sounds) and it -- it goes out to everybody on [verbatim] that group, one of which are the lawyers and -- as well as Dave Phillips and Josh Flom. Lisa Blanck somehow got on that list. It's conceivable I put her on here by mistake or -- or some other way. She's a journalist. She shouldn't have been on there. It was my mistake. She eventually e-mailed me and said, Hey, you know, I'm getting all these e-mails from you, and -- and should I be on this list?
>
> And I said -- so I thanked her and removed her from the list.
>
> [. . .]
>
> Q. You sent Lisa Blanck a large number of e-mails?
>
> A. Right, just automatically pushing the button and sending them, yeah.

Discovery Letter Ex. 10 (Palmer Dep.) at 283:13–284:18 (first set of brackets in original). Although Palmer does not appear to understand clearly the mechanism by why Blanck was included on these emails, his testimony is unequivocal that he did not intend to send them to her, and that he "removed her from the list" when she alerted him to his error. *See id.*

SeaWorld argues that the circumstances of the disclosures cast doubt on Palmer's explanation. According to SeaWorld, "EII produced or logged more than 60 documents that include Ms. Blanck, sent over the course of a 17-month span." Discovery Letter at 2 (emphasis omitted). SeaWorld also notes that not all of the emails include the same combination of recipients and that two such emails "appear to have been initiated by others" besides Palmer. *Id.*

4

at 2–3.[2]

While courts examine "the relevant surrounding circumstances" of a disclosure in addition to statements of "subjective intent of the holder of the privilege," the ultimate question is whether the evidence shows "manifestation of the holder's consent to disclose the information." *State Compensation Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th 644, 653 (1999). The repeated disclosures here would probably be sufficient to show negligence by EII and its officers in protecting the confidentiality of their attorney-client communications. The standard for waiver is not negligence, however, it is "'intention to voluntarily relinquish a known right,'" based on "'the long-standing principle that a privilege is not waived in the absence of a manifest intent to waive.'" *McDermott*, 10 Cal. App. 5th at 1101 (quoting *WPS*, 70 Cal. App. 4th at 653; *Newark Unified Sch. Dist. v. Superior Court*, 245 Cal. App. 4th 887, 900 (2015)). Palmer's testimony that his email program automatically included Blanck in certain communications with his EII's lawyers is plausible and credible, and SeaWorld has not shown that the disclosures were intentional. This is true even though some such communications included different permutations of recipients—perhaps the email program associated Blanck with a small list of recipients to whom Palmer sometimes added others depending on the nature of the communication, or perhaps it associated Blanck with more than one group of recipients. The circumstances are not enough to overcome Palmer's testimony regarding his intent.

As SeaWorld notes, two emails including Blanck as a recipient "appear to have been initiated by others" besides Palmer. *See* Discovery Letter at 3 & Ex. 2 (privilege log entries 384 and 474). One of those emails, from "L. Bridgeman," is described as seeking legal advice regarding potential named plaintiffs; the other, from "L. Barnhart," is described as seeking advice

---

[2] SeaWorld also points to one email that Palmer sent to Blanck alone, consisting of an EII press release. *See* Discovery Letter Ex. 5. EII does not claim that this email is privileged, and it is not clear how it is relevant to SeaWorld's arguments. The fact that Palmer intentionally emailed Blanck at least once is consistent with his testimony that he did not intentionally include her on other, privileged communications—indeed, it is difficult to understand how Blanck's email address would have been in Palmer's "wonky" email program to begin with if he never intentionally communicated with her. Nor does the content or nature of this email—showing that EII once sent a press release to a journalist—raise any cloud of suspicion with respect to other disclosures that EII maintains were inadvertent.

regarding discovery. SeaWorld has offered no theory of why EII would have intentionally disclosed such emails to Blanck. Based on the fact that Palmer unintentionally included Blanck on a large number of emails to EII's legal team during the time the Bridgeman and Barnhart emails were sent, it appears more likely that Bridgeman and Barnhart either replied to emails sent by Palmer or copied the distribution list from one of those emails.

Because the evidence supports the conclusion that Blanck was included inadvertently, the Court finds no waiver of a privilege as a result of her inclusion on any of the emails at issue.

