Christine S. Haskett (Bar No. 188053)
Tracy O. Zinsou (Bar No. 295458)
Lindsey Barnhart (Bar No. 294995)
Udit Sood (Bar No. 308476)
Michael E. Bowlus (Bar No. 307277)
Sarah Guerrero (Bar No. 322319)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: chaskett@cov.com; tzinsou@cov.com; lbarnhart@cov.com; usood@cov.com;
mbowlus@cov.com; sguerro@cov.com

*Attorneys for Plaintiffs*
*MARC ANDERSON, KELLY NELSON,*
*and JULIETTE MORIZUR*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MARC ANDERSON, KELLY NELSON, and JULIETTE MORIZUR,<br><br>Plaintiffs,<br><br>v.<br><br>SEAWORLD PARKS AND ENTERTAINMENT, INC.,<br><br>Defendant. | Case No.: 4:15-cv-02172-JSW<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. INGRID N. VISSER**<br><br>**Hearing Date: To Be Determined**<br>**Hearing Time: To Be Determined**<br>**Judge: Hon. Jeffrey S. White**<br>**Courtroom: 5** |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ..................................................................................................................1

II.     LEGAL STANDARD ...........................................................................................................4

III.    ARGUMENT ........................................................................................................................4

      A.    Dr. Visser is qualified on opinions characterized as "matters of veterinary medicine." ...................................................................................................................4

            1.    Harmful behaviors, including stereotypies, their causes and implications .............5

            2.    Captivity-related stress among orcas and its consequences ..................................7

            3.    Nutrition, diet and foraging ..................................................................................9

            4.    Animal welfare issues, including welfare models ...............................................10

            5.    Orca biology, including dorsal fins and pathogens .............................................11

      B.    Dr. Visser is qualified on opinions characterized as "matters of law.".............................13

IV.     CONCLUSION ...................................................................................................................15

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. INGRID VISSER

# TABLE OF AUTHORITIES

**Cases**                                                                                                                              **Page(s)**

*de Fontbrune v. Wofsy,*
  838 F.3d 992 (9th Cir. 2016) ................................................................................................ 14

*Graham v. San Antonio Zoological Soc'y,*
  261 F. Supp. 3d 711 (W.D. Tex. 2017) ........................................................................... 6, 10, 13

*Hangarter v. Provident Life & Acc. Ins. Co.,*
  373 F.3d 998 (9th Cir. 2004) ................................................................................................ 13

*Novotny v. Weatherford Int'l, LLC,*
  No. 1:16-cv-260 2018 WL 4053871 (D. ND May 9, 2018) ................................................... 4

*PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.,*
  No. C 10-00544 JW, 2011 WL 5417090 (N.D. Cal. Oct. 27, 2011) .............................. *passim*

*Questar Pipeline Co. v. Grynberg,*
  201 F.3d 1277 (10th Cir. 2000) .............................................................................................. 4

*In re Silicone Gel Breast Implants Prod. Liab. Litig.,*
  318 F. Supp. 2d 879 (C.D. Cal. 2004) .................................................................................... 4

*Sunglory Mar. Ltd. v. PHI, Inc.,*
  No. CV 15-896, 2016 WL 9414283 (E.D. La. Mar. 15, 2016) ............................................. 14

*Thomas v. Newton Int'l Enters.,*
  42 F.3d 1266 (9th Cir. 1994) .................................................................................................. 4

*In re TMI Litig. Cases Consol. II,*
  911 F. Supp. 775 (M.D. Pa. 1996) ........................................................................................ 13

*In re Zyprexa Prod. Liab. Litig.,*
  489 F. Supp. 2d 230 (E.D.N.Y. 2007) .............................................................................. 4, 4, 5

**Statutes and Other Authorities**

Federal Rule of Civil Procedure 44.1 ....................................................................................... 14

Federal Rule of Evidence 702 .................................................................................................... 4

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. INGRID VISSER

**SUMMARY OF ARGUMENT**

SeaWorld's motion should be denied for three main reasons. *First*, SeaWorld does not fairly portray Dr. Visser's expertise. She is qualified by education: she holds two relevant degrees and a PhD on orcas. She is also qualified by experience: she has spent three decades researching wild orcas and a decade researching captive ones. And through her orca rescue work, Dr. Visser has acquired considerable experience recognizing and assisting stressed and unhealthy orcas. Dr. Visser is additionally qualified by research and study: she has published over 30 peer-reviewed publications, including specifically on the harmful effects captivity has on orcas, orca behavior, tooth damage, aggression, diet, welfare, international laws and conventions affecting orcas, among other topics. She maintains an extensive personal library comprising of over 1,400 scientific publications on orcas, and has studied all (or nearly all) of them. Indeed, her expertise are routinely called upon by nations around the world, including New Zealand, Argentina, Australia, the European Union, and in 2019 alone, by Russia and Canada.

*Second*, SeaWorld does not accurately describe Dr. Visser's opinions. It lumps the vast majority of her opinions together as "matters of veterinary medicine," without making a fair effort to explain those opinions to the Court. Dr. Visser's actual opinions concern matters such as orca behavior, stress, nutrition, and biology. Each of these topics falls within Dr. Visser's expertise, and her opinions are well supported by evidence, analysis, and scientific literature.

