Christine Saunders Haskett (Bar No. 188053)
Tracy O. Zinsou (Bar No. 295458)
Lindsey Barnhart (Bar No. 294995)
Udit Sood (Bar No. 308476)
Michael E. Bowlus (Bar No. 307277)
Sarah Guerrero (Bar No. 322319)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: chaskett@cov.com; tzinsou@cov.com; lbarnhart@cov.com; usood@cov.com;
mbowlus@cov.com; sguerrero@cov.com

*Attorneys for Plaintiffs*
*MARC ANDERSON, KELLY NELSON,*
*and JULIETTE MORIZUR*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC ANDERSON, KELLY NELSON, and JULIETTE MORIZUR, <br><br> Plaintiffs, <br><br> v. <br><br> SEAWORLD PARKS AND ENTERTAINMENT, INC., <br><br> Defendant. | Case No.: 4:15-cv-02172-JSW-JCS <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. DAVID DUFFUS** <br><br> **Hearing Date: To Be Determined** <br> **Hearing Time: To Be Determined** <br> **Judge: Hon. Jeffrey S. White** <br> **Courtroom:  5** |

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................... 1

II.     LEGAL STANDARD ............................................................................................... 3

III.    ARGUMENT ............................................................................................................ 4

        A.      DR. DUFFUS IS QUALIFIED TO PROFFER HIS OPINIONS IN THIS CASE. ......... 4

        B.      DR. DUFFUS' OPINIONS ARE NOT LEGAL CONCLUSIONS AND ARE
                FACTUALLY SUPPORTED. ....................................................................................... 7

        C.      DR. DUFFUS' OPINIONS ARE RELIABLE AND WILL ASSIST THE COURT
                AT TRIAL. ................................................................................................................. 9

                1.      Dr. Duffus' Opinion Regarding the Meaning of Calf is Well-Supported. ........... 9

                2.      Dr. Duffus' Opinion on Separation is Based on the Analysis and Synthesis
                        of Extensive Training Records and Will Assist The Court in Determining
                        Whether SeaWorld Has Separated Killer Whales. ............................................. 11

                3.      Dr. Duffus' Opinions on Killer Whale Social Structures Are Consistent and
                        Well-Supported by SeaWorld's Training and Veterinary Records. .................... 12

IV.     CONCLUSION ....................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                          **Page(s)**

*Beech Aircraft Corp v. U.S.*,
  51 F.3d 834 (9th Cir. 1995)..................................................................................................11, 12

*Estate of Bojcic v. City of San Jose*,
  No. C05 3877 RS, 2007 WL 3314008 (N.D. Cal. Nov. 6, 2007) ..............................................8

*Boucher v. U.S. Suzuki Motor Corp.*,
  73 F.3d 18 (2d. Cir. 1996) ......................................................................................................12

*In re ConAgra Foods, Inc.*,
  302 F.R.D. 537 (C.D. Cal. 2014) .............................................................................................9

*Daubert v. Merrell Dow Pharm.*,
  509 U.S. 579 (1993) ............................................................................................................3, 4

*Graham v. San Antonio Zoological Society*,
  261 F. Supp. 3d 711 (W.D. Tex. 2017)................................................................2, 5, 11, 13

*Hangarter v. Provident Life & Acc. Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004)...........................................................................................2, 3, 4, 7

*California ex rel. Harris v. Safeway, Inc.*,
  651 F.3d 1118 (9th Cir. 2011).................................................................................................12

*Jinro Am. Inc. v. Secure Investments, Inc.*,
  266 F.3d 993 (9th Cir. 2001)....................................................................................................6

*Kalani v. Starbucks Corp.*,
  81 F. Supp. 3d 876 (N.D. Cal. 2015)........................................................................................7

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999) ................................................................................................................3

*Miletak v. Allstate Ins. Co.*,
  No. C 06-03778 JW, 2011 WL 13154033 (N.D. Cal. Oct. 19, 2011)..................................3, 12

*Mullins v. Premier Nutrition Corp.*,
  178 F. Supp. 3d 867 (N.D. Cal. 2016).......................................................................................6

*Perez v. State Farm Mut. Auto. Ins. Co.*,
  No. C 06-01962 JW, 2011 WL 8601203 (N.D. Cal. Dec. 7, 2011) ...................................vi, 2, 4

*Perry v. Schwarzenegger*,

  704 F. Supp. 2d 921, 945-46 (N.D. Cal. 2010) .......................................................................10

*PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*,
No. C 10-00544 JW, 2011 WL 5417090 (N.D. Cal. Oct. 27, 2011) ........................................................ 3

*Primiano v. Cook*,
598 F.3d 558 (9th Cir. 2010) ................................................................................................................. 3

*Pyramid Technologies, Inc. v. Hartford Cas. Ins. Co.*,
752 F.3d 807 (9th Cir. 2014) ............................................................................................................... 13

