Christine Saunders Haskett (Bar No. 188053)
Tracy O. Zinsou (Bar No. 295458)
Lindsey Barnhart (Bar No. 294995)
Udit Sood (Bar No. 308476)
Michael E. Bowlus (Bar No. 307277)
Sarah Guerrero (Bar No. 322319)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: chaskett@cov.com; tzinsou@cov.com; lbarnhart@cov.com; usood@cov.com;
mbowlus@cov.com; sguerrero@cov.com

*Attorneys for Plaintiffs*
*MARC ANDERSON, KELLY NELSON,*
*and JULIETTE MORIZUR*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC ANDERSON, KELLY NELSON, and JULIETTE MORIZUR,<br><br>        Plaintiffs,<br><br>        v.<br><br>SEAWORLD PARKS AND ENTERTAINMENT, INC.,<br><br>        Defendant. | Case No.: 4:15-cv-02172-JSW-JCS<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. E.C.M. PARSONS**<br><br>**Hearing Date: To Be Determined**<br>**Hearing Time: To Be Determined**<br>**Judge: Hon. Jeffrey S. White**<br>**Courtroom:  5** |

**TABLE OF CONTENTS**

SUMMARY OF ARGUMENT……………………………………………………………………iv

I.      INTRODUCTION ........................................................................................................ 1

II.     LEGAL STANDARD ................................................................................................... 1

III.    ARGUMENT ................................................................................................................ 2

        A.      SeaWorld Is Not Entitled To Its Requested Relief........................................... 2

        B.      Dr. Parsons' Definition Of The Relevant Term "Lifespan" Is Undisputed. ................... 3

        C.      Dr. Parsons' Comparisons Of SeaWorld Captive Orcas' Actual Lifespans To SeaWorld's Representations Of How Long Wild Orcas Live Are Reliable And Relevant To The Falsity Of Those Representations........................................................... 5

        D.      Dr. Parsons' Report Does Not "Cherry-Pick" Data. ........................................ 8

        E.      Dr. Parsons Is Qualified To Offer Opinions Regarding Robeck et al. (2015). .............. 10

        F.      It Is Appropriate For Dr. Parsons To Offer His Opinion That SeaWorld's Lifespan Statements Are False, Or At The Very Least Misleading, From A Scientific Perspective........................................................ 13

        G.      The Necessary Factual Context For Dr. Parsons' Scientific Opinions Is Properly Included In His Expert Report........................................................ 14

IV.     CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Ambrosini v. Labarraque,*
    101 F.3d 129 (D.C. Cir. 1996) ............................................................................................... 7

*Apple, Inc. v. Samsung Elecs. Co., Ltd.,*
    2014 WL 794328 (N.D. Cal. Feb. 25, 2014) ......................................................................... 4

*Cave Consulting Grp., LLC v. OptumInsight, Inc.,*
    2015 WL 13413389 (N.D. Cal. Feb. 20, 2015) ............................................................. 4, 8, 9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
    509 U.S. 579 (1993) .............................................................................................. 1, 5, 7, 8

*Fierro v. Gomez,*
    865 F. Supp. 1387 (N.D. Cal. 1994) .................................................................................. 2, 6

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.,*
    892 F.3d 624 (4th Cir. 2018) ............................................................................................... 9

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prod. Liab. Litig.,*
    978 F. Supp. 2d 1053 (C.D. Cal. 2013) ............................................................................. 14

*Perry v. Schwarzenegger,*
    704 F. Supp. 2d 921 (N.D. Cal. 2010) ................................................................................. 5

*PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.,*
    2011 WL 5417090 (N.D. Cal. Oct. 27, 2011) .................................................................... 13

*Primiano v. Cook,*
    598 F.3d 558 (9th Cir. 2010) ............................................................................................... 1

*S.E.C. v. Leslie,*
    2010 WL 2991038 (N.D. Cal. July 29, 2010) .............................................................. 13, 15

*Sabadin v. Hartford Cas. Ins. Co.,*
    2015 WL 12698445 (C.D. Cal. Jan. 13, 2015) .................................................................... 4

*Stonefire Grill, Inc. v. FGF Brands, Inc.*
    987 F. Supp. 2d 1023 (C.D. Cal. Aug. 16, 2013) .............................................................. 15

*United States v. RSR Corp.,*
    2005 WL 5977799 (W.D. Wash. Oct. 4, 2005) .............................................................. 1, 2, 5

*Valley Forge Ins. Co. v. Zurich Am. Ins. Co.,*
    2012 WL 243308 (N.D. Cal. Jan. 25, 2012) ...................................................................... 10

*Volk v. U.S.*,
    57 F. Supp. 2d 888 (N.D. Cal. 1999)................................................................................2

*Wendell v. GlaxoSmithKline LLC*,
    858 F.3d 1227 (9th Cir. 2017)........................................................................................7

**SUMMARY OF ARGUMENT**

SeaWorld does not challenge Dr. Parsons' qualifications as an expert, or much of the specific testimony he intends to present at trial. Moreover, none of the arguments SeaWorld advances with respect to certain opinions in Dr. Parsons' expert report warrant exclusion of his testimony from the bench trial in this matter, where the "*Daubert* mandate operates differently" and there is no risk of "misleading the jury." *United States v. RSR Corp.*, 2005 WL 5977799, at *1 (W.D. Wash. Oct. 4, 2005).

