Christine S. Haskett (Bar No. 188053)
Tracy O. Zinsou (Bar No. 295458)
Lindsey Barnhart (Bar No. 294995)
Udit Sood (Bar No. 308476)
Michael E. Bowlus (Bar No. 307277)
Sarah Guerrero (Bar No. 322319)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: chaskett@cov.com; tzinsou@cov.com; lbarnhart@cov.com; usood@cov.com; mbowlus@cov.com; sguerro@cov.com

*Attorneys for Plaintiffs*
*MARC ANDERSON, KELLY NELSON,*
*and JULIETTE MORIZUR*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC ANDERSON, KELLY NELSON, and JULIETTE MORIZUR,<br><br>    Plaintiffs,<br><br>    v.<br><br>SEAWORLD PARKS AND ENTERTAINMENT, INC.,<br><br>    Defendant. | Case No.: 4:15-cv-02172-JSW<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. PEDRO JAVIER GALLEGO**<br><br>**Hearing Date: To be determined**<br>**Hearing Time:**<br>**Judge: Hon. Jeffrey S. White**<br>**Courtroom: 5** |

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................... 1

II.     LEGAL STANDARD .................................................................................................... 1

III.    BACKGROUND ............................................................................................................ 2

       A.     Dr. Gallego is a veterinarian with experience treating cetaceans in captivity and studying them in the wild. ........................................................................................ 2

       B.     Dr. Gallego opines that captivity is harmful for orcas, which he supports with evidence                                 . .............. 3

IV.     DR. GALLEGO IS QUALIFIED TO OFFER EXPERT TESTIMONY ......................................... 8

V.      DR. GALLEGO'S OPINIONS ARE RELIABLE ................................................................. 9

       A.     Dr. Gallego opinions are reliable because he supports them                                               . .......................... 10

       B.     SeaWorld's arguments regarding differential diagnoses and ruling out other factors are unpersuasive because                                    ....................................................................... 11

       C.     Dr. Gallego did not need to visit SeaWorld or review Dr. Visser's inspection videos and photos to provide reliable support for his opinions. ..................................... 13

       D.     Dr. Gallego's references do not contradict his opinions. ..................................... 14

       E.     Dr. Gallego did not develop his opinions "solely for the purpose of litigation" or base them on "predetermined conclusions." ..................................... 15

VI.     CONCLUSION ............................................................................................................. 15

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. PEDRO JAVIER GALLEGO

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
738 F.3d 960 (9th Cir. 2013)................................................................................................iii, 9, 10

*Casey v. Ohio Med. Prods.*,
877 F. Supp. 1380 (N.D. Cal. 1995)..............................................................................................12

*Emblaze Ltd. v. Apple Inc.*,
52 F. Supp. 3d 949 (N.D. Cal. 2014)...............................................................................................1

*Graham v. San Antonio Zoological Soc'y*,
261 F. Supp. 3d 711 (W.D. Tex. 2017)......................................................................................iii, 8

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*,
524 F. Supp. 2d 1166 (N.D. Cal. 2007)......................................................................................9, 12

*Lucido v. Nestle Purina Petcare Co.*,
217 F. Supp. 3d 1098 (N.D. Cal. 2016)..........................................................................................12

*Nelson v. Tennessee Gas Pipeline Co.*,
1998 WL 1297690 (W.D. Tenn. Aug. 31, 1998) ...........................................................................12

*PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*,
Case No. 10-cv-544-JW, 2011 WL 5417090 (N.D. Cal. Oct. 27, 2011) ....................................iii, 8

*Primiano v. Cook*,
598 F.3d 558 (9th Cir. 2010).............................................................................................................1

*Pooshs v. Philip Morris USA, Inc.*,
904 F. Supp. 2d 1009 (N.D. Cal. 2012)............................................................................................9

*Thomas v. Newton Intern. Enters.*,
42 F.3d 1266 (9th Cir. 1994).........................................................................................................8, 9

