**Pages 1 - 16**

                UNITED STATES DISTRICT COURT

              NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jeffrey S. White, Judge

MARC ANDERSON, ET AL.,            )
                                  )
            Plaintiffs,           )
                                  )
   VS.                            )     **NO. CV 15-02172-JSW**
                                  )
SEAWORLD PARKS AND                )
ENTERTAINMENT, INC.,              )
                                  )
            Defendant.            )
_____ )

                              Oakland, California
                              Friday, September 27, 2019

                    **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
                    COVINGTON & BURLING LLP
                    Salesforce Tower
                    415 Mission Street - Suite 5400
                    San Francisco, CA  94105
              BY:   **CHRISTINE S. HASKETT, ESQUIRE**
                    **UDIT SOOD, ESQUIRE**

For Defendant:
                    KINSELLA, WEITZMAN, ISER, KUMP &
                    ALDISERT LLP
                    808 Wilshire Boulevard - Third Floor
                    Santa Monica, CA  90401
              BY:   **LAWRENCE Y. ISER, ESQUIRE**

                    DUANE MORRIS LLP
                    505 9th Street NW - Suite 1000
                    Washington, DC  20004
              BY:   **MICHELLE C. PARDO, ESQUIRE**

Reported By:        Pamela Batalo-Hebel, CSR No. 3593, RMR, FCRR
                    Official Reporter

<u>**Friday - September 27, 2019**</u>                          <u>**11:31 a.m.**</u>

**P R O C E E D I N G S**

**---oOo---**

　　**THE CLERK:**  Calling CV 15-2172, Anderson, et al. vs. SeaWorld Parks and Entertainment.

　　Counsel, please step forward to the podiums and state your appearances.

　　**MS. HASKETT:**  Good morning, Your Honor.  Christine Haskett from Covington & Burling for the Plaintiffs.  With me is Udit Sood, also from Covington.

　　**THE COURT:**  Good morning, Your Honor.

　　**MR. ISER:**  Good morning, Your Honor.  Lawrence Iser on behalf of SeaWorld.  And --

　　**MS. PARDO:**  Michelle Pardo, also on behalf of SeaWorld, Your Honor.

　　**THE COURT:**  Good morning, Counsel.

　　I brought you here really more for trial setting, given the current posture of the case.

　　So the first thing I wanted to advise the parties, that I will not allow for a lengthy delay between the first and the second phase, if the Court resolves the issues of standing against SeaWorld.  At this point, the Court will not vacate the April 27th, 2020, trial date or the March 30th, 2020, pretrial date, and presumptively, assuming the case proceeds to the second phase, the second phase will utilize those same dates,

just as they're previously scheduled.

And the Court will address whether the pretrial filing deadlines should be adjusted as those dates approach based upon the reality of what happens in the trial and how quickly the Court can render its decision with respect to that first standing issue.

So the standing trial on the first phase will be held on March 9, 2020, at 8:00 a.m. and the pretrial will be on February 10, 2020.

Now, let me caution you or remind you that if you have downloaded the Court's pretrial orders with respect to -- or standing orders with respect to preparing for a bench trial and pretrial, you'll notice that those dates are going to come upon you very quickly because the Court, again, requires more time and requires more in terms of filings so that the Court can really, as I like to call it, squeeze all the air out of the case before the Court actually has to sit as a trier of fact and decider of the law.  So please calendar those dates soon because they will require joint work on your behalf and meeting and conferring.

Now, having reviewed the issue of the possibility of direct testimony by way of declaration and seeing declarations and seeing the parties' positions, the Court will not require the parties to do direct testimony by way of declaration. However, that said, given that it's a bench trial -- even if it

wasn't a bench trial -- because the Court needs to anticipate with a greater degree of, shall we say, specificity the amount of time it's going to allow and budget for this case or the first phase, when we get into pretrial, the Court is going to want much more detail on any witness's anticipated testimony and revised time estimates; again, when you file your pretrial filings; in other words, I want something tantamount to an offer of proof.

You all will have had plenty of time to depose each other's witnesses. There is no surprises here. And the Court cannot make a reasoned determination as to time limits until it sees what you are proposing because what the Court is going to do is it's going to say -- it may say certain testimony is cumulative and I don't need to hear it. So that's why what you filed with the Court was too general to really enable the Court to make those determinations or make that determination.

