KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
LAWRENCE Y. ISER (SBN 094611)
liser@kwikalaw.com
KRISTEN L. SPANIER (SBN 181074)
kspanier@kwikalaw.com
KATHERINE T. KLEINDIENST (SBN 274423)
kkleindienst@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: (310) 566-9800
Facsimile: (310) 566-9850

DUANE MORRIS LLP
JOHN M. SIMPSON (admitted *pro hac vice*)
jmsimpson@duanemorris.com
MICHELLE C. PARDO (admitted *pro hac vice*)
mcpardo@duanemorris.com
REBECCA E. BAZAN (admitted *pro hac vice*)
rebazan@duanemorris.com
505 9th Street NW
Suite 1000
Washington, DC 20004
Telephone:    (202) 776-7800
Facsimile:    (202) 776-7801

Attorneys for Defendant SeaWorld Parks & Entertainment, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MARC ANDERSON, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>SEAWORLD PARKS AND ENTERTAINMENT, INC.,<br><br>          Defendant. | Civil Action No. 4:15-cv-02172-JSW (JCS)<br><br>**DEFENDANT'S TRIAL BRIEF**<br><br>Pre-Trial Conference: February 10, 2010<br>Trial Date: March 9, 2020<br>Judge: Jeffrey S. White<br>Courtroom: 5 |

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. SeaWorld Parks & Entm't, Inc.* 2016 WL 8929295 (N.D. Cal. Nov. 7, 2016) .......... 2

*Anderson v. SeaWorld Parks & Entm't, Inc.*, 2016 WL 4076097 (N.D. Cal. Aug. 1, 2016) ......... 3

*Anderson v. SeaWorld Parks & Entm't, Inc.*, 2018 WL 1981396 (N.D. Cal. Feb. 20, 2018) ..... 6-7

*Anthony v. Pharmavite*, 2019 WL 109446 (N.D. Cal. Jan. 4, 2019) ............................................ 8-9

*Bird v. First Alert, Inc.*, 2015 WL 3750225 (N.D. Cal. June 15, 2015) ........................................... 6

*Bronson v. Johnson & Johnson, Inc.*, 2013 WL 1629191 (N.D. Cal. Apr. 16, 2013) .................... 2

*Cabrera v. Countrywide Fin.*, 2012 WL 5372116 (N.D. Cal. Oct. 30, 2012) ............................... 6

*Clark v. City of Lakewood*, 259 F.3d 996 (9th Cir. 2001) ............................................................ 3

*Cordes v. Boulder Brands USA, Inc.*, 2018 WL 6714323 (C.D. Cal. Oct. 17, 2018) .................... 9

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), *cert denied*, 139 S.Ct. 640 (2018) ....................................................................................................................... *Passim*

*Doe v. Successful Match.com*, 70 F. Supp. 3d 1066 (N.D. Cal. 2014) ........................................... 5

*Eclat Pharm., LLC v. West-Ward Pharm. Corp.*, 2014 WL 12597594 (C.D. Cal. Feb. 12, 2014) .................................................................................................................................... 4

*Elec. Waveform Lab Inc. v. Work-Loss Data Inst., LLC*, 2015 WL 12684232 (C.D. Cal. Aug. 25, 2015) ....................................................................................................................... 3

*Jackson v. Gen. Mills, Inc.*, 2019 WL 4599845 (S.D. Cal. Sept. 23, 2019) .............................. 9-10

*Joslin v. Clif Bar & Co.*, 2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) ................................... 8-9

*Juliana v. U.S.*, --- F.3d ---, 2020 WL 254149 (9th Cir. Jan. 17, 2020) ....................................... 10

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ............................................................ 5

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2010) ............................................................. 2

*Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590 (9th Cir. 2018) ........................................... 8

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ....................................................................... 3, 8

*Millett v. Experian Info. Sols., Inc.*, 319 F. App'x 562 (9th Cir. 2009) ......................................... 6

*Rahman v. Mott's LLP*, 2018 WL 4585024 (N.D. Cal. Sept. 25, 2018) ........................................ 9

*Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015) ........................................................... 2

*Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949 (2005) ......................................... 6

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986) ....................... 3

*Sciaccia v. Apple, Inc.*, 362 F. Supp. 3d 787 (N.D. Cal. 2019) ......................................................... 8

*Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016) ................................................................................. 2

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) .......................................................... 10

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) ............................................................................... 6

*Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305 (2009) .......................................................... 7

