Christine S. Haskett (Bar No. 188053)
Tracy O. Zinsou (Bar No. 295458)
Lindsey Barnhart (Bar No. 294995)
Udit Sood (Bar No. 308476)
Michael E. Bowlus (Bar No. 307277)
Sarah Guerrero (Bar No. 322319)
Hakeem Rizk (Bar No. 326438)
Sophia Cai (Bar No. 327773)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: chaskett@cov.com; tzinsou@cov.com; lbarnhart@cov.com; usood@cov.com;
mbowlus@cov.com; sguerrero@cov.com; hrizk@cov.com

*Attorneys for Plaintiffs*
*MARC ANDERSON, KELLY NELSON,*
*and JULIETTE MORIZUR*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| MARC ANDERSON, KELLY NELSON, and JULIETTE MORIZUR, | Case No.: 4:15-cv-02172-JSW |
| Plaintiffs, | **PLAINTIFFS' TRIAL BRIEF** |
| v. | Pretrial Conference Date: February 10, 2020<br>Pretrial Conference Time: 2:00 p.m.<br>Trial Date: March 9, 2020<br>Judge: Hon. Jeffrey S. White<br>Courtroom: 5 |
| SEAWORLD PARKS AND ENTERTAINMENT, INC., | |
| Defendant. | |

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aguilar v. Atl. Richfield Co.*,
25 Cal. 4th 826 (2001)........................................................................................................4

*Anthony v. Pharmavite*,
No. 18-cv-02636-EMC, 2019 WL 109446 (N.D. Cal. Jan. 4, 2019) ....................................11

*Bell v. Hummel*,
136 Cal. App. 3d 1009 (Ct. App. 1982) ................................................................................4

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir.), cert. denied, 139 S. Ct. 640 (2018)....................................9, 10, 11

*Gonzalez v. DeKalb Med. Ctr.*,
No. 108CV03366CAMAJB, 2009 WL 10664894 (N.D. Ga. Dec. 30, 2009).......................12

*Hamana v. Kholi*,
No. 10CV1630 BTM BGS, 2011 WL 940777 (S.D. Cal. Mar. 15, 2011)..............................3

*Hendricks v. Armstrong Int'l, Inc.*,
No. CV 14-09360 DDP ......................................................................................................11

*Joslin v. Clif Bar & Co.*,
No. 4:18-04941-JSW, 2019 WL 5690632 (N.D. Cal. Aug. 26, 2019).................................10

*Kaufman & Broad Bldg. Co. v. City & Suburban Mortg. Co.*,
10 Cal. App. 3d 206 (Ct. App. 1970) ..................................................................................11

*Konik v. Cable*,
No. CV 07-763 SVW (RZX), 2009 WL 10681970 (C.D. Cal. Dec. 2, 2009) ...........5, 6, 7, 9

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011)...............................................................................................3, 9, 10

*Lemmons v. Georgetown Univ. Hosp.*,
241 F.R.D. 15 (D.D.C. 2007) .............................................................................................12

*McGuire v. Bourbon Cmty. Hosp.*,
Civ. No. 04–480, 2006 WL 208826 (E.D. Ky. Jan. 25, 2006)............................................12

*Mullins v. Premier Nutrition Corp.*,
No. 13-CV-01271-RS, 2016 WL 3440600 (N.D. Cal. June 20, 2016) ..................................8

*Punian v. Gillette Co.*,
No. 14-CV-05028-LHK, 2015 WL 4967535 (N.D. Cal. Aug. 20, 2015) .............................10

*Rahman v. Mott's LLP,*
    No. CV 13-3482 SI, 2014 WL 5282106 (N.D. Cal. Oct. 15, 2014)....................................5

*Ries v. Arizona Beverages USA LLC,*
    287 F.R.D. 523 (N.D. Cal. 2012) ...............................................................................5, 8

*Schneider v. Chipotle Mexican Grill, Inc.,*
    328 F.R.D. 520 (N.D. Cal. 2018) ...................................................................................11

*Shank v. Presidio Brands, Inc.,*
    No. 17-cv-00232-DMR, 2018 WL 1948830 (N.D. Cal. Apr. 25, 2018)..............................10