Finally, SeaWorld points to one email sent from Palmer to recipients including not only Blanck, but also two individuals whom Plaintiffs considered retaining as expert consultants. SeaWorld does not dispute that under California law, "communications made to a potential expert in a retention interview can be considered confidential and therefore subject to protection from subsequent disclosure even if the expert is not thereafter retained as long as there was a reasonable expectation of such confidentiality." *See Shadow Traffic Network v. Superior Court*, 24 Cal. App. 4th 1067, 1080 (1994). SeaWorld argues, however, that this particular email "is clearly not privileged" because it is logged as relating to "legal advice regarding media statement." Discovery Letter at 3. While mere *public relations* advice is not entitled to protection, SeaWorld has presented no basis to disregard the privilege log's assertion that the communication at issue relayed *legal* advice. Legal advice regarding a media statement might be shared with potential expert witnesses for any number of reasons—such as explaining the scope of a nondisclosure agreement, how a statement to the media might waive privilege, or how a statement could affect the merits of the client's case. The Court finds no waiver of privilege from the face of the privilege log entry, and declines to order production of this document.

### III.    DISCLOSURES TO POTENTIAL PLAINTIFFS

On October 25, 2015, EII employee Laura Bridgeman sent an email to a third party who was interested in helping with the case but had not visited SeaWorld recently enough to meet EII's and Covington's criteria for potential plaintiffs. Discovery Letter Ex. 6. Bridgeman's email included the following description of what EII was looking for in a potential plaintiff:

> Here's what you could help with: finding people who went to SeaWorld less than three years ago, and then saw Blackfish at some point afterwards and are now anti-SeaWorld.
>
> Its [sic] really important that they went to SeaWorld less than three years ago, such are the terms that our lawyers have laid out.

*Id.* Bridgeman restated the criteria in similar terms in a subsequent email a few days later. *Id.*

EII argues that these emails show only "that EII employees communicated with potential plaintiffs the criteria EII was using to identify potential plaintiffs, but did not reveal privileged information regarding Covington's legal advice as to why and how the criteria were developed." Discovery Letter at 5. This is true as far as it goes, and is relevant to the scope of any waiver. EII also contends that Bridgeman "did not forward legal advice, attorney work product, or confidential documents to third parties." *Id.*

Bridgeman plainly relayed at least some "legal advice" as to what criteria EII should apply in recruiting plaintiffs, by explaining not only the criteria themselves, but that the criteria were "the terms that our lawyers have laid out." Discovery Letter Ex. 6. Explaining the criteria themselves, however, merely put into effect the advice EII had received to recruit plaintiffs who satisfied those criteria. The Court finds no waiver from merely informing potential plaintiffs that EII sought to recruit people who had visited SeaWorld within the preceding three years, or even, as Mark Palmer stated in a January 2016 email, that this requirement was based on "a statute of limitations on SeaWorld's involvement in the laws." *See* Discovery Letter Ex. 7. If Plaintiffs had stated in a publicly-filed brief to the Court that they had standing to sue because they satisfied the three-year statute of limitations applicable to their claims, no one would contend that such an argument constituted waiver of discussions with counsel on the subject. It is not clear how Palmer's statement to a potential plaintiff that a three-year limitations period applied materially differs. The same is true of Palmer's and Bridgeman's deposition testimony, which similarly states the criteria that EII applied to select plaintiffs, without explicitly disclosing communications with counsel. *See generally* Discovery Letter Exs. 4, 8.

The question, then, is whether any waiver with respect to other communications or documents should result from Bridgeman's disclosure that the three-year limitations period was based on "the terms that our lawyers have laid out." *See* Discovery Letter Ex. 6. Under California

7

law, disclosure of "a significant part of [a] communication" waives privilege as to that communication, Cal. Evid. Code § 912(a), but "the scope of the waiver of a privilege is generally construed narrowly." *Manela v. Superior Court*, 177 Cal. App. 4th 1139, 1147 (2009).

The parties have not addressed whether the relatively straightforward application of a three-year statute of limitations constituted a "significant part" of any communication with counsel that has been withheld, such that the remainder of any such communication must be produced. *See* Cal. Evid. Code § 912(a). The parties also have not addressed whether attorney reasoning contained within such communications could be withheld based on work product protection. Instead, SeaWorld argues for a broad waiver based on subject matter—a doctrine that, as stated in the Court's previous order resolving a privilege dispute, "[i]t is unclear whether California law recognizes." *See Anderson v. SeaWorld Parks & Entm't, Inc.*, 329 F.R.D. 628, 634 n.2 (N.D. Cal. 2019) (citing *Garcia v. Progressive Choice Ins. Co.*, No. 11-CV-466-BEN (NLS), 2012 WL 3113172 (S.D. Cal. July 30, 2012)). Just as the Court held in that order with respect to SeaWorld's disclosure of privileged materials to public relations firms, the "limited disclosure[]" by Bridgeman here "do[es] not implicate the strategic 'sword and shield' concerns underlying subject matter waiver." *Id.* (citing *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992)). The Court finds no subject matter waiver and declines to order further documents produced as a result of Bridgeman's disclosure.

**IT IS SO ORDERED.**

Dated: May 16, 2019

JOSEPH C. SPERO
Chief Magistrate Judge