*Third*, SeaWorld misapprehends the legal standards applicable to experts. It overlooks that "[t]he threshold for qualification is low: a minimal foundation of knowledge, skill, and experience suffices." *PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*, No. C 10-00544 JW, 2011 WL 5417090, at *3 (N.D. Cal. Oct. 27, 2011). SeaWorld also insists that experts having experience with orcas generally (*e.g.*, in the wild) are not qualified to opine on SeaWorld's orcas, and that only those with experience handling orcas in a zoological setting specifically are properly qualified. But "[a]ssertions that the witness lacks particular educational or other experiential background, go to the weight, not the admissibility, of the testimony." *In re Zyprexa Prod. Liab. Litig.*, 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007) (citation, internal quotation marks, and alterations omitted).

iv

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. INGRID VISSER

## I.    INTRODUCTION

Dr. Ingrid Visser is a marine biologist who has been studying orcas since she was 14 years old. *See* Declaration of Ingrid N. Visser, PhD, In Support of Plaintiffs' Opposition to SeaWorld's *Daubert* Motion ("Visser Decl.") at ¶¶ 2, 12.  She holds a Bachelor of Science in Zoology, and a Master of Science in Marine Science.  *See* Dkt. 303-8 ("Report") at ¶ 6.  To earn these degrees, Dr. Visser undertook basic and advanced coursework on biology, health, behavior, and welfare of animals, including cetaceans. Visser Decl. at ¶ 3.  She then earned a PhD in Environmental and Marine Sciences by writing a thesis focused on the orcas in New Zealand waters.  *Id*. at ¶ 4.  The thesis required five years of research on topics such as orca population structure, social associations, behavior, and diet.  *Id*.  It also involved research on emergency husbandry techniques for rescuing stranded and entangled orcas.  *Id*.

Dr. Visser is knowledgeable about both wild and captive cetaceans.  She has studied wild cetaceans in Antarctica, Argentina, Canada, Chile, Greece, Iceland, Indonesia, Japan, Kiribati, Malaysia, Morocco, Namibia, New Zealand, Russia, Portugal, Scotland, South Africa, Spain, Sri Lanka, Sudan, Taiwan, Turkey, United States of America, as well as 20 other countries.  *See* Dkt. 304-1, Ex. D ("Visser CV") at 24.  She has studied captive cetaceans in 35 different commercial facilities in 16 countries, and has observed every single orca in the world currently held for public display.  *Id.* at 23.  To facilitate her research, Dr. Visser founded the Orca Research Trust in 1998, and then the Orca Research & Education Centre in 2008.  Among other things, Dr. Visser serves as the Principal Scientist for both entities.  Her decades of research have yielded over 30 peer-reviewed publications, including specifically on the harmful effects of captivity on orcas, tooth damage, behavior, aggression, diet, welfare, and international conventions affecting orcas.  *Id.* at 27–29 (check marks indicate peer-reviewed publications).

Dr. Visser has undertaken cetacean rescue work since 1991.  She personally maintains a 24-hour hotline for reporting of orca strandings and entanglements.  Visser Decl. at ¶ 8.  Then, in response to calls, she sets out along with a "S.W.A.T. team" that she leads to save the animals.  *Id*.  The New Zealand Government supports her rescue work.  Indeed, Whale Rescue, a non-profit organization Dr. Visser co-founded, is the only organization the government has certified and authorized to undertake cetacean disentanglements.  *Id*.  Dr. Visser serves as the organization's Scientific Advisor.  *Id*.  Her rescue work

1

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. INGRID VISSER

requires a robust understanding of orca behavior, health, and emergency husbandry processes. *Id.* at ¶ 5. Dr. Visser shares her expertise with others, including through training sessions that Whale Rescue conducts with the New Zealand Government's support. *Id.* at ¶ 9. Although Dr. Visser educates members of the general public too, *id.* at ¶¶ 7, 9, her training sessions with Whale Rescue are focused on upskilling veterinarians, marine scientists, and other experts. *Id.* at ¶ 9.

Countries around the world benefit from Dr. Visser's knowledge on animal welfare issues. In 2018, for instance, New Zealand appointed her to its National Animal Welfare Advisory Committee, recognizing her expertise on the use of animals in exhibition and entertainment. *Id.* at ¶ 13(c). In 2017, she offered opinions to the European Commission on the "Zoos Directive," which addresses various aspects of keeping cetaceans in zoological parks in Europe. *Id.* at ¶ 13(e). In 2015, a Canadian ministry invited Dr. Visser to advise on proposed Standards of Care for Marine Mammals. *Id.* at ¶ 13(h). Her recommendations contributed to the formulation of standards and guidelines currently in place in Canada for the ethical use and care of animals in science. *Id.* And, in 2013, Argentina requested her to evaluate a proposal to relocate an orca from a tank at an amusement park to a sea pen. *Id.* at ¶ 13(k). Dr. Visser studied the proposal and advised *against* moving the orca. *Id.*

Dr. Visser's work has earned her prestige within the scientific community and outside. She is a prolific reader, and her personal library of 1,400+ publications on orcas serves as a resource not just for her, but also for other scientists. *Id.* at ¶ 12. She and her research have been featured numerous times on television, including on Animal Planet, Discovery Channel, Nat Geo Wild, and BBC, and have been discussed in at least ten books and encyclopedias. *Id.* at ¶¶ 16, 17. Over five million people have already viewed the documentary GoPro (an American company specializing in making action cameras) produced on Dr. Visser's life and work.[1] A women's magazine named her the "Princess of Whales" several years ago, *see* Dkt. 193-2 at 8, and the New Zealand Herald recognized her in 2018 as a "[w]orld-leading expert in Orca whales," and a woman who has "changed the world." Visser Decl. at ¶ 14(a).