*In re Roundup Prod. Liab. Litig.*,
No. 16-md-02741-VC, 2018 WL 3368534 (N.D. Cal. July 10, 2018) ........................................... vi, 2, 5

*S.E.C. v. Leslie*,
No. C 07-3444, 2010 WL 2991038 (N.D. Cal. July 29, 2010) ............................................................ 9

*In re Silicone Gel Breast Implants Prod. Liab. Litig.*,
318 F. Supp. 2d 879 (C.D. Cal. 2004) ............................................................................................... 2, 4

*Estate of Stuller v. United States*,
811 F.3d 890 (7th Cir. 2016) ................................................................................................................ 6

*Thomas v. Newton Int'l Enterprises*,
42 F.3d 1266 (9th Cir. 1994) ............................................................................................................. 3, 4

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prod. Liab. Litig.*,
978 F. Supp. 2d 1053 (C.D. Cal. 2013) .......................................................................................... 11, 13

*Tucson Electric Power Co. v. Pauwels Canada Inc.*,
651 Fed. Appx. 681 (9th Cir. 2016) ................................................................................................... 12

*In re Zyprexa Prod. Liab. Litig.*,
489 F. Supp. 2d 230 (E.D.N.Y. 2007) .................................................................................................. 5

**Other Authorities**

Federal Rule of Evidence 702 ................................................................................................... vi, 2, 3, 4

**SUMMARY OF ARGUMENT**

SeaWorld moves to exclude the expert testimony of Dr. David Duffus concerning the definition of calf, mother-calf separation, and killer whale social structures.  Each of SeaWorld's arguments fails.

First, under Federal Rule of Evidence 702, Dr. Duffus possesses sufficient education, training, and experience to qualify him to offer expert testimony on these subjects.  The threshold for qualification as an expert is low.  *Perez v. State Farm Mut. Auto. Ins. Co.*, No. C 06-01962 JW, 2011 WL 8601203, at *3 (N.D. Cal. Dec. 7, 2011).  Dr. Duffus easily meets this threshold, having extensive experience studying and teaching in the fields of marine mammalogy and ecology, as well as over thirty years of experience studying killer whales.  At best, any arguments that his experience is not sufficiently specific to captive killer whales go only to the weight, not the admissibility, of expert testimony.  *See In re Roundup Prod. Liab. Litig.*, No. 16-md-02741-VC, 2018 WL 3368534, at *4 (N.D. Cal. July 10, 2018).

Second, Dr. Duffus' opinions that SeaWorld's statements pertaining to mother-calf separation are "false" or "misleading" are not merely legal conclusions, but rather are premised on specific factual supports provided by SeaWorld's own documents and employees.  And even if the Court determines that such opinions are legal conclusions warranting exclusion, the sentences containing these statements can simply be excluded from Dr. Duffus' expert report without excluding the substance of his opinions.

Third, Dr. Duffus' opinions are reliable and will assist the court at trial.  Specifically, Dr. Duffus' opinion regarding the meaning of "calf" is well-supported by scientific studies; SeaWorld's argument to the contrary depends on cherry-picked statements taken entirely out of context as well as citations to inapposite cases.  Further, Dr. Duffus' opinions regarding the separation of mothers and calves is the synthesis of data that SeaWorld itself acknowledges is difficult to analyze, coupled with the application of Dr. Duffus' scientific knowledge.  Finally, Dr. Duffus' opinion on killer whale social structure has been consistent and based soundly on the application of his expertise upon the training and veterinary records produced by SeaWorld.

The Court should deny SeaWorld's motion in its entirety.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

SeaWorld's motion to exclude Dr. Duffus' opinions regarding mother-calf separation and killer whale social structure boils down to two primary quarrels: 1) that Dr. Duffus' expertise with killer whales in the wild is not sufficient to opine on SeaWorld's killer whales and 2) that Dr. Duffus' reliance on scientific literature and SeaWorld's records in reaching his conclusions is insufficient and unreliable. Both sets of arguments are incorrect.

Broadly speaking, Dr. Duffus' opinions in this case focus on social behavior within killer whale populations, particularly with regard to relationships between killer whale mothers and calves.  In summary, he opines that SeaWorld's statement regarding mother-calf separation is inaccurate and misleading.  Based on available data and the scientific literature, the term "calf" is ambiguous and SeaWorld's adopted definition is not accepted in the scientific community.  ███████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████."