*First*, although SeaWorld contends that Dr. Parsons' definition of the term "lifespan" is "unreliable," SeaWorld does not—and cannot—argue that Dr. Parsons' definition of the term "lifespan" is incorrect. Dr. Parsons' definition is consistent with SeaWorld's own definition of the term, and he provided numerous independent bases for his definition at deposition. *Second*, Dr. Parsons' calculations of the actual lifespans of SeaWorld's captive orcas—*i.e.*, how long those orcas lived—are reliable and directly relevant to the question at hand: whether SeaWorld's statement that its captive orcas "live as long as" wild orcas is false or misleading. Dr. Parsons calculated an average age at death of 15.81 for SeaWorld's captive orcas, whereas SeaWorld tells the public that its captive orcas have the same 30-50 year life expectancy as wild orca populations. Even after accounting for those captive orcas currently living today, and assuming the optimistic scenario in which each orca currently alive at SeaWorld lives another 20 years, the average age at death of SeaWorld's captive orcas would increase only to 25.24 years. *Third*, Dr. Parsons undisputedly considered all available life history data for SeaWorld's captive orcas, and so did not "cherry-pick" that data. SeaWorld's quibbles with Dr. Parsons' conclusions from that data are not proper subjects of a *Daubert* challenge. *Fourth*, SeaWorld incorrectly claims that the relevant conclusions in the Robeck et al. (2015) paper—on which SeaWorld's captive orca lifespan misrepresentations are based—derive from the Kaplan-Meier statistical method. That method was not used to reach the conclusions of Robeck et al. (2015) that Dr. Parsons challenges in his report, and so SeaWorld's arguments regarding Dr. Parsons' opinions on that method are misplaced. *Fifth*, Dr. Parsons' report consists of scientific opinions based on scientific data and Dr. Parsons' scientific expertise; it does not include legal opinions. *Finally*, Dr. Parsons' summary of relevant portions of the evidentiary record is directly relevant to his opinions and should not be excluded.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

SeaWorld represented to Plaintiffs—and continues to represent to the public—that the orcas it keeps in captivity "live as long as," and have "equivalent lifespans to," wild orca populations.  SeaWorld also represents that those comparison wild orca populations have average life expectancies of 30 to 50 years (30 to 38 years for males, and 46 to 50 years for females).  Plaintiffs' expert Dr. E.C.M. Parsons will testify at trial that, in fact, the average age at death of SeaWorld's captive orcas is decades below the 30 to 50 years SeaWorld tells the public that its captive orcas, and wild orcas, live.  Dr. Parsons will also testify that the conclusions reached in a paper that certain of SeaWorld's experts published in 2015 on the topic of captive orca life expectancies—the paper from which SeaWorld's misleading statements about how long captive orcas live derive—employed an unreliable methodology and relied on cherry-picked data.

In it Motion to Exclude Expert Testimony of Dr. E.C.M. Parsons ("Motion"), SeaWorld does not challenge Dr. Parsons' qualifications or general expertise.  Dkt. 311 ("Mot.").  Nor does SeaWorld make any argument regarding many of Dr. Parsons' specific opinions.  SeaWorld nevertheless asks this Court to preclude Dr. Parsons from testifying *at all* at the bench trial in this matter.  At best, the Motion provides a preview of the issues about which SeaWorld apparently intends to cross-examine Dr. Parsons.  But the Motion describes no grounds for SeaWorld's request that the Court "exclude Dr. Parsons from testifying at trial" entirely, and each of the various challenges SeaWorld makes to certain of Dr. Parsons' opinions fails.  The Court should reject SeaWorld's latest attempt to prevent the damaging evidentiary record Plaintiffs have built from being heard at trial, and deny the Motion.

### II.    LEGAL STANDARD

The standards for admission of expert testimony articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), establish a trial court's duty to act as "gatekeeper" to "prevent a witness from misleading the jury by offering unreliable testimony cloaked in the aura of court-sanctioned expertise." *United States v. RSR Corp.*, 2005 WL 5977799, at *1 (W.D. Wash. Oct. 4, 2005). The inquiry for evaluating reliability "is a flexible one." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).

Numerous courts in this Circuit have determined that "the *Daubert* mandate operates differently in a bench trial." *RSR Corp.*, 2005 WL 5977799, at \*1; *see id.* ("In a bench trial, the gatekeeper and the trier of fact are the same, raising the metaphysical question of how a trial court can simultaneously perform its gatekeeping function and keep unreliable expert testimony from itself."); *Volk v. U.S.*, 57 F. Supp. 2d 888, 896 n.5 (N.D. Cal. 1999).  As one court reasoned, the better approach at a bench trial is to admit the expert testimony and "allow 'vigorous cross-examination, presentation of contrary evidence' and careful weighing of the burden of proof to test" that testimony.  *Fierro v. Gomez*, 865 F. Supp. 1387, 1395 n.7 (N.D. Cal. 1994) (vacated on other grounds).  This is because a court's "concerns about the usefulness of various portions of the scientific testimony more appropriately can be addressed through determination of the weight to be accorded the testimony, rather than through the threshold determination of admissibility." *Id.*; *see also RSR Corp.*, 2005 WL 5977799, at \*3 (admitting expert testimony and advising that, "after hearing a witness's testimony," the court would evaluate how much weight to assign to that testimony).