*United States v. RSR Corp.*,
No. 00-cv-890-JLR, 2005 WL 5977799 (W.D. Wash. Oct. 4, 2005) .............................................10

**Other Authorities**

Federal Rule of Evidence 702 ...........................................................................................................1

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. PEDRO JAVIER GALLEGO

**SUMMARY OF ARGUMENT**

Dr. Gallego possesses education, training, and experience that qualify him under Federal Rule of Evidence 702 to offer expert testimony regarding the negative impacts of captivity on orcas, ▮▮▮▮▮ ▮▮▮▮▮▮▮. "The threshold for qualification is low: a minimal foundation of knowledge, skill, and experience suffices." *PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*, Case No. 10-cv-544-JW, 2011 WL 5417090, at *3 (N.D. Cal. Oct. 27, 2011). Dr. Gallego's qualifications easily satisfy this threshold. He has been a doctor of veterinary medicine for 19 years, and he holds master's degrees in veterinary science and marine mammal science. He has provided veterinary care to cetaceans in captivity, and he has studied cetaceans in the wild, including orcas. Even so, SeaWorld argues that his expert opinions are inadmissible because the cetaceans he cared for in captivity did not include orcas. At most, SeaWorld's argument goes only to the weight of Dr. Gallego's testimony, and not its admissibility. *See Graham v. San Antonio Zoological Soc'y*, 261 F. Supp. 3d 711, 727 (W.D. Tex. 2017) ("Generally, if there is some reasonable indication of qualifications, the court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact, rather than for the court.").

Additionally, Dr. Gallego's opinions are reliable. "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). Here, Dr. Gallego supports his opinions regarding the negative impacts of captivity on orcas by relying on his veterinary knowledge ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Thus, his opinions have a reliable basis in both his knowledge of veterinary medicine, and in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. SeaWorld contends that his opinions are inadmissible because he did not "rule out" other causes of injury, but this argument is unpersuasive because he supports his opinions ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. PEDRO JAVIER GALLEGO

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Dr. Pedro Javier Gallego brings relevant experience and an independent perspective to this case. Unlike all of the veterinarian expert witnesses disclosed by SeaWorld, he is not on SeaWorld's payroll. Dr. Gallego will help the Court understand the issues in this case by using his veterinary expertise to explain why captivity is harmful for orcas, ▮▮▮▮▮▮▮▮▮▮▮. Dr. Gallego's expert opinions draw upon his qualifications and experience as a veterinarian, and they are reliably supported by his application of that experience ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The Court should deny SeaWorld's motion and permit Dr. Gallego to offer his expert opinions at trial.

## II.    LEGAL STANDARD

Federal Rule of Evidence 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "help the trier of fact to understand the evidence or to determine a fact in issue." Under Rule 702, a qualified expert may provide opinion testimony if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the expert reliably applied the principles and methods to the facts of the case. The inquiry for evaluating reliability is "is a flexible one," and trial courts exercise discretion in deciding whether an expert's testimony is reliable "based on the particular circumstances of the particular case." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 592–94 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). "When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Id.* at 565. A court "must be cautious not to overstep its gatekeeping role and weigh facts, evaluate the correctness of conclusions, impose its own preferred methodology, or judge credibility, including the credibility of one expert over another." *Emblaze Ltd. v. Apple Inc.*, 52 F. Supp. 3d 949, 954 (N.D. Cal. 2014).