So when you file your pretrial filings, I would like a very detailed offer of proof because that's going to force you to say, "Wait a minute, certain of this testimony is cumulative, and the Court is not going to allow it."

So, again, please review the Court's guidelines for bench trial because they have their own deadlines and requirements. One of the requirements, filing requirements for bench trials in this Court that is different than filing requirements for jury trials is that I require the filing of proposed findings

of fact and conclusions of law, and the rules also contemplate that parties will require them -- the Court will require the parties to meet and confer at the conclusion of the trial to determine whether there are any findings of fact and conclusions of law as to which they can agree, whether reluctantly or otherwise, and will submit one joint statement of agreed upon and disputed findings of fact and conclusions of law supported by testimony and exhibits.

The reason for this is -- although, quite honestly, I haven't had very many bench trials.  When I have, it appeared to me that what was in dispute at the beginning of the trial, once testimony gets under way, is no longer really disputed based upon the cross-examination or the parties' legal theories or themes.  And so it occurred to me in terms of the way the Court's procedure has evolved that if counsel actually sat down and said, "We don't really dispute X," whatever X is, "we don't stipulate to it, but we understand -- we're not really going to contest that finding of fact," and so I found that to the extent that I can help parties narrow those issues so the Court only decides those facts and those conclusions of law that truly are still in dispute and then come up with a decision that rules on those actual disputes, it's very much more helpful.

So the way that I've implemented that is to have the parties meet and confer with an attempt to, in good faith, come

up with as many stipulated facts and conclusions as possible, but annotated to citations, to exhibits, and testimony which would be true even of disputed ones as opposed to stipulated ones or agreed-upon ones so that the Court can have a basis upon which to determine whether, in fact, those facts are in dispute and what are they.

Now, in response to the parties' -- some of the parties' comments, I will not need opening statements, and closing arguments will be presented by -- in writing following the conclusion of testimony.  I don't need 4th of July speeches about, you know, this or that or the other thing.  I am familiar enough with the case to be able to follow the testimony as it comes in.  I'll have the offers of proof, so I will not include in the time limitations any time for opening statement, as it's not necessary.

And even though the Court will order that any closing arguments, which much of which will be subsumed in your conclusion -- proposed conclusions of fact -- findings of fact and conclusions of law and agreed-upon items, the Court will have closing arguments through briefing, but I wanted to warn the parties or advise the parties that the Court will not allow for lengthy delay between the conclusion of testimony and the submission of post-trial materials because obviously the Court would like to give the parties the benefit of its ruling on standing so that it could move forward, if necessary, with the

next phase of the trial.

Now, in terms of time, trial time, the Court sits from 8:00 to 1:30 Monday through Thursday, except for Tuesday where the Court ends at about 12:00, 12:15 to get ready for its afternoon criminal calendar, with two 15-minute breaks.  We don't take lunch.  Fifteen minute breaks.  So this will be Monday, Wednesday, and Thursdays, 8:00 to 1:30, which will be five hours of trial time, and on Tuesday, 8:00 to 12:15 or 12:30, depending on the Court's afternoon calendar, with two 15-minute breaks on Tuesdays, and that will be about three and a half to four hours of trial time on Tuesday.  Five hours of trial time on Monday, Wednesday, and Thursday.

The Court is generally dark on Fridays.  Under exigent circumstances, the Court rarely but sometimes if it needs to conclude things, might meet on a Friday, but you don't need to clutter your calendar by setting anything here on this case, but it's sometimes possible.  But the dates I gave you and the times are the times that we will definitely sit.

My current thinking, based upon the parties' status statement, is that the Court is going to budget about 10 hours -- that is two full trial days -- of trial time for this bench trial.  Now, that said, the Court may revisit this allocation up or down when it has a better understanding of each witness's proposed testimony, and in those circumstances, the Court will set a precise time limit down to the minute,

which we will keep faithfully here and tell you what -- give you progress reports when it has a better understanding of the specifics of each witness's proposed testimony.

Let me ask maybe -- to harken back to -- probably most of you here are too young to remember Yoko Ono who said "give peace a chance."  Is there any room to try to settle this case before the first phase?

Let me ask Plaintiffs' counsel first.

**MS. HASKETT:**  We did hold a mediation, and the parties have continued to have some discussions post mediation.  We are certainly open to continuing those discussions.