## I. INTRODUCTION

Plaintiffs Marc Anderson, Kelly Nelson, and Juliette Morizur claim they purchased SeaWorld merchandise or tickets because they believed and relied on specific SeaWorld statements about its killer whales. But they cannot prove any of the elements required to have standing for those claims: (1) what SeaWorld statements they read/heard; (2) that they actually made any purchase; or (3) that any purchase they made was in reliance on SeaWorld's statements. Plaintiffs' inability to prove the case they pled has been confirmed by their repeated pivoting during the pretrial process. For example, unable to prove that any of the statements on which they allegedly relied actually appeared on SeaWorld's website at the time they claim they made their purchases, Plaintiffs are now desperately trying to find anything that generally, at any time, says something "similar" to the statements Plaintiffs claim are false. Their attitude apparently is "any SeaWorld statement about the topic of lifespans or mothers and calves anywhere, on any date, is enough." But the alleged misstatements and reliance that ground a consumer fraud case must occur before a lawsuit is filed, not on the eve of trial. Plaintiffs' eleventh-hour machinations and goal-post moving flout, if not violate the Court's orders narrowing this case; are highly prejudicial to SeaWorld, which has spent considerable time and resources responding to the case Plaintiffs pled; and underscores that this case was manufactured. As discussed in detail below, Plaintiffs lack both Article III and statutory standing for all of their claims, which require actual injuries and actual reliance on SeaWorld statements, none of which Plaintiffs have.

Plaintiffs also seek injunctive relief in the form of "corrective statements" on SeaWorld's website. But none has Article III standing for such relief because none has a legitimate intent to patronize SeaWorld again. Nor would they need to make future purchases to know "the truth," and thus fall outside the narrow *Davidson* carve out for false advertising plaintiffs who could potentially have injunctive relief standing. Morizur's claim also fails for lack of redressability. The injunctive relief sought (corrective website statements) would not redress Morizur's injury, because she does not claim reliance on statements on SeaWorld's website, and she has affirmatively disclaimed restitution. Due process requires dismissal of all Plaintiffs' claims for lack of standing.

## II. CLAIMS REMAINING

Only the following claims, as alleged in the operative complaint, remain:

| Plaintiff | Claim(s) | Alleged Purchase | Alleged Statement | Statement's Alleged Source |
|---|---|---|---|---|
| Anderson | UCL (all prongs) FAL | Shamu Plush | "orca lifespans in captivity are comparable to orca lifespans in the wild" (TAC ¶ 18) | SeaWorld website |
| Morizur | UCL (unfair prong only) | Shamu Plush | Collapsed dorsal fins are "normal, and also equally common in the wild" "captivity in general does not harm orcas" (TAC ¶ 20) | SeaWorld San Diego killer whale trainer statement in one-on-one conversation |
| Nelson | UCL (all prongs) FAL CLRA | SeaWorld ticket | "captive orcas ha[ve] similar lifespans to orcas in the wild" "SeaWorld does not separate calves and mothers" (TAC ¶ 19) | SeaWorld website |

## III. LEGAL STANDARDS

To establish Article III standing, Plaintiffs must show that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Similarly, statutory standing under the UCL/FAL/CLRA requires economic injury resulting from the defendant's conduct. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 321 (2010); *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). The "as a result of" element requires that Plaintiffs prove "actual reliance on the allegedly deceptive or misleading statements." *Kwikset*, 51 Cal. 4th at 326; *Bronson v. Johnson & Johnson, Inc.*, 2013 WL 1629191, at *2 (N.D. Cal. Apr. 16, 2013) ("[T]o have standing to bring a UCL, FAL, or CLRA claim, Plaintiffs must [have] relied on the misleading materials.").[1]

A plaintiff "must demonstrate standing for each form of relief he seeks"; thus, standing to

---

[1] *See also Anderson v. SeaWorld Parks & Entm't, Inc.*, 2016 WL 8929295, at *5 (N.D. Cal. Nov. 7, 2016) ("*Anderson II*") (reliance necessary for Plaintiffs' statutory standing).

seek restitution "does not ensure that the plaintiff can also seek injunctive … relief." *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001). "For injunctive relief, which is a prospective remedy," Plaintiffs must prove not just that they have suffered past exposure to illegal conduct, but that the threat of future injury is "actual and imminent, not conjectural or hypothetical." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citation omitted), *cert denied*, 139 S.Ct. 640 (2018). "In other words, the 'threatened injury must be *certainly impending* to constitute injury in fact' and 'allegations of *possible* future injury are not sufficient.'" *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). Standing is "an indispensable part of the plaintiff's case," and Plaintiffs' burden to satisfy the elements of standing is greatest at trial, where they must support their allegations with adequate evidence. *Lujan*, 504 U.S. at 561.