*Snarr v. Cento Fine Foods Inc.,*
    No. 19-CV-02627-HSG, 2019 WL 7050149 (N.D. Cal. Dec. 23, 2019)..............................10

*In re Tobacco II Cases,*
    46 Cal. 4th 298 (2009)...........................................................................................*passim*

*United States v. Regan,*
    232 U.S. 37 (1914) ....................................................................................................4

*United States v. State of Oregon,*
    295 U.S. 1 (1935) ....................................................................................................11

**Statutes**

Cal. Civ. Code § 1780 ...................................................................................................3

Cal. Fam. Code § 751 ...................................................................................................4

California's Consumers Legal Remedies Act, Civil Code sections 1750, *et seq.*.....................3, 5

California's Unfair Competition Law, Business and Professions Code sections 17200, *et
    seq.*..................................................................................................................3, 5

California's False Advertising Law, Business and Professions Code sections 17500, *et seq.* ..................3, 5

**Other Authorities**

Restatement (Second) of Contracts § 167 ...........................................................................6, 9

Plaintiffs are pursuing claims against SeaWorld under California's False Advertising Law, Business and Professions Code sections 17500, *et seq.* ("FAL"), California's Unfair Competition Law, Business and Professions Code sections 17200, *et seq.* ("UCL"), and California's Consumers Legal Remedies Act, Civil Code sections 1750, *et seq.* ("CLRA").  The Court's Standing Order requests a trial brief addressing "any controlling issues of law."  For the Phase 1 trial in this case on Plaintiffs' standing, based on the facts in dispute, Plaintiffs submit the below discussion on the following issues of law: *(I)* statutory standing under the FAL, UCL and CLRA; *(II)* Article III standing for injunctive relief; and *(III)* abandonment of claims.

## I.        STATUTORY STANDING UNDER FAL, UCL AND CLRA

Under the FAL and the UCL, "any 'person who has suffered injury in fact and has lost money or property' as a result of" the false advertising or the unfair competition has standing to sue.  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320–21 (2011) (citing Cal. Bus. & Prof. Code §§ 17204, 17535).  Thus, there is standing if a plaintiff can "*[A]* establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and *[B]* show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim."  *Id.* at 322.  Likewise, under the CLRA, "[a]ny consumer who suffers any *damage as a result of* the use or employment by any person of a method, act, or practice declared to be unlawful. . . may bring an action[.]"  Cal. Civ. Code § 1780 (emphasis added).

### A.        Economic injury

#### 1.        A plaintiff may suffer economic injury through loss of community property.

Lost money or property is "a classic form of injury in fact."  *Kwikset Corp.*, 51 Cal. 4th at 323.  There is no legal requirement, however, that the money or property lost come from the plaintiff's immediate possession or that it belong exclusively to the plaintiff.  To the contrary, the Supreme Court of California has ruled that: "[t]here are innumerable ways in which economic injury from unfair competition may be shown.  A plaintiff may. . . be deprived of money or property *to which he or she has a cognizable claim.*"  *Id.* (emphasis added); *see also Hamana v. Kholi*, No. 10CV1630 BTM BGS, 2011 WL 940777, at *4 (S.D. Cal. Mar. 15, 2011) (*Kwikset* prescribed a "broad standard;" a showing of "deprivation of money

to which Plaintiff has a cognizable claim" is sufficient for standing).  A bedrock principle of community property law is that, during the subsistence of a marriage, each spouse has a cognizable interest in community funds.  Cal. Fam. Code § 751 ("The respective interests of each spouse in community property during continuance of the marriage relation are present, existing, and equal interests."); *see also Bell v. Hummel*, 136 Cal. App. 3d 1009, 1017 (Ct. App. 1982) ("The fact that a claim, such as we have here, represents a community asset does not change its character from that of being personal to each of its claimants.").