SeaWorld approaches the Court claiming that Dr. Visser has "no credentials" and "no relevant qualifications" to opine on the health and welfare of orcas. Mot. at iv, 2. Pointing to one poor grade Dr.

---

[1] *See* https://www.youtube.com/watch?v=-pRHO1psAYY&t=52s.

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. INGRID VISSER

Visser received over 30 years ago (and that too in a course irrelevant to the science in this case), SeaWorld alleges a "wholesale lack of qualifications to testify as to SeaWorld's killer whales' health and wellbeing." Mot. at 14. But even since SeaWorld filed its motion, Dr. Visser's expertise have been called upon for the good of orcas internationally: she agreed to advise the Canadian Parliament on its proposed S203 Bill that sought to ban the keeping of orcas in captivity. *Id.* at ¶ 13(b). (Canada passed the bill two weeks after SeaWorld filed its motion. *Id.*) Then, Dr. Visser travelled to Russia to advise the Russian Government on the dismantling of its "whale jail." *Id.* at ¶ 13(a). As the Court is aware, Plaintiffs had to ask for extra time to file this opposition given Dr. Visser's travel schedule. *See* Dkt. 323.

SeaWorld also states that Dr. Visser has no "discernible experience creating or applying animal welfare standards," Mot. at 14, when indeed SeaWorld itself has had to respond to Dr. Visser's published reports that its orcas fare poorly on welfare standards. *See, e.g.*, SW-AND0075550 (███████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████) (attached as Exhibit A to Sood Decl.); SW-AND0135874 (considering ███████████████████████████████ ███████████████████████████████) (attached as Exhibit B to Sood Decl.).

SeaWorld exposed its anxiety about Dr. Visser's support for Plaintiffs' case last year by trying to keep her from seeing SeaWorld's records. *See* Dkt. 196 (denying motion for protection); Hearing Recording (3/16/2018) at 0:50 ("This [motion] is not even close. I'm astounded you've brought it."). SeaWorld's argument now that she has no credentials on any of the disputed issues[2] is equally meritless. "The threshold for qualification is low: a minimal foundation of knowledge, skill, and experience suffices." *PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*, No. C 10-00544 JW, 2011 WL 5417090, at *3 (N.D. Cal. Oct. 27, 2011). Dr. Visser readily meets this standard. The Court should deny SeaWorld's motion and ask SeaWorld to reserve its criticisms of her for cross examination.[3]

---

[2] Both sides' experts generally accept that dorsal fin collapse is widespread among SeaWorld's captive orcas but rare among wild ones. *See, e.g.*, Report at ¶¶ 410–17.

[3] SeaWorld purports to "reserve" certain *Daubert* arguments for a later date. Mot. at 7. But the Court's deadline for *Daubert* motions has already passed. If SeaWorld was concerned about the "overly broad

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. INGRID VISSER

## II.    LEGAL STANDARD

Federal Rule of Evidence 702 permits admission of scientific testimony by a qualified expert.  The rule "embrace[s] more than a narrow definition of qualified expert."  *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994).  The threshold for qualification is low: "a minimal foundation of knowledge, skill, and experience suffices."  *PixArt Imaging, Inc.*, 2011 WL 5417090, at *3 (citing *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015–16 (9th Cir. 2004)).

"Assertions that the witness lacks particular educational or other experiential background, go to the weight, not the admissibility, of the testimony."  *In re Zyprexa Prod. Liab. Litig.*, 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007) (citation, internal quotation marks, and alterations omitted).  "[E]ducational and experiential qualifications in a general field closely related to the subject matter in question" are sufficient, and "expertise in the specialized areas that are directly pertinent" is not required.  *Id.*; *see also In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 318 F. Supp. 2d 879, 889 (C.D. Cal. 2004) ("A court abuses its discretion when it excludes expert testimony solely on the ground that the witness's qualifications are not sufficiently specific if the witness is generally qualified.") (citation omitted).