Dr. Duffus is well qualified to offer the foregoing opinions.  He is an expert in the fields of marine mammalogy and ecology, holding advanced degrees in Biology and Geography.  He has studied killer whales and other cetaceans for over thirty years, completing his dissertation thesis in 1988 on the "Non-consumptive Use and Management of Cetaceans in British Columbia Coastal Waters."  Dkt. 308-6, Ex. 1 at ¶ 5.  He has also authored or co-authored over 35 peer-reviewed articles in the field, five book chapters related to marine mammals and wildlife, and over 60 conference presentations.  *See* Dkt. 308-6, Ex. 1 at ¶ 9.  Some of his peer-reviewed work relating specifically to killer whales include, for example, "Recreational Use and Management of Killer Whales (*Orcinus orca*) on Canada's Pacific Coast" in 1993, "Killer Whales, Whale-Watching and Management: A Status Report" in 1996, "Geostatistical Analysis of Interactions Between Killer Whales (*Orcinus orca*) and Recreational Whale-Watching Boats" in 2002, and "The Combined Use of Visual and Acoustic Data Collection Techniques for Winder Killer Whale (*Orcinus orca*) Observations" in 2016.  Dkt. 308-6, Ex. 1 at Ex. A (Duffus CV).

Further, Dr. Duffus has conducted research related to community ecology of whale-dominated ecosystems, effects of recreational whale watching, acoustic behavior of several cetacean species,

cetacean habitat use, and management of whales.  He has organized and participated in numerous workshops, panels, conferences, and committees discussing marine mammals and cetaceans, including as a panelist for a discussion on the science of killer whales in captivity at the 2013 Society for Marine Mammalogy Biennial Meeting.  He was also a member of the Robson Bight Killer Whale Management Committee, which was tasked with implementing a protection program for northern resident killer whales. Dkt. 308-6, Ex. 1 at ¶ 7.

The threshold for qualification as an expert is low.  *Perez v. State Farm Mut. Auto. Ins. Co.*, No. C 06-01962 JW, 2011 WL 8601203, at *3 (N.D. Cal. Dec. 7, 2011).  In its motion, SeaWorld attempts to significantly raise this bar by insisting that only specific experience with SeaWorld's killer whales will suffice for admissible expert testimony.  (Underlying this argument is the mistaken assumption that only SeaWorld's own employees are qualified to opine on their killer whales.)  However, this is not the standard.  Rule 702 contemplates a broad conception of expert qualifications.  *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004).  And here, Dr. Duffus' more than three decades of experience studying killer whales in the wild translates into sufficient expertise to opine on SeaWorld's killer whales.  He has testified that "[a] killer whale is a killer whale regardless of its ecological or behavioral setting."  *See* Guerrero Declaration, filed concurrently herewith ("Guerrero Decl."), Ex. A at 70:23-25.  Thus, Dr. Duffus' expertise and extensive experience with killer whales generally are relevant to this case and his comparisons of killer whales in the wild to SeaWorld's killer whales—based on SeaWorld's own records—are well-supported and reliable.  *See Graham v. San Antonio Zoological Society*, 261 F. Supp. 3d 711, 730 (W.D. Tex. 2017).  The Court should therefore reject SeaWorld's arguments that Dr. Duffus is not qualified to offer his opinions in this case.

Additionally, each of SeaWorld's arguments seeking to exclude Dr. Duffus go to the weight, not the admissibility, of his opinions.  First, SeaWorld's various contentions that Dr. Duffus' experience is not specific enough does not weigh in favor of exclusion.  *See In re Roundup Prod. Liab. Litig.*, No. 16-md-02741-VC, 2018 WL 3368534, at *4 (N.D. Cal. July 10, 2018) ("a lack of particularized expertise generally goes to the weight of the testimony, not its admissibility").  *See also In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 318 F. Supp. 2d 879, 889 (C.D. Cal. 2004) ("A court abuses its discretion when it excludes expert testimony solely on the ground that the witness's qualifications are not

sufficiently specific if the witness is generally qualified.") (citation omitted).  Second, SeaWorld's arguments that, in essence, it disagrees with Dr. Duffus' reading of the scientific literature and reliance on certain assumptions—particularly regarding the definition of the word "calf" in interpreting SeaWorld's records—again goes solely to the weight of the evidence.  *Miletak v. Allstate Ins. Co.*, No. C 06-03778 JW, 2011 WL 13154033, at \*9 (N.D. Cal. Oct. 19, 2011) (finding that arguments attacking underlying assumptions of expert methodology, and not the methodology itself, go to weight rather than admissibility).  SeaWorld is free to make its arguments regarding the weight to be accorded to Dr. Duffus' opinions through its own evidence and cross examination at trial.  *See Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).  But the Court should not exclude Dr. Duffus' opinions at this juncture and should therefore deny SeaWorld's motion in its entirety.

## II.    LEGAL STANDARD

Federal Rule of Evidence 702 permits admission of "scientific, technical, or other specialized knowledge" by a qualified expert if such testimony assists "the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  Rule 702 is "broadly phrased and intended to embrace more than a narrow definition of qualified expert."  *Thomas v. Newton Int'l Enterprises*, 42 F.3d 1266, 1269 (9th Cir. 1994); *Hangarter*, 373 F.3d at 1015. The threshold for qualification is low: "a minimal foundation of knowledge, skill, and experience suffices."  *PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*, No. C 10-00544 JW, 2011 WL 5417090, at \*3 (N.D. Cal. Oct. 27, 2011) (citing *Hangarter*, 373 F.3d at 1015–16).