## III.    ARGUMENT

### A.    SeaWorld Is Not Entitled To Its Requested Relief.

SeaWorld does not contend that Dr. Parsons is unqualified to testify as an expert in marine mammal biology, and in particular in the orca life history characteristics at issue in this case.[1]  Nor could it; Dr. Parsons is one of the preeminent academics in this field.  *See* Parsons Rpt. Ex. A.[2]  SeaWorld also does not contest a number of the opinions in Dr. Parsons' report, including his fundamental opinion that the methodology used in a paper authored by two of SeaWorld's experts to convert annual survival rate ("ASR") data to estimated life expectancies for captive orcas is unreliable, as evidenced in part by the fact that *no other scientist* has ever attempted to use that methodology for that purpose.  *See* Parsons Rpt. ¶¶

---

[1] SeaWorld asserts throughout its motion that Dr. Parsons is "unqualified," *see, e.g.*, Mot. at 3, but never provides support for its assertions or mounts any challenge to Dr. Parsons' general qualifications as an expert in the field of marine mammal biology.

[2] Citations to the "Parsons Rpt." refer to the Expert Report of E.C.M. Parsons Ph.D., filed as Exhibit 1 to the Declaration of Katherine Kleindienst in Support of SeaWorld's Motion.  *See* Dkt. 311-3.  An unredacted version of the Report was filed as an attachment to SeaWorld's related administrative motion to file under seal.  Dkt. 310-7.  In the interest of conserving paper and streamlining the Court's docket, Plaintiffs have not re-filed the Report in connection with this Opposition.

60-62; Dkt. 317 (Plaintiffs' Motion to Exclude Certain Opinions of Defendant's Experts Kevin Willis and Todd Robeck) at 5-8. As another example, SeaWorld does not challenge Dr. Parsons' opinions regarding how long wild orcas live. *See* Parsons Rpt. Section III.B.

Yet SeaWorld asks this Court to "exclude Dr. Parsons from testifying at trial"—*entirely*. Mot. at 15. SeaWorld's limited arguments regarding Dr. Parsons' opinions—which arguments are, in any event, not compelling, *see infra* at 3-15—do not match the plenary relief it seeks. SeaWorld's Motion to "exclude Dr. Parsons from testifying at trial" should be denied on this basis alone. Mot. at 15.

**B.    Dr. Parsons' Definition Of The Relevant Term "Lifespan" Is Undisputed.**

Though SeaWorld contends that Dr. Parsons' definition of the term "lifespan" is "unreliable," Mot. at 3, SeaWorld does not argue that Dr. Parsons' definition of the term "lifespan" is *incorrect*—nor could it. Dr. Parsons' definition of this term is identical to SeaWorld's experts' definition of the term. Dr. Parsons defines "lifespan" in his report as "the length of time that [an animal] is actually alive, from birth to death." Parsons Rpt. ¶ 30.[3] At his deposition, Dr. Parsons confirmed that the term "lifespan" means "the length of time an individual survived until its death." *See* Declaration of Lindsey Barnhart in Support of Plaintiffs' Opposition to Defendant's Motion to Exclude Expert Testimony of Dr. E.C.M. Parsons ("Barnhart Decl.") Ex. A ("Parsons Tr.") 10:20-11:1. ███████████████

██ . Parsons Rpt. ¶ 32 (█████████████████████████

████████████████████████████████████████████████

████████████████    It is also consistent with Merriam-Webster's dictionary definition of the term as "the duration of existence of an individual" and "the average length of life of a kind of organism."

According to SeaWorld, however, even though Dr. Parsons' definition of the relevant term lines up with the definition used by SeaWorld's experts and the common-sense, dictionary definition of the term, that definition is "unreliable" because Dr. Parsons could not cite a textbook or publication defining the term off the top of his head at his deposition. This is a frivolous argument; there is no dispute that Dr.

---

[3] Though SeaWorld claims to challenge "Paragraphs 30-32 of Dr. Parsons' Expert Report," Mot. at 3, SeaWorld does not even attempt to argue that the definitions of "maximum lifespan" and "average lifespan" in Paragraphs 31-32 are incorrect or unreliable.

Parsons' definition of the term is correct.  Moreover, SeaWorld misleadingly *omits* the portions of Dr. Parsons' deposition transcript where he identified numerous corroborating authorities for his uncontroversial definition of "lifespan."  *See* Parsons Tr. 12:21-14:10 (discussing graduate-level courses he taught involving "life history data," "studies on life history of various dolphin species," and research presented at the Society for Marine Mammalogy's biennial conference that involved "looking at . . . the life span of animals"); *see also id.* 17:3-9 (testifying that the "average ecology textbook" would confirm the definition of lifespan).

SeaWorld's argument regarding Dr. Parsons' definition of the term "longevity" should likewise be rejected.  SeaWorld contends that Dr. Parsons' use of this term in his report is inconsistent with his use of the term at his deposition.  This argument fails out of the gate: purportedly "inconsistent deposition testimony is a basis for cross-examination, not disqualification of an expert."  *Cave Consulting Grp., LLC v. OptumInsight, Inc.*, 2015 WL 13413389, at *3 (N.D. Cal. Feb. 20, 2015); *see also Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 2014 WL 794328, at *23 (N.D. Cal. Feb. 25, 2014) (purported inconsistencies in expert's testimony are "a matter for cross examination"); *Sabadin v. Hartford Cas. Ins. Co.*, 2015 WL 12698445, at *2 (C.D. Cal. Jan. 13, 2015) (denying motion to exclude allegedly inconsistent testimony and observing that the movant was, "of course, free to probe this alleged inconsistency on cross-examination").  Moreover, the lifespan misrepresentations that Plaintiffs challenge refer specifically to "how long orcas live," not "longevity."  *See* Parsons Rpt. ¶¶ 26-28 (cataloguing misrepresentations); Parsons Tr. 25:13 ("life span is a better term" to use than longevity).  Finally, SeaWorld is wrong that there is any fundamental inconsistency between Dr. Parsons' report and his deposition testimony.  Dr. Parsons pointed out in both his report and at his deposition that the terms lifespan and longevity tend to be used interchangeably.  *See* Parsons Rpt. ¶ 30; Parsons Tr. 17:11-14.  At his deposition, he elaborated that sometimes the broad use of these terms interchangeably by the general public—and some scientists— results in confusion.  Parsons Tr. 17:17-18:12. ███████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████ " Parsons Rpt. ¶ 30 n.12.