### III.    BACKGROUND

#### A.    Dr. Gallego is a veterinarian with experience treating cetaceans in captivity and studying them in the wild.

Dr. Gallego is a doctor of veterinary medicine. He earned his D.V.M. degree in Belgium from the University of Liege in 2000. Opening Report, Dkt. 306-1, Pardo Decl. Ex. C ("Op. Rpt.") ¶ 4. As part of his studies, he interned at the Duisburg Zoo in Germany, which provided hands-on experience with cetacean management medicine. Op. Rpt. ¶ 4; Dep. Tr., Bowlus Decl. Ex. A ("Tr."), at 47:10–11. The zoo held several cetaceans in its collection, including 7 to 10 bottlenose dolphins, 2 Amazon River dolphins, a Commerson's dolphin, and a beluga whale. Op. Rpt. ¶ 4; Tr. at 66:23–67:2; 67:13–15. After earning his D.V.M. degree, Dr. Gallego worked at the zoo part time as a veterinarian. Tr. at 68:5–19. In all, he worked there for approximately three years. Tr. at 215:12–15. During his time at the zoo, he performed medical procedures on the cetaceans (such as injections, blood draws, and ultrasounds), prescribed medications for them, and prepared veterinary records for them. Tr. at 56:21–23; 61:24–62:11. Dr. Gallego collected data at the zoo to prepare a thesis on bottlenose dolphin blow cytology. Based on this research, Dr. Gallego received a master's degree in veterinary science. Tr. at 63:4–7; 65:23–66:4; Op. Rpt., Ex. A (CV).

Dr. Gallego's experience encompasses other captive facilities as well. He participated in consultancy work for and against dolphinaria in Europe, which included evaluating facilities that house cetaceans. Op. Rpt. ¶ 5; Tr. at 48:3–49:8; 82:23–84:8. In one case, he was retained to study conditions at dolphinaria in Switzerland, and his report in part prompted closure of a facility. Tr. at 84:6–84:8.

Outside of captive settings, Dr. Gallego has spent years researching wild cetaceans, including orcas. In 2003, he researched the codas of sperm whales in the Canary Islands, which led to a master's degree in marine mammal science from the University of Wales, Bangor in 2004. Tr. at 87:24–88:2; Op. Rpt. Ex. A (CV). From 2005 to 2015, he studied wild orcas in the Strait of Gibraltar each summer during the orca season. Tr. at 158:11–16; Op. Rpt. ¶ 8. He researched orca behaviors and performed photo identification studies. Tr. at 158:17–159:2. Dr. Gallego has presented at the European Cetacean Society,

2

the Conference of the Society for Marine Mammalogy, and the Benelux Congress of Zoology on topics including orca diet, predation, and hunting behavior. Op. Rpt. ¶ 9 & Ex. A (CV). He is currently studying for a Ph.D. from the University of Liege and serves as the head of Luxembourg's delegation to the Scientific Committee of the International Whaling Commission. Tr. at 101:18–102:24; Op. Rpt. ¶ 11 & Ex. A (CV). He serves as president of Odyssea, which is a nonprofit organization in Luxembourg that focuses on marine conservation, education, and research. Tr. at 102:3–5.

**B.    Dr. Gallego opines that captivity is harmful for orcas, which he supports with evidence                                                        .**

Dr. Gallego's expert report begins with background information regarding orcas. Op. Rpt. ¶¶ 21–28. He notes that orcas can grow up to 9 meters in length, weigh up to 6.6 tons, and travel over 150 kilometers per day in the wild. *Id.* ¶ 21, 25. Dr. Gallego next identifies ways in which captivity is harmful for orcas. *Id.* ¶¶ 29–39. For example, he notes that the small pools in which orcas are kept lead to harmful environmental traumas, such as when an orca collides with a gate or wall. *Id.* at ¶ 29. In addition to environmental traumas, Dr. Gallego explains that captive orcas chew on walls and metallic parts of the pool, leading to abnormal tooth wear, which creates a risk of infection. *Id.* ¶ 32. This is supported by former SeaWorld trainers John Jett and Jeff Ventre, who wrote in the Journal of Marine Animals and Their Ecology that they commonly observed captive orcas break or grind their teeth by mouthing or biting pool structures. Bowlus Decl., Ex. B at 11; Op. Rpt. ¶ 32 & n.16.