**THE COURT:**  What's SeaWorld's view?

**MR. ISER:**  Our view is that it would be productive of the Court, I think, to actually order another day of mediation with all parties present in front of retired Magistrate Judge Nagle, who is very familiar with the case.  We think it would be helpful if Your Honor ordered that to occur.

**THE COURT:**  Are you suggesting or asking prior to the standing trial?

**MR. ISER:**  Yes, Your Honor.

**THE COURT:**  What's your view about that?

**MS. HASKETT:**  We are certainly open to continuing discussions.  We don't know that we need another formal mediation to do that.  We honestly haven't had a chance to really talk since the Court's bifurcation ruling came down, but

if they are open to discussions, we would, I think, prefer to try to engage in that process informally first and see if we can get somewhere.

THE COURT:  I think on balance, I'm not going to order that, but I will -- based upon counsel's representations, which I accept, that you will continue your discussions.  If need be, if you need a formal session or more, you can do that.

I will say as a certainty, however, that if the case proceeds to a second trial, my inclination would be to either -- either to send this back to Magistrate Judge Nagle -- Judge Nagle or to one of our magistrate judges here in this Court for a settlement conference before -- which is what I do in a lot of cases, because at that point, maybe -- sometimes I think -- and maybe even -- I'm thinking out loud.  Sometimes the *in terrorem* effect of not knowing which way the case is going to go is a good catalyst for settlement.

Sometimes if the case, irrespective -- and then the other possibility is the Court rules and then the parties go to settlement before the mediator or before a magistrate judge. That may change the dynamic, depending upon the ruling.  But I would pretty much guarantee you that there is going to be for sure an ordered settlement process between the first phase and second phase, so you should prepare for that and tell your respective clients that they're going to be in for that process.

Ms. Ottolini, did you have something you wanted to bring up?

**THE CLERK:**  No.

**THE COURT:**  All right.

So, again, I hope you do settle.  Just ironically I was recently up in the Arctic Circle, the North Pole, and I saw some of these creatures, and it didn't prejudice me one way or the other, although they are just beautiful animals, and I made no determinations -- you'd be surprised to know, I didn't even think about this case, but they are beautiful animals, and I'm sure you all are doing the best for them and for your respective clients.

So with all that said, is there anything further that Plaintiffs wish to bring up at this point?

**MS. HASKETT:**  There is one issue that I would like to alert the Court to just for now, which is that when we received the list of witnesses for the Phase 1 trial, which we recently got from SeaWorld, we were a little surprised as to a couple of those witnesses based on their written discovery responses. That said, we have not had a chance to discuss this with them. We are certainly planning to do that, and hopefully we can just work this out, but I wanted to just raise that, that that's an issue that is out there.  Hopefully it will not be something we need to trouble the Court with.

**THE COURT:**  I appreciate being alerted to that, and

the way to deal with that is if it becomes an issue, a perceived issue, is in the pretrial filings because the Court will usually address issues of surprise based upon the complete record in the case and based -- usually based upon motions in limine that may be -- again, I'm not inviting you to file them, but that's usually the form in which to do it.

SeaWorld doesn't need to comment on that, other than I will expect the parties to meet and confer in good faith about that. And understand that I'm really trying to, based upon representations made during the briefing -- to try a lean standing case and not have a lot of extraneous material come in.

But if there is a claim of surprise or something that was necessitating the Court's intervention, I will be glad to work that out with you in the pretrial.

So anything further from --

**MS. HASKETT:** No, Your Honor.

**THE COURT:** Anything further?

**MS. PARDO:** Your Honor, I had a clarifying question about some of the pretrial deadlines that would have preceded the merits trial if that were to go forward.

Your Honor had indicated that you will revisit those as they come up. The ones that I was particularly focusing on are those coming due in February that would happen even before the standing trial, and I wonder what the mechanism would be to

have Your Honor revisit those.

THE COURT:  Okay.

MS. PARDO:  Specifically motions in limine for the merits trial are due in February.

THE COURT:  Thank you very much.  That's an excellent point.

So my thought is that those dates are going to be suspended.  I want you to focus on the dates that I gave you for the pretrial and the trial and have you make your filings only on the standing issue.

At the end of the standing trial or during it, depending on whether the Court can multitask on this, I will give you new dates, probably after the Court decides what it's going to do, which will require pretty quick turnaround time.  And it may simply require you to just, shall we say, incorporate by reference or refile what you've already filed or would be filing.