## IV. PLAINTIFFS LACK STANDING BECAUSE THEY CANNOT PROVE THE STATEMENTS THEY WERE EXPOSED TO

In false advertising cases, words matter. Exact words matter. "Trans fat free" is different than "fat free," for example (and "dorsal fin collapse *also happens* in the wild" is different than "dorsal fin collapse is *equally common* in the wild"). Indeed, false advertising cases grounded in alleged fraud, like this one, must satisfy the heightened pleading requirements of Rule 9(b). *See Anderson v. SeaWorld Parks & Entm't, Inc.*, 2016 WL 4076097, at *8 (N.D. Cal. Aug. 1, 2016) ("*Anderson I*"). This requires Plaintiffs, even at the pleading stage, to "identify with particularity" the "specific content of the statements" they were exposed to. *Elec. Waveform Lab Inc. v. Work-Loss Data Inst., LLC*, 2015 WL 12684232, at *3 (C.D. Cal. Aug. 25, 2015); *see also Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (plaintiffs must state the "time, place, and *specific content of the false representations*") (emphasis added).

Plaintiffs alleged that they relied on specific statements. TAC ¶¶ 18-20. But now it is clear those allegations were not accurate. On the eve of trial, Plaintiffs cannot state the "specific content" of the SeaWorld statements they were exposed to, or the time or place of the alleged exposure. In fact, each Plaintiff admitted in their interrogatory responses that they are "unable to '[q]uote verbatim' SeaWorld's statements," they were exposed to, but claim they relied on information SeaWorld provided. In other words, Plaintiffs claim that they relied on whatever

SeaWorld said, but they can't say what that was or where they saw it.[2]  Plaintiffs can't cure this by reference to documents, either.  No Plaintiff has documentary evidence of the SeaWorld statements they were exposed to.  Morizur's claims are based on an alleged one-on-one conversation with a killer whale trainer (a conversation about which Morizur cannot say what the trainer actually said to her, and her accounts are disputed by actual SeaWorld killer whale trainers).  Neither Anderson nor Nelson printed out or otherwise kept a record of the actual SeaWorld website statements they claim to have seen.  The two documents produced as reflecting the SeaWorld statements on which Anderson and Nelson relied were actually print outs <u>Plaintiffs' counsel</u> made in May of 2015 (the exact same 66 pages produced for both Anderson and Nelson, despite their differing claims and that they supposedly visited SeaWorld's website a year apart).  Neither Anderson nor Nelson could have relied on those documents, however.  Anderson testified that he had not seen one of the two documents before his SeaWorld trip, and the other has a <u>copyright of 2015</u> and refers to an article published *after* Anderson's 2014 SeaWorld visit.  And those documents were printed by Plaintiffs' counsel *nearly a year before Kelly Nelson was even a client of Covington's*.  It would have been impossible for Plaintiffs' counsel to print copies of statements Nelson relied upon before they had ever spoken to her.  Further, even though Nelson's case is limited to statements she saw on SeaWorld's website in 2015, Nelson testified that she does not know what was on SeaWorld's website in 2015.  Plaintiffs' evolving story—including backing away from what they pleaded and produced during discovery—is a major credibility problem that defeats their ability to prove standing.

In cases in which "a plaintiff contends that he was deceived by the communications of a defendant," the plaintiff "can reasonably be required to state with specificity their content, who communicated them and when they were communicated."  *Eclat Pharm., LLC v. West-Ward*

---

[2] This is evident in Plaintiffs' description of their claims in the Joint Pretrial Order, in which they attempt to expand the case right before trial by claiming exposure to statements different than what they pled (e.g., Morizur now claims that she relied on a never-pled statement that dorsal fin collapse happens because the dorsal fins weigh too much) and to retreat from their allegations that they saw specific statements on SeaWorld's website (e.g., claiming vaguely that Nelson saw "claims by SeaWorld," generally, not on SeaWorld's website).

*Pharm. Corp.*, 2014 WL 12597594, at *7 (C.D. Cal. Feb. 12, 2014).  That much is required <u>at the pleading stage</u>.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (plaintiff failed to adequately plead claims in part because he did not "specify what the television advertisements or other sales material *specifically stated*.") (emphasis added).  The standard of proof at trial is greater—not less—than the standard of pleading.  Because Plaintiffs cannot prove what specific statements they actually were exposed to, they lack standing.  *See Doe v. Successful Match.com*, 70 F. Supp. 3d 1066, 1082 (N.D. Cal. 2014) ("[I]f Plaintiffs did not see the specified representations before they purchased Defendant's services, then Plaintiffs did not rely on these representations and suffered no injury.").