Indeed, this Court has already rejected SeaWorld's argument that use of community funds by Plaintiff Nelson's husband forecloses the possibility of an economic injury to Ms. Nelson.  Dkt. 188 at 14-16 ("It is undisputed that it was Nelson's husband exchanged money. . . for the tickets.  SeaWorld argues this fact precludes Nelson from pursuing her claims, because she has not established that *she* lost money or property. . . [T]he Court is not willing to find as a matter of law that Nelson lacks standing simply because her husband turned over the funds that were used to purchase the tickets.") (emphasis in original).  In line with the above-cited authorities, the Court should not reconsider its prior ruling.

At trial, the evidence will show that each plaintiff, including Ms. Nelson, had a cognizable claim to the money that was spent in making purchases from SeaWorld.  Each plaintiff, therefore, will have shown economic injury.

### 2. There is no law mandating corroboration of testimony of lost money through documentary evidence such as receipts.

A plaintiff bears the burden of proving their standing by a preponderance of the evidence.  *Aguilar v. Atl. Richfield Co.*, 25 Cal. 4th 826, 866 (2001), as modified (July 11, 2001) ("[P]laintiff would have borne the burden of proof by a preponderance of the evidence as to her unfair competition law cause of action."); *United States v. Regan*, 232 U.S. 37, 49 (1914) ("[I]n [] actions, which are brought for the determination of civil rights, the general rule applicable to civil suits prevails, that proof by a reasonable preponderance of the evidence is sufficient.").  No special rules exist proclaiming witness testimony incapable of satisfying that burden by itself.  To the contrary, courts have held that testimonial evidence "is sufficient to establish damages for purposes of statutory standing under the UCL, CLRA, and FAL." *Rahman v. Mott's LLP*, No. CV 13-3482 SI, 2014 WL 5282106, at *4 (N.D. Cal. Oct. 15, 2014) (*citing*

1
2
3
4

*Ogden v. Bumble Bee Foods, LLC*, No. 5:12-CV-01828-LHK, 2014 WL 27527, at *1 n.3 (N.D. Cal. Jan. 2, 2014).  Likewise, there are no mandatory documents that must necessarily be offered at trial to demonstrate lost money, nor must a plaintiff "furnish sales receipts or other extrinsic evidence."  *Id*.; *see also Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 530 (N.D. Cal. 2012)

5
6
7

> Defendants maintain they are entitled to judgment because plaintiffs' alleged purchases are undocumented by receipts, and because neither plaintiff can recall the precise prices they paid, or the exact statements on the bottling of the beverages they purchased.  Such arguments do not establish the absence of a disputed issue of material fact, but are instead about the relative weight of the evidence, and must be presented to the jury.

8
9

That no receipts from Plaintiffs' purchases of souvenirs and admission tickets over five years ago are available to be presented at trial is, therefore, not dispositive of economic injury.

10

### B.  Causation

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

To show causation, Plaintiffs must establish that their purchases were made in "reliance" on SeaWorld's misrepresentations.  *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) ("[T]here is no doubt that reliance is the causal mechanism of fraud.").  The California Supreme Court has held that the "substantial factor" standard applies in determining reliance in false advertising cases.  *Id*. at 326–27 ("It is not necessary that the plaintiff's reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor influencing his conduct.  It is enough that the representation has played a substantial part, and so had been a substantial factor, in influencing his decision.") (citations and original alterations omitted); *Konik v. Cable*, No. CV 07-763 SVW (RZX), 2009 WL 10681970, at *16 (C.D. Cal. Dec. 2, 2009) ("[T]he defendant's alleged misrepresentation need not be *the only cause* of the injury-producing conduct. . . [T]he proper test for causation in UCL actions is the substantial factor test.") (emphasis in original; citations and internal quotation marks omitted); *Ries*, 287 F.R.D. at 531 (rejecting defendant's argument that summary judgment was necessary because plaintiff admitted purchasing iced tea labeled "All Natural Green Tea" "solely because of thirst" because plaintiff also testified "that she purchased the drink with the understanding and expectation it was 'natural,' as advertised.").  This Court has confirmed the application to this case of the "substantial factor" standard in its order on SeaWorld's motion for summary judgment.  *See, e.g.*, Dkt. 188 at 10–11 ("Anderson testified that he was 'motivated' to purchase the Shamu plush because it was big, soft, and something a girl would

28

like. . . This testimony elucidates Anderson's primary reasons for purchasing the Shamu toy, which are unrelated to the alleged misrepresentations set forth in the TAC.  However, . . . the testimony is not dispositive, because Anderson need not show the misrepresentations were the only factor motivating his decision to purchase the Shamu Toy.").