## III.    ARGUMENT

### A.    Dr. Visser is qualified on opinions characterized as "matters of veterinary medicine."

Describing Dr. Visser's expert report as a "sprawling tome" and a "morass," SeaWorld makes little effort to explain her actual opinions to the Court.  Mot. at 1.  Instead, it lumps many of her opinions together as "matters of veterinary medicine," Mot. at 7:24–9:19, and then relies on its employees to say that only veterinarians who "regularly treat these animals" in zoological settings (*i.e.*, SeaWorld employees themselves) are qualified to offer those opinions.  Nollens Decl. at ¶ 7.  But Plaintiffs' experts disagree that experience with cetaceans outside of captivity is irrelevant to captive orcas, *see* Visser Decl. at ¶ 17–18, and the law does not require "expertise in the specialized areas that are directly pertinent"

---

scope of Dr. Visser's Reports," it could have requested extra pages (or time) for its motion, rather than unilaterally extending the Court's deadline.  The Court should refuse to entertain any belated *Daubert* challenges.  *See Questar Pipeline Co. v. Grynberg*, 201 F.3d 1277, 1289–90 (10th Cir. 2000) ("A party may waive the right to object to evidence on *Kumho/Daubert* grounds by failing to make its objection in a timely manner"); *Novotny v. Weatherford Int'l, LLC*, No. 1:16-cv-260 2018 WL 4053871, at *1 (D. ND May 9, 2018) (rejecting *Daubert* oppositions filed outside "pre-established deadlines.").

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. INGRID VISSER

either. *In re Zyprexa Prod. Liab. Litig.*, 489 F. Supp. 2d at 282.  Moreover, as explained below, the opinions SeaWorld takes issue with actually concern (1) harmful behavior, (2) captivity-related stress, (3) nutrition, diet and foraging, (4) animal welfare, and (5) orca biology.  Dr. Visser is qualified by knowledge, skill, experience, and education to testify on each of these topics.

### 1.    Harmful behaviors, including stereotypies, their causes and implications

Dr. Visser discusses prevalence of stereotypical behaviors or "stereotypies" among SeaWorld's orcas.  "Stereotypy" is a term in zoology that refers to the "frequent repetition by an animal of an action that serves no obvious purpose."[4]  "Cribbing" (*i.e.*, gnawing and chewing on enclosures) is a common stereotypy, Report at ¶¶ 216–21, and like stereotypies generally, is associated with frustration, boredom and stress.  *Id.* at ¶ 159.  It is seen exclusively among captive animals.  *Id.* at ¶¶ 219, 216.  Based on her research on wild orcas and her inspection of SeaWorld's orcas and records, ████████████████

████████████████████████████████████████████████████████

█████████████████████████████ *See id.* at ¶¶ 147–53 ███████████████████

██████████████████████████ ¶ 158 █████████████████████████████

██████████████████████████ ¶ 160 █████████████████████

████████, ¶¶ 171–73, 178–79, 181, 189–91 ███████████████████████ ¶¶ 225, 319 █████████████████████████████ ¶ 228 ████████████████ ¶¶ 253–55 ███████████████████████████ ¶¶ 256–57 ████████████████████

████████████, ¶ 259 & n. 353 █████████████████████████████

████████), Dkt. 303-9 ("Rebuttal Report") ¶¶ 16–18 ███████████████████.

Dr. Visser also found evidence of other unusual and harmful behaviors like aggression and calf-rejection among SeaWorld's orcas.  Relying on published research and her experience studying wild and captive orcas, ████████████████████████████████████████████████

████████████████. *See, e.g.,* Report at ¶ 76 ████████████████████, ¶¶ 198–99

████████████████████████████████ ¶ 212 ███████████████

---

[4] *See* Oxford English Dictionary, "Sterotype," https://www.oed.com/view/Entry/189966.

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. INGRID VISSER

████████████, ¶¶ 285–90 ████████████

████████, ¶¶ 284, 323 ████████████████.

Dr. Visser is qualified to opine on orca behavior, including oral and other stereotypies. Her study of wild cetaceans in over 40 countries and spanning three decades, *see* Visser CV at 24, enables her to identify atypical, unusual and harmful behaviors. With respect to orca teeth specifically, she fortified her knowledge by studying skeletal materials preserved in over two dozen museums in 12 different countries, conducting multiple orca necropsies, and collecting samples from dead orcas. *See* Report at Schedule 15. Since the early 1990s, Dr. Visser has maintained a personal collection of real and replica orca teeth to aid her research work in New Zealand. *See* Visser Decl. at ¶ 11. SeaWorld's focus on Dr. Visser's lack of a veterinarian degree is misplaced. *See Graham v. San Antonio Zoological Soc'y*, 261 F. Supp. 3d 711, 736 (W.D. Tex. 2017) (admitting testimony on stereotypies observed in captive elephant from expert who had "neither a medical degree (nor a degree of any kind)" because of his extensive "professional experience and training with elephants.").[5] Here, Dr. Visser not only has considerable experience with orcas, but also has multiple degrees relevant to her opinions. For example, she studied ethology (*i.e.*, animal behavior), psychology, evolutionary sciences, and vertebrate biology (including "tooth structure and dentition") to obtain her degrees in Zoology and Marine Science. Visser Decl. at ¶ 3.