An expert witness—unlike other witnesses—"is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation," so long as the "expert's opinion [has] a reliable basis in the knowledge and experience of his discipline."  *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148 (1999).  "Expert opinion testimony . . . is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline."  *Primiano*, 598 F.3d at 565.  Even "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."  *Id.* at 564.

## III.    ARGUMENT

### A.    DR. DUFFUS IS QUALIFIED TO PROFFER HIS OPINIONS IN THIS CASE.

Dr. Duffus' testimony will explain the mother-calf bond and killer whale social structures (*see, e.g.*, Dkt. 308-6, Ex. 1 at ¶¶ 17-24),  and assist the Court in determining ████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████. *See, e.g.*, *id.* at ¶¶ 37-49.  For example, SeaWorld has previously argued that movement of whales within the same park does not constitute "separation" and that only movements of whales to different parks would be deemed a separation.  Dr. Duffus' opinions will assist the court in understanding ████████████████████████████████████████████████████████. *See id.* at ¶¶ 37-49.  Here, Dr. Duffus' scientific knowledge and expertise lies in his decades of experience studying killer whale behavior and ecology, which informs his interpretation of and opinions regarding the factual information contained in SeaWorld's records.  Dkt. 308-6, Ex. 1 at ¶¶ 4-9 and Duffus CV.  Contrary to SeaWorld's insistence, Mot. at 8, Rule 702 does not require specialized knowledge in reading a particular type of record.  The threshold for qualification under Rule 702 is low and "a minimal foundation of knowledge, skill, and experience suffices." *Perez*, 2011 WL 8601203, at *3.  Rule 702 "contemplates a broad conception of expert qualifications . . . [and] is broadly phrased and intended to embrace more than a narrow definition of qualified expert." *Thomas*, 42 F.3d at 1269; *Hangarter*, 373 F.3d at 1015.  Dr. Duffus' qualifications are well within the confines of Rule 702.

With respect to Dr. Duffus' opinions on killer whale social structures, SeaWorld seeks to make much of the differences between killer whales in the wild and its killer whales, citing only to testimony noting that Dr. Duffus has not specifically trained or touched killer whales in a zoological setting.  Mot. at 10-11.  Unsurprisingly, Plaintiffs' and SeaWorld's experts disagree on the degree to which expertise with wild orca is applicable to captive orca and vice versa. *See, e.g.*, Declaration of Ingrid N. Visser, PhD in Support of Plaintiffs' Opp. to SeaWorld's *Daubert* Motion to Exclude Dr. Visser's Opinions, filed concurrently herewith, at ¶¶ 17-18.  In any event, such supposed lack of specific experience is insufficient to exclude Dr. Duffus' testimony. *See In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 318 F. Supp. 2d at 889 ("A court abuses its discretion when it excludes expert testimony solely on the ground that the witness's qualifications are not sufficiently specific if the witness is generally qualified.").

*First*, SeaWorld ignores Dr. Duffus' testimony that killer whales in the wild are the same animals as killer whales in a zoological facility and that there is a "unity to the species":

> Q. You agree with me that due to the various differences, it's difficult to draw conclusions about all killer whales by observing only a certain type.
>
> THE WITNESS: From a scientist's viewpoint, it's from the opposite direction. We seek to generalize our knowledge, and we build our knowledge base on the observations of the more subtle differences. There is a unity to the species. A killer whale is a killer whale regardless of its ecological or behavioral setting, and a scientist looks to those as first principles.

Guerrero Decl., Ex. A ("Duffus Dep. Tr."), 70:13-71:1 (objection omitted).  Dr. Duffus also opines that even a change in behavior brought about by operant conditioning would not alter instinct, and that the formation of social structures involves instinctual behavior.  Duffus Dep. Tr. 76:3-19 ("Instinct is a product of large numbers of generation of selective pressure. They cannot be turned off and on in a few generations . . . instinct is more resilient and runs deeper than would occur in three generations of erosion"); *see also* Dkt. 308-6, Ex. 2 (Duffus Rebuttal Report), ¶ 5 ("Mr. Simmons' assertion that operant conditioning has replaced instinct in captive killer whales and that captive killer whales are 'different' behaviorally than wild killer whales is unsupported by analysis or evidence, and I am aware of nothing in the scientific literature that supports that conclusion").  Thus, Dr. Duffus' decades of experience with killer whales in the wild are readily applicable to his analysis of killer whales in captivity because the two groups of animals share certain social behaviors regardless of where they are found.  Any objections about the specificity of Dr. Duffus' experience should go to the weight of his testimony, not its admissibility. *See In re Roundup Prod. Liab. Litig.*, 2018 WL 3368534, at *4 ("So long as the expert's testimony is 'within the reasonable confines of his subject area,' a lack of particularized expertise generally goes to the weight of the testimony, not its admissibility."); *Graham*, 261 F. Supp. 3d at 727 ("Generally, if there is some reasonable indication of qualifications, the court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact"); *In re Zyprexa Prod. Liab. Litig.*, 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007) ("[T]he standard for qualifying expert witnesses is liberal.  Assertions that the witness lacks particular educational or other experiential background, 'go to the weight, not the admissibility, of the testimony.'  If the expert has educational and experiential qualifications in a general