The only case cited by SeaWorld in support of its argument that Dr. Parsons' definitions are "unreliable" confirms that this issue is not the appropriate subject of a *Daubert* challenge. In the nearly 80 pages of findings of fact and conclusions of law written by the *Perry v. Schwarzenegger* court following a full bench trial, the court determined that an expert's testimony regarding the definition of marriage should be given "essentially no weight." 704 F. Supp. 2d 921, 946 (N.D. Cal. 2010). The Court should similarly admit Dr. Parsons' testimony in full and make determinations regarding the weight of that evidence following the bench trial.

### C. Dr. Parsons' Comparisons Of SeaWorld Captive Orcas' Actual Lifespans To SeaWorld's Representations Of How Long Wild Orcas Live Are Reliable And Relevant To The Falsity Of Those Representations.

SeaWorld told Plaintiffs and the public that its captive orcas "live as long as" wild orcas—specifically, as long as certain wild orca populations with average life expectancies of "30 to 38 years" for males, and "46 to 50 years" for females. *See, e.g.*, Barnhart Decl. Ex. B. Dr. Parsons analyzed data regarding the lifespans of SeaWorld's captive orcas—*i.e.*, how long SeaWorld's captive orcas actually live—and found that the average age at death for those orcas who have lived and died at SeaWorld was 15.81 years. *See* Parsons Rpt. ¶ 36, as amended by Barnhart Decl. Ex. E. Dr. Parsons also conducted an illustrative analysis in which he assumed that every currently living captive orca at SeaWorld will live another 20 years. *Id.* ¶ 38. Even then, the average age at death for SeaWorld's captive orcas would increase only to 25.24 years. *Id.*, as amended by Barnhart Decl. Ex. E. In other words, the available data—and optimistic extrapolations from that data—show that SeaWorld's captive orcas do not, in fact, live the 30-50 years that SeaWorld tells the public wild orcas live. Dr. Parsons' analysis and opinions on this issue go to the heart of the challenged misrepresentations, and SeaWorld's attempt to preclude Dr. Parsons from testifying about this core issue should be rejected.

*First*, SeaWorld's contention that it is this Court's "duty" to act as a "gatekeeper" misunderstands the relevant jurisprudence. Mot. at 5, 7. Though *Daubert* and its progeny require a court to act as "gatekeeper" to prevent a *jury* from being misled by "unreliable testimony cloaked in the aura of court-sanctioned expertise," numerous courts in this Circuit have rightly concluded that "the *Daubert* mandate operates differently in a bench trial." *RSR Corp.*, 2005 WL 5977799, at *1. Here, the Court will act as

the factfinder at the bench trial. The better approach in such circumstances is to "allow 'vigorous cross-examination, presentation of contrary evidence' and careful weighing of the burden of proof to test" expert testimony. *Fierro*, 865 F. Supp. at 1395 n.7. The authority SeaWorld cites regarding the Court's "gatekeeper" role for *jury* trials is inapposite. *See* Mot. at 5, 7.

*Second*, there is nothing unreliable about Dr. Parsons' analysis of the average age at death of SeaWorld's captive orcas. *See* Mot. at 4. As Judge Spero observed, determining whether the challenged lifespan misrepresentations are false or misleading requires determining how long wild orcas live ("X"), then "cumulating all the data about lifespan in captivity [to conclude] lifespan is Y," and then "[c]ompare X to Y and see whether or not the representation is false." Barnhart Decl. Ex. D (Sept. 1, 2017 Hr'g Tr.) at 4:22–7:6. SeaWorld tells the public its captive orcas live as long as wild orcas, and that wild orcas live 30-50 years. Dr. Parsons analyzed "the data about lifespan in captivity" to conclude that the lifespans of SeaWorld's captive orcas that have lived and died is 15.81 years. Parsons Rpt. ¶ 36, as amended by Barnhart Decl. Ex. E. The fact that the length of time SeaWorld's captive orcas live is decades below the 30-50 years that wild orcas live is undisputedly relevant to the question of whether SeaWorld's representations to the contrary are false or misleading.

SeaWorld's contention that Dr. Parsons would not make similar comparisons of actual lifespans and average life expectancies "in a scientific, peer-reviewed paper" misunderstands the issue. Mot. at 4. It is *SeaWorld* that made the purportedly unscientific comparison when it represented to the public that its captive orcas "live as long as" wild orcas, and that comparison populations of wild orcas have average life expectancies of 30-50 years. *See also* Parsons Rpt. ¶¶ 25-28 (summarizing similar statements). Dr. Parsons properly opines on the veracity of SeaWorld's comparative statements by conducting an analysis to compare captive orca lifespans—*i.e.*, how long they live—to the 30-50 year life expectancies of wild orcas. SeaWorld likewise cannot fault Dr. Parsons for purportedly comparing "apples and oranges," Mot. at 6, given that his opinions evaluate the same comparison that SeaWorld made to the public. Dr. Parsons' assignment was not to construct a scientific study or publish a scientific paper; his assignment was to evaluate the veracity of SeaWorld's misrepresentations to the public using the scientific data available to him. *See* Parsons Tr. 268:2-17 (Dr. Parsons' explanation that SeaWorld's counsel's questions

missed "the point of why [Dr. Parsons' analysis] was done," which was to evaluate SeaWorld's statements regarding "average life span," *i.e.* how long SeaWorld's captive orcas live).