Dr. Gallego further notes that captivity causes stress, which can lead to decreased immune function. Op. Rpt. ¶ 34. Dr. Gallego relies in part on an article by Kelly Waples and Nicholas Gales in *Zoo Biology* titled "Evaluating and Minimising Social Stress in the Care of Captive Bottlenose Dolphins (*Tursiops aduncus*)." *Id.* ¶ 34 n.24; Bowlus Decl., Ex. C. The authors of that article stated that "social subordination can constitute chronic stress, leading to . . . decreased immune resistance [and] increased corticosteroids." Bowlus Decl., Ex. C at 19; *see also id.* at 21 ("It is widely reported that subordinate animals often experience chronic stress and that changes in dominance relationships can be stressful,

3

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. PEDRO JAVIER GALLEGO

resulting in increased cortisol levels, illness, and aggression."). The authors also provided examples of medical conditions observed in captive dolphins that "demonstrate the importance of stress derived from social interactions as a precursor to pathology and even mortality." *Id.* at 23. The authors recommended that "enclosures should be of sufficient size and design to allow individuals to avoid visual and physical contact with others" because the "presence of aggressive individuals may put others at risk." *Id.* As Dr. Gallego notes, an orca that is raked by another inside a pool enclosure cannot escape the aggressor, which exacerbates raking among orcas in captivity. Op. Rpt. ¶ 33. Finally, in addition to these harms, Dr. Gallego explains that the routine administration of antibiotics and antifungal drugs in captivity can be harmful, *id.* ¶¶ 34–39, and that captivity leads to harmful stereotypical behaviors, such as chewing on gates and bars, among other things, *id.* ¶¶ 37–39.

After describing these harmful impacts of captivity, Dr. Gallego's report then provides an analysis ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶¶ 40–43. This analysis comprises the bulk of Dr. Gallego's report and encompasses ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶¶ 44–355. As discussed further below, Dr. Gallego found evidence demonstrating that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This portion of Dr. Gallego's report is over 300 paragraphs long, but SeaWorld's motion almost completely ignores it. Although SeaWorld seeks to exclude Dr. Gallego's expert opinions "in their entirety," Dkt. 306 ("Mot.") at 2, SeaWorld's motion cites this portion of his expert report only once, and only with a cursory reference to " ¶¶ 42-354." Mot. at 9 (citing "*See id.* at ¶¶ 42-354"). Because this portion of Dr. Gallego's report is an important component of his analysis, the following paragraphs provide a summary.

All ten of the orcas currently living at SeaWorld San Diego are held in a network of five connected

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. PEDRO JAVIER GALLEGO

pools with a combined surface area of approximately 43,000 square feet, which represents about 0.4% of the surface area of one square kilometer. *Id.* ¶ 29. Dr. Gallego identified

. *Id.* ¶ 45.

, *id.* ¶ 46:

. *Id.* ¶¶ 95–96.

*Id.* ¶ 99.

*Id.*

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. PEDRO JAVIER GALLEGO



. *Id.* ¶ 54.

. *Id.*

. *Id.* ¶ 58.

(*id.* ¶ 91), (*id.* ¶ 148), (*id.* ¶¶ 170–72), (*id.* ¶¶ 196–97), (*id.* ¶¶ 204–07), (*id.* ¶¶ 243–45), and (*id.* ¶¶ 330–31).

. *Id.* ¶¶ 300–01.

. *Id.* ¶ 302.

. *Id.* ¶ 305.

. *Id.* ¶¶ 306–08.

. *Id.* ¶ 71.

SW047224 at –253 (excerpt), Bowlus Decl., Ex. D (cited in Op. Rpt. ¶ 71).

. Op. Rpt. ¶¶ 74–78.

. *Id.* ¶ 86.

. *Id.* ¶¶ 86–87.