But, no, I will vacate the requirement that you file anything for the merits and focus all of your pretrial efforts on the standing piece.

MS. PARDO:  Thank you, Your Honor.

Would that also apply to getting ready for a *Daubert* hearing?  I know Your Honor had previously vacated that hearing date.

THE COURT:  Correct.  The *Daubert* hearings are off for

now because I think we need to focus on the standing.  But, you see, to accommodate particularly the Plaintiffs' concerns about delay, given the Court's ruling on bifurcation, I'm going to hold your feet to the fire on the -- it will be a quick turnaround on the merits if we get to that point.

The other thing I want to raise -- just thought about this.  This courtroom has pretty good technology, and I'd like to know -- and it requires some preparation and maybe -- sometimes with sophisticated attorneys and law firms, it doesn't require a lot of intervention, but there is a little bit of interface that has to occur between the attorneys and the Court's IT department in terms of evidence presentation.

So what does the Plaintiff have in mind vis-à-vis presentation of evidence?

**MS. HASKETT:**  For the Phase 1 trial?

**THE COURT:**  Correct.

**MS. HASKETT:**  I think the Phase 1 trial is going to be pretty straightforward.  We may -- we would certainly expect to work with the Court's IT staff to be able to show things, maybe deposition transcript excerpts if we need that kind of information shown up on the screen, but I wouldn't expect that we would have a lot of needs for technology beyond that for Phase 1.

For Phase 2, we may need a lot more because we are, of course, dealing with the experts.

**THE COURT:** What is SeaWorld's position on that?

**MR. ISER:** I largely agree with that, Your Honor. I think there will be potentially video deposition. I think there will be documents that we would want to show Your Honor that will be done on the screen.

**THE COURT:** All right.

**MR. ISER:** I don't think we need anything fancy.

**THE COURT:** "Fancy" is a relative term these days.

What I would say, on the Court's website there is a phone number and an email address for you to get some face time with the court's technology person because it requires some interesting hookups like, for example, you need a VGA or an HDMI. Generally it doesn't work with Apple unless you have an HDMI plug to plug into the court's system. Once you do plug in, then it's pretty much plug-and-play, and usually counsel have their own paralegal or technical person at counsel table running the presentation.

Sometimes, usually not in civil cases, the parties agree on one particular computer, but the idea is from the Court's perspective, it does take a little bit of prep time on your part with your technical people and our technical people, and also to come in and make an appointment, as you'll see from the website, with Ms. Ottolini or whoever is standing in for her -- to come in and set up your material, because it won't be the morning of.

The idea is from your perspective and my perspective, I want it to go smoothly and have everything set up running with no glitches so that things just pop up and you can use whatever software you'd like to use.

The only other thing I will say to counsel, which is something I think has already been said to you and, you know, is the Court very much prefers, if possible, to hear from more junior attorneys. I don't know who in this group are more junior. I can guess, but I won't make any guesses. But I do really exhort counsel and the clients to allow -- especially in a bench trial but even in jury trials -- to allow more junior attorneys to kind of do stuff like argue to the Court, handle witnesses, handle in limines, because otherwise, we will never have a next generation here. So I do prefer people -- attorneys consider letting the more junior people -- and that doesn't mean necessarily younger; it means people with less experience -- come in and do stuff here, and I'm very accommodating to that in terms of time and also effort, especially in a bench trial where if you screw up, it's not going to have a bad consequence. In front of a jury it might, but even then.

So you don't have to respond. I hope you'll consider that.

**MS. HASKETT:** I can tell Your Honor, I'm very supportive of that.

**THE COURT:** Okay.  Okay.  And hopefully SeaWorld -- and, again, I don't -- I've heard in conferences where some clients say, "Well, who is the Court to tell us who is to try our cases," and the clients say, "Hey, we are paying a gazillion dollars an hour, and we don't want some young person fresh out of law school doing this stuff," and I understand that, but the other side of the coin is we, as members of the Bar and officers of Court, I think have an obligation to try to promote the next generation, to give them the experience they need; otherwise, we will be doomed in the next generation.

Thank you very much, Counsel.  I will see you all at trial.

(Proceedings adjourned at 11:53 a.m.)

<u>CERTIFICATE OF REPORTER</u>

        I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:    Monday, September 30, 2019


*Pamela Batalo Hebel*

_____
Pamela Batalo Hebel, CSR No. 3593, RMR, FCRR
U.S. Court Reporter