## V. PLAINTIFFS LACK STANDING BECAUSE THEY CANNOT PROVE THEY HAVE ECONOMIC INJURIES

Plaintiffs all lack standing for an additional, independent reason: none can prove they actually purchased a SeaWorld ticket or merchandise.  Neither Anderson nor Morizur could produce the Shamu plush they claimed to have purchased.  Neither has a receipt, or a credit card statement showing the purchase.  Neither has photographic evidence of the plush (despite the fact that Morizur has photographic evidence of her 2012 trip to SeaWorld, multiple pictures of a Shamu plush purchased for her by her now-fiancé, and multiple pictures of other killer whale items).  Adding to the incredibility of the tale, both Anderson and Nelson claim that the reason they can't produce the plushes is because the plushes were destroyed by dogs.  Anderson claims the plush he purchased was destroyed by his sister's dog.  But his sister—an auditor for the IRS—testified under oath that she has never owned a dog.  Both of Morizur's parents attended SeaWorld with Morizur in April of 2012, but neither of them recall her purchasing a Shamu plush, having a Shamu plush in the car on the way home from SeaWorld, or that any Shamu plush was destroyed.

After alleging and affirming in discovery that she purchased a SeaWorld ticket, Nelson eventually admitted this was false.  Plaintiffs will not be able to prove that she can have an "economic injury" as a result of a purchase her husband made for her (a purchase for which there is no proof to begin with).  Plaintiffs will argue that it should be presumed that community property was used by Nelson's husband to purchase Nelson's SeaWorld ticket, which imputes an

economic injury to her.  This is unsupported, both legally and factually.  Plaintiffs have cited no case in which a husband's purchase with community property constituted "economic injury" for his non-purchasing spouse's UCL, FAL, or CLRA claim.  *But see Cabrera v. Countrywide Fin.*, 2012 WL 5372116, at *8 (N.D. Cal. Oct. 30, 2012) ("[T]he Ninth Circuit does not allow community property rights to create standing when the spouse is not a signatory to the contract at issue.").  Further, Plaintiffs cannot prove (1) how Ken Nelson paid for the tickets (cash or credit); or (2) assuming he used a credit card (which would have been in his name only), whether or not the credit card was paid for by a joint account containing community property.  Kelly Nelson cannot say for sure whether Ken has bank accounts separate from her.  The case law that does exist holds that a person must be the actual purchaser of the goods to have standing.  *See*, *e.g.*, *Millett v. Experian Info. Sols., Inc.*, 319 F. App'x 562, 563 (9th Cir. 2009) (plaintiff did not purchase the product at issue "and therefore, lacks standing under the … CLRA"); *Bird v. First Alert, Inc.*, 2015 WL 3750225, at *5-6 (N.D. Cal. June 15, 2015) (wife lacked Article III standing and failed to meet economic injury requirement where the product was purchased by her husband)[3]; *Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 960 (2005) (plaintiff lacked standing for CLRA claim because her "ownership of the ring was not acquired as a result of her own consumer transaction with defendant").

## VI. PLAINTIFFS LACK STANDING BECAUSE THEY CANNOT PROVE RELIANCE

Even if Plaintiffs could prove exposure and injury (which they cannot), none can prove *reliance*—that without the SeaWorld statement Plaintiffs "in all reasonable probability would not have engaged in the injury-producing conduct"—i.e., made their purchases.  *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) (quotation omitted).  Even if one believed Anderson's story

---

[3] This Court previously noted that in *Bird*, the plaintiff-wife was not the desicionmaker, whereas Nelson testified during her deposition that it was her decision to purchase the SeaWorld tickets. *Anderson v. SeaWorld Parks & Entm't, Inc.*, 2018 WL 1981396, at *9 (N.D. Cal. Feb. 20, 2018) ("*Anderson III*").  However, the *Bird* court found that the plaintiff-wife lacked standing *both* because she did not rely *and* because she did not make the purchase. 2015 WL 3750225, at *6.  If the outcome turned solely on reliance, there would have been no need to analyze who made the actual purchase.  Just because the *Bird* plaintiff's claims had two fatal flaws does not mean that Nelson's claims do not also fail.