To meet the "substantial factor" standard, as explained below, a plaintiff *(1)* need not show that they would not have made the purchase "but for" the misrepresentation.  *(2)* Nor does the plaintiff need to show that they was consciously thinking of the misrepresentation during purchase.  And *(3)* a plaintiff may establish the materiality of the misrepresentation and rely on a presumption or inference of reliance.

### 1.    The "substantial factor" standard is not a "but for" standard.

It is incorrect "to contend that [a plaintiff] must show that, but for [the defendant's] allegedly false advertising, [the plaintiff] would not have [entered into the transaction]."  *Konik v. Cable*, No. CV 07-763 SVW (RZX), 2009 WL 10681970, at *20 (C.D. Cal. Dec. 2, 2009).  "*Tobacco II* expressly stated that the defendant's misrepresentation need not be the predominate or decisive factor influencing plaintiff's decision.  The statement need not be a but-for cause.  Rather, it is enough that the plaintiff was actually influenced by the statement, and that it was a substantial factor influencing his decision at the time."  *Id.* The foregoing is merely a restatement of fundamental principles of contract law.  *See* Restatement (Second) of Contracts § 167, cmt. a (1981) ("It is not necessary that this reliance have been the sole or even the predominant factor in influencing [the plaintiff's] conduct.  *It is not even necessary that he would not have acted as he did had he not relied on the assertion.*  It is enough that the manifestation substantially contributed to his decision to make the contract.") (emphasis added).

*Konik* is instructive as to how the above principle applies in the context of false advertising cases. There, "[Plaintiff] Konik testified both that he specifically considered the [Time Warner Cable ("TWC")] advertisements when making his decision to transition from [the plaintiff's former cable company] Adelphia to TWC, *and also that* he would have made the same decision but for TWC's statements." *Konik* at *19 (emphasis added).  The *Konik* court explained that:

> Although these statements appear inconsistent at first blush, they are easily reconciled.  To wit: Konik did in fact hear and see TWC's advertisements, and the statements therein did influence Konik's decision to transition to TWC.  However, had those statements not existed, there would have been another sufficient reason to transition to TWC—that is,

Konik believed TWC was superior to the other options (Dish and DIRECTV). Thus, while TWC's statements were an actual influence on his decision, other factors also would have influenced Konik to make the same choice. This testimony meets the causation test of *Tobacco II* and common law fraud jurisprudence.

*Id.* Applying *Tobacco II*, *Konik* rejected TWC's argument that the "substantial factor" standard should be understood as a "but for" standard, requiring a plaintiff to show that, absent the defendant's misrepresentations, the plaintiff would not have entered into the transaction. *See id.* ("The principal flaw in TWC's argument is that it misinterprets the causation test announced in *Tobacco II* as a but-for test.").

Therefore, Plaintiffs' proof of reliance is complete once they establish that SeaWorld's statements were a "substantial factor" in their purchase. It is immaterial whether Plaintiffs are additionally able to demonstrate that, absent the statements, Plaintiffs would not have made their respective purchases. At trial, each plaintiff will establish that the SeaWorld statements they saw or heard were a substantial factor in their purchase. At least Ms. Nelson will additionally establish "but for" causation.

### 2. There is no law that only those factors about which a plaintiff was consciously thinking at the time of purchase can qualify as "substantial."

The conscious thoughts on a consumer's mind at the precise moment of purchase do not, as a legal matter, constitute the universe of factors that may be shown to be "substantial factors." While those thoughts may be probative of some of the things that the consumer regarded as material, to establish "reliance" in false advertising cases, a consumer need only demonstrate that the seller's statements "played a substantial part, and so had been a substantial factor, in influencing his decision." *Tobacco II* at 326. The California Supreme Court, in *Tobacco II*, prescribed no additional requirement that the statements be on the consumer's mind during purchase.