Moreover, in claiming that Dr. Visser has "no credentials" to testify on these topics, Mot. at iv, SeaWorld discredits Dr. Visser's statement that her research since 2010 has focused on captive orcas and the prevalence of harmful stereotypic behaviors among them. Report at ¶ 13. SeaWorld disregards Dr. Visser's published reports addressing stereotypies, particularly cribbing, observed in SeaWorld's own orcas. *See id.* at n. 311, ¶ 194 (published reports in 2012 and 2016); Exhibit C to Sood Decl at SW-AND0143932 ████████████████

████████████████████ SeaWorld also overlooks Dr. Visser's peer-reviewed publications on these topics. For example, in 2017, Dr. Visser co-authored a peer-

---

[5] *Graham* excluded some of the expert's opinions on unrelated grounds. Specifically, the court found his methodology on causation unreliable because he relied on "commonly accepted fact or things that are known" without providing any citations. *Graham* at 735 (internal quotations and alterations omitted). Reliability, however, is not at issue here. *See* Mot. at 7 (purportedly reserving reliability challenges).

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. INGRID VISSER

reviewed scientific paper on "[t]ooth damage in captive orcas" focusing on oral stereotypies and "the associations between dental pathology, sex, facility, duration of captivity, and other factors in captive orca." Jett, J. et al., *Tooth damage in captive orcas (Orcinus orca)*, Archives of Oral Biology (2017) (attached as Exhibit D to Sood Decl.), Abstract. Similarly, a few weeks ago, the peer-reviewed Journal of Veterinary Behavior accepted Dr. Visser and her colleagues' paper discussing numerous stereotypies and entitled "The Harmful Effects of Captivity and Chronic Stress on the Well-being of Orcas." Visser Decl. at ¶ 11. The fact that Dr. Visser has presented her research on stereotypies at various conferences around the world (*e.g.*, Nuremburg in 2015, Nova Scotia in 2017, and Auckland in 2018), *id.*, and has been invited to speak about stereotypies and other harms of captivity before various governmental bodies (*e.g.*, the Canadian Parliament, the European Union's Parliamentary Petitions Committee, and the Ministry of the Ontario Province), *see id.* at ¶ 13, further establishes that Dr. Visser possesses the "minimal foundation of knowledge, skill, and experience" required to qualify as an expert on these topics. *PixArt Imaging, Inc.*, 2011 WL 5417090 at *3.

### 2. Captivity-related stress among orcas and its consequences

SeaWorld's retained expert Mr. Simmons admits: "chronic negative stress is as lethal as a bullet over time." Simmons Dep. Tr. at 269:5–11 (attached as Exhibit E to Sood Decl.). He testified that an "awareness of [the orcas'] behavioral state" is critical because "chronic, persistent negative stress [] can become dangerous" and weaken the immune system. *Id.* at 146:23–147:25. Mr. Simmons explained that although he is "not a veterinarian," through "experience and having witnessed it in numerous different species of animals," he has understood that "there is a cause-and-effect relationship between chronic negative stress . . . and becoming ill." *Id.* at 147:21–25.

Dr. Visser's education and experience have similarly taught her that chronic stress negatively impacts health and behavior. She studied SeaWorld's internal records and found evidence of such stress. Based on her experience researching orcas and study of published literature, Dr. Visser was able to identify certain aspects of captivity that likely contribute to that stress, as well as explain its consequences. *See* Report at ¶¶ 73–74 ███████████████████████████, ¶ 113 (same), ¶ 205 ███████ ██████████████████████████, ¶¶ 291–92, 297 ██████████████████████████

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. INGRID VISSER

███████████████████████████████████████ ¶¶ 305–09 ████████████████████, ¶¶ 324–30 ████████████████████████████████████████ [6] ¶¶ 368 ████████████████████████ ¶¶ 370–85 ██████, ¶¶ 310 ██████████████████████████████████████ ████████████████; Rebuttal Report at ¶¶ 19–20 ██████.

Besides her relevant coursework during her bachelor's and master's degrees and her research on captive orcas around the world, Dr. Visser's cetacean rescue work makes her particularly knowledgeable about stress and its consequences on orcas. Her rescue work, by definition, involves tending to orcas under highly stressful circumstances. *Id.* at ¶ 6. As Dr. Visser explains, successful rescue operations requires assessing the conditions of the stranded or entangled animal, including any stressors it may be experiencing, and appropriately adjusting rescue procedures. *Id.* Dr. Visser is knowledgeable about emergency husbandry and devotes time to educating other experts (including veterinarians) on emergency husbandry processes. *Id.* at ¶¶ 5– 9. She also has peer-reviewed publications on stress. For example, her recent paper entitled "The Harmful Effects of Captivity and Chronic Stress on the Well-being of Orcas," seeks to provide "a clear and systematic explanation for why captive orcas suffer chronic stress and how it affects their well-being." Marino et al., Journal of Veterinary Behavior (2019) (attached as Exhibit F to Sood Decl.), Abstract. It "describe[s] likely mechanisms for the high levels of morbidity and mortality in captive orcas, including the impact of chronic stress on physiology and illness." *Id.*

Dr. Visser's experience recognizing and remedying stressful conditions for captive orcas is valued globally. For example, in 2013, the Chubut Provincial Government in Argentina invited Dr. Visser to evaluate a proposal concerning the relocation of a captive orca held in a marine theme park in Argentina to a sea pen. Visser Decl. at ¶ 13(k). Dr. Visser prepared a report recommending that the orca *not* be moved to the sea pen. *Id.* Although the orca was held in poor and stressful conditions at the theme park, Dr. Visser believed that the move would compromise the safety of the animal and that the proposed plan was underprepared in terms of welfare for the animal. *Id.* Similarly, in 2013, the Queensland State

---

[6] SeaWorld accuses Dr. Visser of speculating, in paragraphs 324 and 326 of her report, about the cause of death for two individuals. Mot. at 13. Plaintiffs clarify that Dr. Visser will limit her direct testimony on those paragraphs ████████████████████████████████████████████. She will not comment on the validity of SeaWorld's claims about how they died.