field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent.") (citation omitted).

The cases SeaWorld cites in support of its position are also readily distinguishable. Most clearly, *Jinro Am. Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1004–06 (9th Cir. 2001), involved an expert whose qualifications the Court deemed "glaringly inadequate" as he had "no education or training" in the subject matter generally, and in his testimony he "had cited no research or study" other than to cite newspaper articles and had made only "anecdotal references to his personal experience." As discussed above, this is not the case with Dr. Duffus. Nor do SeaWorld's other cases apply. *See Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 900 (N.D. Cal. 2016) (finding that opinion "require[d] review and understanding of the available scientific literature" but expert admitted that "he does not understand many of the [relevant] articles."); *Estate of Stuller v. United States*, 811 F.3d 890, 895–96 (7th Cir. 2016) (finding testimony was unreliable where expert failed to review any of the relevant business or financial records in the case).

*Second*, SeaWorld's statement regarding mother-calf separation and social structures implicitly make comparisons with wild killer whale populations, and SeaWorld's own employees and experts have compared SeaWorld's movement of whales to such movement in the wild. Guerrero Decl., Ex. B (Dold Dep. Ex. 121 (SW-AND0152844)) (███████████████████████████████████████████████████████████████████████████████████████████████████████████"); *see also* Guerrero Decl., Ex. C (SW-AND0252766) (recognizing that █████████████████████████████████████████████████████████████████████████████████). It is unreasonable, therefore, for SeaWorld to seek to exclude Dr. Duffus' testimony for comparing captive killer whale populations against wild ones, where SeaWorld's operations themselves rely on such comparisons.

*Third*, SeaWorld does not seriously challenge Dr. Duffus' expertise with killer whales generally. Instead it attempts to attack inconsequential details, such as the fact that Dr. Duffus "avoids . . . contact" with killer whales, without articulating why scientific knowledge of killer whales' social behavior remains incomplete without physical contact with the animals. Mot. at 10-11. Indeed, physical contact is not

necessary to study killer whales, and in fact, as Dr. Duffus testifies, it can even be dangerous.  Duffus Dep. Tr. 78:22-79:10 ("I have no need to touch a killer whale for any reason. . .the broader reason is it's potentially dangerous. . .[for t]he human and the whale").  Dr. Duffus has sufficient qualifications, and the Court should not exclude his testimony on this basis.

### B. DR. DUFFUS' OPINIONS ARE NOT LEGAL CONCLUSIONS AND ARE FACTUALLY SUPPORTED.

SeaWorld first argues that Dr. Duffus should be precluded from offering the opinion that SeaWorld's mother-calf separation statement is "false" or "misleading" because it is an impermissible legal conclusion.  Dr. Duffus' opinion is not a legal conclusion but instead is an opinion that the statements are not scientifically accurate, and he offers factual support for his conclusion.  *See, e.g.*, Dkt. 308-6, Ex. 1 at ¶¶ 13-14 ("I have been asked by counsel for Plaintiffs to provide expert testimony evaluating the *accuracy* and *scientific basis* of SeaWorld's statements about mother-calf separation…"), 29  ("In my opinion, SeaWorld's statement is *inaccurate* . . . ."); Dkt. 308-6, Ex. 2 at 114:12-23 ("Q: And what I'm trying to find out, Dr. Duffus, is whether this list is complete and would include everything you reviewed with respect to this first statement that you claim is *not accurate*, that SeaWorld does not separate killer whale moms and calves. Is it all on Exhibit B? A: I'm just trying to make sure, Mr. Iser, that other elements of research that I reviewed in the past are included.  The best of my recollection, all the material that I used comes from these papers.") (emphasis added).