Indeed, under Ninth Circuit law it is reversible error to exclude an expert from testifying in a jury trial because that expert would employ a "more rigorous" standard when publishing a paper "than the one he used to come up with his expert opinion." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1235 (9th Cir. 2017) (finding that "[t]he district court . . . wrongly conflated the standards for publication in a peer-reviewed journal with the standards for admitting expert testimony in a courtroom"); *cf. Ambrosini v. Labarraque*, 101 F.3d 129, 138 (D.C. Cir. 1996) ("[T]he fact that science would require more evidence before conclusively considering the causation question resolved is irrelevant [to the admissibility of expert testimony].") (citation omitted).  Because the *Daubert* "gatekeeper" concerns are far diminished, if not absent, in a bench trial, the fact that Dr. Parsons did not publish a paper including the opinions in his report does not constitute grounds for exclusion.

*Third*, Dr. Parsons properly accounted for the "currently living" captive orca population at SeaWorld when evaluating SeaWorld's lifespan misrepresentations.  Mot. at 5.  SeaWorld's selective citation of Dr. Parsons' deposition transcript omits key portions of his testimony.  For example, SeaWorld states that Dr. Parsons testified that "there are 'issues' with the age of death calculation," Mot. at 4, but Dr. Parsons' full answer clarifies those "issues" are less relevant here, when only a fifth of the total SeaWorld captive orca population consists of currently living whales older than the average lifespan of those whales that have died:

> [A]s I said, there are issues with age of death because you're not including the animals that are still living, but if the proportion of animals that are still living above a certain age is so small, then – and there's a really, really large body of dead animals with ages, then that's – that's very different.

Parsons Tr. 163:19-164:4.

To account for any issue, Dr. Parsons performed a calculation of the average age of death of SeaWorld's captive orcas, assuming that all orcas alive at SeaWorld today live an additional 20 years.  Dr. Parsons determined that, if that came to pass, the average age at death of SeaWorld's captive orcas would still be only 24.25 years.  As Dr. Parsons testified:

> [T]he key take-home message is looking at the . . . average age of death when you add 20 years to it and how that average age of death still does not meet the expected life expectancy as projected by [Robeck et al. (2015)'s] ASR calculation.  So it's . . . illustrative of one of the major flaws in . . . using ASR to calculate life expectancy.

Parsons Tr. 266:16-267:1; *see also id.* 267:15-21 ("So . . . again, it's just illustrative to show . . . what a big discrepancy there is between life span and projected – projected life span using ASR.").  Dr. Parsons' calculation shows that, even if all orcas alive at SeaWorld today live for two more decades—a possibility which "there is no evidence to suggest" will play out in reality, Parsons Rpt. ¶ 38—the average age at death for SeaWorld's captive orcas *still* would be nowhere near the length of time SeaWorld tells the public that its captive orcas, and wild orcas, live.  There is nothing "unreliable" about Dr. Parsons' choice of 20 years as an illustrative example of how misleading SeaWorld's statements to the public regarding the lifespans of its captive orcas are.  Mot. at 7.

SeaWorld also argues that one of its public statements about lifespan "is in the present tense," and so cannot be proven true or false until the very last captive orca at SeaWorld has died.  Mot. at 5.  That has not stopped SeaWorld from representing to the public for years that SeaWorld's captive orcas live as long as wild orcas.  In any event, the evidence available today shows that the present tense statement is not true.  The orcas presently living in captivity at SeaWorld have an average age of 19.4, which is still well below the 30-50 years SeaWorld tells the public its orcas and wild orcas live.[4]  Parsons Tr. 272:8-10.  More fundamentally, SeaWorld's tortured interpretation of the underlying factual evidence misses the point.  "A *Daubert* motion is not the appropriate vehicle for weighing facts, evaluating the correctness of [Dr. Parsons'] conclusions, or imposing [SeaWorld's] methodology."  *Cave*, 2015 WL 13413389, at *7.  Rather, that will be the role of the fact finder (i.e., this Court) at trial.  *Id.*

**D.    Dr. Parsons' Report Does Not "Cherry-Pick" Data.**

SeaWorld contends that Dr. Parsons "cherry-pick[s]" data points relating to the age of captive SeaWorld orcas in his expert report.  Mot. at 8.  But the cases cited by SeaWorld explain, cherry-picking

---

[4] SeaWorld's argument that "the average age of the still living population" of SeaWorld's captive orcas "will only continue to increase with time," Mot. at 5, is premised on faulty logic.  As older animals die, the average age of those still living is likely to *decrease*.

occurs when an expert includes certain data favorable to his opinions in an analysis, but excludes other data unfavorable to his opinions in that same analysis.  For example, in *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*, the court affirmed the exclusion of an expert opinion that omitted a statistically insignificant association determined using one type of statistical test but included a statistically significant association determined using another type of statistical test.  892 F.3d 624, 634 (4th Cir. 2018); *see* Mot. at 9.  Dr. Parsons bases his opinions about SeaWorld captive orca lifespans on a full and complete data set of all orcas who have lived at SeaWorld.  *See* Parsons Rpt. Ex. C (listing all life history data available for SeaWorld captive orcas).  In other words, he does not exclude *any* data relating to captive orca life history.[5]