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. PEDRO JAVIER GALLEGO



(*id.* ¶¶ 59–60),         (*id.* ¶¶ 103–107),         (*id.* ¶¶ 173–180),         (*id.* ¶¶ 208–218),         (*id.* ¶¶ 246–254),         (*id.* ¶ 348).

. *Id.* ¶ 56.

. *Id.*

. *Id.*

. *Id.*

*Id.* ¶ 337.

. *Id.* ¶ 334.

. *Id.*

. *Id.* ¶ 335.

. *Id.* ¶ 89.

. *Id.* ¶ 109.

. *Id.*

. *Id.* ¶¶ 43, 367.

7

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. PEDRO JAVIER GALLEGO

**IV.    DR. GALLEGO IS QUALIFIED TO OFFER EXPERT TESTIMONY**

Rule 702 "contemplates a broad conception of expert qualifications." *Thomas v. Newton Intern. Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994). "The threshold for qualification is low: a minimal foundation of knowledge, skill, and experience suffices." *PixArt Imaging, Inc.*, 2011 WL 5417090, at *4. "Generally, if there is some reasonable indication of qualifications, the court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact, rather than for the court." *Graham*, 261 F. Supp. 3d at 727.

Dr. Gallego's education, training, and experience qualify him under Rule 702 to offer admissible expert opinion testimony regarding the negative impacts of captivity on orcas and the veterinary records produced by SeaWorld. Dr. Gallego is a veterinarian and holds master's degrees in veterinary science and marine mammal science. SeaWorld omits these qualifications from its motion to exclude him. *See* Mot. at 4 (representing that Dr. Gallego "has a veterinary degree from the University of Liege (Belgium), but that is pretty much it"). Dr. Gallego cared for the cetaceans in captivity at the Duisburg Zoo, which included bottlenose dolphins, Amazon River dolphins, a Commerson's dolphin, and a beluga whale. Op. Rpt. ¶ 4; Tr. at 56:21–23; 61:24–62:11; 66:23–67:15. He has evaluated conditions at other captive facilities, and he has first-hand experience studying orcas in the wild.

SeaWorld argues that Dr. Gallego is not qualified because his experience providing veterinary care to cetaceans at the Duisburg Zoo did not include treatment of orcas. Mot. at 4. But, as Dr. Gallego noted at deposition, an orca is a cetacean. Tr. at 183:9–13. SeaWorld does not dispute this or offer any explanation why a doctor of veterinary medicine with experience treating cetaceans in captivity is not qualified to opine on the harmful impacts of captivity on orcas (which are cetaceans), or to analyze veterinary records for SeaWorld's orcas. Dr. Gallego's credentials and experience are more than sufficient to provide the "minimal foundation of knowledge, skill, and experience" necessary to qualify as an expert. *Thomas*, 42 F.3d at 1269.

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. PEDRO JAVIER GALLEGO

Neither of the two cases on which SeaWorld relies supports its attempt to disqualify Dr. Gallego as an expert. *See* Mot. at 5. First, in the *Bextra* case, the proffered witness reviewed competing observational studies involving a drug and chose to favor certain of those studies over others. *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007). The court held that the witness was not qualified to choose certain observational studies over others in part because the witness "never participated in an observational study of any kind." *Id.* Similarly, in the second case on which SeaWorld relies, *Pooshs v. Philip Morris USA, Inc.*, the court partially excluded expert testimony because the witness opined on cigarette filter design but "ha[d] no training in cigarette design and . . . never designed a cigarette or a cigarette filter." 904 F. Supp. 2d 1009, 1019 (N.D. Cal. 2012). Here, unlike the witnesses in *Bextra* and *Pooshs*, Dr. Gallego possesses training and first-hand experience that are relevant to the opinions he seeks to offer. He is trained to provide veterinary care for cetaceans by virtue of his D.V.M., and he has experience treating cetaceans in captivity, including by performing medical procedures on them, prescribing medications for them, and preparing their veterinary records. Tr. at 56:21–23; 61:24–62:11. Thus, both *Bextra* and *Pooshs* are inapposite, and they do not support SeaWorld's contention that Dr. Gallego lacks sufficient qualifications.