that he purchased a plush, he claimed he did so for a number of reasons, *none* of which was reliance on a SeaWorld statement. Regardless of what SeaWorld said on its website, he in all probability would still have purchased the plush. Nelson went to SeaWorld to investigate what *Blackfish* said, not because of any SeaWorld statement, and in fact testified that she hadn't ever seen a SeaWorld statement she felt like she *could* rely on.[4] Morizur was crying when she left SeaWorld because of the condition of the killer whales, so whatever motivated her alleged plush purchase that day, it was not her belief in the trainer's purported statement about the health/happiness of SeaWorld's killer whales. Without being able to prove that specific SeaWorld website or trainer statements motivated their alleged purchases, Plaintiffs lack standing. That is because the "causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law." *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1349 (2009) (quotation omitted).

## VII. PLAINTIFFS LACK STANDING FOR INJUNCTIVE RELIEF BECAUSE THEY DO NOT INTEND TO MAKE FUTURE PURCHASES AND DO NOT NEED TO MAKE FUTURE PURCHASES TO KNOW "THE TRUTH"

The Ninth Circuit recently has held that there are two scenarios in which previously deceived false advertising plaintiffs may have standing to seek injunctive relief. *Davidson*, 889 F.3d at 969-70. First, where the consumer "will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to"; and second, where the consumer "might purchase the product in the future, despite the fact that it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* "Courts have cautioned that *Davidson*'s conclusion is narrower than a blanket conclusion that plaintiffs seeking injunctive relief in mislabeling [cases] *always* have standing" and "is more accurately cast as the court's not [being] persuaded that injunctive relief is *never* available for a consumer who learns after purchasing a product that the label is false.'"

---

[4] The evidence will show that Nelson's issue with SeaWorld is not that it made false statements, but that SeaWorld's statements were not verified by independent sources, so she did not know if she could trust them. Accordingly, she lacks standing for her claims because she did not rely on any SeaWorld statement, and her "lack of substantiation" theory is not actionable. *See Anderson III*, 2018 WL 1981396, at *11 (discussing lack of substantiation cases)

*Anthony v. Pharmavite*, 2019 WL 109446, at *5 (N.D. Cal. Jan. 4, 2019) (quotations omitted). Plaintiffs lack standing for injunctive relief under *Davidson*, for two reasons.

First, for either *Davidson* scenario, the plaintiff must have an intent to re-purchase the product. *See Davidson*, 889 F.3d at 969 n.5 (distinguishing cases where plaintiffs lacked standing for injunctive relief because they failed to allege a sufficient intent to repurchase the product); *Joslin v. Clif Bar & Co.*, 2019 WL 5690632, at *2 (N.D. Cal. Aug. 26, 2019) ("In either [*Davidson* scenario], in addition to alleging facts that demonstrate they are unable to rely on the advertising or labeling, a plaintiff must allege they would want to or intend to purchase the product in the future."). Plaintiffs here do not have a sufficient intent to repurchase the product. They all claim that they "may consider" or "may be inclined" to make hypothetical future purchases. This is precisely what the Ninth Circuit found to be insufficient in *Davidson*. There, the court recognized that an allegation that plaintiffs "<u>may, one day</u>, become … customers once more," was an insufficient intent to repurchase. *Davidson*, 889 F.3d at 969 n.5 (emphasis added) (quotation omitted). Plaintiffs' allegations that they "may", one day "consider" future SeaWorld purchases is precisely the type of "'some day' intentions" that the Supreme Court has rejected as failing to meet the "actual or imminent" injury requirement. *Lujan*, 504 U.S. at 564; *see also Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (allegation that plaintiff would "consider buying" future products insufficient to establish Article III standing); *Sciaccia v. Apple, Inc.*, 362 F. Supp. 3d 787, 803 (N.D. Cal. 2019) (allegation that plaintiff "*may* have the watch repaired, which might result in the alleged defect manifesting again," insufficient for standing).