Indeed, such a requirement would severely limit California's consumer protection laws and be inconsistent with the Supreme Court's mandate. For example, although data privacy may be important to a smartphone user and the user may have read and reassured herself that a certain smartphone manufacturer's privacy policies are sufficient, while attempting to select a smartphone to purchase in the manufacturer's store, the user may well be thinking about other features of the smartphone (*e.g.*, screen size and quality of camera). The privacy policy may not be on the user's mind at all. But, if she learns later that the privacy policy was misleading, per *Tobacco II*, she can establish standing in a false

advertising lawsuit. Under *Tobacco II*, she need only demonstrate that the misstatements in the privacy policy were an "immediate cause" of her purchase, which, as the Supreme Court explained, she "may" do "by showing that in [their] absence [she] 'in all reasonable probability' would not have engaged in the injury-producing conduct." 46 Cal. 4th at 326. Thus, the requirement of showing "immediate cause" did not create a burden to establish that the plaintiff was consciously thinking about the misstatements immediately prior to purchase. Instead, the court further clarified that the misstatements made need not be "the sole or even the predominant or decisive factor," but merely a "substantial" one influencing the plaintiff's decision. Thus, as to the hypothetical smartphone user, regardless of the factors she considered in the store (screen size and quality of camera), and regardless of whether numerous *other* factors were also material to her (*e.g.*, price and battery life), once she establishes the seller's privacy policy as one of the factors she regarded as "substantial," she has established statutory standing.

Moreover, as with economic injury, there is no legal requirement that testimony that a factor was "substantial" in influencing a plaintiff's conduct be corroborated by documentary evidence of some kind. *See, e.g., Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 530 (N.D. Cal. 2012) ("Turning to reliance, likewise, defendants may attempt to exploit plaintiffs' imperfect recollections to persuade the trier of fact to discount their testimony, but critically, because plaintiffs specifically recall defendants' representations of AriZona beverages as 'natural,' and indicate that statement was material to their purchase, this standing requirement is satisfied.").

Thus, Plaintiffs may prove reliance through credible testimony that they saw or heard SeaWorld's statements prior to their respective purchases and that those statements sufficiently mattered to Plaintiffs in making their purchases. There is no legal requirement for Plaintiffs to additionally demonstrate that, at the time of purchase, they were consciously thinking about SeaWorld's statements, nor are Plaintiffs legally mandated to present documentary evidence corroborating their reliance.

### 3. Establishing materiality of a representation leads to a presumption or at least an inference of reliance.

It is well settled that "a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material." *Tobacco II*, 46 Cal. 4th at 326–27 (citation omitted); *see also Mullins v. Premier Nutrition Corp.*, No. 13-CV-01271-RS, 2016 WL 3440600, at *3 (N.D. Cal. June

20, 2016) ("A plaintiff satisfies the burden of proving reliance by showing the alleged 'misrepresentation was an immediate cause of the injury-producing conduct'—not that it was the only cause—or that the misrepresentation was material.  When a misrepresentation is material, a presumption of reliance arises.") (citing *Tobacco II*) (emphasis added).  "Circumstantial evidence is often important in determining whether a misrepresentation has been an inducing cause," and the "materiality of the misrepresentation is a particularly significant factor in this determination."  Restatement (Second) of Contracts § 167.  "It is assumed, in the absence of facts showing the contrary, that the recipient attached importance to the truth of a misrepresentation if it was material, but not if it was immaterial."  *Id.*

"Materiality" is determined based on the "reasonable man" standard.  *Tobacco II*, 46 Cal. 4th at 326–27 (citation omitted).  "A misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.'"  *Id.* (citation omitted); *Kwikset*, 51 Cal. 4th at 332 (same); *see also Konik*, 2009 WL 10681970, at *18 ("Certainly an objectively reasonable man would consider the price of the cable service as a critical factor in deciding whether to become a TWC subscriber.  Thus, Plaintiffs are entitled to a presumption, or at least an inference, of reliance.").  "In the alternative, [a representation] may also be material if 'the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.'"  *Kwikset*, 51 Cal.4th at 332 (quoting Restatement (Second) of Torts, § 538, subd. (2)(b)).