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. INGRID VISSER

Government requested Dr. Visser to advise on the rescue of eight stranded orcas in the Australian state. *Id.* at ¶ 13(j). Although two orcas died while Dr. Visser was *en route*, she, together with the government, was able to successfully rescue the remaining six orcas and return them to the ocean following a five-day rescue operation. *Id.* Dr. Visser's recent assistance to the Russian Government regarding the return of approximately 100 illegally-captured cetaceans (specifically, orcas and beluga whales) similarly required an evaluation of the impact of stress on the animals' overall condition. *Id.* at ¶ 13(a). Dr. Visser therefore possesses the "minimal foundation" required to qualify as an expert on the prevalence and consequences of chronic stress among SeaWorld's orcas. *PixArt Imaging, Inc.*, 2011 WL 5417090 at *3.

### 3. Nutrition, diet and foraging

Dr. Visser discovered from SeaWorld's internal records that, contrary to SeaWorld's public reassurances that food is "never withheld" to secure the orcas' cooperation, SeaWorld trainers resort "too often" to doing just that. *Compare* SW-AND0002592 ███████████████████████████ ████████████████████████████████████ (attached as Exhibit G to Sood Decl.), *with* Report at ¶ 278 ██████████████████ ████████████████████████████████████ ███████████████████████████████ ); ¶ 282 █████████ ████████████████████████████. ████████████████████ ████████████████████████. *See* Report at ¶¶ 264– 80 ██████████████████████, ¶¶ 281–82 ████████████████ ¶¶ 283- 84 ██████████████████████.

Dr. Visser is qualified to opine on orca nutrition, diet and foraging. Besides studying nutrition to obtain her degrees in Zoology and Marine Science, orca foraging behavior and diet were a specific area of focus in Dr. Visser's PhD. Visser Decl. at ¶¶ 3–4. They have also been a focus of her three decades of research work, and she has published at least seven peer-reviewed publications on foraging and diet. *See* Visser CV at 27–29; *see also* Exhibit K to Sood Decl. (Dr. Visser "was the first person in the world to discover that orca fed on stingrays."). Dr. Visser also has experience feeding a captive orca; she volunteered at Six Flags to assist with, among other things, "food preparation," ensuring "hygiene and . . .

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. INGRID VISSER

maintenance of the food preparation area," and "feeding of a captive orca."  Simpson Decl., Ex. A at 100:22–102:9.  SeaWorld's argument that this experience is not meaningful because Dr. Visser could not remember "when it occurred or how long it lasted" goes to weight not admissibility.  *Graham*, 261 F. Supp. 3d at 727 ("Generally, if there is some reasonable indication of qualifications, the court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact.").

### 4.    Animal welfare issues, including welfare models

Animal welfare models are standards "used in industries involving animals to evaluate the animals' health and wellbeing."  Report at ¶ 121.  Dr. Visser's inspection of SeaWorld San Diego and SeaWorld's records revealed ███████████████████████████████████████████ ███████.  For example, besides its orca tanks being ███████████, Dr. Visser noted that SeaWorld provides ██████████████████████████████████████.  She discovered from the records that SeaWorld █████████████████████████████.  *See, e.g.*, SW-AND0143933 (attached as Exhibit C to Sood Decl.) ████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████.  She also observed other ███████████████████████. █ ████████████████████████████████████████████████████ ██████████████████  *See* Report at ¶¶ 121–30, 263 ████████████████████ ██████ ¶ 156 ████████████████████████████; ¶¶ 261–62 █████████ █████████████████████; ¶¶ 320–22 ██████████████████████████; ¶ 331 ██████ ████████████████████████; ¶ 347 █████████████ ¶¶ 349, 354 (█████████ ████████████; ¶¶ 355–65 █████████████████████████████); ¶¶ 364–65 ████████ ██████████████████████████; Rebuttal Report at ¶ 11 ████████████████████

SeaWorld incorrectly states that Dr. Visser has no "discernible experience creating or applying animal welfare standards" (Mot. at 14) when SeaWorld itself has been the subject of a report by Dr. Visser applying animal welfare standards.  *See, e.g.*, SW-AND0075550 (attached as Exhibit A to Sood Decl.) (internal SeaWorld email requesting time with SeaWorld CEO to discuss "Report Regarding Welfare of SeaWorld Orca at Loro Parque.").  In that report, Dr. Visser applied two welfare standards, namely the