An expert may "testify as to findings that support the ultimate issue."  *Kalani v. Starbucks Corp.*, 81 F. Supp. 3d 876, 882 (N.D. Cal. 2015) (citing *Hangarter*, 373 F.3d at 1016–17).  Further, an expert may "refer to the law in expressing an opinion without crossing the line into a legal conclusion."  *See id*. It is only "legal conclusions without underlying factual support" that constitute "unsupported speculation" and are inadmissible.  *Id*.  In *Kalani*, the plaintiff alleged that a Starbucks store was not ADA-compliant, and Defendant's expert offered opinions regarding whether various parts of the store were compliant with regulations.  *Id.* at 880.  The court excluded some "conclusory opinions" that simply stated that the facility was "free of non-compliant issues" or "complied with all applicable access requirements" because the expert did not "identify any factual support" for those opinions.  *Id.* at 882.  However, the court found that

one opinion that a counter of specific dimensions "complies with access regulations" was not an improper legal conclusion because the statement offered factual support for its conclusion. *Id.* at 882-83.

Similarly, here, Dr. Duffus offers specific factual support for his conclusion that SeaWorld's statement is inaccurate. Dr. Duffus' report explains that SeaWorld's statement is inaccurate based on 1) the scientific definition of the word "calf," 2) a review of SeaWorld's records, and 3) a scientific analysis of killer whale social structures. *See* Dkt. 308-6, Ex. 1, ¶¶ 13-14 ("I have been asked by counsel for Plaintiffs to provide expert testimony evaluating the accuracy and scientific basis of SeaWorld's statements about mother-calf separation. . . . In summary, it is my opinion that SeaWorld's statements regarding mother-calf separation as detailed in this report are false, or at the very least, misleading. Available data and scientific literature show that the term calf is ambiguous and SeaWorld's adopted definition is not accepted in the scientific community. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████."). Dr. Duffus' opinion is, therefore, not merely a "conclusory statement" that reaches a legal conclusion reserved for the Court.

Nevertheless, even if the Court determines that opinions that SeaWorld's statements are false or misleading (or alternatively that they are *not* false or misleading)[1] are legal conclusions warranting exclusion, the substance of Dr. Duffus' expert testimony should not be excluded. Dr. Duffus states that SeaWorld's statement is inaccurate, false, or misleading as a conclusion to his overall opinions. The sentences containing these conclusions can simply by excluded from Dr. Duffus' report and the Court may instruct Dr. Duffus to refrain from using the terms "false" or "misleading" at trial. *See Estate of Bojcic v. City of San Jose*, No. C05 3877 RS, 2007 WL 3314008 at *3 (N.D. Cal. Nov. 6, 2007) (denying exclusion of expert's statement that "considerably less force" could have been used in an excessive force case and

---

[1] SeaWorld's experts conclude that various statements are *not* false or misleading, or are accurate. If the Court excludes Dr. Duffus' opinion that the mother-calf separation statement is false or misleading as a "legal conclusion," the Court should likewise preclude SeaWorld's experts from offering the opposite "legal conclusion" at trial. *See, e.g.*, Dold Dep. Tr. (Nov. 9, 2018) 166:24-167:16 (concluding that the mother-calf separation statement is accurate and nothing in the statement is misleading); Robeck Dep. Tr. (Oct. 30, 2018) 158:18-23 (noting belief that lifespan statement is not "misleading in any way"); Willis Dep. Tr. 62:10-63:19 (noting that he was asked to opine on whether the lifespan statement was accurate and that he did not believe anything in the statement was false).

instead instructing expert to refrain from using terms that "mirror" jury instructions during his trial testimony); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 558 (C.D. Cal. 2014) (not allowing expert witness's "use of [the] terms" "false" and "deceptive" but allowing underlying opinions that Defendant's products were not natural); *S.E.C. v. Leslie*, No. C 07-3444, 2010 WL 2991038 at \*9 (N.D. Cal. July 29, 2010) (excluding only portions of the expert testimony that used terms like "fraudulent" or "misleading" and dealt with legal concepts or conclusions).

### C.   DR. DUFFUS' OPINIONS ARE RELIABLE AND WILL ASSIST THE COURT AT TRIAL.

#### 1.   Dr. Duffus' Opinion Regarding the Meaning of Calf is Well-Supported.

SeaWorld's argument that Dr. Duffus' opinion on the definition of calf is unsupported, and therefore unreliable, depends on cherry-picked statements from Dr. Duffus' deposition and report taken entirely out of context.  Dr. Duffus' opinion is well-supported, as discussed below, and thus reliable.

*First*, SeaWorld claims, without any specific citation, that "none of the identified scientific studies define calf as Dr. Duffus does."  Mot. at 5.  But, in fact, they do.  Dr. Duffus explains that the term calf is "ambiguous" as it could refer to young animals or offspring generally (Dkt. 308-6, Ex. 1 at ¶ 30), and that SeaWorld's definition that a calf is necessarily an animal under the age of two is not an accepted definition in the scientific community for killer whales (*id.* at ¶¶ 32-33):

> "Wild calves wean at varied ages, but three to four years is the span that Newsome et al. found for Pacific killer whales.  Further, social independence takes much longer, and SeaWorld's definition that a calf is no longer "dependent" after two is contrary to almost all known examples in the wild."