SeaWorld's Motion "is not the appropriate vehicle" to quibble with the conclusions that Dr. Parsons draws from the data.  *Cave*, 2015 WL 13413389, at *7.  For example, in his report, Dr. Parsons points out that only two of the captive orcas born at SeaWorld have exceeded 30 years of age.  Parsons Rpt. ¶ 58.  SeaWorld argues that Dr. Parsons' observation should be excluded because only three orcas were born at SeaWorld more than 30 years ago.  Mot. at 9.  SeaWorld's counterargument ignores that *nine* other captive-born whales died long before reaching age 30, and so cannot possibly ever reach age 30.  Parsons Rpt. Ex. C.  Similarly, the string of questions SeaWorld contends "Dr. Parsons does not answer" do not render his opinions unreliable and subject to exclusion.  SeaWorld neither explains the import of these questions nor cites any authority supporting its apparent position that Dr. Parsons' opinions must be excluded because his report does not answer every question SeaWorld can think of about orca lifespans.  SeaWorld is welcome to ask Dr. Parsons these questions during cross-examination at trial.

In addition, SeaWorld's contention that Dr. Parsons did no more than "recit[e] facts" is wrong.  Mot. at 8.  Dr. Parsons explained how the orca life history traits discussed in his report—*i.e.*, the facts he considered—impacted his conclusions.  *See, e.g.*, Parsons Rpt. ¶ 39 (stating that "known lifespans" of SeaWorld's orcas discussed in previous paragraphs "are far below SeaWorld's own stated admission" of

---

[5] On the other hand, SeaWorld's experts Dr. Todd Robeck and Kevin Willis included data regarding the oldest *captive* orcas in their analysis of orca life expectancies, but excluded data regarding the oldest *wild* orcas in that analysis, necessarily skewing their conclusions in favor of SeaWorld's desired result that captive orca life expectancies be equivalent to wild orca life expectancies.  *See* Parsons Rpt. ¶¶ 63-65.

how long SeaWorld expects wild orcas to live); Parsons Tr. 266:16-267:1 (calculation assuming all captive orcas currently alive at SeaWorld live another 20 years is relevant to show "one of the major flaws" in the Robeck et al. (2015) paper).

Finally, SeaWorld identifies over a dozen paragraphs of Dr. Parsons' report that it claims contain "cherry-picked data points." Mot. at 8. But SeaWorld does not identify any purportedly "cherry-picked" data in most of those paragraphs. Paragraph 43, for example, contains Dr. Parsons' calculations of the average lifespans of *all* SeaWorld orcas that have died in captivity; Paragraphs 44-45 describe Figures prepared by Dr. Parsons that show the distribution of ages at death for *all* of SeaWorld's captive orcas; and Paragraphs 46-49 discuss average life expectancies for wild orcas, including scientific studies and SeaWorld's own statements on this subject. SeaWorld's "fail[ure] to properly identify the specific portion of [Dr. Parsons'] testimony that it seeks to exclude . . . alone constitutes a sufficient basis to deny the motion." *Valley Forge Ins. Co. v. Zurich Am. Ins. Co.*, 2012 WL 243308, at *2 (N.D. Cal. Jan. 25, 2012).

**E.    Dr. Parsons Is Qualified To Offer Opinions Regarding Robeck et al. (2015).**

The challenged misrepresentations by SeaWorld about its captive orcas' lifespans derive in part from a 2015 paper authored by two of SeaWorld's proffered experts in this case, Dr. Todd Robeck and Kevin Willis. That paper purports to reach conclusions about "median and average life expectanc[ies]" of SeaWorld's captive orcas "[b]ased on ASR"—*i.e.*, annual survival rate, or the probability that an animal will survive from one year to the next. Barnhart Decl. Ex. D at SW000301. In Dr. Parsons' report, he opines that the Robeck et al. (2015) paper's use of ASR to determine captive orca life expectancies is an unreliable methodology, based on unreliable—and cherry-picked—data.

Implicitly acknowledging the severe problems with the methodology on which the Robeck et al. (2015) conclusions are based, SeaWorld now backpedals and attempts to argue that a secondary methodology referenced briefly in the Robeck et al. (2015) paper—the Kaplan-Meier analysis—is "integral" to the paper's conclusions. That is not true. The captive orca life expectancies calculated by Robeck et al. (2015) were "[b]ased on ASR," not Kaplan-Meier. Barnhart Decl. Ex. D at SW000301. In fact, the Robeck et al. (2015) paper itself acknowledges that the Kaplan-Meier method was included in the

paper only "to enable comparisons with" a specific paper authored by scientists John Jett and Jeff Ventre. *Id.* at SW000305; *see also id.* at SW000311-12 (describing how "Kaplan-Meier survivability results" calculated by Robeck et al. differed from those calculated by Jett and Ventre).  The Kaplan-Meier methodology does not figure prominently in Dr. Parsons' expert report because it is not relevant to his opinion that the captive orca life expectancies calculated by Robeck et al. (2015) are unreliable, since those life expectancies were calculated using ASR.  Dr. Parsons does not offer any opinion as to Robeck et al. (2015)'s comparison of Kaplan-Meier survivability results to those calculated by Jett and Ventre, which is the only "conclusion[] in the Robeck et al. (2015) paper" that is based on the Kaplan-Meier methodology.  Mot. at 11.