In sum, Dr. Gallego's knowledge, skill, and experience easily surpass the minimal threshold required to testify as an expert, and he is therefore qualified to offer expert testimony in this case.

## V.    DR. GALLEGO'S OPINIONS ARE RELIABLE

"The *Daubert* reliability requirement 'is flexible' and '*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case.'" *Alaska Rent-A-Car, Inc.*, 738 F.3d at 969 (quoting *Kumho Tire Co. Ltd. v. Carmichael,* 526 U.S. 137, 141 (1999)). "The 'list of factors was meant to be helpful, not definitive' and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on 'the particular circumstances of the particular case.' " *Id.* (quoting *Primiano*, 598 F.3d at 564 ). "Expert opinion testimony is relevant if the

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. PEDRO JAVIER GALLEGO

knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* (quoting *Primiano*, 598 F.3d at 565). "Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Id.* Furthermore, in bench trials such as this one where "the court sits as trier of fact, it has much greater flexibility to admit expert testimony and give it the weight to which it is entitled." *United States v. RSR Corp.*, No. 00-cv-890-JLR, 2005 WL 5977799, at *1 (W.D. Wash. Oct. 4, 2005).

**A.    Dr. Gallego opinions are reliable because he supports them** ▮▮▮▮▮▮▮▮▮.

Dr. Gallego's opinions regarding the harmful impacts of captivity are reliable because he supports them ▮▮▮▮▮▮▮▮▮▮▮▮▮. As noted in Dr. Gallego's report, Plaintiffs propounded an interrogatory asking SeaWorld to, among other things, "Describe any known or suspected mental or physical health issues, including (i) any instances of injury; (ii) any instances of illness that lasted more than 5 days; [and] (iii) any medications administered or medical procedures (including dental procedures) performed" for each SeaWorld orca. Op. Rpt. ¶ 40. SeaWorld responded to the interrogatory by invoking Federal Rule of Civil Procedure 33(d) and identifying electronic veterinary records for its orcas. *Id.* ¶ 41; Bowlus Decl. Ex. E at 14 (SeaWorld's Second Supp. Resp. to Interrogatory No. 14) ("Interrogatory Resp."); *id.* at Attachment A. According to SeaWorld's response, the documents it identified "contain the information requested in sub-parts (i), (ii), and (iii) of this interrogatory for those whales for which SeaWorld has electronic veterinary records." Interrogatory Resp. at 14. SeaWorld stated that the answers to the interrogatory could be determined by "examining" those documents. *Id.*

▮▮▮▮▮▮▮▮▮▮▮▮. Op. Rpt. ¶ 42;

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. PEDRO JAVIER GALLEGO

*see also id.* at Ex. B (Materials Considered); Interrogatory Resp. at Attachment A. ███

████████████████████████████████████████████████████

██████████████████████████. *Id.* ¶¶ 44–51 (██████ ¶¶ 52–69 (████

¶¶ 70–93 (█████ ¶¶ 94–121 (█████ ¶¶ 122–168 (█████ ¶¶ 169–194 (█████ ¶¶ 195–202 (

¶¶ 203–241 (█████ ¶¶ 242–290 (█████ ¶¶ 291–328 (█████ ¶¶ 329–355 (████ ██████

████████████████████████████████████████████████████

████████████████████████████████████████████████████.

**B.** **SeaWorld's arguments regarding differential diagnoses and ruling out other factors are unpersuasive because** ████████████████

███████████████████.