Further, Plaintiffs' prior actions and testimony bely any legitimate desire to purchase SeaWorld tickets or merchandise (including Nelson's anti-SeaWorld social media rhetoric; Morizur's frequent vitriolic public statements towards SeaWorld and about her intent to never return and convince others to boycott SeaWorld as well; and Anderson's testimony that he does not patronize locations that do not take good care of their animals and that he believes SeaWorld does not take good care of its animals and that he would not return or buy future merchandise unless the killer whale pools are bigger). This simply is not a case, like *Davidson*, in which Plaintiffs are refraining from purchasing the product "although [they] would like to." *Davidson*,

889 F.3d at 970.  Indeed, Plaintiffs' belief that *captivity itself* at SeaWorld is harmful for the killer whales is one of the pillars of their lawsuit, which undercuts any credibility to their claim that they desire to make future SeaWorld purchases.  Plaintiffs do not claim that SeaWorld has any plans to release its killer whales from captivity, nor is that outcome requested as part of this case.  *See*, *e.g.*, *Anthony*, 2019 WL 109449, at *6 (plaintiffs lacked injunctive relief standing under *Davidson* for failure to adequately intend to make future purchases because they claimed that had they known the truth about the product they would not have purchased it, and their claim was predicated on the premise that the product was fundamentally bad).

Second, in *Davidson* and other cases cited in that opinion, the plaintiff could not easily discover whether a previous misrepresentation had been cured without first buying the product, and thus had an ongoing inability to know injury—Davidson could not easily know if the defendant had modified its wipes to make them actually flushable without buying them again.  *See Cordes v. Boulder Brands USA, Inc.*, 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018).  Here, however, Plaintiffs purport to know "the truth" independent of SeaWorld tickets or plushes, through their meetings with Earth Island and/or watching *Blackfish*.  Plaintiffs do not need to buy future SeaWorld tickets or Shamu plushes (or need a Court-ordered injunction) to determine whether SeaWorld's statements about lifespans, calf separation, dorsal fins, or captivity in general are true.  There is no likelihood they will be deceived in the future.  "This sets [them] apart from the plaintiff in *Davidson*, who could not easily determine whether the defendant's previous misrepresentations had been cured without first buying the product." *Id.*; *see also Rahman v. Mott's LLP*, 2018 WL 4585024, at *2 (N.D. Cal. Sept. 25, 2018) (holding that plaintiff lacked injunctive relief standing because, unlike in *Davidson*, plaintiff now can know the truth about the product without buying it again); *Joslin*, 2019 WL 5690632, at *3-4 (same); *Jackson v. Gen. Mills, Inc.*, 2019 WL 4599845, at *5 (S.D. Cal. Sept. 23, 2019) (same).  The Court in *Jackson* noted that, unlike in *Davidson*, the plaintiff did not have injunctive relief standing because

> Given that she now knows she can ascertain the amount of cereal she is buying by looking at the label, she has not shown any likelihood she will be deceived in the future … [Plaintiff]'s allegation that she would like to buy the cereal again, if the problems she points to are remedied, is also implausible.  If she is

> dissatisfied enough with the cereal that she has stopped buying it, there is no reason to suppose that changed product labeling to tell her what she already knows about the amount of cereal in the box would change that.

2019 WL 4599845, at *5.  Similarly here, Plaintiffs claim they now know "the truth" about SeaWorld's killer whales, and currently will not go back, so there is no likelihood they will be deceived in the future, and no reason to suppose that if the Court orders the injunction they seek—including ordering SeaWorld to state on its website that captivity is harmful for killer whales—they are likely to patronize SeaWorld again, since "the truth" is what is keeping them away. Plaintiffs do not fall within *Davidson*'s carve out for plaintiffs with ongoing injuries, and thus lack injunctive relief standing.

## VIII. MORIZUR'S INJURIES ARE NOT REDRESSABLE

"To establish Article III redressability, the plaintiffs must show that the relief they seek is both (1) substantially likely to redress their injuries; and (2) within the district court's power to award." *Juliana v. U.S.*, --- F.3d ---, 2020 WL 254149, at *6 (9th Cir. Jan. 17, 2020).  Plaintiffs request restitution and an injunction "requiring SeaWorld to issue corrective statements on its website." TAC ¶ 85.  Morizur, however, testified under oath that she is asking the Court to give her zero point zero zero dollars.  Nor will corrective statements on SeaWorld's website redress her injuries.  Her claim is based on a one-on-one conversation with a trainer.  Her alleged injury is completely disconnected to the SeaWorld website, so any "corrective statements" thereon are not "substantially likely to redress [her] injuries." *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106 (1998) (a request for relief that "seeks not remediation of [plaintiff's] own injury" is insufficient for Article III redressability; "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement.").

## IX. CONCLUSION

For the foregoing reasons, Defendant is entitled to a judgment in its favor on all of Plaintiffs' causes of action, with Plaintiffs to take nothing by their Third Amended Complaint.

DATED: January 27, 2020                    DUANE MORRIS LLP

                                           By:      /s/ John M. Simpson
                                                 John M. Simpson
                                                 Attorneys for Defendant