Therefore, Plaintiffs may rely on a presumption or an inference of reliance by demonstrating "materiality" of SeaWorld's statements.  Plaintiffs may demonstrate materiality by showing either that a reasonable man "would attach importance" to the statements in determining his choice of action in the transaction in question, or that SeaWorld "knows or has reason to know" that recipients of its statements are "likely to regard" the statements as important in determining their choice of action.  The evidence at trial will show both that the average consumer, in deciding whether to visit SeaWorld, attaches importance to SeaWorld's claims about the health and welfare of its animals, and also that SeaWorld understands that its consumers are likely to regard SeaWorld's claims about its animals as important.

## II.   ARTICLE III STANDING FOR INJUNCTIVE RELIEF

To prove Article III standing, Plaintiffs must demonstrate "injury-in-fact, causation, and redressability." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir.), cert. denied, 139 S. Ct. 640 (2018).  For injunctive relief,[1] Plaintiffs can establish injury-in-fact by demonstrating "a threat of imminent or actual harm." *Davidson*, 889 F.3d at 967.  In false advertising cases, the Ninth Circuit has held that a plaintiff may demonstrate that they "face[] a threat of imminent or actual harm by not being able to rely on [the defendant's representations] in the future." *Id.*  This Court analyzed *Davidson* in its order on SeaWorld's motion for summary judgment, and explained that "a consumer previously deceived by false advertising could have standing to pursue injunctive relief in at least two situations." Dkt. 188 at 5.  The first concerns uncertainty as to the defendant's advertising: "the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* (citing *Davidson*).  The second situation concerns changes to the defendant's product: "the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* (citing *Davidson*).  Under either situation, the risk of future injury is exacerbated when there is "no way to determine" whether the defendant's representations about its product are true. Dkt. 188 at 6 (quoting *Davidson*); *cf. Joslin v. Clif Bar & Co.*, No. 4:18-04941-JSW, 2019 WL 5690632, at *3–5 (N.D. Cal. Aug. 26, 2019) (no threat of future harm because the plaintiffs "[did] not want products that do not contain real white chocolate" and the plaintiffs "need only inspect the ingredient list to discover that [Clif Bar's] Products do not contain white chocolate").

Recent rulings have reaffirmed the Court's above holdings on this issue.  *See, e.g.*, *Shank v. Presidio Brands, Inc.*, No. 17-cv-00232-DMR, 2018 WL 1948830, at *5 (N.D. Cal. Apr. 25, 2018) (finding standing sufficiently pled based on allegations that plaintiff would buy food products in the future

---

[1] As to restitution, a showing of economic injury for statutory standing will also constitute a showing of injury-in-fact for Article III standing. *See, e.g.*, *Kwikset*, 51 Cal. 4th at 325.  Likewise, for causation, the Article III requirement is met once the causation requirement for statutory standing discussed above is satisfied. *See, e.g.*, *Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2015 WL 4967535, at *7 (N.D. Cal. Aug. 20, 2015).

if they were in fact all natural and that he would be "'hesitant to rely' on Presidio's labeling due to the misrepresentations" that he was challenging in the case); *Snarr v. Cento Fine Foods Inc.*, No. 19-CV-02627-HSG, 2019 WL 7050149, at *6 (N.D. Cal. Dec. 23, 2019) ("Plaintiffs establish threat of future harm by alleging that they would purchase the Products in the future only if they could rely on Defendant's labeling."); *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 528 (N.D. Cal. 2018) (sufficient basis to find standing based on allegations that plaintiffs would patronize Chipotle in the future if it had a non-GMO/GMO-free menu); *cf. Anthony v. Pharmavite*, No. 18-cv-02636-EMC, 2019 WL 109446, at *6 (N.D. Cal. Jan. 4, 2019) (no Article III standing for injunctive relief because plaintiffs' claims were rooted in the premise that the defendant "can do nothing to alter its advertising or product" such that plaintiffs would seek to purchase those products in the future).