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. INGRID VISSER

"C-Well Model" and the "Five Freedoms," to Morgan.  Report at ¶ 131.  Dr. Visser has evaluated the welfare of other orcas too.  For example, as discussed above, Dr. Visser was invited by Argentina in 2013 to evaluate whether a captive orca's welfare would be compromised if the government implemented a proposal to move the orca to a sea pen.  Visser Decl. at ¶ 13(k).  Dr. Visser also has experience creating welfare standards.  In 2015, for example, Canada invited Dr. Visser to make recommendations to the Canadian Council on Animal Care — *i.e.*, the agency responsible for setting and maintaining standards for the ethical use and care of animals in science throughout Canada — on proposed Standards of Care for Marine Mammals.  *Id*. at ¶ 13(h).  Dr. Visser's recommendations contributed to the formulation of standards and guidelines currently in place in Canada.  *Id*.  Similarly, in 2017, Dr. Visser participated in the European Commission's workshop on an evaluation of the "Zoos Directive," which includes aspects regarding the keeping of cetaceans in captivity in zoological parks in Europe.  *Id*. at ¶ 13(e).  Dr. Visser's expertise on wild and captive orcas, her research and publications focused on the problems orcas face in captivity, and her government-appointed position on New Zealand's National Animal Welfare Advisory Committee (*see id.* at ¶ 13(c)) additionally demonstrate her credentials to opine on animal welfare issues.

### 5.    Orca biology, including dorsal fins and pathogens

Dr. Visser opines on the biology of orcas' dorsal fins as background to her opinion that collapsed dorsal fins are not "normal."  Specifically, Dr. Visser describes ████████████████████ ████████████████████████████████████ ████████████████████████ *See* Report at ¶ 405 ████████████████ ¶¶ 426–27 (████████████████████████), ¶¶ 429–30 ████████████████████████ ¶¶ 431–34 ███████████████ ████████████████████; Rebuttal Report at ¶ 25 ███████████████ █████████████████████████████.  Dr. Visser also notes ████████████████████████████████████ ████████.  *See, e.g.*, Report at ¶¶ 410–17; Rebuttal Report at ¶ 21.

Similarly, Dr. Visser opines on ████████████████████████.  She notes that █████████████████████████

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. INGRID VISSER

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████. *See* Report at ¶¶ 311–12 (████████████████████████████ ¶ 313

█████████████████████████████████; *see also* Rebuttal Report at ¶ 21 ████

████████████████████████████████████████████████

█████████████████████████████████████████████████. Then, as discussed in scientific literature (including her own peer-reviewed papers), Dr. Visser opines that the SeaWorld's ███████████████████████████████████████

████████████████████████████████. Report at ¶ 311; *see also id.* at n. 439 ██████████████████████████████████████████████████████

██████████████████████████████████. Dr. Visser abstains (although she need not have) from second-guessing SeaWorld's diagnoses of illnesses or questioning the appropriateness of the treatments prescribed. And, contrary to SeaWorld's assertion, Dr. Visser does not opine that the dosages administered were too high, *i.e.*, that the orcas are "overmedicated." Mot. at 3.

Plaintiffs agree that a veterinarian would likely have expertise on orca biology, pathogens and medications. But Dr. Visser's lack of a veterinarian degree does not negate her other, substantial credentials on these topics. *Cf.* Simmons Dep. Tr. at 152:2–153:4 (as a non-veterinarian, Mr. Simmons was "involved in every aspect of [] medical evaluation, but [] not diagnosing nor prescribing.") (attached as Exhibit E to Sood Decl.). For example, Dr. Visser has conducted and participated in multiple necropsies on orcas, which requires an understanding of orca anatomy and also includes an assessment of the cause of death. Visser Decl. at ¶ 10. Additionally, Dr. Visser's research on orcas has included extensive study of published scientific literature on orca dorsal fins as well as pathogens. *Id.*; *see also* Mot. at 1 ("To support [her] opinions, Dr. Visser submitted a 328-page report, along with a 76-page. . . list of 'materials considered,' listing hundreds of scientific and other publications."). Dr. Visser has published on these topics as well. For example, her 2019 peer-reviewed paper on the harmful effects of captivity discusses the issue of chronic antibiotic use resulting in drug-resistant pathogens. *See, e.g.*, Exhibit F to Sood Decl. She has also authored a peer-reviewed paper on dorsal fins — one that SeaWorld cites in its own literature on orcas. *See, e.g.*, Visser CV at 29; *see also* Dkt. 193-3 at 24–25 ("A SeaWorld Education

12

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. INGRID VISSER

& Conservation Publication" citing Dr. Visser's paper on dorsal fins). Dr. Visser obtained relevant education too. Her studies, for example, included vertebrate zoology (*e.g.*, general anatomy, circulatory system, and tissue structure), as well as invertebrate zoology and microbiology (*e.g.*, bacteria, viruses and other pathogens), immunology, pharmacology, among other courses. Visser Decl. at ¶ 3.