In Newsome et al. (2009), as explained in Dr. Duffus' report, nutritional dependence on a killer whale's mother's milk is defined as occurring up to 4 years old.  Guerrero Decl., Ex. D ("Newsome et al. 2009") at 235 (describing a "70% probability that weaning in killer whales occurs sometime in the 3rd year of life, with a total cessation of nursing *by age 4*") (emphasis added); *id.* at 236 (data suggesting "gradual weaning of calves and their consumption of a combination of milk and solid food in the 2nd and 3rd year.").  Additionally, in Guinet and Bouvier (1995), the researchers repeatedly refer to 6-year old killer whales as "calves," and, consistent with Dr. Duffus' opinion that the term calf is ambiguous, use the terms "calf," "juvenile" and "offspring" interchangeably.  Guerrero Decl., Ex. E ("Guinet and Bouvier

1995") at 32 ("These observations indicate that the *6-year old calves* are just able to catch their first elephant seal pup using the intentional stranding technique, but they may still need the assistance of an adult female to be successful. . . . Such social 'transfer' needs high parental and allo-parental investment in the *offspring*.") (emphasis added).

Further, SeaWorld's argument inexplicably overlooks numerous of its own experts' and employees' admissions that the term "calf" is ambiguous and could refer to young animals or offspring generally. *See* Dkt. 308-6, Ex. 1 at ¶¶ 30-31. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.'" Guerrero Decl., Ex. E (Dold Dep. Ex. 122 and 123 (SW-AND0133375)). Similarly, Mr. Mark Simmons, SeaWorld's retained expert, himself used the term "calf" to generally mean "offspring" during his deposition, stating that "calf is a very subjective term. A lot of people use it to mean it's an offspring . . . . difficult to call that a clear term at all. . . . here I'm using it as a synonym as [*sic*] offspring." Guerrero Decl., Ex. F (Simmons Dep. Tr.) at 210:17-211:12. It is thus unclear how something that SeaWorld's own experts have conceded as a fact—i.e., that the term "calf" is ambiguous—should constitute an unreliable opinion in SeaWorld's view.

The cases that SeaWorld string cites in an attempt to support its position are also inapposite. Mot. at 5-6. In *Perry v. Schwarzenegger*, after a full bench trial, the court decided to give "essentially no weight to an expert's testimony regarding his definition of marriage. 704 F. Supp. 2d 921, 945-46 (N.D. Cal. 2010). None of that expert's publications had been peer-reviewed, he had no degree in any relevant social science field, and he based his opinions on "selected quotations from articles and reports." *Id.* at 946. The court rejected the expert's definition of marriage because it lacked the "same level of intellectual rigor" employed by social scientists. *Id.* at 948. Here, unlike the expert in *Perry*, Dr. Duffus is a well-respected scientist with a Ph.D. and dissertation focused on cetaceans (which includes killer whales), has studied killer whales and lectured in marine mammology for over 30 years, and has authored numerous peer-reviewed articles. *See* Dkt. 308-6, Ex. 1 at ¶¶ 4-9 and at Ex. A (Duffus CV). His education and experience therefore reliably inform his reading of the peer-reviewed publications of other scientists in forming his opinions in this case. *See Perry*, 704 F. Supp. 2d at 946 ("Formal training shows

that a proposed expert adheres to the intellectual rigor that characterizes the field, while peer-reviewed publications demonstrate an acceptance by the field that the work of the proposed expert displays 'at least the minimal criteria' of intellectual rigor required in that field."); *see also In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prod. Liab. Litig.*, 978 F. Supp. 2d 1053, 1072 (C.D. Cal. 2013) (admitting expert testimony based on expert's extensive experience, and his review of the scientific literature and a patient's medical records); *Graham*, 261 F. Supp. at 730 (holding that a literature review constituted a "sound basis" for the expert's opinions).

*Second*, contrary to SeaWorld's assertion, Dr. Duffus' opinion is not contradicted by his deposition testimony nor is it "consistent with SeaWorld's definition." Mot. at 6. Dr. Duffus did testify that scientific literature can be interpreted to suggest "that calf refers to nutritionally, behaviorally, and socially dependent relations between a mother and her calf." *Id.* But nutritional dependence does not automatically end at two years old, as SeaWorld's definition asserts, and can last up to four or more years, as Dr. Duffus indicated is seen in the Newsome et al. (2009) paper. This is consistent with Dr. Duffus' view that the term "calf" is ambiguous, and contrary to SeaWorld's narrow, bright-line definition. Further, behavioral and social dependence go far beyond SeaWorld's definition (one that depends simply on the age at which nutritional dependence ends, *i.e.*, weaning). For example, the researchers in the Guinet and Bouvier (1995) paper include 6-year-old killer whales within the scope of the term calf.