SeaWorld does not challenge Dr. Parsons' opinion that the use of ASR to calculate life expectancies is unreliable, and that this opinion is generally recognized in the scientific community—as shown by the absence of any other scientific paper employing that methodology.  Nor does SeaWorld challenge Dr. Parsons' opinions that the underlying data used in the Robeck et al. (2015) paper—for both the life expectancy calculations based on ASR and the Kaplan-Meier analysis—is incomplete, unreliable, and selected so as to skew the results in SeaWorld's favor.[6]  For example, Robeck et al. (2015) included data regarding the oldest *captive* orcas in their analysis of orca life expectancies, but excluded data regarding the oldest *wild* orcas in that analysis, necessarily skewing their conclusions in favor of SeaWorld's desired result that captive orca life expectancies be equivalent to wild orca life expectancies. *See* Parsons Rpt. ¶¶ 63-65.  And Robeck et al. (2015) compares captive orca life history data to life history data of starving and threatened wild orca populations, which hardly can serve as the model of "healthy" or "thriving" populations.  *Id.* ¶¶ 66.  While SeaWorld contends that other studies "report . . . the life expectancies of" the same wild whale populations to which SeaWorld compares its captive orcas, at least one of those studies—unlike Robeck et al. (2015)—acknowledged that the wild whale populations were

_____

[6] In a footnote, SeaWorld asserts that Dr. Parsons' "criticisms of the underlying data used by Robeck et al. (2015)" should be excluded "[b]ecause no alternative analysis has been performed."  Mot. at 13 n.4. SeaWorld does not cite any authority requiring that Dr. Parsons re-do Robeck et al. (2015)'s analysis using a corrected data set before he can offer an expert opinion as to the unreliable conclusions reached in the Robeck et al. (2015) paper.

"not a good comparison population because of the extremely impacted status of the southern residents and the problems with the northern resident population."  Parsons Tr. 217:11-218:5.

SeaWorld also mischaracterizes Dr. Parsons' testimony regarding his experience with Kaplan-Meier curves.  SeaWorld points out the Dr. Parsons has not personally conducted a Kaplan-Meier analysis in any of the scientific papers he has published, Mot. at 10, but disregards the several pages of testimony in which Dr. Parsons explained "[w]hat is a Kaplan-Meier curve," and various applications of Kaplan-Meier curves.  Parsons Tr. 119:4-121:19.  And SeaWorld's claim that Dr. Parsons "could not answer questions about adequate sample sizes" for Kaplan-Meier analyses is wrong.  Mot. at 10.  SeaWorld's counsel repeatedly posed the incomplete hypothetical of "[w]hat is the minimum sample size required to be used for a Kaplan-Meier curve," and "do you have any opinion as to what an appropriate sample size is for a Kaplan-Meier curve of a killer whale population," and Dr. Parsons repeatedly answered that the sample size would depend on "a lot of different factors" and he would need to conduct statistical "power analyses" to determine the appropriate sample size for a given set of data.  *Id.* 121:5-128:9.  Dr. Parsons then offered to provide a "completely hypothetical" sample size "based on other statistical analyses" he has done, and, at SeaWorld's counsel's request for a "really, really vague ballpark figure," Dr. Parsons estimated that a sample size of a thousand "would be brilliant."  *Id.* 127:6-128:9.

Finally, SeaWorld is wrong that Dr. Parsons' opinions "rel[y] on other scientific studies that use the same methodologies" used by Robeck et al. (2015).  *No other scientist* has ever used ASR to calculate life expectancies, because such methodology is acknowledged as unreliable in the general scientific community.  *See* Dkt. 317 at 5-6.  It is SeaWorld's motion that is "disingenuous" in its reference to other papers that "used . . . ASR" as a methodology; *none* of those papers used ASR to calculate life expectancies, as Robeck et al. (2015) did.[7]  Mot. at 12-13.

---

[7] SeaWorld's contention that the only basis on which Dr. Parsons "take issue" with this methodology is "because the relationship between ASR and life expectancy is non-linear" is incorrect.  Mot. at 13 n.3.  Dr. Parsons' report details the various problems inherent to Robeck et al. (2015)'s use of ASR to calculate animal life expectancies.  *See* Parsons Rpt. ¶¶ 52-67.

**F.      It Is Appropriate For Dr. Parsons To Offer His Opinion That SeaWorld's Lifespan Statements Are False, Or At The Very Least, Misleading, From A Scientific Perspective.**

Dr. Parsons opines in his report that, "from a scientific perspective," SeaWorld's lifespan misrepresentations are "at least misleading, if not outright false." Parsons Rpt. ¶ 72. Dr. Parsons' opinion is based on his extensive "knowledge and experience" in the field of marine mammal biology and so is the proper subject of expert testimony. *PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*, 2011 WL 5417090, at *8 (N.D. Cal. Oct. 27, 2011) (expert testimony grounded on the expert's personal knowledge and experience was admissible in light of his extensive background in the area).