SeaWorld contends that Dr. Gallego's opinions should be excluded because he did not perform a "differential diagnosis" or rule out "other causative factors." Mot. at 9. These arguments are unpersuasive

████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████." Op. Rpt. ¶ 99. ██████████████████████

██████████████████████████. *Id.* ¶¶ 95–96. ████████████

████████████████████████████████████████████████████

████████████████████████. *Id.* ¶ 54. ███████████████

███████████████████████. *Id.* ¶ 71. ███████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████. *Id.* ¶¶ 56, 109.

████████████████████████████████████ distinguishes

his opinions from those at issue in *Nelson v. Tennessee Gas Pipeline Co.*, No. 95-1112, 1998 WL 1297690

(W.D. Tenn. Aug. 31, 1998), which SeaWorld relies on as support to exclude Dr. Gallego's opinions. *See* Mot. at 9. In *Nelson*, an expert offered the opinion that the plaintiffs' diseases were caused by exposure to poly-chlorinated biphenyls ("PCBs"). The expert testified that the diseases were caused by PCBs because PCBs were found in the city where the plaintiffs resided, and the plaintiffs had the diseases. *Id.* at *11. The court excluded the expert's opinion because it was circular. *Id.* Unlike the expert in *Nelson*, Dr. Gallego presents evidence demonstrating that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Other cases on which SeaWorld relies are distinguishable for the same reason. In *Lucido v. Nestle Purina Petcare Company*, the expert was excluded because he reviewed reports of illnesses "with an eye as to what toxins *could* have caused the symptoms presented and did not take into account that there could be causes for the symptoms completely independent of any toxins," 217 F. Supp. 3d 1098, 1110 (N.D. Cal. 2016) (Mot. at 10). Similarly, in *Casey v. Ohio Medical Products*, the expert was excluded because he relied on case reports that did not present "evidence of causation," 877 F. Supp. 1380, 1385 (N.D. Cal. 1995) (Mot. at 11), and in *In re Bextra*, the expert's opinion that a 200 mg dose of a drug could cause illness was excluded because she presented "no data from randomized controlled trials to support her conclusion at 200 mg/d," 524 F. Supp. 2d at 1179 (Mot. at 10). Here, unlike the experts in *Lucido*, *Casey*, and *Bextra*, Dr. Gallego ▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

SeaWorld also contends in a similar vein that "if killer whales in the wild have infections, skin lesions, or worn teeth, then one cannot reliably conclude that such conditions in SeaWorld killer whales result from being at SeaWorld." Mot. at 10. This argument is unsound because it is based on the implicit premise that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. This premise is faulty, and thus so is SeaWorld's argument. Dr. Gallego's report presents evidence of ▬▬▬▬▬▬▬▬▬▬▬▬

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. PEDRO JAVIER GALLEGO

███████████████████████████████████████████████████

███████████████████████████, Op. Rpt. ¶ 99. ████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████. *Id.* ¶ 305. ███████████████████████████. *Id.* ¶ 308. Contrary to SeaWorld's position, the fact that an orca in the wild could experience a skin lesion or a worn tooth does not undermine the reliability of Dr. Gallego's opinions that ████████████████████████ ███████████████. Additionally, SeaWorld dismisses as "unvarnished speculation" Dr. Gallego's opinion that ████████████████, Mot. at 10, ████████████████████ ██████████████████████████████████████ ███████████. Op. Rpt. ¶¶ 56, 334–335.

    **C.**    **Dr. Gallego did not need to visit SeaWorld or review Dr. Visser's inspection videos and photos to provide reliable support for his opinions.**

SeaWorld contends that Dr. Gallego's opinions are not reliable and should be excluded because he did not observe SeaWorld's orcas in person or review photos and videos taken by Dr. Visser during her observation of SeaWorld's orcas. Mot. at 6–7. SeaWorld's argument is rebutted by its own verified interrogatory response, in which SeaWorld represented that it produced veterinary records sufficient to determine any instances of injury, any instances of illness lasting for more than five days, and any medications administered to or medical procedures performed on its orcas. Interrogatory Resp. at 14; Op. Rpt. ¶¶ 40–41. As Dr. Gallego explained at deposition, ████████████████████ ██████████████████████████ Tr. at 179:21–22.