Thus, proof that Plaintiffs, "should [they] encounter the [representation] today, [] could not rely on that representation with any confidence," along with a showing that they remain interested in purchasing the type of goods or services SeaWorld incorrectly claimed it was offering, would establish Plaintiffs' Article III standing for injunctive relief. *Davidson*, 889 F.3d at 971 (original alterations omitted). Alternatively, proof that Plaintiffs cannot reasonably determine the truth of SeaWorld's representations prior to actually making a purchase, and that they may lose money by incorrectly assuming SeaWorld to have improved its orca practices would also establish standing.

All three Plaintiffs will establish at trial that they remain interested in visiting SeaWorld (provided its orca practices evolve sufficiently) but that they are unable to rely on the accuracy of SeaWorld's representations, including because the veracity of those representations is difficult to ascertain based solely on the representations and without actually visiting SeaWorld. At least Ms. Nelson will additionally establish that, *after* her visit to SeaWorld in August 2015 that is the subject of this lawsuit, she was *indeed* led to believe (incorrectly) that SeaWorld's practices had changed.

## III.   ABANDONMENT OF CLAIMS

Abandonment of claims against a defendant requires an unambiguous expression of intent to abandon the claim. *See United States v. State of Oregon*, 295 U.S. 1, 29 (1935) (no abandonment in the absence of "intent on the part of the [claimant] to abandon or surrender its claim."); *Kaufman & Broad*

*Bldg. Co. v. City & Suburban Mortg. Co.*, 10 Cal. App. 3d 206, 213 (Ct. App. 1970) (refusing to find claims abandoned based on claimant's in-chamber statements and in the absence of "a clear, unequivocal and express intent to abandon" claims); *Hendricks v. Armstrong Int'l, Inc.*, No. CV 14-09360 DDP MANX, 2015 WL 546444, at *4 (C.D. Cal. Feb. 10, 2015) (denying defendant's request for finding of abandonment because the "Court [could not] conclude. . . that Plaintiffs have evidenced such a clear intent to abandon their claims against Crown Cork.").

"Although [a] plaintiff cannot technically withdraw or dismiss fewer than all of the claims from her complaint without availing herself of the formal Rule 15 process, some courts do recognize the possibility that a claim might nevertheless be expressly and unilaterally abandoned during discovery if certain conditions are met." *Lemmons v. Georgetown Univ. Hosp.*, 241 F.R.D. 15, 31 (D.D.C. 2007) (citing cases). Plaintiffs, however, are aware of no authority that the Ninth Circuit or the Northern District of California recognizes this sort of extra-procedural abandonment. *Cf. id.* ("[T]he District of Columbia Circuit has never recognized, nor even discussed, the propriety of this sort of extra-procedural abandonment."). Additionally, "even in those circuits that have explicitly considered whether plaintiffs have abandoned their claims through events occurring during the discovery process, the conclusion that such abandonment has occurred appears to require a [] clear[] statement of the plaintiff's intent to cease pursuing a particular legal claim.") (collecting cases); *see also McGuire v. Bourbon Cmty. Hosp.*, Civ. No. 04–480, 2006 WL 208826, at *3 (E.D. Ky. Jan. 25, 2006) (finding no support for the "theory of 'abandonment by deposition'" and holding that "the legal issue of whether a claim has been abandoned or waived requires much more than a lay person's opinion [provided in deposition testimony]"). Statements made under some confusion or misunderstanding at deposition do not constitute "an unambiguous statement of abandonment of [the plaintiff's claim] nor a basis for finding that [the plaintiff] has made assertions that fatally undermine [the plaintiff's claim]." *Gonzalez v. DeKalb Med. Ctr.*, No. 108CV03366CAMAJB, 2009 WL 10664894, at *10 (N.D. Ga. Dec. 30, 2009) (citing *Lemmons*).

Therefore, unless Plaintiffs express an unambiguous intention at trial to abandon certain claims against SeaWorld, the Court should treat Plaintiffs' claims as not abandoned. At trial, Ms. Morizur will testify that, contrary to SeaWorld's arguments, she does not wish to abandon her restitution claim.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: January 27, 2020

COVINGTON & BURLING LLP

By:  _/s/  Udit Sood_

Udit Sood
Attorneys for Plaintiffs