SeaWorld's argument that all of Dr. Visser's credentials should be discounted because Dr. Visser received a "D" in one irrelevant course decades ago is not persuasive. Mot. at 3; *see also* Dkt. 304-1, Ex. A, Visser Dep. Tr. at 24:23–25:2 ("I don't recall if it was physics or chemistry, sir, but it was one of those two."). Under the law, "an expert who has little or no formal training in a given area may be found qualified based upon [her] life experience or extensive work history in that area." *In re TMI Litig. Cases Consol. II*, 911 F. Supp. 775, 786 (M.D. Pa. 1996) (alterations, citations and quotation marks omitted). Courts further recognize that "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony," *Hangarter*, 373 F.3d at 1015, and as SeaWorld's retained expert admits, marine mammal care can be one such field. *See* Simmons Dep. Tr. at 143:21–145:5 (describing Mr. Robin Friday who "wasn't a trained veterinarian" but "knew more about marine mammal care and practical application than many of the vets on staff.") (attached as Exhibit E to Sood Decl.). Apparently, Mr. Friday developed his expertise through working with stranded and sick animals, animals being transported, conducting necropsies, and being "very well-read and studied." *Id.* There is no reason to think Dr. Visser was unable to achieve similar expertise through the same means.

Given that there is a "reasonable indication of qualifications," Dr. Visser's opinions on orca biology, including dorsal fins and pathogens, should be admitted, and any remaining deficiency SeaWorld perceives in her credentials should be left for cross examination. *Graham*, 261 F. Supp. 3d at 727.[7]

**B.    Dr. Visser is qualified on opinions characterized as "matters of law."**

SeaWorld takes issue with Dr. Visser's opinions concerning the application of laws of the European Union to Morgan, and the accuracy of certain signage concerning the Convention on the Trade

---

[7] Dr. Visser's opinions that SeaWorld complains about in Section IV.B of its motion (characterized as "training, husbandry or behavior") have been addressed above in Sections III.A.1, III.A.2, and III.A.4. Likewise, the opinions challenged in Section IV.C of SeaWorld's motion ("animal welfare") have been addressed in Section III.A.4 above. As discussed, Dr. Visser is sufficiently qualified on all these matters.

13

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. INGRID VISSER

in Endangered Species ("CITES") and other international laws. Mot. at 14–15. SeaWorld is incorrect that Dr. Visser lacks qualifications on these topics. Through her research and study, Dr. Visser has acquired sufficient expertise on the international laws concerning orcas discussed in her expert report, particularly as they apply to Morgan. Her peer-reviewed publications demonstrate this. For example, in 2019, she co-authored a peer-reviewed paper concerning "[t]he progressive dilution of legal requirements regarding a wild-born orca kept for 'research' purposes," published in the journal called "Review of European, Comparative & International Environmental Law." Visser CV at 27. Similarly, in 2015, she co-authored a report entitled "CITES and the Marine Mammal Protection Act: Comity and Conflict at Loro Parque." *Id.* at 9. Her credentials are further demonstrated by the fact that, in June 2018, Dr. Visser presented to the European Union's Parliamentary Petitions Committee regarding EU Law 338/97 (the Convention on International Trade in Endangered Species of Wild Fauna and Flora), specifically on Morgan and the other SeaWorld orcas at Loro Parque, Spain. Visser Decl. at ¶ 13(d).

SeaWorld is also wrong that the law precludes expert testimony on legal matters. Citing cases concerning domestic laws, SeaWorld ignores that Dr. Visser's testimony concerns foreign / international law which is proper subject matter for expert testimony. *See, e.g.*, *de Fontbrune v. Wofsy*, 838 F.3d 992, 997 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (Nov. 14, 2016) ("Independent research, plus the testimony of foreign legal experts, together with extracts of foreign legal materials, 'has been and will likely continue to be the basic mode' of determining foreign law."); *Sunglory Mar. Ltd. v. PHI, Inc.*, No. CV 15-896, 2016 WL 9414283, at *4 (E.D. La. Mar. 15, 2016) ("Because the Court has concluded that Federal Rule of Civil Procedure 44.1 allows it to consider testimony in determining international law, and because the Federal Rules of Evidence do not bar such testimony, the Court declines to prohibit Davies from testifying in this matter."). Dr. Visser's testimony should be admitted.[8]

\*    \*    \*

"Discredit[ing]" any scientist who opines that "whales . . . are not suited to captivity" is not a new

---

[8] Plaintiffs clarify that Dr. Visser will limit her opinions discussed in paragraphs 390, 392 and 394 of her report to the inaccuracy of Loro Parque's communications concerning SeaWorld's orcas and will not comment on whether members of the public would be deceived by those communications.

strategy for SeaWorld. *See* Dkt. 193 at n.3. Dr. Visser is highly regarded in her field. Indeed, over the years, SeaWorld has found it important to publicly respond to her research and opinions. *See, e.g.*, SW-AND0051201 ███████████████████████████████████████████████ ███████████████████████████████ (attached as Exhibit I to Sood Decl.); SW-AND0062511 ████████ ██████████████████████████████████████████████ ████████████████████████ (attached as Exhibit J to Sood Decl.). The Court should admit Dr. Visser's testimony. Plaintiffs believe the Court will find it well-informed, helpful, and persuasive.

## IV.   CONCLUSION

The Court should deny SeaWorld's motion to exclude Dr. Visser's expert opinions.

Dated: July 5, 2019                                    COVINGTON & BURLING LLP

By: */s/ Udit Sood*

Attorneys for Plaintiffs

15
OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. INGRID VISSER