Dr. Duffus's opinion is therefore well-supported, and thus reliable, and he should be permitted to opine on the definition of calf and use his definition in support of his opinion that SeaWorld has separated mothers and calves at trial.

2.    Dr. Duffus' Opinion on Separation is Based on the Analysis and Synthesis of Extensive Training Records and Will Assist The Court in Determining Whether SeaWorld Has Separated Killer Whales.

SeaWorld's attempt to paint Dr. Duffus' opinion regarding separation of mothers and calves as a mere recitation of text in evidence is misleading. Unlike the expert in *Beech Aircraft Corp v. U.S.*, 51 F.3d 834 (9th Cir. 1995), who simply restated what the court could hear on its own in an audio recording, Dr. Duffus has reviewed and analyzed SeaWorld's extensive training records to identify instances where

mothers and calves were separated.  His testimony synthesizes the data and applies his scientific knowledge, which is far more than the expert in *Beech Aircraft* did.

Further, SeaWorld's argument that Dr. Duffus' opinion is unreliable because their training records were difficult to analyze in fact supports *Plaintiffs'* position that the Court would not simply be able to review and interpret these records on its own but would benefit from Dr. Duffus' analysis.  And SeaWorld cites no support for this argument.  It points only to a single footnote in the concurrence of a case where the concurring judge noted in passing that an expert made a speculative statement unsubstantiated by any factual evidence.  *California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1149 n.4 (9th Cir. 2011).  Even if the Court were to give this footnote any weight, Dr. Duffus does in fact cite factual evidence in SeaWorld's records to support his opinions regarding separation (as noted above).  And to the extent SeaWorld takes issue with Dr. Duffus' interpretation of its records, this argument goes to the weight of the testimony, not to its admissibility.  *See Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d. Cir. 1996) ("Although expert testimony should be excluded if it is speculative or conjectural . . . or if it is based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith' . . . other contentions that the assumptions are unfounded 'go to the weight, not the admissibility, of the testimony.'"); *Miletak*, 2011 WL 13154033, at *9 (finding that arguments attacking underlying assumptions of expert methodology, and not the methodology itself, go to weight rather than admissibility); *Tucson Electric Power Co. v. Pauwels Canada Inc.*, 651 Fed. Appx. 681, 682-83 (9th Cir. 2016).  Thus, Dr. Duffus' opinions should not be excluded.

3.      Dr. Duffus' Opinions on Killer Whale Social Structures Are Consistent and Well-Supported by SeaWorld's Training and Veterinary Records.

As discussed in Section III.A, *supra*, SeaWorld's argument that Dr. Duffus has no "specialized knowledge" because captive killer whales are distinct from killer whales in the wild is incorrect, and in any event, does not bear on the admissibility of Dr. Duffus' testimony.

Additionally, Dr. Duffus' deposition testimony does not, as SeaWorld suggests, contradict his report.  Mot. at 12-13.  In both his testimony and report, Dr. Duffus maintains that there is no accepted metric by which to measure the "health" of a social structure.  Dkt. 308-6, Ex. 1, at ¶ 40.  Therefore, the use of the word "healthy" with respect to social structure by SeaWorld in its statement is problematic.

Moreover, Dr. Duffus testified, while the term "healthy" as SeaWorld uses it is imprecise, there are "█████████████████████████████████████," which he documents in his report.  These problems contradict the statement that █████████████████████████████ ███████████████.  Duffus Dep. Tr. 209:8-12; Dkt. 308-6, Ex. 1 at ¶¶ 40, 44-49.  Dr. Duffus also opines that █████████████████████████████████████████████████████ ████████████████████████████ and notes that ██████████████████████████ █████████████████████████████████.  Dkt. 308-6, Ex. 1 at ¶¶ 37-42.  These opinions are all consistent with Dr. Duffus' conclusion that SeaWorld's statement about moving whales only to maintain a "healthy" social structure is inaccurate.  Although SeaWorld may disagree with the substance of these opinions, it cannot ask the Court here to decide whether the opinions are correct.  *Pyramid Technologies, Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 813 (9th Cir. 2014) ("Simply put, the district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.")  As noted, Dr. Duffus' reliance on his knowledge of killer whales generally coupled with the wealth of factual evidence in the training and veterinary records that SeaWorld produced in this case provide a sound basis for his opinions.  *See In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prod. Liab. Litig.*, 978 F. Supp. 2d at 1072; *Graham*, 261 F. Supp. 3d at 730.  Dr. Duffus' opinions are therefore reliable, and the Court should not exclude them.

## IV.     CONCLUSION

For the above reasons, Plaintiffs respectfully request that this Court deny SeaWorld's motion to exclude Dr. Duffus' testimony in its entirety.

Respectfully submitted,

Dated:  July 5, 2019                    COVINGTON & BURLING LLP

By:     */s/ Sarah Guerrero*
Sarah Guerrero
Attorneys for Plaintiffs