SeaWorld's contention that Dr. Parsons' opinion is an impermissible legal opinion misunderstands the relevant jurisprudence. In *S.E.C. v. Leslie*, cited by SeaWorld, the court permitted an expert's explanation of the concept of materiality "from an accounting perspective," but excluded the expert's opinions regarding "legal materiality," such as his citations to "several judicial opinions on the subject" and his quotation of "Securities Exchange Rule 13b2-2 in its entirety," because those legal opinions "usurp[] the role of the trial judge" to instruct the jury on the law. 2010 WL 2991038, at *9 (N.D. Cal. July 29, 2010); *see* Mot. at 14. Dr. Parsons does not and will not opine on legal concepts or jurisprudence; his opinion that SeaWorld's statements are "false, or at the very least, misleading," is his *scientific* opinion based on the available scientific data, literature, and evidence. *See* Parsons Rpt. ¶ 72 ("It is my opinion that the scientific data and literature to date demonstrates that orcas in captivity at SeaWorld do not live as long as wild orcas. . . . It is thus my expert opinion that, from a scientific perspective, SeaWorld's statements regarding the lifespans of its captive orcas relative to the lifespans of wild orcas are at least misleading, if not outright false."). Moreover, at a bench trial, even the concern present in *Leslie* is seriously diminished, if not absent. *See RSR Corp.*, 2005 WL 5977799, at *1.

### G.    The Necessary Factual Context For Dr. Parsons' Scientific Opinions Is Properly Included In His Expert Report.[8]

SeaWorld argues that Dr. Parsons is not permitted to "summari[ze]" relevant portions of the evidentiary record in his report.  Mot. at 14.  But Dr. Parsons cannot opine on the scientific veracity of SeaWorld's statements unless he knows what those statements are.  *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1082 (C.D. Cal. 2013) (denying motion to exclude in relevant part and permitting expert to "acknowledge" at trial those facts that are "fundamental assumption[s] of his testimony.").  Indeed, Federal Rule of Civil Procedure 26 *requires* that Dr. Parsons disclose all "facts" that he considered in forming his opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii).

Similarly, the evidentiary record is replete with instances in which SeaWorld employees acknowledged that SeaWorld's statements about orca lifespans are misleading, if not false, and Dr. Parsons considered these facts when forming his opinions.  *See* Parsons Rpt. ¶¶ 68-71.  SeaWorld asserts that Dr. Parsons did not review the evidence discussed in his report, and so Dr. Parsons should be precluded from uttering a word about these facts at trial.  That assertion is simply wrong: at Dr. Parsons' deposition, once SeaWorld's counsel clarified her question, Dr. Parsons confirmed that he reviewed "quite a few" deposition transcripts and documents produced by SeaWorld, as reflected in the list of materials he considered attached as Exhibit B to his expert report.  Parsons Tr. 251:16-253:8; *id.* 257:1-12.  Similarly incorrect is SeaWorld's suggestion that Dr. Parsons did not author parts of Section III.D of his report.  As Dr. Parsons testified, he "obviously didn't write the quotes" included in that Section, which he drew from the evidentiary record in this case.  *Id.* 302:17-304:22.  Aside from those quotes from documents and deposition transcripts, Dr. Parsons did not testify that anybody else "wrote" any part of that Section of his report.  *See id.*

---

[8] SeaWorld's argument on this issue appears on the last 1.25 pages of the Motion, which are in excess of this Court's page limit requirements.  Per Local Civil Rule 7-2(b), a Notice of Motion and Motion is a required component of every motion, and counts toward the applicable page limits.  The page limit applicable to SeaWorld's Motion is 15 pages.  *See* Civil Standing Orders.  SeaWorld's Motion is over 16 pages long, inclusive of the Notice of Motion and Motion.  The Court should therefore strike the brief as noncompliant, or disregard the last 1.25 pages of the Motion.

SeaWorld next argues that certain statements by SeaWorld about orca lifespans that Dr. Parsons describes in his report are "irrelevant." Mot. at 14. SeaWorld's misrepresentations about how long its captive orcas live constitute one of the four challenged categories of statements in this lawsuit, and are clearly relevant to Plaintiffs' claims. *See* Dkt. 94 (Third Amended Complaint) ¶ 10. In any event, SeaWorld's Federal Rule of Evidence 702 motion is not the proper vehicle to challenge whether or not these *underlying facts* are "relevant"; such challenge must instead be made pursuant to Federal Rule of Evidence 403 at the appropriate time.

Moreover, SeaWorld's cited authorities in support of these arguments are neither on point nor persuasive. Mot. at 14-15. In *S.E.C. v. Leslie*, the Court excluded portions of an expert's report that contained "argumentative" statements, "speculation," and "references to facts irrelevant to [the expert's] conclusions." 2010 WL 2991038, at *10. Similarly, in *Stonefire Grill, Inc. v. FGF Brands, Inc.*, the court excluded an expert's report and deposition testimony, most of which was "a summary of inadmissible facts" that the expert himself admitted "ha[d] not been validated" or were "irrelevant." 987 F. Supp. 2d 1023, 1039 (C.D. Cal. Aug. 16, 2013). Any argument that SeaWorld's own statements regarding orca lifespans—which constitute one of the four core issues in dispute in this lawsuit—are not relevant to Dr. Parsons' opinions regarding those statements is a nonstarter. Finally, in *Perry*, the court gave "essentially no weight" to an expert's testimony at trial about the definition of marriage that merely "relied on quotations of others to define marriage and provided no explanation of the meaning of the passages he cited or their sources." 704 F. Supp. 2d at 946. Here, Dr. Parsons explained the relevance of the facts on which he relied and did not base his expert opinions on a "recitation of text" written by others.

## IV.    CONCLUSION

For the above reasons, Plaintiffs respectfully request that this Court deny SeaWorld's Motion to Exclude Expert Testimony of Dr. E.C.M. Parsons.

Respectfully submitted,

Dated:  July 5, 2019                          COVINGTON & BURLING LLP


By:     /s/ Lindsey Barnhart
         Lindsey Barnhart
         Attorneys for Plaintiffs