SeaWorld further contends that Dr. Gallego's ████████████████████ ████ is unreliable absent personal observation of the orcas, or review of photos and videos. Mot. at 7 (citing Op. Rpt. ¶ 366). SeaWorld is wrong again. SeaWorld fails to note in its motion that Dr. Gallego's ███████████████████████████████████████████████████

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓.” Op. Rpt. ¶ 366. Dr. Gallego identified ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *E.g.*, *id.* ¶¶ 71, 240, 251, 297, 305. This provides adequate support for his opinion that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓.” *Id.* ¶ 37.

SeaWorld also refers to a declaration that Dr. Gallego submitted in a prior case involving Lolita, a captive orca in Florida. Mot. at 6 (citing Dkt. 306-1, Pardo Decl., Ex. F at 2). In his declaration, Dr. Gallego stated that it was "necessary to observe her" in order "to gather usable data regarding Lolita's behavior." Pardo Decl., Ex. F at 2. Nothing about Dr. Gallego's prior declaration in that case renders his opinions inadmissible here. As noted above, Dr. Gallego supports his opinion ▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓. Nothing in his prior declaration indicates that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ cannot reliably support an opinion that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Accordingly, Dr. Gallego's declaration in the prior litigation does not render inadmissible his expert opinions in this case.

**D.    Dr. Gallego's references do not contradict his opinions.**

SeaWorld repeatedly argues, without support, that Dr. Gallego's opinions "contradict published authorities," Mot. at iv, that "several of his cited sources actually contradict his own theories," *id.* at 2, and that Dr. Gallego did not "address scientific literature that contradicts his opinions," *id.* at 6. However, SeaWorld only identifies a single purportedly "contradictory" reference, which SeaWorld cursorily refers to once in a footnote near the end of its motion. Mot. at 13 n.12 (citing Pardo Decl., Ex. B (Loch article)). SeaWorld does not explain why it believes that the Loch article supposedly contradicts Dr. Gallego's opinions. *See id.* Rather, SeaWorld paraphrases the Loch article out of context (and without citation) for the proposition that 88 percent of wild orcas have tooth wear. Mot. at 13 n.12. But, SeaWorld fails to

14

OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. PEDRO JAVIER GALLEGO

mention that the vast majority of this wear is only "Superficial wear," which does not include exposure of the pulp cavity. Loch article at Tbl. 2 & Fig. 6. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *E.g.*, Op. Rpt. ¶¶ 72, 74, 213, 302. Thus, contrary to SeaWorld's representation, the Loch article does not contradict Dr. Gallego's opinions. SeaWorld fails to identify any other supposedly "contradictory" article.

### E.   Dr. Gallego did not develop his opinions "solely for the purpose of litigation" or base them on "predetermined conclusions."

SeaWorld argues that Dr. Gallego's opinions are inadmissible because they were supposedly developed "solely for the purpose of litigation." Mot. at 14. SeaWorld is wrong: Dr. Gallego formed opinions that captivity negatively impacts cetaceans years ago while working at the Duisburg Zoo and while evaluating dolphinaria. Tr. at 47:8–48:11 ("I was not happy with the management and husbandry conditions of cetacean captivity in general. This is why I decided not to work with captive cetaceans anymore and to deal with wild cetaceans."); *id.* at 49:11–24 (criticizing "the small pools in which [animals] were kept" at dolphinaria). Additionally, his opinions are not based on "predetermined conclusions" and what counsel "wanted him to see." Mot. at 14. His opinions are based on ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

## VI.   CONCLUSION

The Court should deny SeaWorld's motion to exclude Dr. Gallego's expert opinions.

Dated: July 5, 2019

COVINGTON & BURLING LLP

By: */s/ Michael E. Bowlus*

Attorneys for Plaintiffs